ORIGINAL
FILED

09 JAN 22 PM 2: 39

RICHARD W. WIEKING
U.S. DISTRICT COURT
NO DIST OF CA S.J.

1　Clement L. Glynn (CA Bar No. 057117)
　　James M. Hanlon, Jr. (CA Bar No. 214096)
2　Glynn & Finley, LLP
　　100 Pringle Avenue, Suite 500
3　Walnut Creek, Ca 94596
　　Telephone: (925) 210-2800
4　Facsimile: (925) 945-1975
　　cglynn@glynnfinley.com, jhanlon@glynnfinley.com
5
　　Michael T. Williams (CO Bar No. 33172, *pro hac vice* app. pend.)
6　Galen D. Bellamy (CA Bar No. 231792)
　　Wheeler Trigg Kennedy LLP
7　1801 California Street, Suite 3600
　　Denver, Colorado 80202
8　Telephone: (303) 244-1800
　　Facsimile: (303) 244-1879
9　williams@wtklaw.com, bellamy@wtklaw.com

10　Attorneys for Sears, Roebuck and Co.
　　and Whirlpool Corporation
11

12　　　　　　　　UNITED STATES DISTRICT COURT

13　　　　　　NORTHERN DISTRICT OF CALIFORNIA

14　　　　　　　　　　(SAN JOSE BRANCH)

JF

15
　　RENEE TIETSWORTH, On Behalf of　　　CASE NO.
16　Herself and All Others Similarly Situated,　C 09 00288 HRL

17　　　　　Plaintiff,

18　　　　　vs.　　　　　　　　　　DEFENDANTS' NOTICE OF REMOVAL

19　SEARS, ROEBUCK AND CO., and
　　WHIRLPOOL CORPORATION,
20
　　　　　　Defendants.
21

22　　　　Defendants Whirlpool Corporation ("Whirlpool") and Sears, Roebuck and Co. ("Sears")

23　hereby remove to this Court the state court action described below:

24　　　　1.　　On December 22, 2008, Plaintiff Renee Tietsworth ("Plaintiff") filed an action in

25　the Superior Court of the State of California in and for the County of Santa Clara, entitled *Renee*

26　*Tietsworth v. Sears Roebuck and Co. and Whirlpool Corporation*, Case No. 108CV130820.

27　///

28
　　　　　　　　　　　　　　1

1      2.      According to the Summons served on Whirlpool on December 24, 2008, an

2 unidentified Whirlpool employee was personally served with a copy of the Complaint and

3 Summons. Whirlpool Corporation's Law Department received a copy of the Complaint and

4 Summons on December 29, 2008. According to the Summons served on Sears on December

5 23, 2008, an unidentified Sears employee was personally served with a copy of the Complaint

6 and Summons. Thus, this Notice of Removal is timely filed in accordance with 28 U.S.C.

7 § 1446(b).

8      3.      A true and correct copy of the Complaint, together with copies of all other papers

9 served in this case are attached hereto as Exhibit A. To the best of Whirlpool's and Sears'

10 knowledge and belief, these documents constitute all of the process, pleadings, and orders as of

11 this date. *See* 28 U.S.C. § 1446.

12      4.      According to the Complaint, Plaintiff is a resident of San Diego, California.

13 Whirlpool is a Delaware corporation with its principal place of business in Benton Harbor,

14 Michigan. Sears is a New York Corporation with its principal place of business in Hoffman

15 Estates, Illinois.

16      5.      A true and correct copy of this Notice of Removal will be filed with the Clerk of

17 the Santa County, California, Superior Court in accordance with 28 U.S.C. § 1446(d), along

18 with a notice of that filing, a copy of which will be served on all parties.

19      6.      Plaintiff's Complaint is removable to this Court, and this Court has jurisdiction,

20 pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332 1441(a) and (b),

21 and 1453, because this is a putative class action involving more than 100 putative class

22 members who are seeking to recover in excess of $5,000,000, and the parties are minimally

23 diverse. *See* 28 U.S.C. § 1332(d).

24 ///

25 ///

26 ///

27 ///

28

1

**THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA**

2      7.      Plaintiff's Complaint alleges that Whirlpool and Sears sold, in the State of

3    California, Kenmore Elite® Oasis™ automatic washing machines ("Oasis washers")[1] that

4    allegedly are "defective and substantially certain to fail long before the useful life of the

5    product." (Compl. ¶ 9.) According to Plaintiff, "[t]he defective nature of the Machines causes

6    them to stop in mid-cycle and display an 'F' error code, including but not limited to 'F51' or

7    'F1.'" (*Id.*)

8      8.      Plaintiff filed this putative class action on behalf of all "California residents and

9    entities who purchased a top-loading Kenmore Elite Oasis automatic washing machine,

10   including, but not limited to model numbers, 110.2703*, 110.2704*, 110.2705*, 110.2706*,

11   110.2707*, 110.2708*, 110.2709* and 110.27015*, from January 1, 2004 to the present." (*Id.*

12   ¶ 26.) According to Plaintiff, she and the putative class members "have been forced to spend

13   hours stopping and restarting their Machines to finish a single load and in many cases cannot

14   successfully restart the Machine at all, at which time they have, and will continue to incur,

15   costly service expenses in breach of Defendants' warranties." (*Id.* ¶ 9.)

16     9.      The Complaint alleges claims for violations of the California Business &

17   Professions Code, fraudulent concealment, breach of express and implied warranties, violations

18   of the California Consumers Legal Remedies Act, and unjust enrichment, and it seeks to recover

19   compensatory, incidental, consequential, and punitive damages, as well as injunctive and

20   declaratory relief and attorneys' fees, on behalf of Plaintiff and the putative class. (*Id.* ¶¶ 42-

21   117; *id.* at 22-23.) The requested equitable relief includes not only restitution and disgorgement,

22   but also an order "enjoining Defendants from continuing to falsely market and advertise,

23   conceal material information and conduct business via unlawful and unfair business acts and

24

25

26   [1] Whirlpool manufactures and sells to Sears Oasis washers under Sears' proprietary Kenmore Elite® brand name. Three Sears entities, Sears, Roebuck and Co., Kmart, and The Great
27   Indoors, market, advertise, and sell the Oasis washers to end-user consumers and other buyers nationwide, including California residents.

28

1  practices," "an order requiring Defendants to engage in a corrective notice campaign," and a

2  "permanent injunction mandating that Defendants pay in part or in whole for the repair and/or

3  replacement of the Machines." (*Id.* at 22-23.)

4      10.    CAFA reflects Congress's intent to have federal courts adjudicate substantial

5  class-action suits brought against out-of-state defendants. *See* S. Rep. 109-14 at 43 (2005),

6  reprinted in 2005 U.S.C.C.A.N. 3, 41; H. Rep. 108-144, at 36-37 (2005). To effectuate this

7  purpose, CAFA provides that putative class actions filed in state court are removable to federal

8  court and expands federal jurisdiction over such class actions by amending 28 U.S.C. § 1332 to

9  grant original jurisdiction where, as here, the putative class contains at least 100 class members,

10  the parties are minimally diverse, and the amount in controversy exceeds $5,000,000 in the

11  aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

12      11.    This putative class action satisfies all the jurisdictional requirements under

13  CAFA. Specifically, based on the allegations in the Complaint, (1) the proposed class consists

14  of 100 or more members; (2) the parties are minimally diverse; (3) the amount in controversy

15  exceeds the $5,000,000 jurisdictional threshold; and (4) the exceptions to CAFA do not apply

16  here. *See* 28 U.S.C. § 1332(d); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-22

17  (9th Cir. 2007).

18      **A.**    **The Putative Class Size Exceeds 100 Members**

19      12.    CAFA requires that the putative class consist of at least 100 persons. 28 U.S.C.

20  § 1332(d)(5). In the Complaint, Plaintiff purports to represent all California residents who, from

21  2004 through the present, purchased a new Oasis washer. (Compl. ¶ 26.) By Plaintiff's own

22  admission, the class is comprised of "hundreds, if not thousands, of purchasers." (*Id.* ¶ 28.)

23      13.    Based on customer and other records maintained by Sears in the ordinary course

24  of Sears's business, Sears has sold approximately 77,960 Oasis washers to customers in

25  California during the period November 1, 2005, through December 31, 2008. (Decl. of Lori

26  Wood ("Wood Decl.") ¶ 7.)

27

28

**B.      There Is Sufficient Diversity of Citizenship**

14.     The second CAFA requirement—that the parties be minimally diverse—is readily satisfied here, because at least one putative class member is a citizen of a different state than at least one defendant.  28 U.S.C. § 1332(d)(2).

15.     According to the Complaint, Plaintiff was a resident of San Diego, California, at the time she filed this action.  (Compl. ¶ 2.)  By definition, Plaintiff's proposed class consists solely of California residents.  (*Id.* ¶ 26.)

16.     Whirlpool is a Delaware corporation with its principal place of business in Benton Harbor, Michigan.  (*Id.* ¶ 4; Wood Decl. ¶ 5.)  Thus, Whirlpool is a foreign corporation and was so at the time this suit was filed.  *See* 28 U.S.C. § 1332(c)(1).  Sears is a New York corporation with its principal place of business in Illinois.  (Compl. ¶ 3.)  Thus, Sears also is a foreign corporation and was so at the time this suit was filed.  *See* 28 U.S.C. § 1332(c)(1).  Accordingly, because there is at least minimal diversity between the parties, the second CAFA requirement is satisfied.  *See* 28 U.S.C. § 1332(d)(2).

**C.      The Minimum Amount in Controversy Requirement Is Satisfied**

17.     To confer subject matter jurisdiction on this Court based on diversity of citizenship, the amount in controversy must exceed the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individuals comprising a putative class are aggregated to determine if the amount in controversy exceeds the $5,000,000 jurisdictional threshold.  28 U.S.C. § 1332(d)(6).

18.     In the Complaint, Plaintiff asserts claims for damages on behalf of a proposed class of all California residents and entities who bought Oasis washers during the entire period in which such washers have been sold.  (*Compare* Compl. ¶ 26 (defining the class period as "January 1, 2004 to the present") *with* Wood Decl. ¶ 7 (Sears sold Oasis washers during the period November 1, 2005, to the present).)

19.     Plaintiff alleges that she bought her Oasis washer from a Sears Outlet store in San Diego for approximately $690.00.  (Compl. ¶ 20.)  She further alleges that she and her

1  proposed class have incurred out-of-pocket repair expenses (*id.* ¶ 9), that the cost of repairing

2  the machine is "$400 or more" (*id.* ¶ 15), and that Plaintiff and the putative class members have

3  incurred "actual, consequential and incidental damages" as a result of their purchases of Oasis

4  washers (*id.* ¶ 79).

5        20.    Based on sales records maintained by Sears in the ordinary course of Sears'

6  business, the lowest retail cost of a new and unused Oasis washer is approximately $650.00, and

7  the most highly-featured, high-efficiency Oasis washer models sold for approximately

8  $1,299.00. (Wood Decl. ¶ 8.) As noted above, Sears has sold approximately 77,960 Oasis

9  washers in California. (*Id.* ¶ 7.) Given the approximate retail-replacement or purchase-price-

10  reimbursement cost of such washers, if Plaintiff were to prevail on her class claims, then the

11  potential class-wide damages award, even using the least expensive retail price and excluding

12  Plaintiff's claims for consequential, incidental, and punitive damages, injunctive relief, and

13  attorneys' fees, would be approximately $50,674,000.00. (*Id.* ¶ 8.) Given the alleged cost of

14  repairing the Oasis washers, if Plaintiff were to recover only cost-of-repair damages on a class-

15  wide basis, the total sum or amount of damages could be as high as $31,184,000.00, again

16  excluding consequential, incidental, and punitive damages, injunctive relief, and attorneys' fees.

17  (*Id.* ¶ 9.) The Court, however, may consider consequential, incidental, and punitive damages, as

18  well as the cost of complying with the Plaintiff's requested injunctive relief and attorneys' fees,

19  for purposes of determining the jurisdictional amount in controversy. *See, e.g.*, *Guglielmino v.*

20  *McKee Foods Corp.*, 506 F.3d 696, 700, 701 (9th Cir. 2007); *Lowdermilk v. U.S. Bank Nat'l*

21  *Assoc.*, 479 F.3d 994, 998-1000 (9th Cir. 2007); *Tompkins v. Basic Research LLC*, No. CIV. S-

22  08-244 LKK/DAD, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008).

23        21.    Additionally, Plaintiff requests that the Court order Whirlpool and Sears to

24  "engage in a corrective notice campaign [and] pay in part or in whole for the repair and/or

25  replacement of the Machines." (Compl. at 22-23.) Plaintiff's request for injunctive relief, if

26  granted, further inflates the amount in controversy because the companies would have to pay for

27  an involuntary notice campaign, pay to repair or replace the allegedly defective parts or

28

6

1  machines, and change their future business practices (*e.g.*, by discontinuing sales of Oasis

2  washers). (*Id.*) Likewise, if Plaintiff's class claims were successful, Whirlpool and Sears could

3  be forced to pay attorneys' fees, thereby inflating the amount in controversy still further.

4      22.    Notwithstanding Plaintiff's disclaimer of the putative class members' alleged

5  damages in excess of $5,000,000 (*id.* ¶ 6), the Complaint expressly sets forth claims for

6  damages, injunctive relief, and attorneys' fees, the total value of which, if sustained, would

7  substantially exceed $5,000,000. Where a plaintiff pleads an amount in controversy less than

8  $5,000,000, removal is still proper where the defendant establishes to a legal certainty that the

9  jurisdictional amount is met. *See Lowdermilk*, 479 F.3d at 1000; *Guglielmino*, 506 F.3d at 700.

10  Moreover, as CAFA's legislative history states, "if a federal court is uncertain about whether

11  'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum

12  or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."

13  S. Rep. No. 109-14 at 42, reprinted in 2005 U.S.C.C.A.N. 3, 40; *see also* H. Rep. 108-144 at 37.

14      23.    If Plaintiff were to prevail on her request for class certification and recover a

15  class-wide judgment on behalf of all California residents and entities who bought an Oasis

16  washer, then an award of money damages, injunctive relief, and attorneys' fees would easily

17  exceed the sum of $5,000,000. Thus, CAFA's $5,000,000 amount-in-controversy requirement

18  is satisfied.

19      **D.**    **The Exceptions to CAFA Do Not Apply**

20      24.    Plaintiff bears the burden of establishing any applicable exceptions to CAFA

21  jurisdiction. *See, e.g., Serrano*, 478 F.3d at 1019 (reversing the district court, and joining all

22  sister circuits to have addressed this issue, and holding that the party seeking to remand the case

23  to state court bears the burden of establishing the exceptions to CAFA); *Preston v. Tenet*

24  *Healthsys. Mem. Med. Ctr., Inc.*, 485 F.3d 804, 812-13 (5th Cir. 2007); *Hart v. FedEx Ground*

25  *Package Sys., Inc.*, 457 F.3d 675, 680-81 (7th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d

26  1159, 1164 (11th Cir. 2006).

27

28

1    25.    CAFA provides two mandatory exceptions and one discretionary exception to the

2    application of federal jurisdiction. *See* 28 U.S.C. § 1332(d)(3)-(4); *see also Serrano*, 478 F.3d

3    at 1019 (discussing CAFA exceptions).

4    26.    Plaintiff's Complaint makes clear that none of these exceptions applies. Each of

5    the CAFA exceptions requires, as a starting point, an in-state defendant. 28 U.S.C.

6    § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant

7    (local controversy exception) or requiring the "primary defendant" to be an in-state one ("home

8    state" and discretionary exceptions to CAFA)). Here, the only defendants are Whirlpool and

9    Sears, both of which are foreign corporations. Therefore, none of the CAFA exceptions

10   applies.[2]

11   **E.    Conclusion**

12   27.    Because the CAFA jurisdiction requirements are met, and because the exceptions

13   to the Court's exercise of jurisdiction do not apply, this case is properly removed.

14   For these reasons, Whirlpool and Sears respectfully request that the Court assume

15   jurisdiction over this action.

16

17   Dated: January 22, 2009                    Respectfully submitted,

18

19

20                                              By
                                                   Clement L. Glynn

21                                              Attorney for Defendants Sears, Roebuck and Co.,

22                                              and Whirlpool Corporation

23   _____

24   [2] The CAFA exceptions do not apply for other reasons as well. Whirlpool and Sears reserve

25   their right to address these issues in detail if Plaintiff files a motion to remand to state court.

26

27

28
                                                8

# EXHIBIT A

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):
SEARS ROEBUCK AND CO., and WHIRLPOOL CORPORATION

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):
RENEE TIETSWORTH, On Behalf of Herself and All Others Similarly
Situated

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED

DEC 22 08

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
BY _____ Deputy Clerk
J. Cao-Nguyen

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: <br> (El nombre y dirección de la corte es): <br> Santa Clara County Superior Court <br> 191 North First Street <br> San Jose, CA 95113 | CASE NUMBER: <br> (Número del Caso): <br> 1 0 8 C V 1 3 0 8 2 0 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Jennie Lee Anderson, Esq., Andrus Liberty & Anderson LLP, 1438 Market Street, SF, CA 94102
(415) 896-1000

| DATE: DEC 2 2 2008 <br> (Fecha) | DAVID H. YAMASAKI <br> Chief Executive Officer, Clerk <br> Clerk, by J. Cao-Nguyen <br> (Secretario) | , Deputy <br> (Adjunto) |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): Whirlpool Corporation

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other (specify):
4. ☑ by personal delivery on (date): 12/24/08

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. January 1, 2004] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 <br> American LegalNet, Inc. | www.USCourtForms.com |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Jennie Lee Anderson; SBN: 203586
Andrus Liberty & Anderson LLP
1438 Market Street
San Francisco, CA 94102
TELEPHONE NO.: 415-896-1000      FAX NO.: 415-896-2249
ATTORNEY FOR *(Name)*: jennie@libertylaw.com

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME:

FOR COURT USE ONLY:
[ENDORSED]
FILED
DEC 22  08
David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By: _____ Deputy Clerk
J. Cao-Nguyen

CASE NAME:
Renee Tietsworth, et al. v. Sears Roebuck and Co., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 1 0 8 C V 1 3 0 8 2 0  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[✓] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify)*:
5. This case [✓] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 22, 2008

Jennie Lee Anderson
(TYPE OR PRINT NAME)                                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

Superior Court Of California
Chief Executive Officer,
David H. Yamasaki
Superior Court Building
191 North First Street
San Jose, CA- 95113-1090

Received From: Renee Tietsworth

1-08-CV-130820 :
CV UN Compl/1st Paper >$2  CK
                             320.00
CV Add'/Fee for Complex C  CK
                             550.00
Sub Total                  $870.00

----MOP----------------------AMOUNT----

CK                    $      870.00

----------------------------

TOTAL DUE        $      870.00
CASH RECEIVED    $       -0.00
CASH DUE         $        0.00
-------------------------
CHANGE           $        0.00

Receipt #200800133732
Cashier: JCN DTSCIV010116
12/22/08   2:36pm
Downtown Courthouse

**CIVIL LAWSUIT NOTICE**

CASE NUMBER: **1 0 8 C V 1 3 0 8 2 0** ATTACHMENT CV-5012

*Superior Court of California, County of Santa Clara*
*191 N. First Street, San Jose, CA 95113*

---

## READ THIS ENTIRE FORM

---

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint,* *Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

*DEFENDANTS* (The person(s) being sued): You must do each of the following to protect your rights:

1. You must file a **written response** to the *Complaint,* in the Clerk's Office of the Court, within **30 days** of the date the *Summons* and *Complaint* were served on you;
2. You must send a copy of your written response to the plaintiff; and
3. You must attend the first Case Management Conference.

Warning: If you do not do these three things, you may automatically lose this case.

---

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

* State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
* Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: **Joseph Huber**                    Department: **8C**

The 1st CMC is scheduled for: (Completed by Clerk of Court)

    Date: **5/8/09**        Time: **10:00 am** in Department **8C**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

    Date: _____ Time: _____ in Department _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

**CIVIL LAWSUIT NOTICE**

## CIVIL LAWSUIT NOTICE

ATTACHMENT CV-5012
CASE NUMBER: **1 0 8 C V 1 3 0 8 2 0**

Superior Court of California, County of Santa Clara
191 N. First Street, San Jose, CA 95113

### READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

> *DEFENDANTS* (The person(s) being sued): **You must do each of the following to protect your rights:**
>
> 1. You must file a **written response** to the *Complaint*, in the Clerk's Office of the Court, within **30 days** of the date the *Summons and Complaint* were served on you;
> 2. You must send a copy of your written response to the plaintiff; and
> 3. You must attend the first Case Management Conference.
>
> **Warning: If you do not do these three things, you may automatically lose this case.**

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

* State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
* Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

**You or your attorney must appear at the CMC.** You may ask to appear by telephone – see Local Civil Rule 8.

| |
|---|
| Your Case Management Judge is: _Joseph Huber_       Department: __8C__ |
| The 1st CMC is scheduled for: (Completed by Clerk of Court) <br>      Date: _5/0/09_    Time: _10:00 am_ in Department __8C__ |
| The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed) <br>      Date: _____ Time: _____ in Department _____ |

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?

< **Mediation** is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:

    < The parties want a non-adversary procedure

    < The parties have a continuing business or personal relationship

    < Communication problems are interfering with a resolution

    < There is an emotional element involved

    < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

CV-5003 REV 5/06

<     **Arbitration** is a normally informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree by themselves or with a mediator. If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

Arbitration may be appropriate when:
<     The action is for personal injury, property damage, or breach of contract
<     Only monetary damages are sought
<     Witness testimony, under oath, is desired
<     An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

<     **Neutral evaluation** is an informal process in which a neutral party (the evaluator) reviews the case with counsel and gives a non-binding assessment of the strengths and weaknesses on each side and the likely outcome. The neutral can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
<     The parties are far apart in their view of the law or value of the case
<     The case involves a technical issue in which the evaluator has expertise
<     Case planning assistance would be helpful and would save legal fees and costs
<     The parties are interested in an injunction, consent decree, or other form of equitable relief

<     **Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

<     **Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney), meets with the parties or their attorneys, hears the facts of the dispute, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

### *What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; and sports, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, for information about ADR procedures, or for other questions about ADR?*

    *Contact:*
    Santa Clara County Superior Court                 Santa Clara County DRPA Coordinator
    ADR Administrator                                   408-792-2704
    408-882-2530

ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION

Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
ANDRUS LIBERTY & ANDERSON LLP
1438 Market Street
San Francisco, CA 94102
Telephone: (415) 896-1000
Facsimile: (415) 896-2249
lori@libertylaw.com
micha@libertylaw.com
jennie@libertylaw.com

(ENDORSED)
FILED

DEC 22. 08

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By:_____

*Attorneys for Plaintiff and the Proposed Class*

(Additional counsel appear on signature page)

File By Fax

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

RENEE TIETSWORTH, On Behalf of
Herself and All Others Similarly Situated,

Plaintiff,

v.

SEARS ROEBUCK AND CO., and
WHIRLPOOL CORPORATION,

Defendants.

Civil Case No.: 1 0 8 C V 1 3 0 8 2 0

**CLASS ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Renee Tietsworth ("Plaintiff") brings this action against Defendants Sears

Roebuck and Co. and Whirlpool Corporation (collectively "Defendants") on behalf of herself and

all others similarly situated, and alleges on information and belief as follows:

**INTRODUCTION**

1. Plaintiff brings this action for injunctive, declaratory and equitable relief,

damages, restitution and/or disgorgement of profits and additional relief as may be appropriate on

behalf of herself and all others similarly situated (the "Class" or "Class Members"), more

specifically defined below, who purchased a top-loading Kenmore Elite Oasis™ automatic

1  washing machine ("Oasis"), including, but not limited to model numbers 110.2703*, 110.2704*,

2  110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715*.[1] (collectively referred

3  to herein as the "Machines") from January 1, 2004 to the present.

## THE PARTIES

5      2.      Plaintiff Renee Tietsworth ("Plaintiff") is, and at all relevant times to this

6  action has been, a resident of San Diego, California. In or around November 2006, Plaintiff

7  purchased a new Kenmore Elite Oasis Automatic Washer model number 110.27032602 for her

8  personal and family use from the Sears Outlet store in San Diego, California.

9      3.      Defendant Sears Roebuck and Co. ("Sears") is a New York corporation

10 headquartered in Hoffman Estates, Illinois. Sears marketed, advertised, distributed, warranted,

11 sold and offered repair services for the Machines that are the subject of this litigation, to Plaintiff

12 and Class Members. On information and belief, Sears operates approximately 81 "Full-Line Mall

13 Stores" and 134 specialty stores, including dealer stores and outlets, in Santa Clara County and.

14 throughout the State of California.

15     4.      Defendant Whirlpool Corporation ("Whirlpool") is a Delaware Corporation

16 headquartered in Benton Harbor, Maine. Throughout the relevant time period, Whirlpool

17 manufactured the Machines that are the subject of this litigation, and marketed, advertised,

18 distributed warranted, sold and/or offered repair services for Machines to Plaintiff and/or Class

19 members in Santa Clara County and throughout the State of California.

## JURISDICTION

21     5.      This Court has jurisdiction over this action pursuant to California Code of

22 Civil Procedure Section 410.10. Jurisdiction over Defendants is proper because Defendants have

23 purposefully availed themselves of the privilege of conducting business activities in California,

24 including, but not limited to marketing, distributing, advertising and selling the Machines to

25 Plaintiff and members of the Class. All Class members are California residents, and neither the

26 _____

27 [1] Kenmore washing machines with model numbers beginning with 110 are manufactured by
Whirlpool Corporation and sold by Sears Roebuck and Co. Omitted from the model numbers
here are the last four digits, represented above by an *, which merely indicate the color code of a

28 particular washer.

- 2 -

1   named Plaintiff, nor the Class members, individually, has claims that exceed $75,000. On

2   information and belief, the amount in controversy, exclusive of interest and costs, is not in excess

3   of $5,000,000 dollars.

4                                                **VENUE**

5            6.     Venue is proper in this Court pursuant to California Code of Civil

6   Procedure Sections 395 and 395.5, and California Civil Code Section 1780(c), because: (a) some

7   of the injuries to property described herein occurred in this County; (b) some of the acts and

8   transactions complained of herein occurred within this County; and (c) Defendants conduct

9   business in this County by selling, marketing, distributing, warranting and/or offering repair

10   services for the Machines at issue here. Further, Defendants do not reside in any county in this

11   State, or the county where they reside has not been identified to the California Secretary of State

12   and is, therefore, not reasonably known to Plaintiff. As such, venue is proper and the action may

13   be filed and tried in this County. Cal. Code Civ. P. § 395(a).

14                           **FACTUAL ALLEGATIONS**

15           7.     Defendants began offering the Kenmore Oasis Elite in or around 2006.

16   The Machines are manufactured, marketed and distributed by Defendant Whirlpool and marketed,

17   distributed and sold by Sears.

18           8.     At all relevant times, Sears has represented to Plaintiff and Class Members

19   that the Machines are the highest quality, top-of-the-line washers that allow consumers to do

20   laundry in a more convenient, faster and efficient manner. For example, among the "Benefits and

21   Features" Defendants list in the Machines' owner's manuals is that the Machines "save you time

22   by allowing you to do fewer, larger loads," and have features that "increase the ease of use and

23   improve wash performance," including but not limited to, an electronic control panel that is "easy

24   to use." The suggested retail price was approximately $1000. In fact, the Machines are defective,

25   do not save consumer time, and are often times impossible to use due to their defective nature.

26           9.     At all relevant times, the Machines were defective and substantially certain

27   to fail long before the useful life of the product. The defective nature of the Machines causes

28   them to stop in mid-cycle and display an "F" error code, including but not limited to "F51" or

- 3 -

1    "F1." The owner is instructed by the owner's manual to stop and restart the Machine upon

2    receiving an "F" error code and, if the code appears again, to contact Defendants for service.

3    Restarting the Machines, if successful at all, works for only a short period of time before the

4    Machine stops again in mid-cycle and displays the error code, however. Plaintiff and Class

5    Members have been forced to spend hours stopping and restarting their Machines to finish a

6    single load and in many cases cannot successfully restart the Machine at all, at which time they

7    have, and will continue to incur, costly service expenses in breach of Defendants' warranties.

8            10.     Consumers reasonably anticipate that the useful life of a top-load washing

9    machine be ten years or more. Indeed, the average life expectancy of a high efficiency top-load

10   washer is estimated to be fourteen years. (http://www.demesne.info/Home-

11   Maintenance/Appliance-Life-Expectancy.htm 10/;

12   http://www.h2ouse.org/tour/details/element_action_contents.cfm?elementID=75008840-13D7-

13   4855-9013CC8A59F03381&actionID=7BFC2969-7BDB-4000-93556F98AAB057A4).

14   Furthermore, it is the common experience of consumers, Plaintiff and Class Members that

15   washing machines of similar design and quality will have a useful life of as long as 15 to 20

16   years.

17           11.     That the Machines are defective and substantially certain to fail in the first

18   two to four years of use is a material fact that Plaintiff and Class Members would consider

19   important when deciding whether to purchase and how much to pay for their Machines.

20           12.     Information that defects in the Machines cause the "F" errors to appear,

21   requiring users to restart the Machines multiple times to complete a load of laundry or pay costly

22   repair bills are also material facts that Plaintiff and Class Members would consider important

23   when deciding whether to purchase and how much to pay for their Machines.

24           13.     Defendants concealed these material facts from Plaintiff and Class

25   Members, however, instead touting the Machines as the highest quality washers that would offer

26   consumers enhanced convenience and efficiency.

27           14.     At all relevant times, Defendants had exclusive possession and control of

28   all facts necessary to know that the Machines were defective.

- 4 -

1               15.     The cost of repairing the Machine, on information and belief, is $400 or

2    more. However, the Machine may require multiple repairs to address the defects described herein

3    within its anticipated useful life.

4               16.     The latent defects cause the Machines to fail long before their anticipated

5    useful lifetime expires, denying Plaintiff and Class Members use of their Machines and failing to

6    perform their ordinary purpose of an automatic washing machine, *i.e.*, to wash clothing

7    unattended in a single cycle.

8               17.     Plaintiff and Class Members have been damaged and suffered injury in fact

9    because they have been, and will continue to be, inconvenienced, denied use of their Machines,

10   and/or forced to pay hundreds of dollars to have the defective Machines serviced by Defendants'

11   technicians.

12              18.     At all relevant times, Defendants have been aware that the Machines are

13   defective and that the defects were substantially certain to cause the Machines to fail prematurely,

14   but failed to disclose and otherwise concealed the defects from Plaintiff and Class Members.

15              19.     The Machines come with a one-year warranty against defects and a ten-

16   year warranty of the steel drum and plastic tub. The defects, which are substantially certain to

17   result in premature failure, existed at the time of purchase and throughout the first year of

18   ownership. Defendants have refused to repair or replace the Machines free of charge beyond one

19   year of the date of purchase, however.

20                           **Plaintiff's Experience With the Machines**

21              20.     Plaintiff is, and at all relevant times to this action has been, a resident of

22   San Diego, California. In or about November 2006, Plaintiff purchased a new Kenmore Elite

23   Oasis Automatic Washer model number 110.27032602 for approximately $690.00 for her

24   personal and family use from the Sears Outlet in San Diego. In or around May 2008, Plaintiff's

25   Machine stopped in mid-cycle and displayed an F51 code error. She restarted the Machine and it

26   completed the cycle. A few days later, the Machine stopped again in mid-cycle and again

27   displayed an error message. To complete the cycle, Plaintiff had to restart the Machine twice.

28   Over the next couple of weeks, the problem persisted and got progressively worse. The Machine

- 5 -

1    stopped three or four times during a single cycle, each time displaying an F error. By this time, it

2    was taking three to four hours to complete a single cycle of laundry. When the Machine would

3    not restart, Plaintiff contacted Sears on or around June 17, 2008, as her Owner's Manual

4    instructed.

5          21. ·    Upon contacting Sears, Plaintiff was told that she could either purchase an

6    extended warranty for approximately $218 or have someone come out to repair the Machine. The

7    cost of having a technician come out was $70. This fee did not include the cost of repair. During

8    this time, Plaintiff was also denied use of her Machine.

9          22.    Plaintiff reasonably anticipated that the useful life of her Machine would be

10   20 years or more. Sears represented to Plaintiff through its warranties, product literature and

11   other direct communications that the Machine was a high-quality washer with good ratings which

12   would last a long time. At no time prior to her purchase of the Machine did anyone inform

13   Plaintiff that the Machines were defective or that the defect would result in her Machine to

14   repeatedly stop in mid-cycle. Further, no one informed Plaintiff of the error, its cause or how to

15   fix, avoid or correct the problem short of an expensive repair. As a result of Defendants' conduct,

16   Plaintiff was damaged, suffered an injury in fact and lost money.

17         23.    Had Defendants disclosed the defective nature of the Machine that causes

18   the Machine to fail and stop in mid-cycle, she would not have purchased or would have paid less

19   for her Machine.

20                     **Class Members' Experiences With The Machines**

21         24.    Plaintiff's experience mirrors those of thousands of other Machine owners.

22   The internet is replete with references to the common problems consumers have encountered with

23   the Machines, including errors relating to the sensor board, including but not limited to the

24   following small sample of representative complaints appearing on a selection of on-line consumer

25   forums:

26        •   I have had problems with this washer since about 2 months after I purchased it. 1st
             Service call was in late November 2006, another in Jan 2007, and now again in
27           April 2007. The error code "F" 51 appears and it won't continue the cycle. The

28                                            - 6 -

technician stated that they don't know much about these machines yet. The Front-Loader is what he would recommend because these Top Loaders have problems.

* We had our new washer and dryer a couple of weeks when we first started having problems with the washer. Finally at less than a month it would not complete cycle but would flash "F51". I would restart it again and again. It took me over 2 hours to do one load of laundry due to this problem.

* Purchased in Nov. 2006. Failed in April, 2008. Fault codes began appearing and washer would not complete cycle.

* Purchased Kenmore Elite Oasis Washer in April 2007. It is now Jan 08 and I cannot get the washer to work. I purchased Service Contract for washer at Sears and have called in that it is not working. Sears cannot get a service repair person to my home for at least a week. No one seems to want to help with this repair even though we purchased the contract.

* We purchased the Kenmore Elite Oasis HE washer in March of 2006 with the extended warranty. Within 6 months, we had repair people out at least twice. The washer would not drain. Sears sent the same repairman each time. He told us the first time he had not been trained on this washer since they were fairly new. He spent his time on the computer and with a cell phone glued to his ear getting advice on how to fix the washer. Both times, he ended up ordering parts and told us to call to schedule an appt. once the parts arrived. The "brain" of the washer had died and had to be replaced. One of the "brains" he ordered didn't work and we went for over a month w/o a washer due to waiting on parts to arrive. I think overall we've had to call Sears 3 times for problems. Now again the washer is not working properly.

* We purchased our Kenmore Elite Oasis HE in May of 2006, and just yesterday had trouble with the washing machine working. After reading all the complaints on this machine, I must agree that the defective part should have been recalled by Sears. We trusted Sears with a variety of large purchases, but if they won't stand by a defective part that they are aware of, I will try to start a crusade of my own to not trust Sears again.

* Oh My God! I have never been so disappointed in any product in m life. I too purchase the Sears Oasis in 2006. I was so excited knowing I was getting the latest and greatest merchandise on the market. Well what a piece of JUNK...We all need to boycott Sears for selling such an inferior product and not backing it. I have a family of four and like others I wash clothes a lot. It is not convenient to pack up stuff and go to a laundry mat. Right now, I have a washer filled with clothes that's just STOPPED mid-cycle. I am so frustrated. This is the second time in less than 6 months I have had to call Sears to place a repair request. And of course, it at least a week before a repair person can come out. SO WHAT AM I SUPPOSE TO DO!!!

* I bought a washing machine from sears (oasis), after 15 months the machine would not work the electronics kept on going on and off, even in the middle of the night. We called sears and they sent a repair person to fix it, (ha ha). Soon as he left and

1    $158.00 later the machine still did not work. Called back sears and said we would
     have to make another appointment in two weeks, I complained and got nowhere.
2

3        •   My Kenmore Oasis (junk,junk,junk) has started flashing me the f-51 error code,
             can somebody let me know what it is? and if anybody has had the same problem id
4            love to know...all the info I could get so I could fight with Sears...thanks!

5        25.    Indeed, dozens of Class Members have posted their stories on-line,

6    complaining about the defective nature of the Machines, the lack of prompt service and the

7    inadequacies of Defendants' warranty program.

8                            **CLASS ACTION ALLEGATIONS**

9        26.    Plaintiff brings this lawsuit as a class action on behalf of herself and all

10   other similarly situated members of the Class and Sub-Class defined below pursuant to the Code

11   of Civil Procedure § 382 and Civil Code § 1781. This action satisfies the ascertainability,

12   numerosity, commonality, typicality, adequacy, predominance and superiority requirements of

13   those provisions. The Class and Sub-Class are defined as follows:

14
         The Class: All California residents and entities who purchased a top-loading
15       Kenmore Elite Oasis automatic washing machine, including, but not limited to
         model numbers 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*,
16       110.2708*, 110.2709* and 110.2715*, from January 1, 2004 to the present.

17       The Sub-Class: All Class members who are "consumers" as defined
         by California Civil Code § 1761(d).
18

19       27.    Excluded from the Class are: (1) Defendants, any entity or division in

20   which Defendants have a controlling interest, and its/their legal representatives, officers,

21   directors, assigns and successors; (2) the judge to whom this case is assigned and any member of

22   the judge's immediate family; (3) non-California residents; and (4) claims for personal injury,

23   wrongful death and emotional distress and claims of consequential property damage and loss.

24                           **Numerosity & Ascertainability**

25       28.    The Class is comprised of hundreds, if not thousands, of purchasers of the

26   Machines in California, making joinder impracticable.

27       29.    The Class is composed of an easily-ascertainable, self-identifying set of

28   persons who purchased the Machines. Moreover, Class members are easily identifiable from

                                     - 8 -

1  records maintained by, and in the possession and control of, the Defendants, or otherwise readily

2  obtained from third parties. Class members can be ascertained (and can ascertain their own

3  membership in the Class) based upon their past or present ownership of a subject Machine.

4  **Community of Interest**

5       30.    There is a well-defined community of interest among Class members, and

6  the disposition of the claims of these Class members in a single action will provide substantial

7  benefits to all parties and to the Court.

8  **Typicality**

9       31.    The claims of the representative Plaintiff are typical of the claims of the

10  Class in that the representative Plaintiff, like all Class members, purchased the subject Machine

11  and has suffered injury as a result.

12       32.    Moreover, the factual bases of Defendants' misconduct are common to all

13  Class members, and Defendants' breaches, misrepresentations, omissions and acts of concealment

14  resulted in injury to all members of the Class.

15  **Predominance of Common Issues**

16       33.    There are numerous questions of law and fact common to all Class

17  members and those questions predominate over any questions that may affect only individual

18  Class members, including, but not limited to the following:

19            a.    Whether Defendants breached their express warranties by failing to

20  repair and correct defects in the Machine that have existed from the time of sale and are known to

21  likely cause the Machines to malfunction long before the Machines' expected useful lifetime has

22  expired;

23            b.    Whether Defendant concealed or failed to disclose that the

24  defective nature of the Machines;

25            c.    Whether the Machines are defective in that the control panel fails

26  well in advance of anticipated useful life, falling below the reasonable expectations of consumers;

27            d.    Whether and when Defendants knew of the defective nature of the

28  Machines;

- 9 -

1          e.      Whether Defendants actively concealed or intentionally failed to

2    disclose information regarding the problems with and/or defective nature of the Machines;

3          f.      Whether the information Defendants concealed or failed to disclose

4    was material;

5          g.      Whether Plaintiff and the Class acted to their detriment as a result

6    of Defendants' concealment and/or omissions;

7          h.      Whether Defendants issued false and misleading statements of fact

8    and/or concealed material facts regarding the Machines likely to deceive the public;

9          i.      Whether Defendants knew or should have known that their

10   statements about the Machines were false and/or misleading;

11         j.      Whether Defendants engaged in unfair, fraudulent or unlawful

12   business practices with respect to the advertising, marketing and sale of the Machines;

13         k.      Whether Defendants engaged in unfair, deceptive, untrue or

14   misleading advertising regarding the Machines;

15         l.      Whether Defendants' conduct violated Civil Code §1750, *et seq.*,

16   Business & Professions Code §§ 17200, *et seq.*, and/or 17500, *et seq.*, and/or common law;

17         m.      Whether Plaintiff and the Class are entitled to equitable relief, and,

18   if so, the nature of such relief;

19         n.      Whether Defendants have been unjustly enriched such that it would

20   be inequitable for Defendants to retain the benefits conferred upon it by Plaintiff and the Class;

21         o.      Whether Defendants breached implied warranties of

22   merchantability and fitness; and

23         p.      Whether compensatory, consequential and punitive damages should

24   be awarded to Plaintiff and Class members.

25                                **Adequacy**

26         34.     Plaintiff will fairly and adequately represent and protect the interests of the

27   Class. Plaintiff has retained counsel highly experienced in prosecuting class actions, including

28   actions involving defective consumer goods.

                                   - 10 -

1          35.     Plaintiff and their counsel are committed to vigorously prosecuting this

2    action on behalf of Class members and have the resources to do so. Neither Plaintiff nor her

3    counsel has any interests adverse to those of the Class.

                                          **Superiority**

5          36.     ·A class action is superior to all other available methods for the fair and

6    efficient adjudication of this controversy. Because of the relatively small size of the individual

7    Class members' claims, absent a class action most Class members would likely find the cost of

8    litigating their claims against Defendants to be prohibitive. The class treatment of common

9    questions of law and fact is also superior to multiple individual actions or piecemeal litigation in

10   that it conserves the resources of the courts and the litigants, and promotes consistency and

11   efficiency of adjudication.

12         37.     The consideration of common questions of fact and law will conserve

13   judicial resources and promote a fair and consistent resolution of this consumer problem.

14         38.     Plaintiff and Class members are California residents who purchased their

15   Machines in California. Thus, the acts and omissions giving rise to Plaintiff's claims arose in

16   California. California's interest in this action and the conduct of corporations doing business in,

17   contracting and effectuating business decisions in California is, therefore, greater than that of any

18   other state, and Class members are entitled to application of California law to their claims.

                                          **Tolling**

20         39.     Because the defective nature of the Machines was not detectable until

21   manifestation of the damage, Plaintiff and the Class were not reasonably able to promptly

22   discover the problem, despite all due diligence.

23         40.     Additionally, the defective nature of the Machines is latent and even after

24   Class members were aware that their Machines were failing, Defendants prevented them from

25   ascertaining the nature of the inherent defect by asserting that the problem was isolated and not

26   related to a manufacturing or design defect.

27         41.     Any applicable statutes of limitation have thus been tolled by the latent

28   nature of the defect and/or Defendants' concealment or denial of the facts alleged herein.

                                          - 11 -

                              CLASS ACTION COMPLAINT

1    Defendants are estopped from relying on any statute of limitations because of its concealment of

2    the defective nature of the Machines.

3                            **FIRST CAUSE OF ACTION**

4    **Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

5                       **(On behalf of all Class Members)**

6           42.      Plaintiff incorporates by reference the allegations contained in the

7    preceding paragraphs of this Complaint.

8           43.      Business & Professions Code § 17200 prohibits acts of "unfair

9    competition," including any "unlawful, unfair or fraudulent business act or practice."

10    Defendants' conduct, as described above, is unlawful, unfair or fraudulent in violation of the

11    statute.

12           44.      Defendants' acts and practices are unlawful because they violate California

13    Civil Code §§ 1572, 1668, 1709, 1710, 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9) and/or

14    1770(a)(19). Defendants' acts and practices are also unlawful because they violate §17500 of the

15    Business and Professions Code and the Song-Beverly Warranty Act.

16           45.      Defendants violated the Unfair Business Practices Act, Business and

17    Professions Code § 17200, *et seq.*, when they represented, through advertising, warranties and

18    other express representations, that the Machines had characteristics and benefits that they did not

19    actually have, in violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

20    (the "CLRA").

21           46.      Defendants violated the Unfair Business Practices Act, Business &

22    Professions Code § 17200, *et seq.*, when they falsely represented, through advertising, warranties,

23    marketing, and/or other express representations, that the Machines were of a certain quality or

24    standard when they were not, in violation of the CLRA.

25           47.      Defendants violated the Unfair Business Practices Act, Business &

26    Professions Code § 17200, *et seq.*, by misrepresenting the source, approval or certification of the

27    Machines, in violation of the CLRA.

28

- 12 -

1         48.      Defendants violated the Unfair Business Practices Act, Business &
2    Professions Code § 17200, *et seq.*, when they advertised Machines with the intent not to meet the
3    advertised claims, in violation of the CLRA.

4         49.      Defendants violated the Unfair Business Practices Act, Business &
5    Professions Code § 17200, *et seq.*, by inserting an unconscionable provision into a contract and
6    attempting to limit its warranties, when it knew or should have known the products were
7    defective, in violation of the CLRA and the Song-Beverly Warranty Act.

8         50.      Defendants violated the Unfair Business Practices Act, Business &
9    Professions Code § 17200, *et seq.*, by fraudulently concealing from and/or intentionally failing to
10   disclose to Plaintiff and the Class the defective nature of the Machines, in violation of common
11   law.

12        51.      Defendants violated the Unfair Business Practices Act, Business &
13   Professions Code § 17200, *et seq.*, by breaching their implied warranties of merchantability, in
14   violation of Cal. Civ. Code § 1792, *et seq.*

15        52.      Defendants violated Unfair Business Practices Act, Business & Professions
16   Code § 17200, *et seq.*, by breaching their express warranties against defects in materials and
17   workmanship;

18        53.      Defendants also violated the Unfair Business Practices Act, Business and
19   Professions Code § 17200, *et seq.*, by actively misrepresenting in, and/or concealing and omitting
20   from, their advertising, marketing and other communications, material information about the
21   Machines in a manner that has deceived and is likely to deceive consumers and the public.

22        54.      Defendants violated the Unfair Business Practices Act, Business &
23   Professions Code § 17200, *et seq.*, by selling Machines that were defective and that would fail
24   long before their anticipated useful life.

25        55.      Defendants violated the Unfair Business Practices Act, Business &
26   Professions Code § 17200, *et seq.*, by holding the Machines out as superior in quality (and, thus,
27   more expensive), when, in fact, they were defective.

28

- 13 -

CLASS ACTION COMPLAINT

1    56.    The injury to consumers by Defendants' conduct greatly outweighs any
2 alleged countervailing benefit to consumers of competition under all of the circumstances.

3    57.    To this day, Defendants continue to violate the Unfair Business Practices
4 Act by continuing to actively conceal the material information regarding the defective nature of
5 the Machines and by representing to Plaintiff and members of the Class that the Machines are free
6 of known defects.

7    58.    As a direct and proximate cause of Defendants' violation of the Unfair
8 Business Practices Act, Plaintiff and the Class have suffered injury in fact and lost money in that
9 they purchased Machines that are defective and have paid or will be required to pay for service
10 and repair despite the fact that the Machines were defective at the time of purchase and at all
11 relevant times likely to fail long before the expiration of their anticipated useful lifetime. Plaintiff
12 and Class Members are further damaged, have lost money and suffered injury in fact because, had
13 Defendants disclosed the true defective nature of the Machines, Plaintiff and the Class would not
14 have purchased, or would have paid significantly less for, the Machines. Plaintiff and the Class
15 have suffered further harm in that they have lost use of their Machines and suffered diminution in
16 value.

17    59.    As a proximate result of Defendants' violation of the Business and
18 Professions Code § 17200, *et seq.*, Defendants have been unjustly enriched and should be
19 required to make restitution to Plaintiff and the Class and/or disgorge its ill-gotten profits
20 pursuant to Business & Professions Code § 17203.

21    60.    Plaintiff, on behalf of herself and all others similarly situated, demands
22 judgment against Defendants for injunctive relief in the form of restitution, and/or proportional
23 disgorgement of funds paid by Plaintiff to purchase the Machines and/or disgorgement of funds
24 received by Defendant from the sale of the Machines, or injunctive relief in the form of
25 replacement and/or repair of the Machines, along with interest, attorneys' fees and costs pursuant
26 to, *inter alia*, Cal. Code Civ. Proc. § 1021.5.

27

28

- 14 -

## SECOND CAUSE OF ACTION

### Fraudulent Concealment/Nondisclosure

### (On behalf of all Class Members)

61. Plaintiff incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

62. At all relevant times, Defendant knew that the Machines were defective and would fail in advance of their anticipated useful life under ordinary use and conditions.

63. Defendants also knew that the anticipated useful life of a washing machine was ten to fourteen years.

64. Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class the facts described above.

65. Defendants were and continue to be under a duty to Plaintiff and the Class to disclose these facts because:

    a. Defendants are in a superior position to know the truth about the quality and nature Machines;

    b. Defendants made partial disclosures about the Machines while not revealing the truth about their maintenance and quality; and

    c. Defendants actively concealed from Plaintiff and the Class the fact that the Machines were defective and substantially likely to fail in advance of their anticipated useful life.

66. The facts concealed and/or not disclosed by Defendants to Plaintiff and the Class are material facts that a reasonable person would have considered important in deciding whether or not to purchase (or to pay the same price for) the Machines.

67. Defendants intentionally concealed and/or failed to disclose the defects for the purpose of inducing Plaintiff and the Class to act thereon by purchasing the more expensive Machines.

68. Plaintiff and the Class justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts as evidenced by their purchase of

- 15 -

1  Machines. Had Defendants disclosed the true defective nature of the Machines, Plaintiff and

2  Class members would not have purchased (or would have paid less for) their Machines.

3          69.    As a direct and proximate cause of Defendants' misconduct, Plaintiff and

4  the Class have suffered actual damages in that they Machines that are defective and that will fail

5  in advance of their anticipated useful life. Plaintiff and the Class have further suffered actual

6  damages because they have or will have to continue to pay for repairs and service visits. Plaintiff

7  and the Class have also suffered unreasonable diminution in value of their Machines as a result of

8  Defendants' misconduct.

9          70.    Defendants' misconduct has been and is wanton and/or reckless and/or

10 shows a reckless indifference to the interests of others.

11         71.    Plaintiff, on behalf of herself and all others similarly situated, demands

12 judgment against Defendants for actual and punitive damages for themselves and each member of

13 the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

14                           **THIRD CAUSE OF ACTION**

15                          **Breach of Express Warranty**

16    **Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1793, et. seq**

17                  **(On behalf of all Class Members)**

18         72.    Plaintiff hereby incorporates by reference the allegations contained in the

19 preceding paragraphs of this Complaint.

20         73.    Defendants expressly warranted the Machines as being free of defects for

21 at least one full year. Defendants further expressly warranted the Machines' stainless steel drum

22 and plastic tub for ten years.

23         74.    Plaintiff and Class Members justifiably relied on Defendants'

24 representations and acted in ignorance of the material facts Defendants omitted and concealed

25 when Plaintiff and Class Members decided to purchase the Machines.

26         75.    Defendants have breached their express warranties to Plaintiff and Class

27 members because the Machines from the day of purchase the Machines were defective and

28 substantially certain to malfunction before their anticipated useful life.

- 16 -

CLASS ACTION COMPLAINT

1    76.    Defendants have been on notice of their breach of express warranties by
2    Plaintiff and Class members who have made warranty claims, demanded service and repair for
3    the defective Machines and complained to Defendants' customer service centers regarding the
4    defective nature of the Machines.

5    77.    As a direct result of the Machines' failure to perform as warranted, Plaintiff
6    and Class Members have incurred, and will continue to incur, expenses to diagnose, repair and
7    replace the Machines, which will continue to fail prematurely.

8    78.    Any contractual language contained in the Defendants' published
9    warranties that attempts to disclaim express or implied warranties, or otherwise limit remedies, is
10   unconscionable and fails to conform with the requirements for limiting warranties or remedies
11   under applicable law, causes the warranties to fail in their essential purpose, and is, thus,
12   unconscionable and void.

13   79.    To remedy Defendants' breach, Plaintiff, on behalf of herself and the
14   members of the Class, seek actual, consequential and incidental damages from Defendants, as
15   well as attorneys' fees, costs and expenses.

16
17                              **FOURTH CAUSE OF ACTION**
18                              **Breach of Implied Warranty**
19          **Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, et. seq**
20                              **(On behalf of all Class Members)**

21   80.    Plaintiff incorporates by reference the allegations contained in the
22   preceding paragraphs of this Complaint.

23   81.    Defendants are, and at all relevant times were, manufacturers, distributors
24   and/or retailers of the Machines. Defendants thus provided Plaintiff and Class Members with an
25   implied warranty that the Machines are merchantable and fit for the ordinary purposes for which
26   they were sold. The Machines are not fit for ordinary purpose of washing clothes in a convenient
27   fashion because, *inter alia*, the defective nature of the Machines causes them to stop mid-cycle
28   preventing Plaintiff and Class Members from using their Machines and/or denying their use of

- 17 -

1    their Machines for a period of time. Defendants are in privity with Plaintiff and Class Members,
2    because they offered Plaintiff and Class members express warranties for the Machines and/or
3    because they sell directly to the Plaintiff and Class Members.

4         82.    Plaintiff and Class Members purchased the Machines with the reasonable
5    expectation that Machines would be free of defects.

6         83.    Contrary to the applicable implied warranties, the Machines are not fit for
7    their ordinary and intended purpose of providing Plaintiff and Class Members reliable and
8    reasonably convenient automated clothes washing. Instead, the Machines are defective, and
9    unreasonably inconvenient and expensive.

10        84.    When Defendants manufactured and/or sold the Machines, they knew that
11   the intended and ordinary purposes were to provide buyers with reliable, convenient way to wash
12   clothing, as automatic washing machines are normally relied upon to do.

13        85.    Defendants knew or had reason to know that Plaintiff and Class Members
14   purchased the Machines to obtain superior washing capabilities with greater convenience and
15   efficiency than other less expensive models.

16        86.    Defendants knew or had reason to know that Plaintiff and the Class
17   purchased the Machines with the understanding that they would be free of defects.

18        87.    The Machines are not adequately packaged and labeled, as Defendants
19   have concealed or otherwise failed to disclose the defective nature of the Machines.

20        88.    The Machines do not conform to the promises and affirmations uniformly
21   issued by Defendants in their sales and marketing materials, warranties, and/or through their sales
22   representatives.

23        89.    Plaintiff and Class members have used the Machines for their intended and
24   ordinary purpose.

25        90.    Defendants' breaches of the implied warranties described herein constitute
26   violations of the Song-Beverly Act, Cal. Civ. Code § 1792, *et seq.*

27        91.    Any contractual language contained in the Defendants' published
28   warranties that attempts to disclaim express or implied warranties, or otherwise limit remedies, is
                                         - 18 -

1   unconscionable and fails to conform with the requirements for limiting warranties or remedies

2   under applicable law, causes the warranties to fail with respect to their essential purpose, and is,

3   thus, unconscionable and void. Under applicable law, a manufacturer, distributor, or retailer, in

4   transacting a sale in which express warranties are given, may not limit, modify, or disclaim the

5   implied warranties to the sale of consumer goods.

6         . 92.    Pursuant to the applicable statute, Plaintiff, on behalf of herself and the

7   members of the Class, seeks actual, consequential and incidental damages, as well as attorneys'

8   fees, costs and expenses.

9                     **FIFTH CAUSE OF ACTION**

10           **Violation of the Consumers Legal Remedies Act**

11                 **Cal. Civ. Code § 1750, _et seq._**

12                 **(On behalf of the Sub-Class)**

13         93.    Plaintiff incorporates by reference the allegations contained in the

14   preceding paragraphs of this Complaint.

15         94.    Each Defendant is a "person" as defined by Civil Code § 1761(c).

16         95.    Plaintiff and the members of the Sub-Class are "consumers" within the

17   meaning of Civil Code §1761(d).

18         96.    The Machines constitute "goods" as defined by Civil Code § 1761(a).

19         97.    Plaintiff's and the Sub-Class members' purchases of the Machines are

20   "transaction[s]" as defined by Civil Code § 1761(e).

21         98.    Defendants provided or purported to provide "services" to Plaintiff and the

22   members of Sub-Class as defined by Civil Code § 1761(b).

23         99.    Venue is proper pursuant to Civil Code § 1780(c) because Defendants do a

24   significant amount of business in this County. Declarations of the Plaintiff establishing this Court

25   as the proper venue for this action is attached hereto as Exhibit A.

26         100.   Defendants violated the CLRA by representing, through advertising,

27   warranties and other express representations, that the Machines had attributes that they did not

28   actually have, including, but not limited to representations that the Machines were top-of-the-line
                                         - 19 -

1    automatic washing machines that were free of manufacturing or design defects. The

2    representations and omissions described herein were false, deceptive and/or misleading.

3              101.    Defendants violated Civil Code § 1770(a)(2) by misrepresenting the

4    source, sponsorship, approval or certification of the Machines.

5              102.    Defendants violated Civil Code § 1770(a)(5) by representing that the

6    Machines have approval, characteristics, uses and benefits that they do not have.

7              103.    Defendants violated Civil Code § 1770(a)(7) by representing that the

8    Machines were of a particular standard or quality when they were not.

9              104.    Defendants violated Civil Code § 1770(a)(9) when they advertised and

10   marketed the Machines with the intent not to sell them as advertised.

11             105.    Defendants violated Civil Code § 1770(a)(19) by inserting an

12   unconscionable provision into their contracts and limiting the warranties of the Machines when

13   Defendants knew or should have known that the products were defective.

14             106.  ·  Defendants engaged in deceptive practices, in violation of the CLRA, that

15   were designed to induce Plaintiff and the members of the Sub-Class to purchase the Machines.

16             107.    In engaging in the foregoing unfair or deceptive conduct, Defendants

17   actively concealed and failed to disclose material facts about the Machines.

18             108.    The representations set forth above regarding the Machines are material

19   facts that a reasonable person would have considered important in deciding whether or not to

20   purchase (or to pay the same price for) a washing machine. Plaintiff and the members of the Sub-

21   Class justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or

22   non-disclosed facts as evidenced by their purchase of the Machines.

23             109.    Defendants' acts were intended to be deceptive and/or fraudulent, namely,

24   to market, distribute and sell the Machines.

25             110.    Plaintiff and the members of the Sub-Class suffered injury in fact as a

26   direct result of Defendants' misleading marketing campaign and/or concealment of material facts

27   in violation of the CLRA in that they have paid or will have to pay to repair Machines that were

28   defective when purchased and that have or will fail before the anticipated useful life of the

- 20 -

1   product. Had Defendants disclosed the true quality, nature and drawbacks of the Machines,

2   Plaintiff and the members of the Sub-Class would not have purchased (or would have paid less

3   for) the Machines. Plaintiff and the members of the Sub-Class have also been denied use of their

4   Machines, expended money on repairs and extended warranties, and suffered unreasonable

5   diminution in value of their Machines as a result of Defendants' conduct.

6            111.   To this day, Defendants continue to violate the CLRA by concealing the

7   defective nature of the Machines in continuing to sell the Machines and by selling (and profiting

8   unjustly from) costly replacement and repair of the Machines.

9            112.   Pursuant to Civil Code § 1782(a), Plaintiff served Defendants with notice

10   of the alleged violations of the CLRA by certified mail, return receipt requested, on November

11   13, 2008. Defendants admit receiving the notice on November 18, 2008, but objected, among

12   other things, that service was not proper. Although Plaintiff believes Defendants' objections are

13   meritless, Plaintiff served a second notice to the place where her transaction occurred and to the

14   Defendants' registered agents for service of process in California on December 19, 2008, as

15   Defendants have no known principal business address in California. Copies of these notices are

16   attached hereto as Exhibit B and C. If, after 30 days of receipt of the second notice, Defendants

17   fail to correct, repair, replace, or otherwise remedy the defective goods, Plaintiff will amend this

18   complaint to add seek damages as permitted by the statute.

19            113.   Plaintiff, on behalf of herself and all others similarly situated, demands

20   judgment against Defendant under the CLRA for injunctive relief as may be appropriate and an

21   award of attorneys' fees.

22                       **SIXTH CAUSE OF ACTION**

23                       **Unjust Enrichment**

24                **(On behalf of all Class Members)**

25            114.   Plaintiff incorporates by reference the allegations contained in preceding

26   paragraphs of this Complaint.

27   \\\

28   \\\

- 21 -

1      115.    By their wrongful acts and omissions described herein, including selling
2  the Machines to Plaintiff and Class Members, Defendant was unjustly enriched at the expense of
3  Plaintiff and the Class.

4      116.    It would be inequitable for Defendants to retain the profits, benefits, and
5  other compensation obtained by from its wrongful conduct in manufacturing, marketing and
6  selling the Machines.

7      117.    Plaintiff on behalf of herself and all others similarly situated, seek
8  restitution from Defendants, and an order of this Court proportionally disgorging all profits,
9  benefits, and other compensation obtained by Defendants from their wrongful conduct.

10                                    **PRAYER FOR RELIEF**

11      WHEREFORE, Plaintiff, on behalf of herself and the members of the Class and Sub-
12  Class, demand judgment against Defendants as follows:

13                a.    An order certifying the Class and any other appropriate subclasses,
14  including the Sub-Class, and designating Plaintiff as the Representative of the Class and Sub-
15  Class and Plaintiff's counsel as Class Counsel;

16                b.    Restitution and disgorgement to the extent permitted by applicable
17  law, together with interest thereon from the date of payment, to the victims of such violations;

18                c.    Monetary damages, including, but not limited to any compensatory,
19  incidental or consequential damages commensurate with proof at trial for the acts complained of
20  herein;

21                d.    Punitive damages in accordance with proof and in an amount
22  consistent with applicable precedent;

23                e.    To the extent that Defendants have continued to market and sell the
24  Machines in the manner challenged in this action, an order requiring Defendants to immediately
25  cease their wrongful conduct as set forth above, as well as enjoining Defendants from continuing
26  to falsely market and advertise, conceal material information and conduct business via the
27  unlawful and unfair business acts and practices complained of herein; and an order requiring
28  Defendants to engage in a corrective notice campaign;

- 22 -

1              f.      A permanent injunction mandating that Defendants pay in part or in

2      whole for the repair and/or replacement of the Machines;

3              g.      A declaration that Defendants are financially responsible for

4      notifying all Class members of the pendency of this action;

5              h.      Reasonable costs and attorneys' fees;

6              i.      Statutory pre-judgment interest; and

7              j.      All other relief the Court deems just and appropriate.

8                              **DEMAND FOR JURY TRIAL**

9      Plaintiff, on behalf of herself and the Class and Sub-Class, demand a jury trial in this

10     action for all of the claims so triable.

11     ///

12     ///

13     ///

14     ///

15     ///

16     ///

17     ///

18     ///

19     ///

20     ///

21     ///

22     ///

23

24

25

26

27

28

- 23 -

DATE: December 22, 2008

ANDRUS LIBERTY & ANDERSON LLP

By:

Jennie Lee Anderson

Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
1438 Market Street
San Francisco, CA 94102
Telephone: (415) 896-1000
Facsimile: (415) 896-2249
lori@libertylaw.com
micha@libertylaw.com
jennie@libertylaw.com

James E. Miller
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
jmiller@sfmslaw.com

James C. Shah
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshaw@sfmslaw.com

Karen M. Leser-Grenon (SBN 231189)
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLC
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: 619-235-2416
Facsimile: 619-234-7334
kleser@sfmslaw.com

*Attorneys for Plaintiff and the Class*

- 24 -

CLASS ACTION COMPLAINT

# EXHIBIT A

1   Lori E. Andrus (SBN 205816)
    Micha Star Liberty (SBN 215687)
2   Jennie Lee Anderson (SBN 203586)
    ANDRUS LIBERTY & ANDERSON LLP
3   1438 Market Street
    San Francisco, CA 94102
4   Telephone: (415) 896-1000
    Facsimile: (415) 896-2249
5   lori@libertylaw.com
    micha@libertylaw.com
6   jennie@libertylaw.com

7
    Attorneys for Plaintiff and the Proposed Class
8
    (Additional counsel appear on signature page)
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 IN AND FOR THE COUNTY OF SANTA CLARA

12

13  RENEE TIETSWORTH, On Behalf of
    Herself and All Others Similarly Situated,      Civil Case No.:
14
                       Plaintiff,                   **CLASS ACTION**
15
            v.
16                                                  **DECLARATION OF RENEE TIETSWORTH**
    SEARS ROEBUCK AND CO., and
17  WHIRLPOOL CORPORATION,

18                     Defendants.

19

20  I, Renee Tietsworth, declare as follows:

21      1.      I am a named plaintiff in this litigation.

22
        2.      I have personal knowledge of the matters set forth below except as to those matters
23
    stated herein which are based on information and belief, which matters I believe to be true.
24

25      3.      If called as a witness I could and would testify competently to these matters herein

26  included.

27      4.      I am informed and believe that venue is proper in this court under Civil Code

28

                                    - 1 -        DECLARATION OF RENEE TIETSWORTH

1     1780(c) based on the fact that, on information and belief, Defendants Sears Roebuck and Co. and

2     Whirlpool Corporation have done and are doing business in Santa Clara County.

3           I declare under penalty of perjury under the laws of the state of California that the

4

5     foregoing is true and correct and that this declaration was executed on December 20, 2008 in

6     San Diego, California

7

8                                          _Renee Tietsworth_

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -           DECLARATION OF RENEE TIETSWORTH

# EXHIBIT B

## ANDRUS LIBERTY & ANDERSON LLP

1438 MARKET STREET · SAN FRANCISCO, CALIFORNIA 94102
T: 415.896.1000 · F: 415.896.2249 · LORI@LIBERTYLAW.COM

November 13, 2008

*Via Certified Mail*

Sears, Roebuck and Co.
3333 Beverly Road, B2-130B
Hoffman Estates, IL 60179

Whirlpool Corporation
2000 North M-63
Benton Harbor, MI 49022

RE:    Notice of Violations of Consumer Legal Remedies Act and Demand

Dear Sirs:

Pursuant to California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and specifically § 1782(a)(1)(2), Renee Tietsworth ("Plaintiff") on behalf of herself and all others similarly situated, and through the undersigned counsel, hereby notify you that Sears Roebuck and Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (collectively, "Defendants") have violated California Civil Code § 1770 by representing, through advertising, warranties and other express representations and/or by failing to disclose material facts, that top-loading Kenmore Elite Oasis automatic washing machines, including, but not limited to model numbers[1] 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715* ("the Machines") had attributes that they did not actually have.

Specifically, our investigation has revealed that the Machines are defective such that they regularly and routinely stop in mid-cycle and display an "F" error code, including but not limited to "F51" or "F1." In such circumstances, the owner is instructed by the owner's manual to stop and restart the Machine upon receiving an "F" error code and, if the code appears again, to contact Defendants for service. Restarting the Machines, if successful at all, works for only a short period of time before the Machine stops again in mid-cycle and displays the error code, requiring Plaintiff and similarly-situated consumers to incur significant cost to attempt to repair the Machines.

Based upon the information that we have discovered, as well as the experience of consumers in attempting to require Defendants to rectify the serious defect plaguing the Machines, consumers, including Plaintiff, believe and hereby allege that Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices by marketing and selling the Machines even though they were inherently defective in a manner which was intended to, and/or did, in fact, result in the unlawful sale of goods to consumers. Specifically, Plaintiff and other consumers allege that Defendants violated the following sections of California Civil Code § 1770:

---

[1] Omitted from these model numbers are the last four digits, represented by an asterisk, which indicate the color code of a particular washer.

Sears Roebuck and Co.
Whirlpool Corporation
November 13, 2008
Page 2

1. Civil Code § 1770(a)(2) by misrepresenting the source, sponsorship, approval or certification of the Machines.

2. Civil Code § 1770(a)(5) by representing that the Machines have approval, characteristics, uses and benefits that they do not have.

3. Civil Code § 1770(a)(7) by representing that the Machines were of a particular standard or quality when they were not.

4. Civil Code § 1770(a)(9) when Defendants advertised and marketed the Machines with the intent not to sell them as advertised.

5. Civil Code § 1770(a)(19) by inserting an unconscionable provision into their contracts and limiting the warranties of the Machines when Defendants knew or should have known that the products were defective.

Since we believe that the Machines were known by Defendants to be defective at all pertinent times and that Defendants have acted affirmatively to conceal the existence of these defects, we believe that Defendants should have alerted affected owners about this problem. To date, Defendants have failed to do so. Such failure to disclose the defective nature of the Machines, as well as any attempt by Defendants to limit the warranty associated with the Machines at the time of the sale, as well as the remedies and relief available to consumers, when these products were known to be defective and were likely to fail in their essential purpose during their useful life, also violated the above-identified sections of the CLRA.

This Notice is being served on behalf of Plaintiff and all similarly-situated consumers, who hereby demand that Defendants correct, repair, replace or otherwise rectify the Machines alleged herein to have been marketed and sold in violation of California Civil Code § 1770, that Defendants cease and desist from the unlawful conduct described herein, and that Defendants reimburse Plaintiff and all other similarly-situated consumers for the amounts that they paid for these defective Machines, as well as for all other expenses that they have incurred as a result of purchasing the defective Machines.

We have sent this letter directly to you in order to fully comply with the requirements of California Civil Code § 1782. We, of course, hope that you will act immediately to rectify this situation and stand ready to discuss a reasonable resolution of this matter on the terms outlined above or on similar terms acceptable to Plaintiff and similarly-situated consumers.

If you have any questions, require any additional information or would like to discuss these matters, please do not hesitate to contact me.

Very truly yours,

Lori E. Andrus

DER: COMPLETE THIS SECTION

mplete items 1, 2, and 3. Also complete
m 4 if Restricted Delivery is desired.
Int your name and address on the reverse
that we can return the card to you.
tach this card to the back of the mailpiece,
on the front if space permits.

licle Addressed to:

Whirlpool Corporation
2000 North M-63
Benton Harbor, MI 49022

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____  ☑ Agent
                           ☐ Addressee

B. Received by ( Printed Name )  C. Date of Delivery

X _____

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

ticle Number
hansfer from servic          7008 1140 0001 4047 0317

orm 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

---

DER: COMPLETE THIS SECTION

omplete items 1, 2, and 3. Also complete
em 4 if Restricted Delivery is desired.
rint your name and address on the reverse
that we can return the card to you.
ttach this card to the back of the mailpiece,
r on the front if space permits.

ticle Addressed to:

Sears, Roebuck and Co.
3333 Beverly Road, B2-130B
Hoffman Estates, IL 60179

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____  ☐ Agent
                           ☐ Addressee

B. Received by ( Printed Name )  C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

rticle Number
Transfer from service l          7008 1140 0001 4047 0300

Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

# EXHIBIT C

## ANDRUS LIBERTY & ANDERSON LLP

1438 MARKET STREET · SAN FRANCISCO, CALIFORNIA 94102
T: 415.896.1000 · F: 415.896.2249 · LORI@LIBERTYLAW.COM

December 19, 2008

### *Via Certified Mail, Return Receipt Requested*

Sears, Roebuck and Co.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, California 90017

Whirlpool Corporation
C/O CSC—Lawyers Incorporating Service
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833
Attention Eric J. Sharon, Senior Counsel

President and CEO, Sears Roebuck and Co.
C/O Sears Outlet
960 Sherman Street
San Diego, CA 92110

**RE:    Notice of Violations of Consumer Legal Remedies Act and Demand**

Dear Sirs:

This letter follows up and supplements our letter of November 13, 2008, sent certified mail, return receipt requested, to Sears Roebuck and Co. and Whirlpool Corporation at their respective corporate headquarters.

Pursuant to California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and specifically § 1782(a)(1)(2), Renee Tietsworth ("Plaintiff") on behalf of herself and all others similarly situated, and through the undersigned counsel, hereby notify you that Sears Roebuck and Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (collectively, "Defendants") have violated California Civil Code § 1770 by representing, through advertising, warranties and other express representations, and/or by failing to disclose material facts, that top-loading Kenmore Elite Oasis automatic washing machines, including, but not limited to model numbers[1] 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715* ("the Machines") had attributes that they did not actually have.

---

[1] Omitted from these model numbers are the last four digits, represented by an asterisk, which indicate the color code of a particular washer.

Sears Roebuck and Co.,
Whirlpool Corporation
December 19, 2008
Page 2

Specifically, our investigation has revealed that the Machines are defective such that they regularly and routinely stop in mid-cycle and display an "F" error code, including but not limited to "F51" or "F1." In such circumstances, the owner is instructed by the owner's manual to stop and restart the Machine upon receiving an "F" error code and, if the code appears again, to contact Defendants for service. Restarting the Machines, if successful at all, works for only a short period of time before the Machine stops again in mid-cycle and displays the error code, requiring Plaintiff and similarly-situated consumers to incur significant cost to attempt to repair the Machines.

Based upon the information that we have discovered, as well as the experience of consumers in attempting to require Defendants to rectify the serious defect plaguing the Machines, consumers, including Plaintiff, believe and hereby allege that Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices by marketing and selling the Machines even though they were inherently defective in a manner which was intended to, and/or did, in fact, result in the unlawful sale of goods to consumers. Specifically, Plaintiff and other consumers allege that Defendants violated the following sections of California Civil Code § 1770:

1.   Civil Code § 1770(a)(2) by misrepresenting the source, sponsorship, approval or certification of the Machines;

2.   Civil Code § 1770(a)(5) by representing that the Machines have approval, characteristics, uses and benefits that they do not have;

3.   Civil Code § 1770(a)(7) by representing that the Machines were of a particular standard or quality when they were not;

4.   Civil Code § 1770(a)(9) when Defendants advertised and marketed the Machines with the intent not to sell them as advertised; and

5.   Civil Code § 1770(a)(19) by inserting an unconscionable provision into their contracts and limiting the warranties of the Machines when Defendants knew or should have known that the products were defective.

Because we believe that the Machines were known by Defendants to be defective at all pertinent times and that Defendants have acted affirmatively to conceal the existence of these defects, we contend that Defendants should have alerted affected owners about this problem. To date, Defendants have failed to do so. Such failure to disclose the defective nature of the Machines, as well as any attempt by Defendants to limit the warranty associated with the Machines at the time of the sale, as well as the remedies and relief available to consumers, when these products were known to be defective and were likely to fail in their essential purpose during their useful life, also violated the above-identified sections of the CLRA.

Sears Roebuck and Co.,
Whirlpool Corporation
December 19, 2008
Page 3

This Notice is being served on behalf of Plaintiff and all similarly-situated consumers who purchased the Machines, who hereby demand that Defendants correct, repair, replace or otherwise rectify the Machines alleged herein to have been marketed and sold in violation of California Civil Code § 1770, by giving or agreeing to give within a reasonable period of time an appropriate correction, repair, replacement, or other remedy. Such remedy shall include repair or replacement of the machines or the defective parts free of charge and/or reimbursement for the amount paid for the defective Machines and expenses incurred as a result of purchasing the defective Machines.

We have sent this letter directly to you in order to fully comply with the requirements of California Civil Code § 1782. We, of course, hope that you will act immediately to rectify this situation and stand ready to discuss a reasonable resolution of this matter on the terms outlined above or on similar terms acceptable to Plaintiff and similarly-situated consumers.

If you have any questions, require any additional information or would like to discuss these matters, please do not hesitate to contact me.

Very truly yours,

Jennie Lee Anderson