Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com

*Attorneys for Plaintiff and the Proposed Class*

*(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RENEE TIETSWORTH, SUZANNE REBRO, and SONDRA SIMPSON, On Behalf of Themselves and All Others Similarly Situated, | Civil Case No.: C09-00288-JF |
| Plaintiffs, | **CLASS ACTION** |
| v. | **FIRST AMENDED COMPLAINT** |
| SEARS ROEBUCK AND CO., and WHIRLPOOL CORPORATION, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

FIRST AMENDED COMPLAINT

Plaintiffs, Renee Tietsworth, Suzanne Rebro and Sondra Simpson (collectively, "Plaintiffs"), bring this action against Defendants, Sears Roebuck and Co. and Whirlpool Corporation (collectively, "Defendants"), on behalf of themselves and all others similarly situated, and allege upon information and belief, as follows:

**INTRODUCTION**

1.      Plaintiffs bring this action for injunctive, declaratory and equitable relief, damages, restitution and/or disgorgement of profits and additional relief as may be appropriate on behalf of themselves and all others similarly situated (the "Class" or "Class Members"), more specifically defined below, who purchased a top-loading Kenmore Elite Oasis™ automatic washing machine ("Oasis") equipped with defective control boards (the "Electronic Control Board(s)"[1]), including, but not limited to model numbers 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715*[2] (collectively referred to herein as the "Machine(s)") from January 1, 2004 to the present (the "relevant time period").

**THE PARTIES**

2.      Plaintiff, Suzanne Rebro ("Plaintiff Rebro"), is, and all relevant times to this action has been, a resident of Woodland Hills, California.  On or about May 30, 2006, Plaintiff Rebro purchased a Kenmore Elite Oasis HE Top Loader model number 110.27062601 for her personal and family use from the Sears store located at the Topanga Westfield Mall, Canoga Park, California.

3.      Plaintiff, Sondra Simpson ("Plaintiff Simpson"), is, and at all relevant times to this action has been, a resident of Pleasanton, California.  On or about January 15, 2007,

---

[1] "Electronic Control Boards" as referred to herein includes any and all other related parts that may also need replacement and/or repair to correct the defects alleged herein, including but not limited to speed sensors and rotator sensors.

[2] Kenmore washing machines with model numbers beginning with 110 are manufactured by Whirlpool Corporation and sold by Sears Roebuck and Co.  Omitted from the model numbers here are the last four digits, represented above by an *, which merely indicate the color code of a particular washer.

1   Plaintiff Simpson purchased a Kenmore Elite Oasis HE Top Loader model number 110.27082604

2   for her personal and family use from the Sears store in Pleasanton, California.

3         4.    Plaintiff, Renee Tietsworth ("Plaintiff Tietsworth") is, and at all relevant

4   times to this action has been, a resident of San Diego, California.  On or about November 20,

5   2006, Plaintiff Tietsworth purchased a new Kenmore Elite Oasis Automatic Washer model

6   number 110.27032602 for her personal and family use from the Sears Outlet store in San Diego,

7   California.

8         5.    Defendant, Sears Roebuck and Co. ("Sears"), is a New York corporation

9   headquartered in Hoffman Estates, Illinois.  Sears marketed, advertised, distributed, warranted,

10  sold and offered repair services for the Machines that are the subject of this litigation, to Plaintiffs

11  and Class Members.  Upon information and belief, Sears operates approximately 81 "Full-Line

12  Mall Stores" and 134 specialty stores, including dealer stores and outlets, in this district and

13  throughout the State of California.

14        6.    Defendant, Whirlpool Corporation ("Whirlpool"), is a Delaware

15  corporation headquartered in Benton Harbor, Michigan.  Throughout the relevant time period,

16  Whirlpool manufactured the Machines that are the subject of this litigation.  Throughout the

17  relevant time period, Whirlpool participated in the marketing, promotion, warranting and sale of,

18  and/or offered repair services for, the Machines to Plaintiffs and Class Members in this district

19  and throughout the State of California.  Defendant Whirlpool markets, distributes and sells the

20  same Machines under its own label, asserting the same misrepresentations alleged here – i.e., that

21  the Machines will save the users time, water and energy, and that the Machines can complete

22  large quantities of laundry in a single uninterrupted cycle – and accompanied by virtually the

23  same limited warranty.  The Machines sold under the Whirlpool label, the Cabrio® HE Washer,

24  are also equipped with the defective Electronic Control Board and are equally plagued by F51 and

25  other F errors which cause the Machines to repeatedly stop mid-cycle.

26        7.    At all times relevant, the Defendants worked in concert with one another

27  and/or as each other's agents in connection with the design, marketing, promotion and sale of the

28  Machines.

- 3 -                  FIRST AMENDED COMPLAINT

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because, according to Defendantsø removal notice, the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and this matter is a class action in which certain Class members are citizens of states other than those of Defendants.

9.     Venue is proper in this Court pursuant to 48 U.S.C. §1441(a) because this case was originally filed in Santa Clara Superior Court, which is located within this federal district and division, pursuant to California Code of Civil Procedure §§ 395 and 395.5, and California Civil Code §1780(c) on the grounds that (a) some of the injuries to property described herein occurred in this County; (b) some of the acts and transactions complained of herein occurred within this County; (c) Defendants conduct business in this County by selling, marketing, distributing, warranting and/or offering repair services for the Machines at issue here; and (d) Defendants do not reside in any county in this State, or the county where they reside has not been identified to the California Secretary of State and is, therefore, not reasonably known to Plaintiffs.

**FACTUAL ALLEGATIONS**

10.     Defendants began offering the Kenmore Oasis Elite in or about 2006.  The Machines are manufactured, marketed and distributed by Whirlpool and marketed, distributed and sold by Sears.  The Machines are equipped with an Electronic Control Board.  The control board is the part that enables the consumer to operate the washer, select pre-set cycles and select cycle preferences.  The control board also monitors basic functions of the machine including cycle selection, cycle completion, water level, spin speed and balancing.

11.     At all relevant times, Sears represented to Plaintiffs and Class Members that the Machines were and are the highest quality, top-of-the-line washers that allow consumers to do laundry in a more convenient, faster and efficient manner and enable consumers to save water, energy and time.  Defendants represented that the Machines were easy to use and that the consumers would be able to program the Machines to complete even large or bulky loads of laundry in a single, uninterrupted cycle.  At all relevant times, Defendants made false and

1    misleading statements to Plaintiffs and Class Members regarding the performance and purported

2    benefits of the Machines.  Defendants posted stickers and/or informational placards on the floor

3    models of the Machines in the Sears showrooms, representing, among other things, that: (1) the

4    Machines would save the consumer energy and water (purportedly using at least 47% less water

5    and 53% less energy); (2) the consumer could complete even large loads of laundry in a single

6    and uninterrupted cycle; and (3) that the Machines would clean clothes better than other washers.

7           12.    These misrepresentations were reinforced and repeated by Sears'

8    salespeople, who informed Plaintiffs and Class Members that the Machines were "top-of-the-

9    line," would save them energy and water and would allow them to wash even large loads in a

10   single cycle without becoming unbalanced.

11          13.    The Sears website reiterated these same misrepresentations, asserting that

12   the Machines are "highly efficient," use at least 47% less water and 53% less energy than any

13   other top load washer, and "thoroughly and gently clean your largest and most delicate loads of

14   laundry [combining] superior cleaning performance, capacity, and conservation" and save on

15   utility bills.

16          14.    Similar representations were echoed in the written materials, warranties

17   and owner's manuals provided to Plaintiffs and Class Members.  The owner's manual states:

18   [y]our new Kenmore® product is designed and manufactured for years of dependable operation."

19   Among the "Benefits and Features" Defendants list in the Machines' owner's manuals is that the

20   Machines "save you time by allowing you to do fewer, larger loads," saves water and energy, and

21   have features that "increase the ease of use and improve wash performance," including but not

22   limited to, an electronic control panel that is "easy to use."  Defendants further misrepresented

23   that the Machines and their parts were "designed, manufactured and tested to provide years of

24   dependable operation" and that each of the Machines "also conserves resources and also lowers

25   your water and energy bills," even though it is clear that having to regularly restart a load of

26   laundry does not save water or energy and that the Machines are anything but dependable.  Just as

27   the representations posted at the store, on the website and reiterated by the Sears salespeople,

28   these materials again assured Plaintiffs and Class Members that, by following the directions, they

1   would enjoy washing large loads of laundry in uninterrupted cycles, while saving water, energy

2   and money.

3          15.     These misrepresentations relate directly to the functioning and performance

4   of the Machine's Electronic Control Board because the Electronic Control Board controls the

5   laundry cycles, the water levels and the spin speed.  As such, a functioning electronic control

6   board that is free of defects is necessary to operate the Machine, save energy and water, and to

7   finish loads of laundry in a single cycle without the necessity of restarting the Machines.  Thus,

8   Plaintiffs' and Class Members' reasonable expectations as to the functioning and benefits of the

9   Machines are inextricably linked to their reasonable expectations that the Electronic Control

10  Board will be functioning, thereby allowing them to operate the Machine and run a load of

11  laundry in a single cycle with the appropriate level of water and spin speed to achieve the

12  promised results.

13         16.     Plaintiffs and Class Members reasonably and actually relied on these

14  representations that purchasing the Machines equipped with the Electronic Control Board would

15  save time, money, energy and water, and that they would be able to complete loads of laundry

16  without having to monitor and restart the Machines.  Representations relating to the Machines'

17  ability to save the user time, money, energy and water are the functional equivalent to

18  representations about the Machines' Electronic Control Panels, which monitor the Machines' use

19  of water and energy and allow the user to program the cycle using the Machines' preset cycles.

20  Plaintiffs and Class Members also relied on these misrepresentations in deciding whether to

21  purchase the Machines and/or how much to pay.  If Plaintiffs and Class Members had known the

22  truth regarding these representations (and that they were false), they would not have purchased

23  the Machines or, at a minimum, they would have paid significantly less for the Machines.

24         17.     Plaintiffs and Class Members also received warranties, owner's manuals

25  and other literature upon delivery of their Machines, and they further relied on those

26  misrepresentations to conclude that the Machines would save money, water and time, and

27  complete even large loads of laundry without needing to be restarted and, thus, reasonably relied

28  on those representation in deciding not return the Machines within the allowable return period,

thereby completing the purchase process.  Sears's "Satisfaction Guaranteed or Your Money Back"

policy allows the consumers to return the Machines "for any reason" within 90 days of your

purchase.  (http://www.sears.com/shc/s/nb_10153_12608_NB_CSreturns?adCell=W4).  Since

Plaintiffs and Class Members could not and did not discover the defective nature of the Electronic

Control Boards in the Machines and the falsity of Defendants' representations within that 90-day

period, Sears's "Satisfaction Guaranteed or Your Money Back" was effectively illusory.

18.     At all relevant times, Defendants engaged in an extensive advertising and

promotional campaign in which they repeated these misrepresentations in the Sears stores, on the

Sears website and in their warranties, owner's manuals and other written materials.  These

misrepresentations were likely to deceive consumers and members of the public into believing

that the Machines would save them money, water and energy, and that the Machines equipped

with the Electronic Control Boards were particularly well-equipped to complete even large loads

of laundry without becoming unbalanced, running multiple cycles, or requiring the user to restart

the Machines.

19.     Defendants' representations were false and misleading.  Contrary to these

misrepresentations, the Machines' Electronic Control Boards were and are defective, which

means the Machines cannot and, in fact, do not reliably complete loads of laundry while using

less water and energy.  Oftentimes, the Machines were rendered altogether unusable as a result of

the defect.  The defective Electronic Control Boards cause the Machines to stop in mid-cycle and,

thus, require Plaintiffs and Class Members to restart the Machines, often multiple times, to

complete a single load of laundry.  To restart the Machines, Plaintiffs and Class Members

generally must drain all of the water from the Machine and restart the cycle, wasting enormous

amounts of time, water and energy and preventing Plaintiffs and Class Members from saving

energy or water and or completing laundry cycles with ease as promised.

20.     The suggested retail price of the Machines is approximately $1000,

significantly higher than the vast majority of washing machines.  Plaintiffs and Class Members

relied on the false and misleading promises and representations identified above when deciding to

pay significantly more money for their Machines than they would on other models that did not

1    make promises of energy, water and time savings, superior cleaning ability and convenience.

2              21.    The misrepresentations alleged herein are attributable to both Defendants,

3    who, as alleged above, worked in concert with one another and/or as each other's agents in

4    connection with the design, marketing, promotion and sale of the Machines.

5              22.    At all times relevant, despite Defendants' misrepresentations, the Machines

6    were defective and substantially certain to fail long before the useful life of the product.  The

7    Electronic Control Boards of the Machines are, and have always been, defective.  The defective

8    Electronic Control Board causes the Machines to stop in mid-cycle and display a variety of "F"

9    error codes, including, but not limited to "F51" or "F1."

10             23.    When the Electronic Control Board fails, the owner is instructed by the

11   owner's manual to stop and restart the Machine upon receiving an "F" error code and, if the code

12   appears again, to contact Sears for service.  Restarting the Machines, if successful at all, however,

13   works for only a short period of time before the Machine stops again in mid-cycle and displays

14   the error code.  Plaintiffs and Class Members have been forced to spend hours restarting their

15   Machines to finish a single load and, in many cases, cannot successfully restart the Machines at

16   all, at which time they have, and will continue to incur, costly service expenses in breach of

17   Defendants' warranties.  This process of restarting the Machines is also contrary to Defendants'

18   affirmative representations that the Machines are energy efficient and save energy and water.  As

19   a result, Plaintiffs and Class Members have paid more for energy and water than represented and

20   more than they would have paid had they purchased machines without the defective Electronic

21   Control Boards.  Additionally, Plaintiffs and Class Members did not experience superior cleaning

22   of their clothes; instead, all that they obtained was enormous inconvenience and expense.

23             24.    The error codes and failures are caused by the defective Electronic Control

24   Boards, rendering the Machines' performance entirely inconsistent with the Defendants' false and

25   misleading representations regarding energy and water savings, as well as their

26   misrepresentations that the user can operate the Machines using the control board to complete

27   loads of laundry, including large loads.  The defective Electronic Control Boards fail to control

28   the laundry cycle, water levels and energy use.  Instead, the Machines must frequently be

restarted multiple times to complete a single load of laundry, wasting water, energy and time.

25. As explained above, the defect at issue renders Defendants' representations about the Machines (and their electronic controls) false and misleading. As such, Defendants had a duty to disclose that the Electronic Control Boards are defective, unreliable and frustrate the most basic functioning of the Machines. Defendants also had a duty to disclose that the Machines equipped with the Electronic Control Boards were defective because the defective Electronic Control Boards prevent the Machines from functioning in the manner Defendants represented they would perform . Thus, Defendants had a duty to disclose the defective nature of the Machines equipped with the Electronic Control Boards in light of their partial representations that the Machines equipped with the Electronic Control Boards would save energy, water and time and were generally superior to other washing machines due to their purportedly superior electronic controls, when, in fact, they are defective.

26. Defendants also had a duty to disclose this defect to Plaintiffs and Class Members because the Machines equipped with the Electronic Control Boards pose a serious personal safety risk, as the defective boards have led to the Machines spinning out of control and literally exploding on a number of occasions. When this occurs, the washer spins out of control, causing the heavy metal lid to detach and fly across the laundry or other room where the Machine is located, causing severe property damage and threatening very serious bodily injury. Indeed, consumers report that the defective Machines' lids have dented their walls and resulted in water housings being ripped from the wall. The fact that the defective Machines pose a serious safety risk to unsuspecting users (who are now entering their laundry rooms regularly during the laundry cycle to monitor and restart the Machines) is yet another reason why the Defendants were and are under a continuing duty to disclose and repair the defective panels. Even where these events destroy the entire Machine, including its drum and tub, which are warranted for a ten years, Sears has refused to compensate Class Members in breach of its drum and tub warranty.[3]

---

[3] Specifically, the Machines' stainless steel drums and plastic tubs are warranted as follows:

**TEN-YEAR LIMITED WARRANTY ON STAINLESS**

*Footnote continued on next page*

27.     Plaintiffs and Class Members reasonably anticipate that the useful life of a top-load washing machine should be ten years or more.  Indeed, it is established that the average life expectancy of a high efficiency top-load washer is estimated to be 14 years. (http://www.demesne.info/Home-Maintenance/Appliance-Life-Expectancy.htm 10/; http://www.h2ouse.org/tour/details/element_action_contents.cfm?elementID=75008840-13D7-4855-9013CC8A59F03381&actionID=7BFC2969-7BDB-4000-93556F98AAB057A4). Furthermore, it is the common experience of consumers, Plaintiffs and Class Members that washing machines of similar design and quality will have a useful life of as long as 15 to 20 years, particularly for a Machine that Defendants have touted as "top-of-the-line" and for which they charge as much as $1000.  In fact, Sears represented that the Machines' control boards would perform free of defects for a period of years in its written materials, including the owner's manual.  This promise was reiterated by Sears' sales representatives.  For example, a Sears sales representative told Plaintiff Simpson that she could expect the Machine and its electronic controls to last at least eight years.

28.     That the Machines' Electronic Control Boards are defective such that the Machines are  substantially certain to fail within the first one to four years of use is a material fact that Plaintiffs and Class Members would consider important when deciding whether to purchase and how much to pay for their Machines.  Plaintiffs and Class Members would not have purchased, or would have paid significantly less for their Machines, had the defective nature of the Machines been disclosed.

_____

*Footnote continued from previous page*
**STEEL DRUM AND PLASTIC TUB**
> For ten years from the date of purchase, when this washer is installed, operated and maintained according to all instructions supplied with the product, Sears will replace the stainless steel drum and/or plastic tub due to defective materials or workmanship. After the first year, the customer assumes any labor costs associated with replacement of these parts.

Because the Stainless Steel Drum and Plastic Tub Warranty refers to "defective materials" generally, Plaintiffs and Class Members reasonably rely on the warranty to provide for free drum or tub replacement when those parts are defective or damaged by a defect in the Machine and not as a result of misuse.

FIRST AMENDED COMPLAINT

29.     That the defective Electronic Control Boards cause the Machines to exhibit öFö errors, requiring the users to restart the Machines and initiate multiple wash cycles to complete a load of laundry or pay costly repair bills are also material facts that Plaintiffs and Class Members would consider important when deciding whether to purchase and how much to pay for their Machines.  Plaintiffs and Class Members would not have purchased, or would have paid significantly less for their Machines, had the defective nature of the Machines equipped with the Electronic Control Board been disclosed.

30.     Defendants misrepresented and concealed these material facts from Plaintiffs and Class Members, and, instead, represented that consumers could operate the Machines equipped with the Electronic Control Boards to program the preset wash cycle, which would reliably regulate water, energy and spin cycles as promised.  Defendants also misrepresented that the Machines equipped with the Electronic Control Boards were the highest quality that would provide consumers with enhanced convenience and efficiency.

31.     At all relevant times, Defendants had exclusive possession and control of all facts necessary to know that the Machinesø Electronic Control Boards were defective.

32.     The cost of replacing the defective Electronic Control Boards, upon information and belief, is $400 or more.  The Machines also may require multiple repairs to address the defects described herein within their anticipated useful life, as the Electronic Control Boards cannot be repaired and are often replaced with other, equally defective boards.

33.     The latent defects cause the Machinesø Electronic Control Boards to fail long before their anticipated useful lifetime expires, denying Plaintiffs and Class Members use of their Machines and failing to perform their ordinary purpose of an automatic washing machine, *i.e.,* to wash clothing unattended in a single cycle.

34.     Plaintiffs and Class Members have been damaged and suffered injury in fact because they have been, and will continue to be, inconvenienced, denied use of their Machines, and/or forced to pay hundreds of dollars to have the defective Electronic Control Boards serviced by Defendantsø technicians.

35.     At all relevant times, Defendants have been aware that the Machinesø

Electronic Control Boards are defective and that the defects were substantially certain to result in the boards and, thus, the Machines to fail prematurely, but failed to disclose and otherwise concealed the defects from Plaintiffs and Class Members.

36.     The Machines come with a One Year Limited Warranty that provides as follows:

### ONE YEAR LIMITED WARRANTY
When installed, operated and maintained according to all instructions supplied with the product, if this appliance fails due to a defect in material or workmanship with in one year from the date of purchase, call 1-800-4-MY-HOME to arrange for a free repair.

37.     Plaintiffs and Class Members reasonably relied upon the One Year Limited Warranty to provide for free repairs when the Machines fail due to the defective Electronic Control Boards within one year of purchase.  Where a particular part, such as the Electronic Control Board, is known to be defective, cannot be repaired, and has caused the Machine to malfunction and stop in mid-cycle within a years of the purchase date,  Plaintiffs and Class Members reasonably anticipated that Sears would replace the defective part free of charge with a non-defective part.

38.     Defendants breached their warranties to Plaintiffs and Class Members because the defects, which are substantially certain to result in premature failure, existed at the time of purchase and throughout the first year of ownership.  Furthermore, as described below, Defendants breached their One Year Limited Warranty to Plaintiff Rebro, Plaintiff Simpson and other similarly-situated Class Members who experienced failures due to the defective Electronic Control Board within the first year of purchase, but did not receive a free repair.  Although Plaintiff Rebro, Plaintiff Simpson and other similarly-situated Class Members experienced and reported failures due to the defective Electronic Control Board within the first year of purchase, Defendants failed to replace or satisfactorily repair the defective Electronic Control Boards in breach of the express warranties.  Only after the expiration of the One Year Limited Warranty did Sears admit to Plaintiff Rebro and Plaintiff Simpson that the Electronic Control Boards were, in fact, defective and needed to be replaced, but forced them and other Class Members to pay for the

FIRST AMENDED COMPLAINT

1    replacement of the defective Electronic Control Boards at their own expense in breach of the

2    express warranty.  When Defendants have replaced the defective Electronic Control Boards, they

3    have often replaced them with equally defective Electronic Control Boards that fail again shortly

4    thereafter, a further breach of the express warranty.  Plaintiffs and Class Members reasonably

5    expect that when a product is serviced under the One Year Limited Warranty that the defect will

6    be cured.

7              39.    Indeed, Defendants have implicitly admitted that the control boards in

8    question are, and have always been, defective.   In or around April 2009, more than *five months*

9    after Plaintiff Tietsworth placed Defendants on notice and attempted to resolve this matter first by

10   contacting Sears and demanding that the defective Machine be repaired or replaced and then by

11   notifying Defendants of their wrongful conduct by letter pursuant to Civil Code § 1782(a),

12   Plaintiffs on November 13, 2008, Defendants sent a letter to certain (but not all) Plaintiffs and

13   Class Members offering them an "upgraded control board" that will "improve spin

14   performance"  and improve the detection of and adjust for potential out of balance situations."

15   The letter purports to offer an "electronic control board upgrade at no cost to you" but only if a

16   response is received "within 90 days of receipt of this letter."  The letter does not inform

17   consumers that the Electronic Control Boards installed in their Machines are, in fact, defective,

18   however.  Sears has represented to Plaintiffs and Class Members that the "upgraded" control

19   board would fix the F51 and all other "F" errors Plaintiffs and Class Members had been

20   experiencing.

21             40.    Sears' attempts to engage in a secret warranty program that purportedly

22   offers relief to some, but not all, Class Members is insufficient, unfair and, if anything, simply

23   reinforces and supports the allegations that the Electronic Control Boards are and always have

24   been defective, and that the Defendants have a duty to disclose the defect and offer a remedy.

25   Sears has failed to list the defective product on its official recall list (despite the fact that the

26   control boards are, in fact, defective and pose a threat to consumer safety because parts are prone

27   to coming detached during malfunction, thereby endangering consumers, as noted above), in an

28   unfair and unscrupulous attempt to limit its liability and disadvantage consumers who are

FIRST AMENDED COMPLAINT

unaware of the defect or their rights.  Sears has also failed to date the letter, or postmark the

envelope sent to consumers, while at the same time imposing an unreasonably brief time frame in

which consumers may seek any remedy.  Additionally, claims asserted by Plaintiffs and Class

Members who were previously required to pay out-of-pocket to repair and replace the defective

control boards have been denied remedies under the secret warranty program altogether, rending

these efforts all the more unfair and fraudulent.  Finally, it appears that the remedy offered is

insufficient, as the "upgraded" control boards are similarly defective and Class Members report

continuing to receive the same error messages and failures even with the new boards:

> I received a letter stating any washer falling under certain Model
> and Serial numbers would have the electronic control board
> upgraded at no cost.  Supposedly it would improve spin
> performance, etc.  So I called and scheduled this upgrade.
> Repair was to be a couple of weeks after I called.  I took off work
> that Mon. to wait for a repair person between 8 - 12.   It was after
> 12 when he arrived. This was April 27.   He changed out the part
> did a little test of running some water in washer and left.  On
> Saturday, I went to do my regular laundry.   It never worked!!!

This Class Member then had the Machine repaired again, only to experience the same errors and

Machine failures with the third board.

### Plaintiff Tietsworth's Experiences With The Machines

41.      Plaintiff Tietsworth is, and at all relevant times to this action has been, a

resident of San Diego, California.  In or about November 2006, Plaintiff Tietsworth purchased a

new Kenmore Elite Oasis Automatic Washer model number 110.27032602 for approximately

$690.00 for her personal and family use from the Sears Outlet in San Diego.  When shopping for

a washer a few days prior to her purchase, Plaintiff Tietsworth compared the features and benefits

of multiple machines by reading the information Defendants affixed to the machines in the Sears

showroom.  She hoped to buy a machine that was energy efficient and could handle large loads.

On the label affixed to the Elite Oasis model purchased, Plaintiff Tietsworth read multiple false

and misleading statements about the Machines equipped with the Electronic Control Boards.  For

example, the labels stated that the Machines equipped with the Electronic Control Boards were

highly energy efficient, that the Machines could handle large capacity loads, including bulky

bedding and the like (in a single cycle without becoming unbalanced), and that the Machines

FIRST AMENDED COMPLAINT

1    would be gentle on clothing.  These representations impressed Plaintiff Tietsworth and she relied

2    on these representations when deciding to purchase the Machine, even though it was significantly

3    more expensive than other models.  When the Machine was delivered, Plaintiff Tietsworth

4    received the owner's manual.  It was her understanding that she could return the Machine within a

5    limited time period and she reviewed the materials upon receipt.  The owner's manual reiterated

6    the representations made in the showroom, including representations that the Machines would

7    save energy, water and time, and be easy to use.  Plaintiff Tietsworth reasonably relied on these

8    representations when she decided to keep the Machine and not return it within the initial return

9    window.

10             42.     In or around May 2008, Plaintiff Tietsworth's Machine stopped in mid-

11   cycle and displayed an F51 code error.  She restarted the Machine and it ultimately completed the

12   laundry load.  A few days later, the Machine stopped again in mid-cycle and again displayed an

13   error message.  To complete a load, she had to restart the Machine twice.  Over the next couple of

14   weeks, the problem persisted and became progressively worse.  The Machine stopped three or

15   four times during a single cycle, each time displaying an F error.  By this time, it was taking three

16   to four hours to complete a single load of laundry.  When the Machine would not restart, Plaintiff

17   Tietsworth contacted Sears on or around June 17, 2008, as her owner's manual instructed.

18             43.     Upon contacting Sears, Plaintiff Tietsworth was told that she could either

19   purchase an extended warranty for approximately $218 or have someone come out to repair the

20   Machine.  The cost of having a technician come out was $70.  This fee did not include the cost of

21   repair. During this time, Plaintiff Tietsworth was unable to complete loads of laundry and did not

22   save water, energy or time as promised.  She was also denied use of her Machine.

23             44.     Plaintiff Tietsworth reasonably anticipated that the useful life of her

24   Machine equipped with the Electronic Control Board would be15-20 years.  Sears represented to

25   Plaintiff Tietsworth through its product literature, warranties, owner's manual and other direct

26   communications that the Machine equipped with the Electronic Control Board was a high-quality

27   washer with good ratings which would last a long time.  At no time prior to her purchase of the

28   Machine did anyone inform Plaintiff Tietsworth that the Machines equipped with the Electronic

1   Control Board were defective or that the defect would result in her Machine to repeatedly stop in

2   mid-cycle.  As a result of Defendants' conduct, Plaintiff Tietsworth was damaged, suffered an

3   injury in fact and lost money.

4   45.   Had Defendants disclosed the defective nature of the Machine equipped

5   with the Electronic Control Board that causes the Machine to fail, stop in mid-cycle, wastes

6   energy and time, and potentially causes damage to person and property, she would not have

7   purchased or would have paid significantly less for her Machine.

8   **Plaintiff Rebro's Experiences With The Machines**

9   46.   Plaintiff Rebro is, and at all relevant times to this action has been, a

10   resident of Woodland Hills, California.  On or around May 30, 2006, Plaintiff Rebro purchased a

11   Kenmore Elite Oasis HE Top Loader model number 110.27062601 for approximately $1000 for

12   her personal and family use from the Sears store the Topanga Westfield Mall, Canoga Park,

13   California.

14   47.   When shopping for a new washing machine, Plaintiff Rebro wanted a high-

15   capacity washing machine that was energy efficient.  In or around May 2006, she went to Sears in

16   search of such a product.  The Sears salesperson immediately directed her to purchase the

17   Kenmore Elite Oasis HE, assuring her that the Machine equipped with the Electronic Control

18   Board could handle very large loads and save water.  The Sears salesperson also informed

19   Plaintiff Rebro that the Machines were the best of their class.  When Plaintiff Rebro asked about

20   other the washing machines, the Sears salesperson insisted that the Machine was the best.

21   Plaintiff Rebro relied on these representations when purchasing the Machine.

22   48.   In addition, Plaintiff Rebro read the Defendants' promotional materials,

23   including information on a promotional sign sitting on top of the Kenmore Elite Oasis floor

24   model.  Again, in these its promotional materials, Defendants represented to Plaintiff Rebro that

25   the Machine equipped with the Electronic Control Board would save energy and water, thereby

26   saving her on utility bills, and allow her to easily complete large loads of laundry.  Indeed, the

27   sample Machine in the store was filled with as many as 20 towels and represented to Plaintiff

28   Rebro and consumers that they could wash a lot in one load without incident, thereby saving

FIRST AMENDED COMPLAINT

1    energy and water.

2          49.     Plaintiff Rebro relied on Sears' misrepresentations in her purchase of the

3    Machine and in her decision to pay approximately $1000.00 for the Machine equipped with the

4    Electronic Control Board.  When her Machine was delivered, she received the owner's manual,

5    which she read.  The same misrepresentations were reiterated therein and Plaintiff Rebro further

6    relied on those misrepresentations in her decision to keep her Machine equipped with the

7    Electronic Control Board despite Sears' return policy.

8          50.     Plaintiff Rebro had problems within the first months of purchasing the

9    Machine.  Specifically, despite the fact that she was carefully following the instructions in the

10   owner's manual, the Machine would stop working and display an error message, particularly

11   when she attempted to wash sheets.  She contacted the Sears store to complain.  A Sears

12   representative told her that the Machine was not in need of service and instructed her to lower the

13   spin speed, which did not solve the problem.  Sears failed to replace the board or offer any

14   remedy, in breach of its express limited warranty.  Instead, Plaintiff Rebro had to manually reset

15   the Machine on a regular basis, which required draining and restarting the cycle.  A Sears

16   representative later told her that these problems were caused by the Electronic Control Board,

17   which was most likely failing to properly fill the Machine water necessary to complete the cycle.

18   Among other things, the Electronic Control Board is supposed to properly control and monitor the

19   water levels according to the preset cycle selected.

20         51.     The problem worsened over time, until Plaintiff Rebro was experiencing a

21   failure and error codes, including F51 and F1 error codes, on a regular basis.  Now, she had to

22   restart the Machine several times to complete a single load such that it required half a day of

23   constant monitoring to complete one load of laundry.  When restarting the Machine, she would

24   have to drain it entirely, sometimes power down the Machine, and restart.  During this time,

25   Plaintiff Rebro monitored her energy and water bills and noted that she was not saving water or

26   energy.  The act of draining and restarting the Machine was wasting water and energy, contrary

27   Sears' false representations to the contrary.

28         52.     In or around October 2008, the Machine stopped working altogether.  On

                                        - 17 -

November 21, 2008, a Sears repairperson came to Plaintiff Rebro's home and admitted that the

Electronic Control Board was defective.  The repairperson told Plaintiff Rebro that many

consumers had to replace their defective Electronic Control Boards and that it would cost $383.94

to replace the board in her Machine.  Plaintiff Rebro initially declined and attempted to find the

part on the Internet at a lower price.  When she was unable to do so, she called Sears back and

requested a replacement.  The Sears customer service representative reiterated that many Class

Members has requested a replacement Electronic Control Boards in light of the defect.  One Sears

customer service representative informed Plaintiff Rebro that the Electronic Control Board was

under recall, but another Sears customer service representative later told Plaintiff Rebro that the

part was not under recall and that the other representative should not have told her that.  Sears

then informed Plaintiff Rebro that the cost of the repair would be approximately $400, plus

another $200 for an additional one-year warranty.  When Plaintiff Rebro complained, Sears

offered her a "special" which included the part, labor and a one-year limited "Service Smart

Protection Agreement" for $214.  Plaintiff paid the $214.

        53.     In recent months, Plaintiff Rebro has begun experiencing the same

malfunctions with her Machine, indicating that her new Electronic Control Board is similarly

defective.  Just as before, the Machine stops in mid-cycle and displays an error code, at which

time she must stop the cycle, drain the water from the Machine, and attempt to restart the load.

        54.     In or around April 2009, Plaintiff Rebro received the secret warranty letter

informing certain consumers of the "upgraded" electronic control board offer.  The letter was not

dated or postmarked, but demanded a response within 90 days.  Plaintiff Rebro called the number,

but no one at Sears returned her call.   She later called Sears customer service directly to inquire

about the offer, but was told her that her purchase of the limited "Service Smart Protection

Agreement" made her ineligible for the replacement.

        55.     At no time prior to her purchase of the Machine equipped with the

Electronic Control Board did Defendants inform Plaintiff Rebro that the Machines' Electronic

Control Board was defective or that the defect would result in her Machine repeatedly stopping in

mid-cycle, wasting energy, water and time.  As a result of Defendants' conduct, Plaintiff Rebro

1    was damaged, suffered an injury in fact and lost money.

2          56.    Plaintiff reasonably anticipated that the useful life of her Machine equipped

3    with the Electronic Control Board would be 15-20 years or more.  Sears represented to Plaintiff

4    Rebro through its product literature, representatives, warranties, and other direct communication

5    that the Machine was a high-quality washer with good ratings which would last a long time.  Had

6    Defendants disclosed that the Machine equipped with the Electronic Control Board had a

7    defective control board that causes the Machine to fail and stop in mid-cycle, she would not have

8    purchased or would have paid less for her Machine.

9                    **Plaintiff Simpson's Experience With The Machines**

10          57.    Plaintiff Simpson is, and at all relevant times to this action has been, a

11   resident of Pleasanton, California.  On or around January 15, 2007, Plaintiff Simpson purchased a

12   Kenmore Elite Oasis HE Top Loader model number 110.27082604 for her personal and family

13   use from the Sears store in Pleasanton, California.

14          58.    In January 2007, Plaintiff Simpson owned a washer and dryer that were

15   functional, but not as energy efficient as she would like.  Thus, she set out to purchase appliances

16   that were more energy efficient and, specifically, a washer that would use less energy and water.

17   With that in mind, she went to the Sears store near her home.  The Kenmore Elite Oasis HE floor

18   model was accompanied by a sign stating that the Machine would save her water and energy and

19   specifying the number of gallons she would save per load.  The sign also indicated that the

20   Machine equipped with the Electronic Control Board was a large capacity machine that could

21   handle large loads of laundry in a single cycle.  The Sears sales representative reiterated all these

22   claims and assured Plaintiff Simpson that the Machine equipped with the Electronic Control

23   Board was the top-of-the-line. When she asked about potential problem with the electronic

24   controls, the Sears agent specifically told her she could reasonably expect the Machine equipped

25   with the Electronic Control Board to last for at least eight years.  Thus, Plaintiff Simpson

26   reasonably anticipated that the Machine equipped with the Electronic Control Board would last 8-

27   10 years or more.

28          59.    Plaintiff Simpson specifically relied on these statements and

FIRST AMENDED COMPLAINT

representations in deciding to purchase the Machine and at what price.

60.     In or around July 2007, Plaintiff Simpson began experiencing problems with the Machine and its Electronic Control Board.  The Machine would stop working in mid-cycle and she would receive an F51 error message.  Sometimes she could get the Machine to drain and restart, but she would, at times, have to restart the Machine three or four times to get a single load through.  Other times, Plaintiff Simpson had to wring clothes out and carry them to the laundry mat to complete the washing.

61.     Plaintiff Simpson contacted Sears' repair service department about the problem at least three times during the first year of ownership.  Each time, a Sears service representative came to Plaintiff Simpson's home.  Each time, Sears acknowledged that the problem was caused by the Electronic Control Board, but refused to replace the defective board and insisted it would remedy the situation by "cleaning" the contacts.  The "cleaning" of the contacts did not repair the Machine or the Electronic Control Board, however, and the defective Electronic Control Board continued to fail on a regular basis.  On the third service visit, Plaintiff Simpson stated that the Electronic Control Board was obviously defective and requested that it be replaced.  Sears refused to repair the Machine or replace the defective Electronic Control Board, in breach of its express warranty and despite the fact that she had owned the Machine less than one year.

62.     It was only after the Machine failed shortly outside the warranty period that Sears admitted that the Electronic Control Board was defective, could not be repaired, and needed to be replaced.  Despite the fact that Sears had failed to repair the Electronic Control Board when it failed within the warranty period, Sears refused to replace the board free of charge.  Plaintiff Simpson asked if she could buy an extended warranty, but Sears told her that she had to fix the Machine and pay to replace the defective Electronic Control Board before Sears would sell her an extended warranty.  Moreover, Sears insisted that Plaintiff Simpson pay for the new Electronic Control Board before it was ordered.  The cost of the repair was $320.

63.     At no time prior to her purchase of the Machine did Defendants inform Plaintiff Simpson that the Machines' Electronic Control Board was defective or that the defect

1  would result in her Machine to repeatedly stop in mid-cycle, wasting energy, water and time.  As

2  a result of Defendants' conduct, Plaintiff Simpson was damaged, suffered an injury in fact and

3  lost money.

4  **Class Members' Experiences With The Machines**

5          64.     Plaintiffs' experiences mirror those of thousands of other Machine owners.

6  In purchasing their Machines, Class Members relied on Defendants' misrepresentations,

7  including that the Machines would save energy and water and wash even large loads without

8  needing to restart the Machine and run multiple cycles.  Instead, the Machines were and are

9  defective, waste energy, water and time and do not complete cycles as promised.  The Internet is

10  replete with references to the common problems consumers have encountered with the Machines'

11  Electronic Control Boards, including, but not limited to the following small sample of

12  representative complaints appearing on a selection of on-line consumer forums:

13
14
15       • I have had problems with this washer since about 2 months after I purchased it. 1st
           Service call was in late November 2006, another in Jan 2007, and now again in
           April 2007. The error code "F" 51 appears and it won't continue the cycle. The
           technician stated that they don't know much about these machines yet. The Front-
16         Loader is what he would recommend because these Top Loaders have problems.

17       • We had our new washer and dryer a couple of weeks when we first started having
           problems with the washer. Finally at less than a month it would not complete cycle
18         but would flash "F51". I would restart it again and again. It took me over 2 hours
           to do one load of laundry due to this problem.
19
20       • Purchased in Nov. 2006. Failed in April, 2008. Fault codes began appearing and
           washer would not complete cycle.
21
22       • Purchased Kenmore Elite Oasis Washer in April 2007. It is now Jan 08 and I
           cannot get the washer to work. I purchased Service Contract for washer at Sears
           and have called in that it is not working. Sears cannot get a service repair person to
23         my home for at least a week. No one seems to want to help with this repair even
           though we purchased the contract.
24
25       • We purchased the Kenmore Elite Oasis HE washer in March of 2006 with the
           extended warranty. Within 6 months, we had repair people out at least twice. The
26         washer would not drain. Sears sent the same repairman each time. He told us the
           first time he had not been trained on this washer since they were fairly new. He
27         spent his time on the computer and with a cell phone glued to his ear getting
           advice on how to fix the washer. Both times, he ended up ordering parts and told
28         us to call to schedule an appt. once the parts arrived. The "brain" of the washer had

- 21 -                    FIRST AMENDED COMPLAINT

died and had to be replaced. One of the "brains" he ordered didn't work and we went for over a month w/o a washer due to waiting on parts to arrive. I think overall we've had to call Sears 3 times for problems. Now again the washer is not working properly.

• We purchased our Kenmore Elite Oasis HE in May of 2006, and just yesterday had trouble with the washing machine working. After reading all the complaints on this machine, I must agree that the defective part should have been recalled by Sears. We trusted Sears with a variety of large purchases, but if they won't stand by a defective part that they are aware of, I will try to start a crusade of my own to not trust Sears again.

• Oh My God! I have never been so disappointed in any product in m life. I too purchase the Sears Oasis in 2006. I was so excited knowing I was getting the latest and greatest merchandise on the market. Well what a piece of JUNK...We all need to boycott Sears for selling such an inferior product and not backing it. I have a family of four and like others I wash clothes a lot. It is not convenient to pack up stuff and go to a laundry mat. Right now, I have a washer filled with clothes that's just STOPPED mid-cycle. I am so frustrated. This is the second time in less than 6 months I have had to call Sears to place a repair request. And of course, it at least a week before a repair person can come out. SO WHAT AM I SUPPOSE TO DO!!!

• I bought a washing machine from sears (oasis), after 15 months the machine would not work the electronics kept on going on and off, even in the middle of the night. We called sears and they sent a repair person to fix it, (ha ha). Soon as he left and $158.00 later the machine still did not work. Called back sears and said we would have to make another appointment in two weeks, I complained and got nowhere.

• My Kenmore Oasis (junk,junk,junk) has started flashing me the f-51 error code, can somebody let me know what it is? and if anybody has had the same problem id love to know' all the info I could get so I could fight with Sears...thanks!

65.     Indeed, dozens of Class Members have posted their stories on-line, complaining about the defective nature of the Machines, the lack of prompt service and the inadequacies of Defendants' warranty program.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated members of the Classes and Sub-Class defined below pursuant to the Rule 23(a) and (b) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.  The Classes and Sub-Class (collectively "Classes") are defined as follows:
      The California Class: All California residents and entities who purchased a top-loading Kenmore Elite Oasis automatic washing machine equipped with an

FIRST AMENDED COMPLAINT

Electronic Control Board, including, but not limited to model numbers 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715*, from January 1, 2004 to the present.

The California Sub-Class: All Class members who are "consumers" as defined by California Civil Code § 1761(d).

The Nationwide Class: All United States residents and entities who purchased a top-loading Kenmore Elite Oasis automatic washing machine equipped with an Electronic Control Board, including, but not limited to model numbers 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715*, from January 1, 2004 to the present.

67.     Excluded from the Classes are:  (1) Defendants, any entity or division in which Defendants have a controlling interest, and its/their legal representatives, officers, directors, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; and (3) claims for personal injury, wrongful death and emotional distress and claims of consequential property damage and loss.

**Numerosity**

68.     The Classes are comprised of hundreds, if not thousands, of purchasers of the Machines in California and nationwide, making joinder impracticable.

69.     The Classes are composed of an easily-ascertainable, self-identifying set of persons who purchased the Machines.  Moreover, Class Members are easily identifiable from records maintained by, and in the possession and control of, the Defendants, or otherwise readily obtained from third parties.  Class Members can be ascertained (and can ascertain their own membership in the Classes) based upon their past or present ownership of a subject Machine.

**Community of Interest**

70.     There is a well-defined community of interest among Class members, and the disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

**Typicality**

71.     The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class Members, purchased the subject

1    Machine and have suffered injury as a result.

2         72.    Moreover, the factual bases of Defendants' misconduct are common to all

3    Class Members, and Defendants' breaches, misrepresentations, omissions and acts of

4    concealment resulted in injury to all members of the Classes.

5                            **Predominance of Common Issue**

6         73.    There are numerous questions of law and fact common to all Class

7    Members and those questions predominate over any questions that may affect only individual

8    Class Members, including, but not limited to the following:

9              i.    Whether Defendants breached their express warranties by failing to

10   repair and correct defects in the Machine;

11             ii.   Whether Defendants misrepresented the benefits of the Machines;

12             iii.  Whether Defendants concealed or failed to disclose the defective

13   nature of the Machines;

14             iv.   Whether the Machines are defective in that the control panel fails

15   well in advance of anticipated useful life, falling below the reasonable expectations of consumers;

16             v.    Whether and when Defendants knew of the defective nature of the

17   Machines' Electronic Control Boards;

18             vi.   Whether Defendants actively concealed or intentionally failed to

19   disclose information regarding the problems with and/or defective nature of the Machines'

20   electronic control board;

21             vii.  Whether the information Defendants concealed or failed to disclose

22   was material;

23             viii. Whether Plaintiffs and the Class acted to their detriment as a result

24   of Defendants' concealment and/or omissions;

25             ix.   Whether Defendants issued false and misleading statements of fact

26   and/or concealed material facts regarding the Machines likely to deceive the public;

27             x.    Whether Defendants knew or should have known that their

28   statements about the Machines were false and/or misleading;

1                     xi.     Whether Defendants engaged in unfair, fraudulent or unlawful

2    business practices with respect to the advertising, marketing and sale of the Machines;

3                     xii.     Whether Defendants engaged in unfair, deceptive, untrue or

4    misleading advertising regarding the Machines;

5                     xiii.    Whether Defendants' conduct violated Civil Code §1750, *et seq.*,

6    Business & Professions Code §§ 17200, *et seq.*, and/or 17500, *et seq.*, and/or common law;

7                     xiv.    Whether Plaintiffs and the Class are entitled to equitable relief, and,

8    if so, the nature of such relief;

9                     xv.     Whether Defendants have been unjustly enriched such that it would

10   be inequitable for Defendants to retain the benefits conferred upon them by Plaintiffs and the

11   Class;

12                    xvi.    Whether Defendants breached implied warranties of

13   merchantability and fitness; and

14                    xvii.   Whether compensatory, consequential and punitive damages should

15   be awarded to Plaintiffs and Class Members.

16                                                    **Adequacy**

17              74.     Plaintiffs will fairly and adequately represent and protect the interests of

18   the Classes.  Plaintiffs have retained counsel highly experienced in prosecuting class actions,

19   including actions involving defective consumer goods.

20              75.     Plaintiffs and their counsel are committed to vigorously prosecuting this

21   action on behalf of Class Members and have the resources to do so.  Neither Plaintiffs nor their

22   counsel has any interests adverse to those of the Classes.

23                                                      **Superiority**

24              76.     A class action is superior to all other available methods for the fair and

25   efficient adjudication of this controversy.  Because of the relatively small size of the individual

26   Class Members' claims, absent a class action most Class Members would likely find the cost of

27   litigating their claims against Defendants to be prohibitive.  The class treatment of common

28   questions of law and fact is also superior to multiple individual actions or piecemeal litigation in

                     FIRST AMENDED COMPLAINT

that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

77.     The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of this consumer problem.

78.     Plaintiffs and Class Members are California residents who purchased their Machines in California, except members of the Nationwide Class, who are residents of the United States who purchased their Machines in the United States and assert claims under federal statutes. Thus, the acts and omissions giving rise to Plaintiffs' state law claims arose in California. California's interest in this action and the conduct of corporations doing business in, contracting and effectuating business decisions in California is, therefore, greater than that of any other state, and California Class Members are entitled to application of California law to their claims.

**Tolling**

79.     Because the defective nature of the Machines and the Electronic Control Boards was not detectable until manifestation of the damage, Plaintiffs and Class Members were not reasonably able to promptly discover the problem, despite all due diligence.

80.     Additionally, the defective nature of the Machines and Electronic Control Boards is latent, and even after Class Members were aware that their Machines were failing, Defendants prevented them from ascertaining the nature of the inherent defect by asserting that the problem was isolated and not related to a manufacturing or design defect and by claiming that the Electronic Control Boards were not defective and in need of replacement.

81.     Any applicable statutes of limitation have thus been tolled by the latent nature of the defect and/or Defendants' concealment or denial of the facts alleged herein. Defendants are estopped from relying on any statute of limitations because of their concealment of the defective nature of the Machines' Electronic Control Boards.

**FIRST CAUSE OF ACTION**

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

**(All Plaintiffs On Behalf Of The California Class and Sub-Class)**

82.     Plaintiffs incorporate by reference the allegations contained in the

1    preceding paragraphs of this Complaint.

2             83.    Business & Professions Code § 17200 prohibits acts of "unfair

3    competition," including any "unlawful, unfair or fraudulent business act or practice."

4    Defendants' conduct, as described above, is unlawful, unfair or fraudulent in violation of the

5    statute.

6             84.    Defendants' acts and practices are unlawful because they violate California

7    Civil Code §§ 1572, 1668, 1709, 1710, 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9) and/or

8    1770(a)(19).  Defendants' acts and practices are also unlawful because they violate §17500 of the

9    Business and Professions Code and the Song-Beverly Warranty Act and the Magnuson-Moss Act,

10   15 U.S.C. §§ 2301-2312).

11            85.    Defendants violated the Unfair Business Practices Act, Business and

12   Professions Code § 17200, *et seq*., when they represented, through advertising, promotional

13   materials, warranties and other express representations, that the Machines equipped with the

14   Electronic Control Board had characteristics and benefits that they did not actually have, in

15   violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. (the "CLRA").

16            86.    Defendants violated the Unfair Business Practices Act, Business &

17   Professions Code § 17200, *et seq*., when they falsely represented, through a pervasive campaign

18   of advertising, marketing, and/or other express representations, as well as in their warranties and

19   other written materials, that the Machines equipped with the defective control board were of a

20   certain quality or standard when they were not, in violation of the CLRA.

21            87.    Defendants violated the Unfair Business Practices Act, Business &

22   Professions Code § 17200, *et seq*., by misrepresenting the source, approval or certification of the

23   Machines equipped with the Electronic Control Board, in violation of the CLRA.

24            88.    Defendants violated the Unfair Business Practices Act, Business &

25   Professions Code § 17200, *et seq*., when they advertised and marketed Machines equipped with

26   the Electronic Control Board with the intent not to meet the advertised claims, in violation of the

27   CLRA.

28            89.    Defendants violated the Unfair Business Practices Act, Business &

                                                    - 27 -                    FIRST AMENDED COMPLAINT

1   Professions Code § 17200, *et seq*., by inserting an unconscionable provision into a contract and

2   attempting to limit its warranties, when they knew or should have known the products were

3   defective, in violation of the CLRA and the Song-Berly Warranty Act.

4           90.     Defendants violated the Unfair Business Practices Act, Business &

5   Professions Code § 17200, *et seq*., by fraudulently misrepresenting and concealing from and/or

6   intentionally failing to disclose to Plaintiffs and the Class the defective nature of the Machines, in

7   violation of common law.

8           91.     Defendants violated the Unfair Business Practices Act, Business &

9   Professions Code § 17200, *et seq*., by breaching their implied warranties of merchantability, in

10  violation of Cal. Civ. Code § 1792, *et seq.*

11          92.     Defendants violated Unfair Business Practices Act, Business & Professions

12  Code § 17200, *et seq*., by breaching their express warranties in violation of the Song-Beverly

13  Warranty Act.

14          93.     Defendants violated Unfair Business Practices Act, Business & Professions

15  Code § 17200, *et seq*., by breaching their express warranties, including written warranties against

16  defects in materials and workmanship and/or representations regarding the Machines and

17  Electronic Control Boards that constituted warranties in violation of the Magnuson-Moss Act;

18          94.     Defendants also violated the Unfair Business Practices Act, Business and

19  Professions Code § 17200, *et seq*., by engaging in a overarching campaign in which they actively

20  misrepresented in, and/or concealed and omitted from, their advertising, marketing and other

21  communications, material information about the Machines and the Electronic Control Boards in a

22  manner that has deceived and is likely to continue to deceive consumers and the public.

23          95.     Defendants violated the Unfair Business Practices Act, Business &

24  Professions Code § 17200, *et seq*., by selling Machines with Electronic Control Boards that were

25  defective such that the Machines would fail long before their anticipated useful life.

26          96.     Defendants also violated the Unfair Business Practices Act, Business and

27  Professions Code § 17200, *et seq*., by engaging in an unfair secret warranty program that was not

28  offered to all Class Members and which is, in and of itself illusory, as the replacement Electronic

FIRST AMENDED COMPLAINT

Control Boards are also defective.  The secret warranty program is also unfair and further violates Unfair Business Practices Act, Business and Professions Code § 17200, *et seq*., because it does not compensate Plaintiffs and Class Members who previously paid out-of-pocket to replace or repair their defective Electronic Control Boards and because it sets forth an unduly restrictive time period in which Plaintiffs and Class Members must respond without dating the letter or causing the letter to be postmarked.  The secret warranty program is also unfair in violation of the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq*., because Defendants have a duty to disclose the defective nature of the Machines equipped with the Electronic Control Boards, but the secret warranty letter fails to inform Plaintiffs and Class Members that the Machines equipped with the Electronic Control Boards are both defective and dangerous.  In fact, the letter unfairly and unlawfully conceals the defective nature of the Electronic Control Boards.

97.     Defendants violated the Unfair Business Practices Act, Business & Professions Code § 17200, *et seq*., by holding the Machines equipped with the Electronic Control Boards out as superior in quality (and, thus, more expensive), when, in fact, they and are were defective.

98.     Defendants violated the Unfair Business Practices Act, Business & Professions Code § 17200, *et seq*., by warranting the Machines to be free of defects for at least one year and failing to repair free of charge defects that existed within the first year of ownership and defects that manifested themselves within the first year of ownership.

99.     The injury to consumers by Defendants' conduct greatly outweighs any alleged countervailing benefit to consumers of competition under all of the circumstances.

100.     To this day, Defendants continue to violate the Unfair Business Practices Act by continuing to actively conceal the material information regarding the defective nature of the Machines and by representing to Plaintiffs and members of the Class that the Machines equipped with the Electronic Control Boards are free of known defects.

101.     As a direct and proximate cause of Defendants' violation of the Unfair Business Practices Act, Plaintiffs and the Class have suffered injury in fact and lost money in that

1    they purchased Machines with defective Electronic Control Boards and have paid or will be

2    required to pay for service and repair despite the fact that the Machines Electronic Control

3    Boards were defective beyond repair at the time of purchase and at all relevant times likely to fail

4    long before the expiration of their anticipated useful lifetime.  Plaintiffs and Class Members are

5    further damaged, have lost money and suffered injury in fact because, had Defendants disclosed

6    the true defective nature of the Machines Electronic Control Boards, Plaintiffs and the Class

7    would not have purchased, or would have paid significantly less for, the Machines. Plaintiffs and

8    Class Members are further injured and lost money because they were required to pay for repairs,

9    replacement parts, extended warranties and laundry bills, and pay higher water bills and energy

10   bills contrary to Defendants promises, as a result of the defective Machines and Electronic

11   Control Boards. Plaintiffs and the Class have suffered further harm in that they have lost use of

12   their Machines and suffered diminution in value.

13          102.    As a proximate result of Defendants violation of the Business and

14   Professions Code § 17200, *et seq*., Defendants have been unjustly enriched and should be

15   required to make restitution to Plaintiffs and the Class and/or disgorge their ill-gotten profits

16   pursuant to Business & Professions Code § 17203.

17          103.    Plaintiffs, on behalf of themselves and all others similarly situated, demand

18   judgment against Defendants for injunctive relief in the form of restitution, and/or proportional

19   disgorgement of funds paid by Plaintiffs to purchase the Machines and/or disgorgement of funds

20   received by Defendants from the sale and/or repair of the Machines and/or Electronic Control

21   Boards, or injunctive relief in the form of replacement and/or repair of the Machines, along with

22   interest, attorneys fees and costs pursuant to, *inter alia*, Cal. Code  Civ. Proc. § 1021.5.

23                          **SECOND CAUSE OF ACTION**

24                     **Fraudulent Concealment/Nondisclosure**

25           **(All Plaintiffs On Behalf Of The California Class and Sub-Class )**

26

27          104.    Plaintiffs incorporate by reference the allegations contained in preceding

28   paragraphs of this Complaint.

105.    At all relevant times, Defendants knew that the Machinesø Electronic Control Boards were defective and would fail in advance of their anticipated useful life under ordinary use and conditions.  Defendants also knew that the anticipated useful life of a top loading high efficiency washing machine equipped with electronic control panels was ten to fourteen years.

106.    Defendants also knew that their representations that the Machines equipped with the Electronic Control Boards would save the user time, money, energy and water, and allow the user to complete even larger loads of laundry without having to restart the Machine due to unbalancing, were false and misleading.

107.    Defendants concealed information that the Electronic Control Boards were defective and that a functioning and non-defective Electronic Control Board was necessary to achieve the promised results regarding savings of energy and water and the usersø ability to complete loads of laundry using the preset cycles.

108.    The concealed information is material in that a reasonable consumer would find information important when deciding whether to buy the Machine and, if so, how much to pay.  All of the misrepresentations alleged herein are connected and dependent upon a functioning Electronic Control Board.

109.    Defendants were and are under a duty to disclose these facts to Plaintiffs and Class Members because the Machines equipped with the defective Electronic Control Panels pose a serious safety hazard.

110.    Defendants also were and continue to be under a duty to Plaintiffs and the Class to disclose these facts because:

xviii.   Defendants are in a superior position to know the truth about the quality and nature of the Machines;

xix.    Defendants made partial disclosures and representations as alleged above about the Machines while not revealing the truth about their defective Electronic Control Panels, maintenance and quality; and

1              xx.      Defendants actively concealed from Plaintiffs and the Class the fact

2    that the Machines were and are defective and substantially likely to fail in advance of their

3    anticipated useful life.

4              111.     Defendants fraudulently and intentionally concealed from and/or failed to

5    disclose to Plaintiffs and the Class the facts described above with the intent to defraud Plaintiffs

6    and Class Members and for the purpose of inducing Plaintiffs and the Class to act thereon by

7    purchasing the more expensive Machines.  Defendants knew that Plaintiffs and Class Members

8    would not purchase or pay as much for the Machines if Defendants had disclosed the defective

9    nature of the Machines and their Electronic Control Panels.

10             112.     Plaintiffs and Class Members were unaware that the Electronic Control

11   Panels were defective and prone to failure.

12             113.     Plaintiffs and the Class justifiably acted or relied upon to their detriment

13   the misrepresentations and/or concealed or non-disclosed facts as evidenced by their purchase of

14   Machines.  Had Defendants disclosed the true defective nature of the Machines' Electronic

15   Control Panels, Plaintiffs and Class Members would not have purchased (or would have paid less

16   for) their Machines.

17             114.     As a direct and proximate cause of Defendants' misconduct, Plaintiffs and

18   the Class Members have suffered actual damages in that they have or will have to continue to pay

19   for repairs and service visits and outside laundry expenses.  Plaintiffs and Class Members have

20   further suffered actual damages because they Machines are equipped with Electronic Control

21   Panels that prevent them from achieving the water and energy savings promised, prevent them

22   from completing loads of laundry without restarting the Machines and that are defective and will

23   fail well in advance of their anticipated useful life.  Plaintiffs and the Class have also suffered

24   unreasonable diminution in value of the Machines as a result of Defendants' misconduct.

25             115.     Defendants' misconduct has been and is wanton and/or reckless and/or

26   shows a reckless indifference to the interests of others.

27             116.     Plaintiffs, on behalf of themselves and all others similarly situated, demand

28   judgment against Defendants for actual and punitive damages for themselves and each member of

1  the California Class and Sub-Class, plus attorneys' fees for the establishment of a common fund,

2  interest, and costs.

3  **THIRD CAUSE OF ACTION**

4  **Breach of Express Warranty**

5  **Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1793, *et. seq***

6  **(Plaintiffs Rebro and Simpson On Behalf Of The California Class And Sub-Class)**

7      117.    Plaintiffs hereby incorporate by reference the allegations contained in the

8  preceding paragraphs of this Complaint.

9      118.    Defendants expressly warranted the Machines as being free of defects for

10  at least one full year.  Specifically, the Machines come with a One Year Limited Warranty that

11  guarantees that if the "appliance fails due to a defect in material or workmanship within one year

12  of the date of purchase" the consumer should call an 800 number to "arrange for a free repair."

13      119.    Defendants further expressly warranted the Machines' stainless steel drum

14  and plastic tub for ten years.

15      120.    Plaintiffs and Class Members reasonably relied on Defendants' warranty

16  that they would repair defects in the Machines within one year of the purchase date.  As such,

17  when Plaintiffs' Machines failed within the first year of purchaser, Plaintiffs reasonably relied on

18  Defendants' subsequent misrepresentations that (1) services short of replacement, including, but

19  not limited to "cleaning the sensors," would repair the Electronic Control Boards; (2) the

20  Electronic Control Boards did not need replacement or repair; or (3) that the replacement

21  Electronic Control Board was free of defects.  In fact, the Electronic Control Boards were

22  defective and the only way to repair the Machines, if any, is to replace them with a non-defective

23  board.

24      121.    Defendants have breached their express warranties to Plaintiffs and Class

25  Members by failing to repair the Machines equipped with the defective Electronic Control Board

26  when they failed or malfunctioned within the first year of purchase.

27      122.    Defendants further breached their express warranties to Plaintiffs and Class

28  Members because the Machines equipped with the Electronic Control Boards from the day of

1    purchase were and are defective and substantially certain to malfunction before their anticipated

2    useful life.

3          123.    Defendants have been on notice of their breach of express warranties by

4    Plaintiffs and Class Members who have made warranty claims, demanded service and repair for

5    the defective Electronic Control Boards and complained to Defendants' customer service centers

6    regarding the defective nature of the Electronic Control Boards and Defendants' failure to repair

7    them.

8          124.    As a direct result of Defendants failure to satisfy their warranties, Plaintiffs

9    and Class Members have incurred, and will continue to incur, expenses to diagnose, repair and

10   replace the Machines, which will continue to fail prematurely.

11         125.    Any contractual language contained in the Defendants' published

12   warranties that attempts to disclaim express or implied warranties, or otherwise limit remedies, is

13   unconscionable and fails to conform with the requirements for limiting warranties or remedies

14   under applicable law, causes the warranties to fail in their essential purpose, and is, thus,

15   unconscionable and void.

16         126.    To remedy Defendants' breach, Plaintiffs Rebro and Simpson, on behalf of

17   themselves and the members of the California Class and Sub-Class, seek actual, consequential

18   and incidental damages from Defendants, as well as attorneys' fees, costs and expenses.

19

20                          **FOURTH CAUSE OF ACTION**

21                           **Breach of Implied Warranty**

22        **Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, _et. seq_**

23   **(Plaintiffs Rebro And Simpson On Behalf Of The California Class And Sub-Class)**

24         127.    Plaintiffs incorporate by reference the allegations contained in the

25   preceding paragraphs of this Complaint.

26         128.    Defendants are, and at all relevant times were, manufacturers, distributors

27   and/or retailers of the Machines.  Defendants thus provided Plaintiffs and Class Members with an

28   implied warranty that the Machines equipped with the Electronic Control Boards were and are

                                - 34 -

1  merchantable and fit for the ordinary purposes for which they were sold.  The Machines equipped

2  with the defective Electronic Control Boards are not fit for ordinary purpose of washing in a

3  convenient fashion because, *inter alia*, the defective nature of the Machines causes them to

4  malfunction within the first year of purchase.  When the malfunction occurs, the Machines stop

5  mid-cycle, preventing Plaintiffs and Class Members from using their Machines, and/or denying

6  their use of their Machines for a period of time.  The Machines equipped with the Electronic

7  Control Board further fail in their essential purpose because they fail within the first year of

8  purchase, causing Plaintiffs and Class Members to have to restart the Machines and thereby

9  wasting energy and water.

10        129.    Plaintiffs and Class Members purchased the Machines with the reasonable

11  expectation that Machines would be free of defects for at least one year and that the Machines

12  would operate for the duration of their anticipated useful life.

13        130.    Contrary to the applicable implied warranties, the Machines equipped with

14  the Electronic Control Boards are not fit for their ordinary and intended purpose of providing

15  Plaintiffs and Class Members reliable and reasonably convenient automated clothes washing.

16  Instead, the Machines are defective, and unreasonably inconvenient and expensive.

17        131.    When Defendants manufactured and/or sold the Machines equipped with

18  the Electronic Control Board, they knew that the intended and ordinary purposes were to provide

19  buyers with a reliable and convenient way to wash clothing, as automatic washing machines are

20  normally relied upon to do.

21        132.    Defendants knew or had reason to know that Plaintiffs and Class Members

22  purchased the Machines equipped with the Electronic Control Boards to obtain superior washing

23  capabilities with greater convenience and efficiency than other less expensive models.

24        133.    Defendants knew or had reason to know that Plaintiffs and the Class

25  purchased the Machines equipped with the Electronic Control Board with the understanding that

26  they would be free of defects.

27        134.    The Machines equipped with the Electronic Control Boards are not

28  adequately packaged and labeled, as Defendants have concealed or otherwise failed to disclose

FIRST AMENDED COMPLAINT

1    the defective nature of the Machines.

2          135.   The Machines equipped with the Electronic Control Boards do not conform

3    to the promises and affirmations uniformly issued by Defendants in their sales and marketing

4    materials, warranties, and/or through their sales representatives.

5          136.   Plaintiffs and Class Members have used the Machines and the Electronic

6    Control Boards for their intended and ordinary purpose.

7          137.   Defendants' breaches of the implied warranties described herein constitute

8    violations of the Song-Beverly Act, Cal. Civ. Code § 1792, *et seq.*

9          138.   Any contractual language contained in the Defendants' published

10   warranties that attempts to disclaim express or implied warranties, or otherwise limit remedies, is

11   unconscionable and fails to conform with the requirements for limiting warranties or remedies

12   under applicable law, causes the warranties to fail with respect to their essential purpose, and is,

13   thus, unconscionable and void.  Under applicable law, a manufacturer, distributor, or retailer, in

14   transacting a sale in which express warranties are given, may not limit, modify, or disclaim the

15   implied warranties to the sale of consumer goods.

16         139.   Pursuant to the applicable statute, Plaintiffs Rebro and Simpson, on behalf

17   of themselves and the members of the Class, seek actual, consequential and incidental damages,

18   as well as attorneys' fees, costs and expenses.

19                        **FIFTH CAUSE OF ACTION**

20                      **Violation Of The Magnuson-Moss Act**

21                            **15 U.S.C. §§ 2301-2312**

22      **(Plaintiffs Rebro And Simpson On Behalf Of The Nationwide Class)**

23         140.   Plaintiffs incorporate by reference the allegations contained in the

24   preceding paragraphs of this Complaint.

25         141.   The Machines and the Electronic Control Boards are "consumer products"

26   within the meaning of 15 U.S.C. § 2301(1).

27         142.   Plaintiffs and all Class members are "consumers" within the meaning of 15

28   U.S.C. § 2301(3).

FIRST AMENDED COMPLAINT

143.   Both Defendants are "warrantor[s]" and "supplier[s]" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

144.   Defendants provided Plaintiffs and all members of the Nationwide Class with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

145.   Defendants' written warranties provided to Plaintiffs and all members of the Nationwide Class were identical in all material respects.

146.   Defendants warranted the Machines by promising to repair any defects in material or workmanship within the first year of purchase at a time when they knew that these Machines' Electronic Control Boards suffered from a serious defect and, nevertheless, continued to market and sell the Machines with this express warranty.

147.   Defendants are obligated under the terms of the written warranty to repair and/or replace the defective Machines and/or Electronic Control Boards sold to Plaintiffs and the Nationwide Class.

148.   Defendants have breached their written warranty, as set forth above, by supplying and selling the Machines equipped with the Electronic Control Boards in a defective condition that does not meet their warranty obligations and by failing to repair or replace the defect and/or defective parts, including the defective Electronic Control Boards that failed within the first year of purchase.  Defendants' representations regarding the Machines and Electronic Control Boards also constituted warranties within the meaning of the Magnuson-Moss Act and Defendants' breach of those promises and representations constitutes a breach of warranty as well.

149.   As set forth above, Defendants' warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Nationwide Class can not and should not be limited to the remedies set forth in the written warranty and, instead, should be permitted to recover other appropriate relief, including damages and injunctive relief.

150.   Defendants received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Defendants' knowledge of the defect Defendants failed and refused to honor their warranty.

151. Defendants have received, upon information and belief, hundreds, if not thousands, of complaints and other notices from their customers nationwide advising them of the defective nature of the Electronic Control Board and Machines.

152. Plaintiffs have given Defendants a reasonable opportunity to cure their failures with respect to the warranty, and Defendants have failed to do so.

153. Defendants have failed to provide to Plaintiffs or the members of the Nationwide Class a product that conforms to the qualities and characteristics that Defendants expressly warranted when they sold the Machines equipped with the defective Electronic Control Boards to Plaintiffs and the Nationwide Class.

154. The limited warranty fails in its essential purpose because the Electronic Control Boards are defective and the Machines will remain defective until the Electronic Control Boards are replaced with non-defective boards.

155. Defendants' written warranty materials describe and represent the Machines equipped with the Electronic Control Boards as being able to complete loads of laundry without failure and save the user time, energy and water.

156. The written warranty also provides that if the "appliance fails due to a defect in material or workmanship within one year of the date of purchase" the consumer can call an 800 number to "arrange for a free repair."

157. Defendants breached this warranty by failing to repair the defective Electronic Control Boards when they failed within the first year of ownership.

158. Furthermore, the written warranty fails in its essential purpose because, as a result the inherently defective nature of the Electronic Control Boards, Defendants knew they were unable to repair the boards and, instead, were required to replace the defective Electronic Control Boards with boards that are not defective. Instead, Defendants failed to repair the Machines or replaced the defective Electronic Control Boards with equally defective boards.

159. Despite repeated demands by Plaintiffs and members of the Nationwide Class submitted under the terms of the written warranty, Defendants have failed and refused to replace the Electronic Control Boards with non-defective parts that conform to their written

1   warranty.

2         160.   In their capacity as a warrantor, and by the conduct described herein, any

3   attempt by Defendants to limit the express warranties in a manner that would exclude coverage of

4   the defective Electronic Control Board is unconscionable and any such effort to disclaim, or

5   otherwise limit, liability for the defective Electronic Control Boards is null and void.

6         161.   The regulations of the Federal Trade Commission ("FTC") specifically

7   provide as follows with respect to a product that is warranted: "A seller or manufacturer should

8   advertise that a product is warranted or guaranteed only if the seller or manufacturer, as the case

9   may be, promptly and fully performs its obligations under the warranty or guarantee." 16 C.F.R. §

10   239.5 (emphasis added).

11         162.   Here, by warranting or guaranteeing a product with a known defect,

12   Defendants engaged in false, deceptive and misleading advertising, marketing and representations

13   in violation of the FTC's regulations and guidance.

14         163.   By Defendants' conduct as described herein, including Defendants'

15   knowledge of the defective Electronic Control Boards and their action, and inaction, in the face of

16   that knowledge, Defendants failed to comply with their obligations under their written promises,

17   warranties and representations.

18         164.   As a result of Defendants' breach of express warranties, Plaintiffs and the

19   members of the Nationwide Class are entitled to and hereby demand the right to revoke their

20   acceptance of the Machines, obtain damages and equitable relief, and obtain attorneys' fees and

21   costs pursuant to 15 U.S.C. § 2310.

22         **SIXTH CAUSE OF ACTION**

23         **Violation of the Consumers Legal Remedies Act**

24         **Cal. Civ. Code § 1750, *et seq.***

25         **(All Plaintiffs On Behalf Of The California Sub-Class)**

26         165.   Plaintiffs incorporate by reference the allegations contained in the

27   preceding paragraphs of this Complaint.

28         166.   Each Defendant is a "person" as defined by Civil Code § 1761(c).

FIRST AMENDED COMPLAINT

167.    Plaintiffs and the members of the Sub-Class are õconsumersö within the meaning of Civil Code §1761(d).

168.    The Machines equipped with the Electronic Control Boards constitute õgoodsö as defined by Civil Code § 1761(a).

169.    Plaintiffsø and the Sub-Class membersø purchases of the Machines are õtransaction[s]ö as defined by Civil Code § 1761(e).

170.    Defendants provided or purported to provide õservicesö to Plaintiffs and the members of Sub-Class as defined by Civil Code § 1761(b).

171.    Venue is proper pursuant to Civil Code § 1780(c) because Defendants do a significant amount of business in this County.  A Declaration of Plaintiff Tietsworth establishing this Court as the proper venue for this action was attached to the original complaint as required by applicable law.

172.    Defendants violated the CLRA by representing, through advertising, warranties and other express representations, that the Machines equipped with the Electronic Control Boards had attributes that they did not actually have, including, but not limited to representations that the Machines equipped with the Electronic Control Boards were top-of-the-line automatic washing machines that were free of manufacturing or design defects, that the Machines would complete loads of laundry while saving the consumers time, energy and water. The representations and omissions described herein were false, deceptive and/or misleading.

173.    Defendants violated Civil Code § 1770(a)(2) by misrepresenting the source, sponsorship, approval or certification of the Machines equipped with the Electronic Control Boards.

174.    Defendants violated Civil Code § 1770(a)(5) by representing that the Machines equipped with the Electronic Control Boards have approval, characteristics, uses and benefits that they do not have.

175.    Defendants violated Civil Code § 1770(a)(7) by representing that the Machines equipped with the Electronic Control Boards were of a particular standard or quality when they were not.

176.     Defendants violated Civil Code § 1770(a)(9) when they advertised and marketed the Machines equipped with the Electronic Control Boards with the intent not to sell them as advertised.

177.     Defendants violated Civil Code § 1770(a)(19) by inserting an unconscionable provision into their contracts and limiting the warranties of the Machines equipped with the Electronic Control Boards when Defendants knew or should have known that the products were defective.

178.     Defendants engaged in deceptive practices, in violation of the CLRA, that were designed to induce Plaintiffs and the members of the Sub-Class to purchase the Machines equipped with the Electronic Control Boards.

179.     By engaging in the foregoing unfair or deceptive conduct, Defendants actively concealed and failed to disclose material facts about the Machines equipped with the defective Electronic Control Boards.

180.     The representations set forth above regarding the Machines equipped with the Electronic Control Boards are material facts that a reasonable person would have considered important in deciding whether or not to purchase (or to pay the same price for) a washing machine.  Plaintiffs and the members of the Sub-Class justifiably acted or relied upon to their detriment the misrepresentations and/or concealed or non-disclosed facts as evidenced by their purchase of the Machines.

181.     Defendants' acts were intended to be deceptive and/or fraudulent, namely, to market, distribute and sell the Machines equipped with the Electronic Control Boards.

182.     Plaintiffs and the members of the Sub-Class suffered injury in fact as a direct result of Defendants' misleading marketing campaign and/or concealment of material facts in violation of the CLRA in that they have paid, or will have to pay, to repair Machines equipped with the Electronic Control Boards that were defective when purchased and that have or will fail before the anticipated useful life of the product.  Had Defendants disclosed the true quality, nature and drawbacks of the Machines equipped with the Electronic Control Boards, Plaintiffs and the members of the Sub-Class would not have purchased (or would have paid less for) the Machines.

1    Plaintiffs and the members of the Sub-Class have also been denied use of their Machines,

2    expended money on repairs and extended warranties, and suffered unreasonable diminution in

3    value of their Machines as a result of Defendants' conduct.

4            183.    To this day, Defendants continue to violate the CLRA by concealing the

5    defective nature of the Machines equipped with the Electronic Control Boards, in continuing to

6    sell the Machines and by selling (and profiting unjustly from) costly replacements and repairs of

7    the Machines and/or the Electronic Control Boards.

8            184.    Pursuant to Civil Code § 1782(a), Plaintiffs served Defendants with notice

9    of the alleged violations of the CLRA by certified mail, return receipt requested, on November

10   13, 2008 and again December 19, 2008.  Copies of these notices are attached hereto as Exhibit A.

11   Despite this, Defendants failed to timely or adequately address the violations alleged herein.

12           185.    Plaintiffs, on behalf of themselves and all others similarly situated, demand

13   judgment against Defendants under the CLRA for injunctive relief and damages as may be

14   appropriate and an award of attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION

### Unjust Enrichment

### (All Plaintiffs On Behalf Of The Nationwide Class )

18           186.    Plaintiffs incorporate by reference the allegations contained in preceding

19   paragraphs of this Complaint.

20           187.    By their wrongful acts and omissions described herein, including selling

21   the Machines equipped with the Electronic Control Boards to Plaintiffs and Class Members,

22   Defendants were unjustly enriched at the expense of Plaintiffs and the Class.

23           188.    It would be inequitable for Defendants to retain the profits, benefits, and

24   other compensation obtained by from its wrongful conduct in manufacturing, marketing and

25   selling the Machines equipped with the defective Electronic Control Boards.

26           189.    Plaintiffs on behalf of themselves and all others similarly situated, seek

27   restitution from Defendants, and an order of this Court proportionally disgorging all profits,

28   benefits, and other compensation obtained by Defendants from their wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Classes and Sub-Class, demand judgment against Defendants as follows:

a. An order certifying the Classes and any other appropriate subclasses, including the proposed California Sub-Class, and designating Plaintiffs as the Representatives of the Classes and Sub-Class and Plaintiffs'counsel as Class Counsel;

b. Restitution and disgorgement to the extent permitted by applicable law, together with interest thereon from the date of payment, to the victims of such violations;

c. Monetary damages, including, but not limited to any compensatory, incidental or consequential damages commensurate with proof at trial for the acts complained of herein;

d. Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

e. To the extent that Defendants have continued to market and sell the Machines equipped with the Electronic Control Boards in the manner challenged in this action, an order requiring Defendants to immediately cease their wrongful conduct as set forth above and enjoining Defendants from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; and an order requiring Defendants to engage in a corrective notice campaign;

f. A permanent injunction mandating that Defendants pay, in part or in whole, for the repair and/or replacement of the Machines and/or the defective Electronic Control Panels;

g. A declaration that Defendants are financially responsible for notifying all Class Members of the pendency of this action;

h. Reasonable costs and attorneys'fees;

i. Statutory pre-judgment interest; and

j. All other relief the Court deems just and appropriate.

FIRST AMENDED COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2          Plaintiffs, on behalf of themselves and the Classes, demand a jury trial in this action for all

3    of the claims so triable.

4    DATE: June 15, 2009

                                        Respectfully submitted,
5
                                        ANDRUS ANDERSON LLP
6
                                        _____/s/ Jennie Lee Anderson_____
7                                        Jennie Lee Anderson

8                                        Lori E. Andrus (SBN 205816)
                                        Jennie Lee Anderson (SBN 203586)
9                                        ANDRUS ANDERSON LLP
                                        155 Montgomery Street, Suite 900
10                                       San Francisco, CA 94104
                                        Telephone: (415) 986-1400
11                                       Facsimile: (415) 986-1474
                                        lori@andrusanderson.com
12                                       jennie@andrusanderson.com

13                                       James E. Miller (SBN262553)
                                        SHEPHERD,  FINKELMAN, MILLER &
14                                       SHAH, LLP
                                        65 Main Street
15                                       Chester, CT 06412
                                        Telephone: (860) 526-1100
16                                       Facsimile: (860) 526-1120
                                        jmiller@sfmslaw.com
17
                                        James C. Shah   (SBN 260435)
18                                       SHEPHERD,  FINKELMAN, MILLER &
                                        SHAH, LLP
19                                       35 East State Street
                                        Media, PA 19063
20                                       Telephone: (610) 891-9880
                                        Facsimile: (610) 891-9883
21                                       jshaw@sfmslaw.com

22                                       Karen M. Leser-Grenon  (SBN 231189)
                                        SHEPHERD,  FINKELMAN, MILLER &
23                                       SHAH, LLP
                                        401 West A Street, Suite 2350
24                                       San Diego, CA 92101
                                        Telephone: 619-235-2416
25                                       Facsimile: 619-234-7334
                                        kleser@sfmslaw.com
26
                                        *Attorneys for Plaintiffs and the Class*
27

28

# EXHIBIT õAö

# EXHIBIT õAö

## ANDRUS LIBERTY & ANDERSON LLP

1438 MARKET STREET · SAN FRANCISCO, CALIFORNIA 94102
T: 415.896.1000 · F: 415.896.2249 · LORI@LIBERTYLAW.COM

November 13, 2008

*Via Certified Mail*

Sears, Roebuck and Co.
3333 Beverly Road, B2-130B
Hoffman Estates, IL 60179

Whirlpool Corporation
2000 North M-63
Benton Harbor, MI 49022

**RE:  Notice of Violations of Consumer Legal Remedies Act and Demand**

Dear Sirs:

Pursuant to California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and specifically § 1782(a)(1)(2), Renee Tietsworth ("Plaintiff") on behalf of herself and all others similarly situated, and through the undersigned counsel, hereby notify you that Sears Roebuck and Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (collectively, "Defendants") have violated California Civil Code § 1770 by representing, through advertising, warranties and other express representations and/or by failing to disclose material facts, that top-loading Kenmore Elite Oasis automatic washing machines, including, but not limited to model numbers[1] 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715* ("the Machines") had attributes that they did not actually have.

Specifically, our investigation has revealed that the Machines are defective such that they regularly and routinely stop in mid-cycle and display an "F" error code, including but not limited to "F51" or "F1." In such circumstances, the owner is instructed by the owner's manual to stop and restart the Machine upon receiving an "F" error code and, if the code appears again, to contact Defendants for service. Restarting the Machines, if successful at all, works for only a short period of time before the Machine stops again in mid-cycle and displays the error code, requiring Plaintiff and similarly-situated consumers to incur significant cost to attempt to repair the Machines.

Based upon the information that we have discovered, as well as the experience of consumers in attempting to require Defendants to rectify the serious defect plaguing the Machines, consumers, including Plaintiff, believe and hereby allege that Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices by marketing and selling the Machines even though they were inherently defective in a manner which was intended to, and/or did, in fact, result in the unlawful sale of goods to consumers. Specifically, Plaintiff and other consumers allege that Defendants violated the following sections of California Civil Code § 1770:

---

[1] Omitted from these model numbers are the last four digits, represented by an asterisk, which indicate the color code of a particular washer.

Sears Roebuck and Co.
Whirlpool Corporation
November 13, 2008
Page 2

1.  Civil Code § 1770(a)(2) by misrepresenting the source, sponsorship, approval or
    certification of the Machines.
2.  Civil Code § 1770(a)(5) by representing that the Machines have approval,
    characteristics, uses and benefits that they do not have.
3.  Civil Code § 1770(a)(7) by representing that the Machines were of a particular
    standard or quality when they were not.
4.  Civil Code § 1770(a)(9) when Defendants advertised and marketed the Machines with
    the intent not to sell them as advertised.
5.  Civil Code § 1770(a)(19) by inserting an unconscionable provision into their contracts
    and limiting the warranties of the Machines when Defendants knew or should have
    known that the products were defective.

Since we believe that the Machines were known by Defendants to be defective at all pertinent
times and that Defendants have acted affirmatively to conceal the existence of these defects, we
believe that Defendants should have alerted affected owners about this problem. To date, Defendants
have failed to do so. Such failure to disclose the defective nature of the Machines, as well as any
attempt by Defendants to limit the warranty associated with the Machines at the time of the sale, as
well as the remedies and relief available to consumers, when these products were known to be
defective and were likely to fail in their essential purpose during their useful life, also violated the
above-identified sections of the CLRA.

This Notice is being served on behalf of Plaintiff and all similarly-situated consumers, who
hereby demand that Defendants correct, repair, replace or otherwise rectify the Machines alleged
herein to have been marketed and sold in violation of California Civil Code § 1770, that Defendants
cease and desist from the unlawful conduct described herein, and that Defendants reimburse Plaintiff
and all other similarly-situated consumers for the amounts that they paid for these defective
Machines, as well as for all other expenses that they have incurred as a result of purchasing the
defective Machines.

We have sent this letter directly to you in order to fully comply with the requirements of
California Civil Code § 1782. We, of course, hope that you will act immediately to rectify this
situation and stand ready to discuss a reasonable resolution of this matter on the terms outlined above
or on similar terms acceptable to Plaintiff and similarly-situated consumers.

If you have any questions, require any additional information or would like to discuss these
matters, please do not hesitate to contact me.

Very truly yours,

Lori E. Andrus

# ANDRUS LIBERTY & ANDERSON LLP

1438 MARKET STREET · SAN FRANCISCO, CALIFORNIA 94102
T: 415.896.1000 · F: 415.896.2249 · LORI@LIBERTYLAW.COM

December 19, 2008

### *Via Certified Mail, Return Receipt Requested*

Sears, Roebuck and Co.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, California 90017

Whirlpool Corporation
C/O CSC—Lawyers Incorporating Service
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833
Attention Eric J. Sharon, Senior Counsel

President and CEO, Sears Roebuck and Co.
C/O Sears Outlet
960 Sherman Street
San Diego, CA 92110

## RE: Notice of Violations of Consumer Legal Remedies Act and Demand

Dear Sirs:

This letter follows up and supplements our letter of November 13, 2008, sent certified mail, return receipt requested, to Sears Roebuck and Co. and Whirlpool Corporation at their respective corporate headquarters.

Pursuant to California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and specifically § 1782(a)(1)(2), Renee Tietsworth ("Plaintiff") on behalf of herself and all others similarly situated, and through the undersigned counsel, hereby notify you that Sears Roebuck and Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (collectively, "Defendants") have violated California Civil Code § 1770 by representing, through advertising, warranties and other express representations, and/or by failing to disclose material facts, that top-loading Kenmore Elite Oasis automatic washing machines, including, but not limited to model numbers[1] 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715* ("the Machines") had attributes that they did not actually have.

---

[1] Omitted from these model numbers are the last four digits, represented by an asterisk, which indicate the color code of a particular washer.

Sears Roebuck and Co.,
Whirlpool Corporation
December 19, 2008
Page 2

　Specifically, our investigation has revealed that the Machines are defective such that they regularly and routinely stop in mid-cycle and display an "F" error code, including but not limited to "F51" or "F1." In such circumstances, the owner is instructed by the owner's manual to stop and restart the Machine upon receiving an "F" error code and, if the code appears again, to contact Defendants for service. Restarting the Machines, if successful at all, works for only a short period of time before the Machine stops again in mid-cycle and displays the error code, requiring Plaintiff and similarly-situated consumers to incur significant cost to attempt to repair the Machines.

Based upon the information that we have discovered, as well as the experience of consumers in attempting to require Defendants to rectify the serious defect plaguing the Machines, consumers, including Plaintiff, believe and hereby allege that Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices by marketing and selling the Machines even though they were inherently defective in a manner which was intended to, and/or did, in fact, result in the unlawful sale of goods to consumers. Specifically, Plaintiff and other consumers allege that Defendants violated the following sections of California Civil Code § 1770:

1.   Civil Code § 1770(a)(2) by misrepresenting the source, sponsorship, approval or certification of the Machines;

2.   Civil Code § 1770(a)(5) by representing that the Machines have approval, characteristics, uses and benefits that they do not have;

3.   Civil Code § 1770(a)(7) by representing that the Machines were of a particular standard or quality when they were not;

4.   Civil Code § 1770(a)(9) when Defendants advertised and marketed the Machines with the intent not to sell them as advertised; and

5.   Civil Code § 1770(a)(19) by inserting an unconscionable provision into their contracts and limiting the warranties of the Machines when Defendants knew or should have known that the products were defective.

Because we believe that the Machines were known by Defendants to be defective at all pertinent times and that Defendants have acted affirmatively to conceal the existence of these defects, we contend that Defendants should have alerted affected owners about this problem. To date, Defendants have failed to do so. Such failure to disclose the defective nature of the Machines, as well as any attempt by Defendants to limit the warranty associated with the Machines at the time of the sale, as well as the remedies and relief available to consumers, when these products were known to be defective and were likely to fail in their essential purpose during their useful life, also violated the above-identified sections of the CLRA.

Sears Roebuck and Co.,
Whirlpool Corporation
December 19, 2008
Page 3

This Notice is being served on behalf of Plaintiff and all similarly-situated consumers who purchased the Machines, who hereby demand that Defendants correct, repair, replace or otherwise rectify the Machines alleged herein to have been marketed and sold in violation of California Civil Code § 1770, by giving or agreeing to give within a reasonable period of time an appropriate correction, repair, replacement, or other remedy. Such remedy shall include repair or replacement of the machines or the defective parts free of charge and/or reimbursement for the amount paid for the defective Machines and expenses incurred as a result of purchasing the defective Machines.

We have sent this letter directly to you in order to fully comply with the requirements of California Civil Code § 1782. We, of course, hope that you will act immediately to rectify this situation and stand ready to discuss a reasonable resolution of this matter on the terms outlined above or on similar terms acceptable to Plaintiff and similarly-situated consumers.

If you have any questions, require any additional information or would like to discuss these matters, please do not hesitate to contact me.

Very truly yours,

Jennie Lee Anderson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2009, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 16, 2009                                    */s/ Jennie Lee Anderson*
                                                        Jennie Lee Anderson

                                        Jennie Lee Anderson (SBN 203586)
                                        155 Montgomery Street, Suite 900
                                        San Francisco, CA 94104
                                        Telephone: (415) 896-1400
                                        Facsimile: (415) 896-1474
                                        jennie@andrusanderson.com