1  Clement L. Glynn (CA Bar No. 057117)
   James M. Hanlon, Jr. (CA Bar No. 214096)
2  Glynn & Finley, LLP
3  100 Pringle Avenue, Suite 500
   Walnut Creek, California 94596
4  Tel: (925) 210-2800; Fax:   (925) 945-1975
   cglynn@glynnfinley.com, jhanlon@glynnfinley.com
5
   Michael T. Williams (CO Bar No. 33172; admitted *pro hac vice*)
6  Galen D. Bellamy (CA Bar No. 231792)
7  Joel S. Neckers (CO Bar No. 40886; admitted *pro hac vice*)
   Wheeler Trigg Kennedy LLP
8  1801 California Street, Suite 3600
   Denver, Colorado 80202
9  Tel: (303) 244-1800; Fax:  (303) 244-1879
   williams@wtotrial.com, bellamy@wtotrial.com,
10 neckers@wtotria.com
11 *Attorneys for Sears, Roebuck and Co.,and Whirlpool Corporation*

12 Jennie Lee Anderson (CA Bar No. 203586)
   Lori E. Andrus (CA Bar No. 205816)
13 Andrus Anderson LLP
14 155 Montgomery Street, Suite 900
   San Francisco, CA 94104
15 Tel: (415) 986-1400; Fax: (415) 986-1474
   jennie@andrusanderson.com, lori@andrusanderson.com
16 *Attorneys for Plaintiffs and the Proposed Class*
   [Additional counsel listed on signature page]
17

18                     **UNITED STATES DISTRICT COURT**

19             **NORTHERN DISTRICT OF CALIFORNIA--SAN JOSE DIVISION**

20

| | |
|---|---|
| 21  RENEE TIETSWORTH, SUZANNE REBRO, and SONDRA SIMPSON, On Behalf of Themselves and All Others Similarly Situated, | CASE NO. C09-00288-JF |
| 22 | **JOINT CASE MANAGEMENT STATEMENT** |
| 23       Plaintiffs, | |
| 24       vs. | |
| 25  SEARS, ROEBUCK AND CO., and WHIRLPOOL CORPORATION, | Date:      July 17, 2009<br>Time:      10:30 a.m.<br>Courtroom: 3 - 5th Floor<br>Judge:     Hon. Jeremy Fogel |
| 26 | |
| 27       Defendants. | |
| 28 | |

Pursuant to Federal Rules of Civil Procedure 26(f) and Civil L.R. 16-9(a) and (b), Plaintiffs Renee Tietsworth, Suzanne Rebro, and Sondra Simpson ("Plaintiffs") and Defendants Sears, Roebuck and Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (collectively, "Defendants") submit the following Joint Case Management Statement.

## I.   JURISDICTION AND SERVICE

This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441(a) and (b), and 1453 because this is a putative class action involving more than 100 putative class members who are seeking to recover in excess of $5,000,000, and the parties are minimally diverse. *See* 28 U.S.C. § 1332(d).

There are no disputed issues regarding personal jurisdiction or venue, and all parties have been served.

## II.   FACTS

Sears began selling the Whirlpool-manufactured Kenmore Elite® Oasis® top-loading washing machines ("Oasis washers") at its retail stores, including those in California, in November 2005, and it continues to sell Oasis washers today. Plaintiffs, owners of Oasis washers, brought a class action lawsuit against Defendants alleging that the Oasis washers are equipped with defective electronic control boards ("control boards"). Plaintiffs seek monetary and equitable relief on behalf of themselves and three proposed classes for breach of California's Unfair Competition Law ("UCL"), fraudulent concealment or nondisclosure, breach of express and implied warranties under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), violation of the Magnuson-Moss Warranty Act ("MMWA"), violation of the Consumers Legal Remedies Act ("CLRA"), and unjust enrichment.

The factual issues in dispute include:

- Whether the Oasis washers and/or their control boards are defective;

- The timing and nature of problems Plaintiffs and class members experienced with their Oasis washers and whether those problems are attributable to the allegedly defective control boards;

- What in-warranty and out-of-warranty communications Plaintiffs had with Sears or Whirlpool concerning the problems they experienced with their Oasis washers;

- The nature of any pre-purchase communications, representations, or warranties Plaintiffs received from Sears or Whirlpool;

- Whether Defendants engaged in marketing and promotional campaigns regarding the purported benefits of the machines;

- What number and percentage of Oasis washing machine owners have experienced a problem with their washing machine that is attributable to a malfunction of the control board;

- Whether Defendants made material misrepresentations regarding the Oasis washers;

- Whether Defendants concealed material information from Plaintiffs and class members;

- Whether the Oasis machines present a safety issue due to the alleged defects;

- The use, care, and maintenance of the Oasis washers by Plaintiffs and others; and

- The warranty service, policy adjustments, product exchanges, and other post-sale remedies offered or implemented by Sears or Whirlpool for Oasis washer owners and the timing and reasons for offering such remedies.

### III.  LEGAL ISSUES

The disputed points of law are anticipated to be:

- Whether Defendants had a duty to disclose the allegedly defective nature of the Oasis machines and/or their control boards and whether they breached that duty;

- Whether Defendants breached their express and implied warranties to Plaintiffs and class members;

- Whether Defendants' conduct violates the CLRA. Cal. Civ. Code § 1750, *et seq.*

- Whether Defendants' conduct was unlawful, unfair or fraudulent in violation of the California UCL. Cal. Bus. & Prof. Code § 17200 *et seq.*

- Whether Plaintiffs adequately alleged and can prove a violation of California's UCL. *See* Cal. Bus. & Prof. Code § 17200 *et seq.*

- Whether the allegations in Plaintiffs' First Amended Complaint meet the heightened pleading standard applicable to fraud claims. *See* Fed. R. Civ. P. 9(b).

- Whether Plaintiffs have adequately alleged and can prove Sears or Whirlpool, or both companies, breached any express or implied warranties.  *See* Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 *et seq.*

- Whether Plaintiffs have adequately alleged and can prove a violation of the MMWA. *See* 15 U.S.C. §§ 2301-2312.

- Whether Plaintiffs have adequately alleged and can prove unlawful, unfair, or fraudulent conduct under the CLRA.  *See* Cal. Civ. Code § 1750, *et seq*.

- Whether Sears or Whirlpool or both companies were unjustly enriched at Plaintiffs' expense.

- Whether Plaintiffs are entitled to damages or equitable relief, or both, as a result of Whirlpool's and Sears' alleged misconduct.

## IV.   MOTIONS

Defendants filed a motion to dismiss the original complaint, which this Court granted on May 14, 2009.  Plaintiffs filed their First Amended Complaint on June 15, 2009 (the "Complaint").  Defendants' responses are due on or before July 15, 2009.  On or before that date, Defendants anticipate that they will file a motion to dismiss the Complaint and a motion to strike the class allegations from the Complaint.

Plaintiffs intend to file a motion for class certification as set forth in their proposed schedule, below.

## V.   AMENDMENT OF PLEADINGS

The parties do not anticipate that any parties, claims, or defenses will be voluntarily added or dismissed from the Complaint.

## VI.   EVIDENCE PRESERVATION

Defendants have taken all reasonable steps to preserve electronic documents and data dealing in a reasonably direct manner with the claims or defenses in this lawsuit, as required under applicable federal rules.  For example, Defendants have identified the personnel who are believed likely to possess relevant documents or data and have instructed them to preserve those documents and data and to suspend any document-retention policy that might in the ordinary

course of business result in the destruction of responsive documents or data, including e-mail. Defendants also have instructed their respective information technology personnel to take reasonable steps to preserve files, including e-mail files, that are maintained on network servers and that are associated with personnel believed likely to have relevant documents.  Defendants also have taken steps to preserve electronic data for the entire duration of the putative class period for all putative class members, including, for example, product registrations, service records, and call center contact records.

Plaintiffs have taken all reasonable efforts to preserve relevant documents.  Plaintiffs do not have electronically stored documents relevant to this action.

**VII.    DISCLOSURES**

On or before July 8, 2009, the parties will exchange the disclosures required by Federal Rule of Civil Procedure 26(a)(1).

**VIII.   DISCOVERY**

There has been no discovery taken to date.

The parties propose the following discovery plan pursuant to Rule 26(f)(3):

(A)    <u>Initial disclosures</u>:  The parties will exchange the pre-discovery disclosures required by Rule 26(a)(1) on or before July 8, 2009;

(B)    <u>Subject matters of discovery</u>:  Discovery in this proceeding will focus primarily on Whirlpool's engineering design, testing, and manufacturing of Oasis washers, and Sears' marketing, sales, and servicing of Oasis washers; knowledge of Sears, Whirlpool, and others regarding alleged defects in the Oasis washers' control boards and customer complaints regarding the control boards; whether Sears' or Whirlpool's, or both companies', conduct violated California's consumer protection statutes, violated any implied or express warranties, and unjustly enriched Sears or Whirlpool (or both); whether the design and manufacture of the Oasis washers was and is defective; the decisions by Plaintiffs to purchase those washing machines; the sales transactions with Sears or other retailers; Plaintiffs' use, care, maintenance, problems, and repairs of the Oasis washers; the warranty service, policy adjustments, product exchanges, and other post-sale remedies offered or implemented by Sears or Whirlpool concerning the control boards in Oasis washers; what remedial efforts, if any, were taken by the Defendants as a result of this lawsuit.

(C)  Start of discovery:  The parties disagree concerning when discovery should commence.

Plaintiffs' position:  Plaintiffs believe that discovery is currently underway, should proceed apace and should not be delayed by the filing of Defendants' motion to dismiss the SAC or Defendants' motion to strike Plaintiffs' class allegations.  Further, Defendants have indicated that their motion to strike class allegations will be based in part on what, if any, remedial action they have taken to address the defects alleged in the SAC.  Because this argument raises factual issues, Plaintiffs believe that such motion is inappropriate and certainly not the basis to stay discovery.  Plaintiffs believe that any postponement of discovery is in contravention of the Federal Rules and that, if Defendants have any legitimate ground for such delay, they should timely file a motion to stay.

Defendants' position:  Defendants believe that discovery should not commence until the Court has ruled on Defendants' motions to dismiss and to strike Plaintiffs' class allegations, especially because the Court already dismissed the original complaint in its entirety, and because if Plaintiffs were permitted to take full discovery now, that would defeat the purpose of Defendants' motions. Defendants' contend that Plaintiffs' class allegations lack any foundation in fact or law under Rule 23, and such demonstrably false and individualized allegations cannot properly provide a basis for allowing Plaintiffs to impose on Whirlpool, Sears, and the Court the substantial costs involved in class-certification discovery and proceedings.  The proposed class members bought different models of Oasis washers from different model years and with different features, made their purchase decisions for different reasons after receiving different representations (if any) from Sears or third parties, treated their machines differently, experienced different alleged problems (if any), made different efforts at remediation (if any), had different warranties and service plans, and received different customer-satisfaction remedies (if any).  In fact, the vast majority of Oasis buyers have not experienced any error code problem and, therefore, have no claim at all against Sears or Whirlpool.  Accordingly, Defendants believe that the parties should conduct full discovery only if the Court were to deny Defendants' dispositive motions, and beginning on the day following the Court's ruling on Defendants' motions.  Given the parties' disagreement regarding the appropriate timing of discovery, the parties are submitting separate proposed discovery schedules under Section XVII below.

(D)  Format of document productions:  Reasonably accessible electronically stored information ("ESI"), including word processing documents, PDF documents, and e-mails, shall be produced to the requesting party as bates-stamped single-page TIFF image files and should be accompanied by a "load file," which will contain the following fields of data except to the extent that the contents of such fields for particular documents contain information subject to claims of attorney-client privilege or work-product immunity.

"Stand-alone" or "Loose" Documents:

(i)   custodian;
(ii)  subject;
(iii) date created;
(iv)  date modified;
(v)   author;
(vi)  created time;
(vii) edited time;
(viii) last author;
(ix)  title;
(x)   extracted text (except as qualified below with respect to redacted documents); and
(xi)  association of family documents.

E-mail Files:

(i)    custodian;
(ii)   from;
(iii)  to;
(iv)   CC;
(v)    BCC;
(vi)   subject;
(vii)  message ID;
(viii) date time;
(ix)   time zone;
(x)    extracted text; and
(xi)   association of family documents.

The "load file" shall also include information about where each document begins and ends to facilitate the use of produced materials with commercially available document management or litigation support software such as Summation or Concordance.

"Extracted text" means a text file containing the full text that has been electronically extracted from the original, native electronic files. Produced images may be stamped with language or markings identifying the case in which images have been produced and, as appropriate, the confidential status of the images. Such language or markings shall be in locations on the images that do not obscure any text or graphics. The images may be reduced in size to accommodate such stamps, but any such reduction shall be the minimum necessary to allow the application of the stamps without obscuring the image text or graphics. In no event shall the size reduction prevent reasonable viewing of the image text or graphics.

The producing party must preserve all metadata, formatting, and revision history, if any, of the native electronic documents that are not produced in native format. Any party may request, upon a reasonable showing of good cause, production of

metadata, formatting, and/or revision history of particular files.  Where the full text of the document is not available (*e.g.*, scanned hardcopy documents or any electronic documents that require redaction prior to production), the documents should be produced in single-page TIFF image files and accompanying Optical Character Recognition ("OCR") text files.

With the exception of documents identified below to be produced in their native format in the first instance, upon examination of word processing and other files produced in TIFF-image format, any party may request, upon a reasonable showing of good cause, production of particular files in native format.  The requested party shall act reasonably in making a response to any such requests.

Native-format productions:  The parties agree that relevant information from enterprise databases will be produced in reasonably usable format, such as Excel spreadsheet or Microsoft Access.  The parties also agree that Microsoft Access, Excel, and other spreadsheet files, video files, and audio files will be produced in native format, unless such production in native format presents issues of unreasonable burden or privilege (*e.g.*, because a portion of the video or audio file is subject to claims of attorney-client privilege or work-product immunity), in which case, the parties shall meet and confer on the format of its production.  The parties disagree as to whether PowerPoint and presentation files should be produced in native format, as follows:

Plaintiffs' position.  Rule 34(b)(1)(C) permits the requesting party to specify the form or forms in which ESI is to be produced.  When the form or forms are not specified, the producing party is obligated to produce ESI as ordinarily maintained or in a "reasonably useable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii).  Production of PowerPoint and other presentation files in native format is necessary here because the "notes" function of the programs can only be viewed in native format.  The PowerPoint "notes" function allows the author to make notations to accompany each slide that cannot be seen by individuals viewing the presentation and that are obscured in their entirety when produced as TIFF images.  Thus, producing PowerPoint and other presentation files in non-native format renders documents not reasonably usable.

Defendants argue incorporating redactions and Bates numbers into the native documents would be too difficult, burdensome and/or prejudicial.  However, Courts have rejected these same arguments where, as here, Defendants have not shown that "the responsive documents are so replete with privilege redactions that such as task would transcend all reasonableness." *In re Verisign, Inc. Sec. Litig.*, 2004 WL 2445243, at *3 (N.D. Cal. Mar. 10, 2004).  It also bears noting that having PowerPoint documents in native format will facilitate presentations at trial, providing additional benefit to the parties and the Court. *See also Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.,* 2008 WL 5111184, at *1 (S.D. Ohio Dec. 2, 2008) (ordering defendants to produce the documents natively, finding benefit in the ease at which electronic documents can be stored and manipulated during the litigation process).

Defendants' position.  Defendants object to the native-format production of

PowerPoint and other presentation files in the first instance.  Defendants believe that PowerPoint files should be produced in the first instance, like word processing documents such as Word documents, as bates-stamped single-page TIFF image files with accompanying metadata and Extract Text, as described above.  After Plaintiffs have reviewed Defendants' document productions, Plaintiffs should submit to Sears or Whirlpool a list of documents that Plaintiffs request in native format (*e.g.*, PowerPoint files that Plaintiffs intend to use as trial exhibits).  Sears or Whirlpool will cooperate with Plaintiffs in response to any such good-faith request.  Defendants object to the initial production of PowerPoint files in native format because:  (1) The new federal rules do not require production in native format, and Defendants' productions will be in a format that beyond cavil is in "reasonably usable form," which is the standard that the new rules authorize.  Plaintiffs will have full text-searching capability, as well as the ability to search the files by date, by author, by recipient, or by original file custodian.  (2) Defendants have made a good-faith effort to accommodate Plaintiffs' <u>legitimate</u> need for some native-format files by agreeing to produce Excel and other spreadsheets, audio files, and video files in their native formats.  (3) There are a host of reasons why any native-format production on the massive scale Plaintiffs request would be inefficient, less cost-effective, and unfairly prejudicial to Sears and Whirlpool: (a) Native-format production necessarily would cause Sears and Whirlpool to be unable even to bates-stamp each file, much less each "page" or portion of such file, for purposes of litigation-management and control.  This is a substantial issue in complex multi-party litigation such as this.  (b) A party receiving a file in native format would have the capability literally to create documents from the produced native format data and then present them back to Sears or Whirlpool as deposition or proposed trial exhibits that, although purported to be based on the native format data produced, are totally unfamiliar to Sears or Whirlpool and, in fact, may not accurately conform to the original data.  (c) Production in native format does not allow redactions that are required or permitted under applicable procedural rules protecting attorney-client privileged or work-product immune materials from discovery, as well as under laws and regulations requiring redactions in order to protect the privacy of persons who have no connection to this lawsuit. (d) Production in native format would be accompanied by other administrative burdens as well (*e.g.*, on the part of Defendants' litigation-support vendor, which would have to, among other things, create cross-reference data files to link the converted, bates-numbered TIFF files to the corresponding original, non-bates-numbered files).  *See, e.g.*, Report of the Civil Rules Advisory Committee at 64, Appendix C to Report of the Judicial Conference, Committee on Rules of Practice and Procedure (Sept. 2005).

On the other hand, Plaintiffs have raised a single, speculative countervailing benefit of native-format productions of PowerPoint files:  That is, they believe it theoretically conceivable (however remote) that one or more PowerPoint files "might" contain presenter's "notes" that would not be viewable by Plaintiffs' counsel unless the documents with such notes were produced in native format and that one or a few of these PowerPoint files, upon being searched for undeleted "notes," might reveal some interesting factoid not appearing anywhere else in the massive documentation that Sears and Whirlpool will produce to

Plaintiffs in this litigation.  There is nothing about the nature of the claims pled in this lawsuit, however, that can justify the enormous cost and intrusiveness of any such blanket demand for native-format production purportedly in order to satisfy Plaintiffs' desire to search for such a remotely contingent possibility.

(E) The parties agree that any claims of privilege or work product shall be made according to applicable rules.

(F) The parties agree that, given the multi-party nature of this action, the parties should be exempted from compliance with Rule 30(a)(2)(A)'s 10-deposition limit and Rule 33(a)'s 25-interrogatory limit.  Plaintiffs, collectively, should be permitted to take up to 20 depositions of Defendants' representatives.  Defendants, collectively, should be permitted to take one deposition of each named plaintiff and depositions of up to 15 additional fact witnesses.  Plaintiffs, collectively, should be permitted to serve Defendants with up to 75 interrogatories.  Defendants, collectively, should be permitted to serve up to 25 interrogatories on each named plaintiff.  The parties may confer and agree to increase the number of allowable interrogatories or depositions, or both, and if the parties fail to so agree, any party may seek leave of the Court to serve additional interrogatories or to take additional depositions.

## IX. CLASS ACTIONS

Pursuant to Civil L.R. 16-9(b), Plaintiffs state as follows:

1. Plaintiffs are seeking to maintain this action as a class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

2. Plaintiffs are seeking to maintain this action on behalf of themselves and on behalf of three putative classes:  (i) "The California Class," which would include all California residents and entities who purchased an Oasis washer equipped with an Electronic Control Board, including, but not limited to model numbers 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709*, and 110.2715*, from January 1, 2004 to the present; (ii) the "California Sub-Class," which would include all class members who are "consumers" as defined by California Civil Code § 1761(d); and (iii) the "Nationwide Class," which would include all United States residents and entities who purchased an Oasis washer equipped with an Electronic Control Board, including, but not limited to model numbers 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709*, and 110.2715*, from January 1, 2004 to the present.

3. Plaintiffs will demonstrate that they meet the requirements of Fed. R. Civ. P. 23(a) and (b)(3) at the appropriate time and reserve the right to modify the class definitions set forth in the First Amended Complaint as discovery proceeds.

4. Defendants propose that the Court schedule a hearing on Plaintiffs' motion for class certification approximately eleven (11) months after the case is at issue.  Plaintiffs propose that the Court schedule a hearing on Plaintiffs' motion for class certification on July 9, 2010.

**X.    RELATED CASES**

The parties are not aware of any related cases.

**XI.   RELIEF**

Plaintiffs seek compensatory, incidental and consequential damages.  In addition, Plaintiffs seek declaratory and injunctive relief, disgorgement and restitution, attorneys' fees and costs and punitive damages.  The exact amount of damages owed is not yet known and will be determined according to proof at trial.  However, damages will include, but will not be limited to, all out-of-pocket expenses associated with repairing or replacing the machines, costs of purchasing illusory supplemental warranties, and all other incidental and/or consequential damages, including damages incurred as a result of being denied use of their machines due to the defect.  Plaintiffs further seek costs of notice to the class.

Defendants believe that if Plaintiffs establish liability on their individual claims, damages for the individual Plaintiffs should be calculated based on any out-of-pocket costs incurred to repair or replace the control boards or other warranted parts in their Oasis washers.

**XII.  SETTLEMENT AND ADR**

In compliance with ADR L.R. 3-5, the parties have met and conferred regarding whether participation in any ADR process would be likely to deliver benefits to the parties sufficient to justify the resources consumed by the parties in connection with any formal ADR process. Because this case is being prosecuted as a putative class action, the parties agree that none of the Court-Sponsored ADR processes described in Civ. L. R. 3-4(a) is likely to deliver any benefits until after the Court has ruled on Plaintiffs' anticipated motion for class certification.

**XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to have the case proceed before a magistrate judge for all purposes.

**XIV.  OTHER REFERENCES**

The parties do not believe that the case is currently suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties are not presently aware of any issues that can be narrowed by agreement, and neither party is currently requesting pre-trial bifurcation of any issues, claims, or defenses.

## XVI. EXPEDITED SCHEDULE

The parties agree that this case cannot be handled on an expedited basis.

## XVII. SCHEDULING

<u>Plaintiffs' proposed case management schedule</u>:  Plaintiffs believe that discovery should begin immediately.  Defendants have indicated that their proposed "Initial Discovery Period" seeks to insure that all class certification discovery is completed before Plaintiffs' class certification motion is filed and does not seek to foreclose discovery on the merits.   Plaintiffs believe that class certification discovery will, as a practical matter, be completed before they file their motion and that the proposed class certification briefing schedule provides the parties with ample time to conduct expert discovery.  Specifically, Plaintiffs propose the following schedule:

1. Discovery is currently under way, given that the parties have conducted a conference pursuant to Rule 26(f), and should continue apace accordingly.

2. Plaintiffs shall file their motion for class certification on or before April 16, 2010.

3. Defendants shall file any opposition on or before May 21, 2010.

4. Plaintiffs shall file their reply on or before June 25, 2010.

5. Subject to the Court's calendar, the hearing on Plaintiffs' Motion for class certification shall be July 9, 2010.

6. The discovery deadline in the case shall be 90 days after this Court rules on Plaintiffs' motion for class certification.

7. All dispositive motions shall be filed within 30 days after the close of discovery.

8. Oppositions to dispositive motions shall be filed within 30 days after the filing of the motions.

9. Any replies to dispositive motions shall be filed within 21 days of the filing of the opposition.

      10. Subject to the Court's calendar, the hearing on all dispositive motions shall be 21 days after the parties have completed their briefing.

      11. The parties should meet and confer regarding stipulations of fact or law no later than 30 days before trial is scheduled to begin.

      12. Subject to the Court's calendar, trial should commence 30 days after dispositive motions are decided.

<u>Defendants' proposed case management schedule</u>: Defendants believe that discovery should not commence until the Court has ruled on Defendants' motion to dismiss and motion to strike class allegations and the case it as issue. Specifically, Defendants propose the following schedule:

1. The parties shall conduct discovery beginning on the day following the Court's ruling on Whirlpool and Sears' dispositive motions, and continuing thereafter for a period of no more than six months ("Initial Discovery Period").

2. All parties shall identify experts, if any, and provide Rule 26(a)(2) reports no later than 30 days after the last day of the Initial Discovery Period.

3. All parties shall disclose rebuttal expert reports no later than 60 days after the close of the Initial Discovery Period.

4. The Deadline to depose experts shall be 90 days after the close of the Initial Discovery Period ("Expert Discovery Period").

5. Plaintiffs' motion for class certification should be due no later than 15 days after the Expert Discovery Period expires. Defendants' opposition to Plaintiffs' motion for class certification should be due 30 days thereafter. Plaintiffs' reply to Defendants' opposition to Plaintiffs' motion for class certification should be due 30 days after Defendants' opposition is filed.

6. Subject to the Court's schedule, the hearing on class certification should be held within 15 days of the filing of Plaintiffs' reply in support of class certification.

7. If any class is certified by the Court, all additional merits discovery needed to prepare the claims or defenses for trial should be concluded no later than 60 days after the Court has issued its class certification ruling ("Final Discovery Deadline").

8. Summary judgment motions should be filed within 15 days after the Final Discovery Deadline. Oppositions to summary judgment motions should be filed 30 days thereafter. Replies in support of summary judgment motions should be filed 21 days after the oppositions have been filed.

9. The parties should meet and confer regarding stipulations of fact or law no later than 30 days before trial is scheduled to begin.

10. Subject to the Court's calendar, trial should commence approximately 90 days after Final Discovery Deadline.

**XVIII. TRIAL**

The case will be tried to a jury. It is anticipated that a trial in this case would last three weeks.

**XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OF PERSONS**

There are no interested entities or persons to disclose.

Dated:  July 6, 2009                                                   Respectfully submitted,

*/s/ Michael T. Williams*                                              */s/  Jennie Lee Anderson*
Michael T. Williams                                                    Jennie Lee Anderson
Galen D. Bellamy                                                       Lori E. Andrus
Joel S. Neckers                                                        Andrus Anderson LLP
Allison R. Cohn                                                        155 Montgomery Street, Suite 900
Wheeler Trigg O'Donnell LLP                                            San Francisco, CA 94104
1801 California Street, Suite 3600                                     Telephone: (415) 986-1400
Denver, CO 80202                                                       Facsimile: (415) 986-1474
Telephone:  (303) 244-1800
Facsimile:  (303) 244-1879

Clement L. Glynn                                                       James E. Miller
James M. Hanlon, Jr.                                                   Patrick A. Klingman
Glynn & Finley LLP                                                     Shepherd Finkelman Miller & Shah, LLP
100 Pringle Avenue, Suite 500                                          65 Main Street
Walnut Creek, CA 94596                                                 Chester, CT 06412
Telephone: (925) 210-2800                                              Telephone: (860) 526-1100
Facsimile: (925) 945-1975                                              Facsimile: (860) 526-1120

Attorney for Defendants Sears, Roebuck and
Co. and Whirlpool Corporation

                                                                       James C. Shah
                                                                       Shepherd Finkelman Miller & Shah, LLP
                                                                       35 East State Street
                                                                       Media, PA 19063
                                                                       Telephone: (610) 891-9880
                                                                       Facsimile: (610) 891-9883

                                                                       Karen M. Leser-Grenon
                                                                       Shepherd Finkelman Miller & Shah, LLP
                                                                       401 West A Street, Suite 2350
                                                                       San Diego, CA 92101
                                                                       Telephone: (619) 235-2416
                                                                       Facsimile: (619) 234-7334

                                                                       Attorney for Plaintiffs

**ECF CERTIFICATION**

Pursuant to General Order No. 45 § X.B., the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to the document.

<u>/s/ Jennie Lee Anderson</u>

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2009, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                                    */s/ Jennie Lee Anderson*