1

2                                                          **E-Filed 10/13/2009**

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8             FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                         SAN JOSE DIVISION

10   RENEE TIETSWORTH, SUZANNE REBRO, and        Case Number 5:09-CV-00288 JF (HRL)
     SONDRA SIMPSON, on Behalf of Themselves and
11   All Others Similarly Situated,              **ORDER GRANTING MOTION TO
                                                 DISMISS**
12                    Plaintiffs,
                                                 Re: Docket No. 32
13        v.

14   SEARS, ROEBUCK AND CO., and WHIRLPOOL
     CORPORATION,
15
                      Defendants.
16

17

18

19

20        Defendants Whirlpool Corporation ("Whirlpool") and Sears, Roebuck and Co. ("Sears")

21   move to dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Renee Tietsworth

22   ("Tietsworth"), Suzanne Rebro ("Rebro") and Sondra Simpson ("Simpson"), on behalf of

23   themselves and a putative class of similarly situated consumers. For the reasons discussed

24   below, the motion will be granted, with leave to amend.

                            **I. BACKGROUND**
25
          On December 22, 2008, Tietsworth filed suit in state court on behalf of herself and all
26
     others similarly situated, alleging that Defendants engaged in fraudulent concealment and
27
     nondisclosure, breached express and implied warranties, violated the California Consumers
28
     Legal Remedies Act ("CLRA") and California Unfair Competition Law ("UCL"), and unjustly

enriched themselves at the expense of Tietsworth and the putative class.  On January 22, 2009, Defendants removed the action to this Court.  One week later, Defendants moved to dismiss the action pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  On May 14, 2009, this Court dismissed the action with leave to amend.

On June 15, 2009, Plaintiffs filed the operative FAC, adding two individual plaintiffs, Rebro and Simpson, re-alleging Tietsworth's original claims and adding a new claim under the Magnuson-Moss Warranty Act ("MMWA").  15 U.S.C. 2301 et seq.  On July 15, 2009, Defendants filed the instant motion to dismiss.

Plaintiffs allege that at all relevant times, Whirlpool manufactured top-loading Kenmore Elite Oasis automatic washing machines ("the Machines") and Sears marketed, advertised, distributed, warranted, and offered repair services for the Machines.  FAC  ¶¶ 6, 7.  Each individual plaintiff claims to have bought new an Oasis washer from Sears between May 2006 and January 2007; Plaintiffs allege that thousands of the Machines contain a defect that causes them to "stop in mid-cycle and display a variety of 'F' error codes."  FAC ¶¶ 22, 41, 46, 57, 64.[1] Plaintiffs claim that these electrical problems began within the first year after they purchased their washers.  *Id.* ¶¶ 42, 50, 60.  Plaintiffs also allege that the "F" error codes are the result of defective Electronic Control Boards and that the defect forces users to restart the Machines to complete a single load of laundry.  *Id.* ¶¶ 22, 111.

Plaintiffs claim that the alleged defects in the Electronic Control Boards belie Sears' representation that "the Machines were and are the highest quality, top-of-the-line washers that allow consumers to do laundry in a more convenient, faster and efficient manner and enable consumers to save water, energy and time."  *Id.* ¶ 11.  They allege a series of misrepresentations by Defendants, including:  statements contained in stickers and informational placards on floor models of the Machines in Sears' showrooms, that the Machines would use 47% less water and 53% less energy and would lower water and energy bills, *id.* ¶¶ 13-14; statements in the owner's

---

[1] Plaintiffs claim that thousands of other Machine owners have experienced similar problems with the Electronic Control Boards and refer to selected complaints from on-line consumer forums.

2

manual that "[y]our new Kenmore product is designed and manufactured for years of dependable operation" and that the Machine has features that "increase the ease of use and improve wash performance," including but not limited to, an electronic panel that is "easy to use,'" *id.* ¶14; and statements made in an extensive advertising and promotional campaign that repeated Defendants representations with respect to the greater efficiency and durability of the Machines. *Id.* ¶¶ 13-14, 19.

Plaintiffs allege that Defendants' statements "relate directly to the functioning and performance of the Machine's Electronic Control Board because the Electronic Control Board controls the laundry cycles, the water levels and spin speed." *Id.* ¶ 15. They claim that a functioning Electronic Control Board is necessary to operate the Machine in a manner that saves energy and water and finishes loads of laundry as advertised. They argue that Defendants had a duty to disclose the defect in the Electronic Control Board based on their alleged exclusive knowledge of the defect.[2] *Id.* ¶¶ 25, 31, 40, 109-10. Plaintiffs also claim that Defendants' failure to disclose the defect is material in that they would not have purchased or would have paid significantly less for their Machines had the defect been disclosed. *Id.* ¶¶ 28-29, 45, 56, 113. Simpson alleges that she specifically asked a Sears agent about any potential problems with the Electronic Control Board and that the agent failed to disclose the alleged defect. *Id.* ¶ 58.

Tietsworth alleges she first experienced an error code problem approximately eighteen months after the purchase of her machine and that she contacted Sears in June 2008. *Id.* ¶¶ 41, 42. She claims that Sears informed her that "she could either purchase an extended warranty for approximately $218 or have someone come out to repair the Machine" at a cost of $70, a technician fee that did not include the cost of repair. *Id.* ¶ 43. She does not allege that she incurred any actual expenses, *id.* ¶¶41-45, nor does she allege that she asked Sears to repair or

---

[2]  Plaintiffs assert that "Machines equipped with the Electronic Control Boards pose a serious personal safety risk, as the defective boards have led to the Machines spinning out of control and literally exploding on a number of occasions...causing the heavy metal lid to detach and fly across the laundry room. . .causing severe property damage and threatening very serious bodily injury." FAC ¶ 26. It is not alleged that any named Plaintiffs have witnessed this or have been harmed by such an occurrence.

3

replace her washer at no cost.  *Id.*

Rebro alleges that she purchased her washer in May 2006 and that she began experiencing Electronic Control Board problems "within the first months of purchasing the Machine."  *Id.* ¶¶ 46, 50.  She claims that the Sears salesperson assured her that the Machine would save water, could handle very large loads, and was the best in its class.  *Id.* ¶ 47.  She alleges that she contacted Sears during the warranty period regarding the error code problems, and that a Sears representative told her that the Machine did not need service and instructed her to lower the spin speed, which did not solve the problem.  Rebro does not claim to have asked for a replacement or repair at that time.

According to the FAC , a Sears representative "later told [Rebro] that these problems were caused by the Electronic Control Board."  The FAC does not specify when "later" was or if it was within the warranty period.  Rebro claims that she had her washer serviced in November 2008 and that at that time a Sears repair person admitted that the Board was defective.  The FAC also alleges that the repair person told Rebro that it would cost $383.94 to replace the defective Board and that she thereafter attempted to find the part at a lower price on the Internet.  *Id.* ¶ 51. Later, when she could not find the part, she called Sears.  One representative allegedly told Rebro that the part was on recall, but another said that this information was incorrect and that the cost of repair would be approximately $400, plus another $200 for an additional one-year warranty. Rebro alleges that after she complained about the expense, Sears offered her a "special" for $214, which would include parts, labor and a one-year limited "Service Smart Protection Agreement." *Id.* ¶ 52.  Finally, Rebro claims that she continued to experience similar problems with her new Electronic Control Board.  *Id.* ¶ 53.

Simpson alleges that she purchased her Machine in January 2007 and that she began experiencing error code problems in July 2007.  *Id.* ¶¶ 57, 60.  She claims that at the time of the purchase she asked about potential problems with the Electronic Control Boards and that a "Sears agent specifically told her she could reasonably expect the Machine equipped with the Electronic Control Board to last for at least eight years."  *Id.* ¶ 58.  She does not allege that the salesperson promised that the Electronic Control Board itself would function properly for that

4

period of time.  She states that a service technician came to her home on three separate occasions to service her Machine and that the technician did not correct the problem and refused to replace the defective Board.  *Id.* ¶ 61.  Simpson alleges that it was only when her Machine failed shortly after expiration of the warranty period that Sears admitted that the Electronic Control Board was defective and charged her $320 for an out-of-warranty repair. *Id.* ¶ 62.

Plaintiffs claim that "Sears represented that the Machines' control boards would perform free of defects for a period of years in its written materials, including the owner's manual." *Id.* ¶¶ 27, 98, 99, 118, 120.  However, the actual terms of the one-year limited warranty, which properly may be considered under the incorporation by reference doctrine, *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *cert. denied*, overruled on other grounds by *Galbraith v. City of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002), provide that if the "appliance fails due to a defect in material or workmanship within one year from the date of purchase" the purchaser is entitled to "arrange for free repair," *see* Affidavit of William Griego, Ex. A, or have the Machine "replaced if repair proves impossible." *See id.*, Ex. B.

Finally, Plaintiffs allege that, in April 2009, Defendants attempted to engage in a purported "secret warranty program" by sending letters to some, but not all, affected consumers, offering a free "upgraded control board' that would improve performance and adjust for balance if a response to the offer was received "within 90 days of receipt."  FAC ¶¶ 39, 54.  The letter makes no admission of any defect in the Electronic Control Boards.

## II.  LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party.  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998), *see also Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997).  However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 ("a wholly

1   conclusory statement of [a] claim" will not survive motion to dismiss).  Leave to amend should

2   be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.

3   *Lucas v. Dep't of Corr.*, 66 F. 3d 245, 248 (9th Cir. 1995).

### III.  DISCUSSION

5        Although their claims arise under state law, Plaintiffs' allegations are subject to the

6   pleading requirements of the Federal Rules.  Accordingly, claims alleging fraud are subject to the

7   heightened pleading requirements of Fed. R. Civ. P. 9(b).  *See Vess v. Ciba-Geigy Corp. USA*,

8   317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be "grounded in fraud" or to

9   "sound in fraud," [then] the pleading of that claim as a whole must satisfy the particularity

10  requirement of Rule 9(b)."); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994) (claims based in

11  fraud "must state precisely the time, place, and nature of the misleading statements,

12  misrepresentations, and specific acts of fraud.").

### A. Fraudulent Concealment and Nondisclosure

14       To establish a claim for fraudulent concealment, a plaintiff must allege that: (1) the

15  defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose

16  the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the

17  intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted

18  as she did if she had known of the concealed or suppressed fact, and (5) as a result of the

19  concealment or suppression of the fact, the plaintiff sustained damage.  *Hahn v. Mirda,* 54 Cal.

20  Rptr. 3d 527, 532 (Cal. Ct. App. 2007).

21       The principal element of fraudulent concealment at issue here is whether Plaintiffs have

22  pled with sufficient particularity that Defendants had a duty of disclosure with respect to the

23  allegedly defective Electronic Control Boards.  Plaintiffs argue that Defendants had such a duty

24  because Defendants allegedly "made partial disclosures about the Machines," were in a "superior

25  position to know the truth about the Machines," and "actively concealed" the claimed defect in

26  the Electronic Control Boards.  FAC ¶ 110.  Plaintiffs also allege that Defendants had a duty to

27  disclose because the machines "pose a serious safety hazard."  *Id.* ¶ 109.   As was the case with

28  Tietsworth's original complaint, these arguments are not persuasive.

6

It is true that a duty to disclose exists if a plaintiff can demonstrate that defendant has made a partial representation about a product that is related to an allegedly fraudulent omission. *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 336 (1997). In this case, Plaintiffs point to numerous factual statements in the owner's manual, including statements that the Machines were "designed and manufactured for years of dependable operation," and that they would "conserve resources and also lower[] your water and energy bills." FAC ¶ 14. However, there is no allegation at all, let alone an allegation with Rule 9 specificity, that Defendants made any representations about the allegedly defective Electronic Control Boards.[3]

Nor can Plaintiffs establish a duty by pleading, in purely conclusory fashion, that Defendants were in a "superior position to know the truth about the Machines" and "actively concealed" the defect. FAC ¶ 11. In *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008), the court concluded that the plaintiff had failed to plead with particularity facts that would establish that defendants had a duty to disclose. The court held that a determination in plaintiffs' favor, given plaintiffs' general allegations of "exclusive knowledge as the manufacturer" and active concealment of a defect, would mean that any unsatisfied customer could make a similar claim every time a product malfunctioned. *Id.* at 974. As was the case in *Oestreicher,* the FAC does not plead any specific facts to support the claim.[4]

_____

[3] Plaintiffs allege that Simpson asked a Sears sales representative about potential problems with the Electronic Control Board and that the representative "specifically told her she could reasonably expect the Machine equipped with the Electronic Control Board to last for at least eight years." FAC ¶ 58. This specific inquiry related to the Electronic Control Boards only is alleged to have been made by Simpson. Moreover, by its own terms, the salesman's assurance was given with respect to the long-lasting quality of the "Machine equipped with the Electronic Control Board," not the Electronic Control Board itself. A representation made by a single salesman employed by Sears is not the equivalent of a misrepresentation by Whirlpool and Sears for the purpose of creating an affirmative duty to disclose as to all potential purchasers.

[4] Plaintiffs also argue that their allegations with respect to Defendants' "secret warranty program" support their position that Defendants had exclusive knowledge and actively concealed the allegedly defective Electronic Control Boards, but as is explained in greater detail later in this order, Defendants' policy of providing a free upgrade of the Electronic Control Boards to consumers could serve "many legitimate business purposes" and does not in and of itself bolster Plaintiffs' fraudulent concealment claim. *Stearns v. Select Comfort Retail Corp.*, No. 08-2746,

7

1    Plaintiffs next allege that they have pled adequately the existence of a safety defect that

2    gives rise to a duty to disclose.  The FAC alleges that:

3    [T]he Machines equipped with the Electronic Control Boards pose a serious personal
     safety risk, as the defective boards have led to the Machines spinning out of control and
4    literally exploding on a number of occasions...causing the heavy metal lid to detach and
     fly across the room. . .causing severe property damage and threatening very serious bodily
5    injury.  FAC ¶26.

6    There is no obvious nexus, however, between this allegation and the specific defect in the

7    Electronic Control Board asserted continuously throughout the FAC.  According to Plaintiffs, the

8    defect in the Board causes the Machines to shut down, results in "F" error codes, and forces

9    consumers to restart their loads, sometimes repeatedly.  There are no factual allegations that any

10   named Plaintiff or any identifiable member of the putative class actually experienced a

11   malfunction involving the machine "spinning out of control."  Under these circumstances,

12   Plaintiffs lack standing to pursue a claim based on the nondisclosure of the alleged safety defect.

13   *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008), quoting

14   *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (concluding that "named plaintiffs who represent a

15   class must allege and show that they personally have been injured, not that injury has been

16   suffered by other, unidentified members of the class to which they belong and which they purport

17   to represent.")

18   Finally, Plaintiffs claim that Defendants maintain a "secret warranty program."  FAC ¶¶

19   39, 40.  This Court was presented with similar allegations in *Stearns v. Comfort Retail Corp.*,

20   No. 08-2746 JF, 2009 WL 1635931, at *9-10 (N.D. Cal. June 5, 2009).  In *Stearns*, the plaintiffs

21   claimed that the defendants actively sought to conceal the fact that their "Sleep Number" beds

22   grew mold, and that they did so by providing refunds of the purchase price to any purchaser who

23   complained about a "Sleep Number" bed.  The Court concluded that "the fact that Select

24   Comfort offered a full refund does not support the theory that it had a plan to deceive Plaintiffs

25   by somehow placating Plaintiffs and other potential litigants," and noting that return of a

26   defective product "has been recognized by courts as a standard business practice, serving many

27   

28   2009 WL 1635931, at *9-10 (N.D. Cal. June 5, 2009).

8

1  legitimate business purposes." *Id.* at 9.  The Court held further that allegations with respect to

2  implementation of a new design or other remedial action were immaterial for the purpose of

3  establishing the elements of a fraudulent concealment claim. *Id.* at 9, citing Fed. R. Evid. 407.

4  Similarly, Plaintiffs' allegation in this case that Defendants offered free upgrades of the

5  Electronic Control Boards does not support a permissible inference that Defendants actively

6  concealed the alleged defect.  As in *Stearns*, Defendants' alleged replacement policy properly is

7  characterized as a standard business practice serving "many legitimate business purposes." *Id.* at

8  9.  As Rule 407 suggests, to hold otherwise would create a perverse incentive for manufacturers

9  not to provide consumers with refunds or upgrades when defects exist.

       **B.  Unfair Competition Law (UCL)**

10        As a threshold matter, the parties disagree with respect to whether Plaintiffs' UCL and

11 CLRA claims are subject to the heightened pleading requirements of Rule 9(b).  This issue was

12 addressed by the Ninth Circuit in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009),

13 which reiterated that "Rule 9(b)'s heightened pleading standards apply to claims for violations of

14 the CLRA and UCL" where such claims are based on a fraudulent course of conduct.  *Id.* at

15 1124, citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003).  Although

16 Plaintiffs argue that their UCL allegations do not rely upon allegations of fraudulent conduct, it

17 appears that their claims are entirely dependent upon allegations that Defendants made

18 misrepresentations, failed to disclose material facts, and concealed known information regarding

19 the allegedly defective Electronic Control Boards.  *See Kearns*, 567 F.3d at 1126 (concluding

20 that nondisclosure is a claim for misrepresentation in a cause of action for fraud and that it must

21 be pled with particularity as such).  Because Plaintiffs' UCL claims are predicated on

22 misrepresentations and omissions that are "grounded in fraud," those claims are subject to the

23 heightened pleading requirements of Rule 9(b).  *See Kearns*, 567 F.3d at 1124; *Vess*, 317 F.3d at

24 1103-04.

25        The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair,

26 deceptive, untrue or misleading advertising."  Cal. Civ. Code § 17200.  Accordingly, "[a]n act

27 can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or

28

9

fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). A UCL claim predicated on unfair business practices may be grounded upon a violation of a statute, *see Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995), or be a "standalone" claim based on an alleged act that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). *See also Cel-Tech*, 20 Cal. 4th at 180 ("[A] practice may be deemed unfair even if not specifically proscribed by some other law.") Plaintiffs allege that Defendants violated the UCL by failing to comply with California Civil Code §§ 1572, 1668, 1709, 1710, 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9), 1770(a)(19), § 17500 of the Business and Professions Code, the Song-Beverly Warranty Act and the Magnuson-Moss Warranty Act. FAC ¶ 84.

### 1. Unlawful Business Practices

Plaintiffs claim that Defendants' conduct violates California Civil Code Section § 1668, which prohibits a party from contracting away liability "for his own fraud, or willful injury to the person or property of another." Cal. Civ. Code. § 1668. Plaintiffs point specifically to Defendants' disclaimer of implied warranties, which purports to limit any implied warranty to one year or the shortest period allowed by law, with the sole remedy under the express warranty being repair or replacement. Opp. Mot. at 11. Plaintiffs cite no authority holding that a disclaimer limiting an implied warranty to the same time period as an express warranty or limiting the consumer's remedy to repair or replacement amounts to contracting away liability for "fraud or willful injury." The cases that Plaintiffs do cite are inapposite. *See Baker Pacific Corp. v. Suttles* 220 Cal. App. 3d 1148, 1151, 1154 (1990) (invalidating release covering "all risks in connection with potential exposure of asbestos" because the release concerned would release Defendants from "fraud and intentional acts"); *Klein v. Asgrow See Co.*, 246 Cal. App. 2d 87, 100 (1966) (invalidating disclaimer of warranty where fraud existed). Plaintiffs thus cannot

rely on Section 1668 to support a violation of the UCL's "unlawful" prong.  *See Daugherty,* 51 Cal. Rptr. 3d at 128 n. 7 (rejecting UCL claim because the complaint failed to allege any facts suggesting a violation of the underlying statues).

Plaintiffs also base their UCL claim on California Civil Code Sections 1572, 1709, and 1710, arguing that Defendants "fraudulently concealed material information" or suppressed the truth.  Opp. Mot. At 10-11.  As discussed above Plaintiffs have failed to allege the elements of fraud with the particularity required by Rule 9(b).  *See supra* III.A (explaining that Plaintiffs fail to allege any factual support beyond a conclusory statement that "at all relevant times, Defendants had exclusive possession and control of all facts necessary to know that the Machines' Electronic Boards were defective."  FAC ¶ 31.); *Fisher v. Paul Revere Ins. Group,* 55 Fed.Appx. 412, 414 (9th Cir. 2002).

Finally, Plaintiffs claim that Defendants have violated Section 17500 of California's Business and Professions Code by making misleading representations in informational placards on the floor models of the Machines and in owners' manuals.  FAC ¶¶ 11-14.  Plaintiffs argue that statements that the Machines are "designed and manufactured for years of dependable operation" and that the Machines "save you time by allowing you to do fewer, larger loads" amount to "misdescriptions of specific or absolute characteristics of a product."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (claiming that turfgrass requires "50% less mowing" is a specific and measurable claim.")  However, these alleged "misdescriptions" are not statements about "specific or absolute characteristics of a product," but properly are considered non-actionable puffery.  *See Anunziato v. eMachines Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (holding that the representations concerning the "outstanding quality, reliability, and performance" of a product were non-actionable puffery.")[5]

---

[5]Other such statements include the following: that the Machines are of the "highest quality," FAC ¶ 11;"top-of-the-line," *id.* ¶¶ 11, 12, 58; easy to use, *id.* ¶¶ 11, 41; better at cleaning clothes than other unspecified washers, *id.* ¶¶ 11, 41; or the "best" in their class, *id.* ¶ 47.  The closest Plaintiffs come to identifying a factually verifiable statement is Defendants' alleged claim that the Machines "would save the consumer energy and water (purportedly using at least 47% less water and 53% less energy).  *Id.* ¶ 11.  Ultimately, however, this statement also

11

### 2. Unfair Business Practice

"An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daughterty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 118, 129 (Cal. Ct. App. 2006). Plaintiffs must allege facts to support all three elements of a UCL unfair business practice claim. *Id.* Plaintiffs do allege with specificity that the Machines are substantially certain to fail within the useful life of the product - and often within the first year of use - despite the fact that the retail price of the Machines is $1,000. Plaintiffs also allege that as a result of known but undisclosed defects in the Machines, consumers have incurred costly service expenses. FAC ¶¶ 32, 34, 52, 62. However, Plaintiffs still have not pled adequately the second and third elements of their claim. Instead, they allege that there cannot be a benefit to consumers when a manufacturer is permitted knowingly to market and sell a defective product. This argument is circular. Plaintiffs also fail to allege that they could not reasonably have avoided their claimed injuries, for example by purchasing an extended warranty. *Daugherty*, 51 Cal. Rptr. 3d at 129.

### 3. Fraudulent Business Practices

"Unlike a common law fraud claim, a UCL fraud claim requires no proof that the plaintiff was actually deceived." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008), citing *Daugherty*, 144 Cal.App.4th at 838. "Instead, the plaintiff must produce evidence showing "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Id.* at 1026, citing *Brockey v. Moore,* 107 Cal.App.4th 86, 99 (2003). Accordingly, Plaintiffs must allege with specificity that Defendants' alleged misrepresentations:

---

amounts to puffery, as the statement does not indicate how much water or energy should be consumed by the Machine and makes no verifiable comparison to any identifiable competitive machine or model. Moreover, Plaintiffs do not allege that the Machines do not save water or energy while functioning. They claim only that when the Electronic Control Boards malfunction, consumers are forced to restart the Machines, resulting in the loss of any savings. As Defendants suggest, if this allegation were permitted to substantiate a claim of misrepresentation, virtually any product malfunction could form the basis of a claim of fraudulent misrepresentation. Mot. to Dismiss at 9.

12

1) were relied upon by the named plaintiffs; 2) were material; 3) influenced the named plaintiffs'

decisions to purchase the defective Machines; and 4) were likely to deceive members of the

public. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009).

To the extent that Plaintiffs base their claim on Defendants' alleged failure to disclose a

known defect in the Machines, a mere failure to disclose a latent defect does not constitute a

fraudulent business practice. For example, in *Daugherty*, the court found that without a duty to

disclose a particular fact, it is not likely that such a failure would deceive anyone within the

meaning of the UCL. *Daugherty*, 51 Cal. Rptr. 3d at 128 (rejecting plaintiffs argument that

Honda's failure to disclose a defect in the engine at the time of sale and failure to give proper

notice of the potential for oil leaks were "likely to deceive those customers into believing that no

such defect exists.") As discussed previously, Defendants owed no affirmative duty to Plaintiffs

to disclose any alleged defect with the Electronic Control Boards, as Defendants did not make

any misrepresentations regarding this component of the Machines.

As to the representations that Defendants did make, for example that the Machines were

"designed, manufactured and tested for years of dependable operations," such representations are

mere puffery, *see supra* III.B.1, and they as a matter of law could not deceive a reasonable

consumer. Moreover, the alleged misrepresentations are not related directly to the Electronic

Control Boards.

### C.  California Consumers Legal Remedies Act ("CLRA")

Plaintiffs allege that Defendants violated Civil Code Sections 1770(a)(2), (5), (7), (9) and

(19) by misrepresenting information related to the Machines, omitting information in connection

with the sale of the Machines, and inserting an unconscionable provision in the express

warranties. FAC ¶¶ 165-185.

### 1. CLRA Claim for Misrepresentation

The CLRA proscribes active misrepresentations about the standard, quality, or grade of

goods. *Morgan v. Harmonix Music Sys., Inc.,* No. C08-5211, 2009 WL 2031765, at *3

(N.D.Cal. July 07, 2009), citing *Outboard Marine Corp. v. Superior Court,* 52 Cal.App.3d 30, 36

(1972)). Plaintiffs fail to allege sufficient facts to support a CLRA claim for misrepresentation

1   because, as discussed above, alleged representations pled in the FAC are either "puffery" or do

2   not relate to the Machine's allegedly defective Electronic Control Boards.  *See* III.A, B.

3   (providing a more detailed analysis of why Plaintiffs' claims of misrepresentation are mere

4   puffery or unrelated to the alleged defective Electronic Control Board); *see also Berenblat v.*

5   *Apple, Inc*., No. 09-CV-01649-JF, 2009 WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009)

6   (dismissing CLRA claim where the "complaint does not allege that Apple made any specific

7   representation with respect to" the alleged defect).

### 2. CLRA Claim for Omissions

9          For an alleged omission to be actionable under the CLRA, "the omission must be contrary

10  to a representation actually made by the defendant, or an omission of a fact the defendant was

11  obliged to disclose." *Daugherty*, 144 Cal.App.4th at 835; *see also Bardin*, 136 Cal.App.4th at

12  1276.  Although Plaintiffs claim that Defendants made many affirmative representations,

13  including that the Machines necessitate less water and energy and can accommodate larger loads

14  of laundry,  Plaintiffs' failure to allege an actionable misrepresentation or omission related to the

15  Electronic Control Board defeats their CLRA claim for omissions.  *See Hoey v. Sony Elec., Inc.*,

16  515 F. Supp 2d 1099, 1103 (N.D. Cal. 2007) (dismissing CLRA claims where the only alleged

17  statements were that "Sony represented and warranted to Plaintiffs and all Class members that

18  the Affected Computers were free from defects and that they were of merchantable quality and

19  workmanship, as evidenced by Sony's express warranty."); *Daugherty v. Am. Honda Motor Co.*,

20  51 Cal. Rptr. 3d 118, 127 (Cal. Ct. App. 2006); Cal. Civ. Code. §1770(7).

21         Plaintiffs' argument that mere omissions, absent some affirmative representation or duty

22  to disclose, are actionable under CLRA is unpersuasive.  Although *Outboard Marine Corp. v.*

23  *Superior Court*, 124 Cal. Rptr. 852 (Cal. Ct. App. 1975) arguably supports Plaintiffs' legal

24  position, *Daugherty* quite clearly holds to the contrary.  *See Daughtery*, 51 Cal. Rptr. 3d at 125

25  (clarifying that *Outboard Marine* is good law, but that it is so because it holds that a

26  representation of fact that "works a concealment of the true fact" is required for a CLRA claim of

27  omission).

### 3.  Unconscionable warranty provision

14

1    ""Unconscionability has both a procedural and a substantive element." *Aron v. U-Haul*

2    *Co. of California,* 143 Cal.App.4th 796, 808, 49 Cal.Rptr.3d 555 (2006), citing *Armendariz v.*

3    *Foundation Health Psychcare Services, Inc.* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669

4    (2000).  The procedural element of unconscionability focuses on two factors: oppression and

5    surprise.  *Id.* (internal citation omitted).  Oppression arises from an inequality of bargaining

6    power which results in no real negotiation and an absence of meaningful choice.  *Id.* (internal

7    quotation and citation omitted).  Surprise involves the extent to which the supposedly

8    agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking

9    to enforce the disputed terms.  *Id.* (internal quotation and citation omitted).  The substantive

10   element of unconscionability focuses on the actual terms of the agreement and evaluates whether

11   they create overly harsh or one-sided results as to shock the conscience.  *Id.* (internal quotation

12   and citation omitted).

13       Plaintiffs contend that Defendants' warranties are procedurally and substantively

14   unconscionable because Defendants limited the warranties and actively concealed a known

15   defect.  Opp. Mot.at 18:1-8.  However, "any claim of oppression may be defeated if the

16   complaining party had reasonably available alternative sources of supply from which to obtain

17   the desired goods or services free of the terms claimed to be unconscionable."  *Dean Witter*

18   *Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768 (1989).  Plaintiffs fail to allege facts

19   demonstrating that there were no alternative manufacturers of washers or that they were surprised

20   by the terms of the warranty.

21       As was the case with Tietsworth's original complaint, the FAC fails to state a claim of

22   oppression because it fails to allege the absence of an "available alternative source of supply

23   from which to obtain the desired goods or services free of the terms claimed to be

24   unconscionable."  *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App.3d 758, 768

25   (1989).  Plaintiffs argue that any material alternative product or choice was curtailed or

26   eliminated by the suggestions of Sears' sales representatives that Defendants' Machines were

27   "the best" and superior to other washers.  Opp. Mot. At 18, citing FAC ¶ 47.  However, far from

28   showing the absence of alternatives, the alleged statements highlight the fact that other machines

15

were available to Plaintiffs when they selected Defendants' product.  *Aron v. U-Haul Co. of Cal.*,
49 Cal. Rptr. 3d 555, 564 (Cal. Ct. App. 2007) (concluding that "any claim of oppression may be
defeated if the complaining party has a reasonably available source of supply from which to
obtain desired goods or services free of the terms claimed to be unconscionable.").

Plaintiffs also allege that Defendants' warranties are procedurally unconscionable because
the terms of the warranties were disclosed not at the time of purchase but rather at the time of
delivery.  FAC ¶ 17.  Plaintiffs claim that this distinguishes their case from *Aron.* 143 Cal. App.
4th at 809.  While Plaintiffs do allege that they were not informed of the language of the warranty
until the Machines were delivered, they also admit that they were provided with a ninety day
period in which to return the Machines "for any reason."  There is no allegation that the terms of
the warranty were hidden or unclear to Plaintiffs when the Machines were delivered.

Defendants also point out that Plaintiffs have failed to plead which terms of the
warranties are unconscionable.  Mot. to Dismiss at 22, n. 8, citing *See Nordberg v. Trilegiant
Corp.,* 445 F. Supp. 2d 1082, 1099 (N.D. Cal. 2006) (dismissing CLRA claim where the
plaintiffs did "not give this court any insight as to the precise language of the provisions
themselves or why they should be deemed unconscionable.").  This argument is well-taken.
While Plaintiffs allege that Defendants attempted, "to limit the express warranties in a manner
that would exclude coverage of the defective Electronic Control Board . . .and any such effort to
disclaim or otherwise limit liability for the defective Electronic Control Boards," FAC ¶¶ 160,
177, they do not allege with specificity how this purpose was accomplished.

### 4. CLRA claim against Whirlpool

Defendants contend that the CLRA requires each plaintiff to plead and prove that he or
she entered into an agreement or transaction with the defendants that resulted in a sale or lease of
goods or services, Cal. Civ. Code §§ 1761(e), 1700(a), 1780(c), 1782(a)(2), and that because
Whirlpool did not engage directly in a "transaction" with Plaintiffs, it cannot be liable to
Plaintiffs under CLRA.  *See* Cal. Civ. Code § 1780(a).  Plaintiffs allege that Whirlpool and Sears
collectively provided written materials, including the express warranty, to Plaintiffs and other
putative class members.  FAC ¶¶ 6, 7, 21.  Plaintiffs also assert that Whirlpool acted in concert

16

with Sears to develop the written materials at issue. *Id.* However, Plaintiffs cite no authority suggesting that Whirpool's involvement made it part of the "transaction" within the meaning of Cal. Civ. Code § 1761(e). Plaintiffs contend that the CLRA's intent is to protect consumers from material omissions by manufacturers and sellers, regardless of whether the consumer dealt directly with the manufacturer or seller, *Chamberlan v. Ford*, 369 F.Supp.2d 1138, 1144 (N.D. Cal. 2005), but the FAC does not allege adequately any actual misrepresentation or omission by Whirpool.

### D. Claims by Rebro and Simpson under the Song-Beverly Act

To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty that proximately caused plaintiff's injury. *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App.3d 135, 142 (1986). A plaintiff also must plead that she provided the defendant with pre-suit notice of the breach. California Commercial Code § 2607.

#### 1. Rebro failed to provide Defendants with a reasonable opportunity to cure

Rebro claims that Defendants breached the one-year limited warranty when they failed to repair her Machine after it allegedly malfunctioned during the warranty period. FAC ¶¶ 36, 121. Although the reasonableness of the number of repair attempts is ordinarily a question of fact, "at a minimum there must be more than one opportunity to fix the nonconformity." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.,* 50 Cal. Rptr. 3d 731, 741 (Cal. Ct. App. 2006). Although Rebro claims to have provided Defendants with two such opportunities, the second instance allegedly consisted of one conversation with a "Sears representative" regarding Rebro's past washer problems occurring on an unspecified "later" date. FAC ¶ 50. Rebro does not allege that this conversation took place during the one-year warranty period or even that she requested repair of the machine.

#### 2. Defendants' express warranty and the alleged latent defects

Plaintiffs contend that their express warranty claim may be based on the presence of an alleged latent defect in the Electronic Control Board existing at the time the Machines were sold.

17

1   According to Plaintiffs, the holdings in *Hicks v. Kaufmann & Broad Home Corp.*, 89 Cal. App.

2   4th 908 (2001) and *Hewlett-Packard v. Superior Court*, 83 Cal. Rptr. 3d 836 (2008) support their

3   argument that California law permits express-warranty claims based on latent product defects

4   even when the applicable express warranty excludes any coverage for such latent defects.

5   However, neither of these cases holds that a plaintiff may assert express-warranty claims for

6   latent defects under a warranty that by its express terms covers only defects that result in product

7   failure during the warranty period.  *See Hewlett-Packard*, 83 Cal. Rptr. 3d at 836-43

8   (distinguishing itself from *Daugherty* and explaining that it need not determine the validity of the

9   claim for the purposes of determining the procedural issue of certifying a class); *Hicks*, 89 Cal.

10  App. 4th at 908-26.  As this Court has held in a different context, if such a claim based upon

11  "latent defects" in products that are governed by an express warranty contract was recognized, it

12  would "eviscerate any limitations put in place by an express warranty."  *Hovsepian v. Apple, Inc,*

13  Nos. 08-5788 2009 WL 2591445, *7 (Aug. 21, 2009), citing *Daugherty,* 144 Cal.App. 4th at

14  832; *see also Hoey*, 515 F. Supp. 2d at 1105.

15      **E. Implied Warranty under the Song-Beverly Act**

16          **1. Vertical Privity**

17      Vertical privity is a necessary element to an implied warranty claim.  It is undisputed that

18  Rebro and Simpson lack vertical privity with Whirlpool.  Plaintiffs contend that an exception to

19  the privity argument applies in this case because Plaintiffs relied on manufacturer advertisements

20  in purchasing their Machines.  FAC ¶¶ 11, 16.  Defendants argue persuasively, however, that this

21  exception applies only in the context of express warranties.  *Blennis v. Hewlett-Packard Co.*, No.

22  C 07-00333 JF, 2008 WL 818526, *6 (N.D. Cal, Mar. 25, 2008), citing *Burr v. Sherwin Williams*

23  *Co.,* 42 Cal. 2d 682, 696 (1954) and *Chandler v. Chandler*, No. 96-1047 SI, 1997 WL 464827 at

24  *7 (N.D. Cal. 1997) ("vertical privity is a prerequisite in California for recovery on a breach of

25  implied warranty theory").

26          **2. Implied Warranty of Merchantability**

27      "The mere manifestation of a defect by itself does not constitute a breach of the implied

28  warranty of merchantability.  Instead, there must be a fundamental defect that renders the product

18

1  unfit for its ordinary purpose." *Am. Suzuki Motor Corp. v. Super. Ct.,* 37 Cal.App.4th 1291,

2  1295 (Cal.Ct.App.1995).  Plaintiffs fail to plead that their Machines are unfit for their ordinary

3  purpose of cleaning clothes.  FAC ¶ 130.  Plaintiffs allege many other things, including that their

4  Machines stop in mid-cycle and that they must be restarted, sometimes more than once, and that

5  they display "F" error messages.  Id. ¶¶ 50, 60.  However, Plaintiffs do not claim that they cannot

6  use their Machines at all or that they have been forced to replace their Machines with other

7  washers that are capable of washing clothes.  *See Am. Suzuki Moto Corp.*, 37 Cal.App.4th at

8  1295.[6]

9      **F. Magnuson-Moss Warranty Act**

10         The FAC alleges that Defendants' breach of the express warranty also constituted a

11  violation of the MMWA.  FAC ¶¶ 140-160, 164.  The MMWA provides a federal claim for relief

12  based upon certain state warranty claims.  *Monticello v. Winnebago Indus. Inc.,* 369 F.Supp.2d

13  1350, 1356 (N.D. Ga. 2005).  However, it does not expand consumers' rights with respect to

14  such claims, and dismissal of the underlying state law claims requires the same disposition with

15  respect to an associated MMWA claim.  *See id., see also Clemens v. DaimlerChrysler Corp.*, 534

16  F.3d 1017, 1022 (9th Cir.2008) ( "disposition of the state law warranty claims determines the

17  disposition of the Magnusson-Moss Act claims.");  *Daugherty v. Am. Honda Motor Co., Inc.*, 144

18  Cal.App.4th 824, 833, 51 Cal.Rptr.3d 118 (2006) ("the trial court correctly concluded that failure

19  to state a warranty claim under state law necessarily constituted a failure to state a claim under

20  Magnusson-Moss.").

21         Plaintiffs also allege that Defendants' failure to comply with Section 293.5 of the Code of

22  Federal Regulations (16 C.F.R. 293.5) gives rise to a claim under the MMWA.  The regulatory

23

24  _____

       [6] Plaintiffs contend that the dismissal of Tietsworth's original claim for breach of implied

25  warranty was incorrect in light of *Mexia v. Rinker Boat Co., Inc.,* 174 Cal. App. 4th 1297 (2009),
   which held that an "implied warranty of merchantability may be breached by a latent defect

26  undiscoverable at the time of sale."  *Id.* at 1304-1305.  While *Mexia* appears to be something of
   an outlier, this Court need not determine whether *Mexia*'s holding changes its prior

27  determination, as Plaintiffs have failed to plead facts supporting a claim that their Machines no
   longer are fit for their ordinary purpose of washing clothes.

28

                                          19

1    language at issue provides that "[a] seller or manufacturer seller or manufacturer should advertise

2    that a product is warranted or guaranteed only if the seller or manufacturer, as the case may be,

3    promptly and fully performs its obligations under the warranty or guarantee." 16 C.F.R. 293.5.

4    However, this Court need not decide whether an FTC regulation provides a separate basis for an

5    MMWA claim, as Plaintiffs have failed to allege a sufficient factual basis for their claim that

6    Defendants did not "promptly and fully perform [their] obligations' under the warranty." *See*

7    *supra* III.A.B.[7]

8        Plaintiffs also argue that they have alleged actionable independent violations of the

9    substantive provisions of the MMWA unrelated to their claims for relief under state law. The

10   MMWA requires that warrantors include certain disclosures "in simple and readily understood

11   language," including "exceptions or exclusions from the terms of the warranty." 15 U.S.C.

12   2302(a)(1)-(13); 15 U.S.C. 2302(a)(6). Plaintiffs' Letter Brief at 2-3. The FAC alleges that

13   Defendants failed and refused to replace the Electronic Control Boards with non-defective parts

14   that conform to their written warranty. FAC ¶ 159. However, this factual allegation in and of

15   itself does not support an MMWA claim. In their present form, Plaintiffs' pleadings contain only

16   a conclusory allegation that Defendants did not properly respond to complaints regarding the

17   Electronic Control Panels in breach of the promises contained in the warranty. *"It is axiomatic*

18   that the complaint may not be amended by briefs in opposition to a motion to dismiss." *See Barbera*

19   *v. WMC Mortgage Corp.*, No. C 04-3738 (SBA), 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19,

20   2006) , quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984).

21       For the same reason, Plaintiffs' contention that Defendants violated 15 U.S.C. 2302(a)(9)

22   by failing to include "a brief, general description of the legal remedies available to the consumer"

23

24   ───────────────

25       [7]  In response to the Court's request for further briefing with respect to this issue,
     Plaintiffs also argue that Defendants' failure to comply with 16 C.F.R. 293.5 is a separate basis
26   for a UCL claim under the "unlawful prong." California courts have determined that "a violation
     of a federal law or regulation 'may serve as a predicate for a [UCL] action.'" *Smith v. Wells*
27   *Fargo Bank, N.A.*, 135 Cal.App.4th 1463, 1480 (2005), citing *Roskind v. Morgan Stanley Dean*
     *Witter & Co.* 80 Cal.App.4th 345, 352 (2000). Nonetheless, Plaintiffs' factual allegations are
28   insufficient for the reasons discussed at length above.

1   in the express warranty is unpersuasive.  Neither the FAC nor Plaintiffs' papers contain any

2   factual allegations that would support this claimed violation.

3        Defendants argue additionally that Plaintiffs have failed to state an MMWA claim against

4   Whirlpool because Plaintiffs do not plead that they notified Whirlpool directly of the alleged

5   breach of warranty.  The MMWA requires that a plaintiff provide a defendant with an

6   opportunity to cure the alleged breach, and the defendant itself must have refused directly to

7   provide a cure.  *Lewis v. Mercedes-Benz. USA LLC, No. Civ. A.* 1:03CV4000JOF, 2004 WL

8   3756384 at *3-4 (N.D. GA Sept. 13, 2004).  Plaintiffs contend that *Lewis* is distinguishable,

9   pointing out that in *Lewis* the written warranty stated specifically that written notice of any

10   defects had to be provided to Mercedes Benz USA LLC (as distinct from the local dealership).

11   *See Id.*  Plaintiffs argue that the warranty in this case contains no such provision, and that in fact

12   the warranty directs the consumer to contact Sears in case of a defect or problem.  FAC ¶ 36.

13   Defendants reply that the MMWA "itself" requires consumers to provide the manufacturer

14   directly with its own opportunity to cure "before they may seek any remedies for breach of

15   warranty under [the MMWA's] provisions."  See *Lewis,* 2004 WL 3756384 at *3.

16        Plaintiffs allege that Sears and Whirlpool acted in concert with respect to the

17   manufacturing, design, distribution and repair of the defect at issue here.  The Court concluded

18   previously that Plaintiff had failed to allege in more than conclusory terms that Whirpool knew

19   of the alleged defect at the time of sale.  *See contra*, Radford *v. Daimler Chrysler Corp.,* 168 F.

20   Supp. 2d 751, 754 (N.D. Ohio 2001) (finding MMWA's opportunity to cure requirement was

21   met where plaintiff did sufficiently plead that defendant manufacturer knew of the allegedly

22   defective instrument panel at the time of sale).

23        **G.  Unjust Enrichment**

24        Plaintiffs' claim for unjust enrichment is premised on the same alleged course of conduct

25   that underlies their other claims.  *See* FAC ¶ 186 (incorporating by reference previous

26   allegations).  Under California law, a claim for unjust enrichment cannot stand alone as an

27   independent claim for relief.  *See Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008)

28   ("unjust enrichment is not a cause of action.  Rather, it is a general principle underlying various

21

1   doctrines and remedies, including quasi-contract.") (citation omitted).  *See also Melchior v. New*

2   *Line Prods., Inc*., 106 Cal. App. 4th 779, 793 (2003), quoting *Lauriedale Assocs., Ltd. v. Wilson*,

3   7 Cal. App. 4th 1439, 1448  (1992) ("there is no cause of action in California for unjust

4   enrichment.  'The phrase "Unjust Enrichment" does not describe a theory of recovery, but an

5   effect: the result of a failure to make restitution under circumstances where it is equitable to do

6   so.") Because Plaintiffs have yet to allege a viable claim for relief, their claim for unjust

7   enrichment also must be dismissed with leave to amend.  *See Oestreicher*, 544 F. Supp. 2d at 975

8   ("since plaintiff's fraud-based claims have been dismissed, plaintiff has no basis for its unjust

9   enrichment claim."); *see also Sanders v. Apple Inc.*, No. C 08-1713, 2009 WL 150950, at *9

10  (N.D. Cal. Jan. 21, 2009) ("[unjust enrichment] claim will depend upon the viability of the

11  Plaintiffs' other claims.").

12       Defendants argue additionally that Plaintiffs have not stated an unjust enrichment claim

13  against Whirlpool because Plaintiffs do not allege that Whirlpool received a benefit at Plaintiffs'

14  expense and retained that benefit unjustly. *See First Nationwide Sav. v. Perry*, 15 Cal. Rptr. 2d

15  173, 176 (Cal. Ct. App. 1992).  Plaintiffs allege they purchased Oasis washers from various Sears

16  stores and outlets in California.  FAC ¶¶ 41, 46, 57.  The only reference to Whirlpool that

17  suggests unjust enrichment is a recitation of the elements of an unjust enrichment claim.  FAC ¶¶

18  186-189.  Plaintiffs allege no facts connecting Whirlpool to Plaintiffs' payments for the

19  Machines or explaining how Whirlpool benefitted directly or indirectly from the sale of the

20  Machines.  As is the case with many of Plaintiffs' claims, this omission likely is curable by

21  amendment.

22                              **IV.  ORDER**

23       Good cause therefor appearing, Defendants' motion to dismiss is GRANTED, with leave

24  to amend in a manner consistent with this order.  Any amended complaint shall be filed within

25  thirty (30) days of the date this order is filed.

26

27

28

Case No. 5:09-CV-00288 JF (HRL)
ORDER GRANTING MOTION TO DISMISS
(JFLC1)

1

2  **IT IS SO ORDERED.**

3

4

5  DATED: 10/13/09

6

7                                    _____
                                     JEREMY FOGEL
8                                    United States District Judge__

9

10

11

12

13

14

15

16

17

18  _____

19

20

21

22

23

24

25

26

27

28

1

2  This Order was served on the following persons:

3

4  Clement L. Glynn     cglynn@glynnfinley.com, dmenor@glynnfinley.com

5  Galen Driscoll Bellamy     bellamy@wtklaw.com

6  James M. Hanlon , Jr     jhanlon@glynnfinley.com

7  Jennie Lee Anderson     jennie@andrusanderson.com, jaime@andrusanderson.com

8  Joel Steven Neckers     neckers@wtklaw.com, keitlen@wtklaw.com

9  Lori Erin Andrus     lori@andrusanderson.com, jaime@andrusanderson.com

10  Michael Timothy Williams     williams@wtklaw.com, kemezis@wtklaw.com,
mallett@wtklaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:09-CV-00288 JF (HRL)
ORDER GRANTING MOTION TO DISMISS
(JFLC1)