1   Lori E. Andrus (SBN 205816)
    Jennie Lee Anderson (SBN 203586)
2   ANDRUS ANDERSON LLP
    155 Montgomery Street, Suite 900
3   San Francisco, CA 94104
    Telephone: (415) 986-1400
4   Facsimile: (415) 986-1474
    lori@andrusanderson.com
5   jennie@andrusanderson.com

6   *Attorneys for Plaintiffs and the Proposed Class*

7   *(Additional Counsel Listed on Signature Page)*

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  RENEE TIETSWORTH, SUZANNE            Civil Case No.: C09-00288-JF
    REBRO, SONDRA SIMPSON and JOHN
14  CAREY, On Behalf of Themselves and All
    Others Similarly Situated,           **MEMORANDUM OF POINTS AND
15                                        AUTHORITIES IN SUPPORT OF
                   Plaintiffs,           PLAINTIFFS' MOTION FOR LEAVE TO
16                                        AMEND THE THIRD AMENDED
         v.                              COMPLAINT**
17
    SEARS ROEBUCK AND CO., and           CLASS ACTION
18  WHIRLPOOL CORPORATION,
                                         Hearing Date:  May 13, 2011
19                 Defendants.           Hearing Time: 9:00 a.m.
                                         Judge:          Hon. Jeremy Fogel
20                                       Courtroom:    3, 5th Floor

21

22

23

24

25

26

27

28

1    **I.      STATEMENT OF ISSUES TO BE DECIDED**

2           Whether Plaintiffs should be permitted, in light of a change in state law brought about by

3    a recent decision of the Supreme Court of California, to amend their proposed class definition.

4    **II.     INTRODUCTION**

5           *On January 27, 2011, the California Supreme Court issued a decision with important*

6    *ramifications for this litigation*.  The ruling in *Kwikset Corporation v. Superior Court (James*

7    *Benson et al.)* clarified California law on a substantive issue that is binding on this Court.

8    Specifically, *Kwikset* holds that where a defendant misrepresents the characteristics of a product,

9    the *injury occurs at the time of sale* and, as such, persons who "surrender in a transaction more,

10   or acquire in a transaction less, than he or she otherwise would have" have "lost money or

11   property" under Cal. Civ. Code §§ 17204 ("UCL") and 17535.  *Kwikset Corporation v. Superior*

12   *Court (James Benson et al.)*, 2011 WL 240278, at *6, *13 (Cal. Jan. 27, 2011).

13          Post-*Kwikset*, amendment of the Third Amended Complaint ("TAC") is appropriate to

14   include all owners of the Machines, regardless of whether the defect has "manifested."  Plaintiffs

15   thus seek to amend the Classes and Sub-Class (collectively "Classes") to be defined as follows:

16                  The California Class: All California residents and entities who purchased a top-
17                  loading Kenmore Elite Oasis automatic washing machine equipped with an
                    Electronic Control Board, including, but not limited to model numbers 110.2703*,
18                  110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and
                    110.2715*, from January 1, 2004 to the present.
19
                    The California Sub-Class: All Class members who are "consumers"
20                  as defined by California Civil Code § 1761(d).

21                  The Nationwide Class: All United States residents and entities who purchased a
                    top-loading Kenmore Elite Oasis automatic washing machine equipped with an
22                  Electronic Control Board, including, but not limited to model numbers 110.2703*,
                    110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and
23                  110.2715*, from January 1, 2004 to the present.

24

25   *See* Proposed Fourth Amended Complaint ("Proposed FAC"), Exhibit A to Declaration of Lori E.

26   Andrus in Support of Plaintiffs' Motion for Leave to Amend ("Andrus Decl."), filed herewith.

27          Now that the California Supreme Court has unambiguously pinned UCL "injury in fact"

28   to the *time of sale*, the present class definitions here are overly narrow.  Under *Kwikset*, *all*

MPA IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO AMEND
CASE NO. C09-00288-JF

1   owners of the defective washing machines assert valid legal claims based on their economic

2   injury at the time of sale.  For these reasons, as well as those set forth below, Plaintiffs' class

3   definitions should be expanded and this motion should be granted.

4   **III.   FACTUAL ALLEGATIONS**

5           Plaintiffs' factual allegations in the TAC are briefly summarized as follows: Plaintiffs and

6   Class members purchased certain Kenmore Elite Oasis™ automatic washing machines

7   ("Machines") equipped with Electronic Control Boards.  *See* TAC, ¶ 11.  At all relevant times,

8   Defendants concealed and failed to disclose material facts about the Machines – specifically, that

9   the Machines were equipped with defective Electronic Control Boards that would cause the

10  Machines to malfunction and fail long before their anticipated useful life.  *Id.*, ¶¶ 13, 14.  At the

11  same time, Defendants made various misrepresentations about the Machines via, for example, an

12  extensive advertising and promotional campaign.  *Id.*, ¶¶ 12, 14.  Defendants had a duty to

13  disclose the true nature of the Machines – based upon their exclusive possession of knowledge of

14  the defects, their active concealment of the defects, their partial misrepresentations regarding the

15  Machines, and the safety risk presented by the defect.  *Id.*, ¶ 32.

16          These omissions are material in that Plaintiffs and Class members would not have

17  purchased, or would have paid significantly less for their Machines, had their defective nature

18  been disclosed.  *Id.*, ¶ 34.

19          Plaintiffs' allegations provide specific information regarding the knowledge that both

20  Defendants had of the Machines' defective nature, and the timing of that knowledge.  *Id.*, ¶¶ 17,

21  18, 19.  Plaintiffs allege that, by May of 2006, the Electronic Control Boards were the most

22  frequently replaced part on the Machines.  *Id.*, ¶ 17.  Internally, Defendants mutually

23  acknowledged that units equipped with the defective Electronic Control Boards, "***required***

24  repair/replacement."  *Id.*  At the same time, Defendants continued to sell the Machines and

25  Plaintiffs and Class members continued to be denied replacements for their defective parts, told

26  that neither the Machines nor the Electronic Control Boards were defective and charged

27  exorbitant amounts to repair defective Machine parts.  *Id.*, ¶ 21.  By October of 2006 at the latest,

28  Defendants had concluded from their data and reported internally that the Machines had a Service

1   Rate Incident that was three to four times higher than traditional top loader washing machines.

2   *Id.*, ¶ 19.

3   **IV.   PROCEDURAL HISTORY**

4         On April 30, 2010, Plaintiffs served the TAC.  The TAC incorporated definitions of the

5   Classes that, owing to the Court's order of March 31, 2010 ("March 2010 Order") (Docket No.

6   91.)[1], included only some of the persons injured by Defendants in this matter.  *See* TAC, ¶ 86.[2]

7   **V.   LEGAL STANDARD**

8         The Federal Rules of Civil Procedure mandate that leave to amend be freely given "when

9   justice so requires."  Fed. R. Civ. P. 15(a)(2).  Indeed, the policy is to be applied "with extreme

10  liberality."  *Eminence Capital, LLC v. Aspeon, Inc*, 316 F.3d 1048, 1051 (9th Cir. 2003).

11        District courts routinely grant leave to amend a complaint due to changes in the law.  *See,*

12  *e.g., McBeth v. Gabrielli Truck Sales, Ltd.*, 731 F.Supp.2d 316, 321 (E.D.N.Y. 2010) (amendment

13  to class action complaint permitted to allege an additional state law claim following a change in

14  the law precipitated by the Supreme Court's decision in *Shady Grove Orthopedic Assoc., P.A. v.*

15  *Allstate Ins. Co.*, ___ U.S. ___, 130 S.Ct. 1431, 2010 WL 1222272 (Mar. 31, 2010)); *Darney v.*

16  *Dragon Products Co., LLC*, 266 F.R.D. 23, 29 (D.Me. 2010) (amendment to add additional cause

---

17  [1] The Court's March 2010 Order granted a motion by Defendants to strike a class definition
18  identical to the one outlined herein.  *See* March 2010 Order, p. 30.
    [2] The present class definition in the TAC is as follows:

19
20  The California Class: All California residents and entities who purchased a top-loading Kenmore
    Elite Oasis automatic washing machine equipped with an Electronic Control Board, including but
21  not limited to model numbers 110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*,
    110.2708*, 110.2709* and 110.2715*, from January 1, 2005 to the present, whose Machines have
22  repeatedly stopped in mid-cycle while displaying error codes and/or who have experienced a
    malfunction requiring replacement of the Electronic Control Board.

23
    The California Sub-Class: All Class members who are "consumers" as defined by California Civil
24  Code § 1761(d).

25  The Nationwide Class: All United States residents and entities who purchased a top-loading
26  Kenmore Elite Oasis automatic washing machine, including but not limited to model numbers
    110.2703*, 110.2704*, 110.2705*, 110.2706*, 110.2707*, 110.2708*, 110.2709* and 110.2715*,
27  from January 1, 2005 to the present, whose Machines have repeatedly stopped in mid-cycle while
    displaying error codes and/or who have experienced a malfunction requiring replacement of the
28  Electronic Control Board.

1   of action permitted after the end of the discovery period and summary judgment, following a

2   change in state law precipitated by *Dyer v. Maine Drilling & Blasting, Inc.*, 984 A.2d 210 (Me.

3   2009)); *Bullock v. Board of Educ. of Montgomery County*, 210 F.R.D. 556, 558 n.1 (D.Md. 2002)

4   (amendment to class action complaint permitted to add additional class representatives following

5   a legislative change in the definition of "homeless children and youths" by the reauthorized

6   McKinney-Vento Act, 42 U.S.C. § 11434a).

7   **VI.   ARGUMENT**

8       **A.   The *Kwikset* Decision**

9          In *Kwikset*, Justice Werdegar, writing for the majority, stated that the "plain import" of

10  Proposition 64 "is that a plaintiff now must demonstrate some form of economic injury." *Kwikset*

11  *Corporation v. Superior Court (James Benson et al.)*, Case No. S171845, 2011 WL 240278, at *6

12  (Cal. Jan. 27, 2011).  Indeed, the California Court of Appeal had dismissed the plaintiff's case, on

13  the stated basis that he had failed to demonstrate an economic injury.  *Kwikset*, 2011 WL 240278

14  at *3.  But the Supreme Court of California reversed the appellate court, holding that the plaintiff

15  had indeed been injured. *Id.* at *15.

16         The *Kwikset* Court explained that the intent of Proposition 64 was to confine UCL actions

17  to those actually injured by a defendant's business practices, and to curtail the prior practice of

18  filing suits on behalf of "clients who have not used the defendant's product or service, viewed the

19  defendant's advertising, or had any other business dealing with the defendant." *Id.* at *4 (citation

20  omitted).  Resolving an issue that had been very much in flux since the passage of Proposition 64,

21  the Court stated that Proposition 64 clearly preserved a right of action for plaintiffs "who had had

22  business dealings with a defendant and had lost money or property as a result of the defendant's

23  unfair business practices." *Id.* (citation omitted).

24         The *Kwikset* decision also re-affirmed that "in the eyes of the law, ***a buyer forced to pay***

25  ***more than he or she would have is harmed at the moment of purchase***." *Id.* at *13, *citing*

26  *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 768-69, 788-89 (2010).

27         In *Kwikset*, the Supreme Court of California re-affirmed the basic truism that "[t]here are

28  innumerable ways in which economic injury from unfair competition may be shown." *Kwikset*,

1   2011 WL 240278 at *6.  The Court noted that neither Proposition 64 nor the ballot arguments

2   supporting it defined the concept of "lost money or property."  *Id.*  And the Court enumerated that

3   one of the ways in which a plaintiff might "lose money or property" is that s/he might surrender

4   in a transaction more, or acquire in a transaction less, than he or she otherwise would have.[3]  *Id.*

5       In this case, Plaintiff Renee Tietsworth has pled since her initial complaint in the Superior

6   Court of California that "[h]ad the Defendants disclosed the defective nature of the Machine that

7   causes the Machine to fail and stop in mid-cycle, she would not have purchased or would have

8   paid less for her Machine."  *See* Class Action Complaint and Demand for Jury Trial, December

9   22, 2008 at ¶ 23.  Plaintiff Tietsworth, along with her fellow Plaintiffs and Class members, has a

10  cause of action because she "seeks to recover the difference between what she contracted for and

11  what she actually received."  *Sanchez v. Wal-Mart Stores et al.*, Case No. Case No. 2:06-CV-

12  2573 JAM KJM, 2008 WL 3272101, at *10 (C.D. Cal. Aug. 6, 2008) (denying summary

13  judgment where plaintiff alleged that were it not for defendants' false and misleading statements,

14  including omissions, she would not have purchased a defective stroller).

15      In an order dated March 31, 2010, this Court granted a motion to strike Plaintiffs' class

16  allegations, deeming the putative class not ascertainable.  Now that *Kwikset* has clarified that,

17  under California law, misrepresentations cause injury at the time of sale under the UCL, Plaintiffs

18  respectfully seek leave to amend their complaint to reflect a broader class of persons consistent

19  with applicable law — all persons in California who purchased a Kenmore Elite Oasis washer.

20      ***Under* Kwikset*, every individual who purchased one of the defective Machines was, as*

21  *a matter of substantive state law, tangibly injured at the moment of purchase*.  "[I]n the eyes of

22  the law, a buyer forced to pay more than he or she would have is harmed at the moment of

23  purchase, and further inquiry into such subsequent transactions, actual or hypothesized, ordinarily

24  is unnecessary."  *Id.* at *13.  *Kwikset* makes clear that Proposition 64 targeted "drive-by"

25  plaintiffs who had absolutely no factual connection or business dealing with the defendants

26  whatsoever.  *Kwikset*, 2011 WL 240278 at *4.  By purchasing a Machine, the Plaintiffs and the

---

[3] The *Kwikset* Court was equally clear, however, that in their decision, they did not need to supply "an exhaustive list of the ways in which unfair competition may cause economic harm."  *Kwikset,* 2011 WL 240278 at *6.

1   Class exposed themselves economically to injury from the defective product, and by being misled

2   into purchasing (or in any event, paying more for) a defective product, all members of the class

3   are affected "in a personal and individual way" that is not "conjectural" or "hypothetical." *See*

4   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Far from being ordinary citizens who

5   are merely disgruntled to learn of a defective product's existence somewhere in the marketplace,

6   the Class members have spent their own money on the product, brought it into their homes, and

7   suffered economic injury as a result.

8         **B.**    **The *Wolin* Decision**

9         Plaintiffs' Motion for Leave To Amend is further supported by the Ninth Circuit Court of

10   Appeals' decision in *Wolin v. Jaguar Land Rover North America*, 617 F. 3d 1168, 1174 (9th Cir.

11   2010).  In *Wolin*, the Ninth Circuit reversed a district court's decision to deny class certification.

12   The district court had denied certification in part because the named plaintiffs did not prove the

13   defect manifested in a majority of the class's products.  *Id.*  In *Wolin*, as in this matter, the

14   plaintiffs argued that common issues predominated because all of the proposed class members

15   alleged their products suffered from the same defect. *Id.* at 1174.  **The Ninth Circuit reversed the**

16   **district court**, agreeing with the *Wolin* plaintiffs and holding that the litigation would require,

17   above all, common proof of the ***existence*** of the defect, regardless of "manifestation" of the

18   alleged defect.  *Id.*

19         The district court in *Wolin* had denied certification, holding that "Plaintiff here has not

20   shown credibly that even a majority of the class members have experienced the defect."  *Gable v.*

21   *Land Rover North America, Inc.*, No. CV07-0376 AG (RNBx), 2008 WL 4441960, *5 (C.D. Cal.

22   Sep. 29, 2008).  **Indeed, Defendants in this case cited the lower court decision in Wolin**

23   **multiple times in their Motion to Strike**.  *See* Defendants' Motion to Strike Class Allegations

24   from the Second Amended Complaint, pp. 16 and 21. (Docket No. 67.)  **But that decision has**

25   **now been emphatically reversed**.  *Wolin*, 617 F.3d at 1176.

26         Defendants in this action claim that individual questions of whether each Machine's

27   defect has manifested preclude class certification.  But in *Wolin*, the Ninth Circuit re-affirmed

28   that this is a question for the merits stage of the action, stating that "proof of the manifestation of

1   a defect is not a prerequisite to class certification." *Wolin*, 617 F.3d at 1173, *citing Blackie v.*

2   *Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  The *Wolin* court explained that the inquiry as to

3   whether "class members can win on the merits . . . does not overlap with the predominance test."

4   *Wolin*, 617 F.3d at 1173.  The argument advanced by defendants in *Wolin*, that problems with the

5   tires were due to individual factors such as driving habits and weather, were questions on the

6   ***merits*** and had no bearing on whether the tires were sold with a defect, and had no place at the

7   class certification stage.  *Wolin*, 617 F.3d at 1173.

8        Here, as in *Wolin*, the common question of the ***existence*** (and not the manifestation) of the

9   defect predominates—and the Defendants should not be permitted to prematurely argue the

10  merits.

11       **C.     The Class As Amended Is Ascertainable.**

12       A class is ascertainable if it is sufficiently well-defined at the outset (although all

13  members do not need to be known) to permit meaningful notice to be given.  *See* Fed. Rule Civ.

14  P. 23(c)(2).   It is also necessary that the court at the time of judgment be able to identify the

15  members of the class in order to determine who will be entitled to relief and bound by the final

16  judgment.  *See* Manual for Complex Litigation, Third, § 30.14.

17       The reason and purpose of the ascertainability requirement brings the logic of plaintiffs'

18  proposed amendment into sharp focus.  Ascertainability is simply required to ensure that all

19  putative class members receive notice of the action and that the resulting judgment will have res

20  judicata effect as to those class members. *See Hicks v. Kaufman & Broad Home Corp.*, 89 Cal.

21  App. 4th 908, 914 (2001).  Ascertainability "goes to the heart of the question of class

22  certification, which requires a class definition that is 'precise, objective and presently

23  ascertainable.'"  *Global Minerals & Metals Corp. v. Superior Court,* 113 Cal. App. 4th 836, 858

24  (2003) (citations omitted), *quoting In re Copper Antitrust Litigation*, 196 F.R.D. 348, 359 (2000).

25  Thus, whether a class is ascertainable turns on how the proposed class is defined, the size of the

26  proposed class and the means available for identifying class members.  *Global Minerals & Metals*

27  *Corp. v. Superior Court*, 113 Cal. App. 4th at 849.  Although a proposed class plaintiff need not

28  establish the existence and identity of class members at the certification stage of the proceedings,

1    he or she must show that there are objective criteria by which class members can later be

2    identified and given notice of the proceedings.  *Reyes v. Board of Supervisors*, 196 Cal. App. 3d

3    1263, 1274-75 (1987); *see also* Manual for Complex Litigation (4th ed.) § 21.222.  Importantly,

4    such objective criteria are all that is required to meet the ascertainability test and requirement.

5            Here, the proposed amended class definitions represent an identifiable group of persons,

6    who are, for the most part, known to Defendants.  Taken together, *Kwikset* and *Wolin* are new

7    (and binding)  developments in the law that, for class actions of this nature, clarify both a) when

8    and how a plaintiff is legally injured, and b) the proper time to address the manifestation of a

9    defect.  *Kwikset* establishes that since the legal-economic injury takes place at the time of sale, all

10   who purchased the defective Machines have causes of action and may join the class.  *Wolin* re-

11   affirms that the existence of a defect is one of the common questions that will predominate in this

12   action.  Questions of defect manifestation are reserved for a later point in the litigation and relate

13   solely to the merits (and not class certification).

14           **D.      Case Law Supports Ascertainability.**

15           In granting Defendants' Motion to Strike in March of 2010, this Court cited *Hovsepian v.*

16   *Apple, Inc.*, Case No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) and

17   *Bishop v. Saab Automobile et al.*, Case No. CV 95-0721, 1996 WL 33150020, at *5 (C.D. Cal.

18   Feb. 16, 1996).

19           The present action, analyzed in light of the new principles announced in *Kwikset*, differs

20   in one crucial respect from cases such as *Hovsepian* and *Bishop*.[4]  **This is not merely a "tendency**

21   **to fail" case**.  It is beyond dispute, and **uncontested**, that Defendants failed to disclose the

22   defective nature of the Machines' Electronic Control Boards.  Under the legal theory endorsed in

23   *Kwikset*, the harm to a plaintiff occurs at the time s/he purchases the product based on information

24   the defendant has manipulated to its advantage.  *See Kwikset*, 2011 WL 240278 at *10.  As

25   alleged by Plaintiffs since the initial complaint in 2008, "[h]ad the Defendants disclosed the

26   defective nature of the Machine that causes the Machine to fail and stop in mid-cycle, [Plaintiff

27   ───────────────

28   [4] Notably, *Bishop* is also distinguishable in that plaintiffs there did not allege UCL claims. 1996
     WL 33150020, at *1.

Renee Tietsworth] would not have purchased or would have paid less for her Machine." *See* Class Action Complaint and Demand for Jury Trial, dated December 22, 2008 at 6:17-19. ***This case, like* Kwikset*, is thus concerned with fraudulent conduct in connection with purchases***. In *Kwikset*, as in this matter, plaintiffs believed they were buying a different product from the one they actually acquired.

**VII.    CONCLUSION**

Based on the foregoing, Plaintiffs' Motion for Leave to Amend should be granted to expand the definition of the classes.

DATE: March 14, 2011                                            Respectfully submitted,

                                                               ANDRUS ANDERSON LLP

                                                               ___*/s/ Lori E. Andrus*_____
                                                               Lori E. Andrus

                                                               Lori E. Andrus (SBN 205816)
                                                               Jennie Lee Anderson (SBN 203586)
                                                               ANDRUS ANDERSON LLP
                                                               155 Montgomery Street, Suite 900
                                                               San Francisco, CA 94104
                                                               Telephone: (415) 986-1400
                                                               Facsimile: (415) 986-1474
                                                               lori@andrusanderson.com
                                                               jennie@andrusanderson.com

                                                               James E. Miller
                                                               SHEPHERD, FINKELMAN, MILLER &
                                                               SHAH, LLP
                                                               65 Main Street
                                                               Chester, CT 06412
                                                               Telephone: (860) 526-1100
                                                               Facsimile: (860) 526-1120
                                                               jmiller@sfmslaw.com

                                                               Natalie Finkelman
                                                               James C. Shah
                                                               SHEPHERD, FINKELMAN, MILLER &
                                                               SHAH, LLP
                                                               35 East State Street
                                                               Media, PA 19063
                                                               Telephone: (610) 891-9880
                                                               Facsimile: (610) 891-9883
                                                               nfinkelman@sfmslaw.com
                                                               jshah@sfmslaw.com

                                                               *Attorneys for Plaintiffs and the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2011, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 14, 2011                              */s/ Lori E. Andrus*
                                                     Lori E. Andrus

                                  ANDRUS ANDERSON LLP
                                  155 Montgomery Street, Suite 900
                                  San Francisco, CA 94104
                                  Telephone: (415) 986-1400
                                  Facsimile: (415) 986-1474
                                  lori@andrusanderson.com

MPA IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO AMEND
CASE NO. C09-00288-JF