Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
Jessica Moy (SBN 272941)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
jessica@andrusanderson.com

[Additional counsel identified on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RENEE TIETSWORTH, SUZANNE REBRO, SONDRA SIMPSON, and JOHN CAREY, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEARS ROEBUCK AND CO., and WHIRLPOOL CORPORATION,<br><br>Defendants. | Civil Case No.: C09-00288-JF<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>CLASS ACTION<br><br>Judge:      Hon. Jeremy Fogel<br>Courtroom:  3, 5th Floor |

**PUBLICLY FILED REDACTED VERSION**

## I.     INTRODUCTION

Plaintiffs hereby submit supplemental briefing in support of their Motion for Class Certification ("Motion") (Docket No. 126) as requested by the Court during oral argument. Specifically, the Court has indicated interest in the parties' interpretation of *Wilson v. Hewlett-Packard Co. ("Wilson")*, 668 F.3d 1136 (9th Cir. 2012), and its impact, if any, on the present Motion.

Unsurprisingly, Defendants urge the broadest possible reading of *Wilson*. But such an interpretation leads to an absurd result: if *Wilson* does indeed mean that a manufacturer can never be liable for concealing a known defect unless that defect presents a safety hazard, the manufacturer can conceal the defect ***with impunity*** even if the manufacturer is fully aware that the defect will result in "▓▓▓▓▓▓▓▓▓" from the product's inception and even if the product is "substantially likely to fail" within its useful life. This view of the world contradicts long-standing legislative policy underlying California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") and portends a new era of *caveat emptor* in which sellers are free to engage in intentionally fraudulent conduct by concealing a wide array of material information from buyers without any accountability. Such a profound public policy shift was not the intention of *Wilson*, the holding of which was limited to the unique facts of that case and, in any event, the three-judge panel deciding *Wilson* had no authority to ignore binding precedent to the contrary.

Instead, when reconciled with ***binding*** California Supreme Court and Ninth Circuit authority, a realistic reading of *Wilson* demonstrates unequivocally that: 1) although a safety defect in a product qualifies as "material" information which a retailer is bound to disclose if it has exclusive knowledge of such information or if it actively conceals such information; 2) materiality is not, and has never been, defined solely in the context of safety. Accordingly, *Wilson*—which is distinguishable from the present case in several important respects—should be read narrowly, has not altered the state of the law in any way, and has no bearing whatsoever on Plaintiffs' motion for class certification.

///

## II. ARGUMENT

### A. Materiality, As Defined In Binding California Supreme Court Authority, Does Not Require Allegations Of A Safety-Related Defect.

Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (citation omitted). As the California Court of Appeal in *Khan v. Shiley, Inc.*, 217 Cal. App. 3d 848, 858 (1990), aptly explained: "[A] manufacturer of a product may be liable for fraud when it conceals material product information from potential users. This is true whether the product is a mechanical heart valve or frozen yogurt."

Here, Plaintiffs allege that Defendants violated the UCL and the CLRA by knowingly failing to disclose material facts regarding certain Kenmore Oasis washing machines (the "Machines")—specifically that the Machines each possess a defective Electronic Control Board ("ECB"). *See* Docket No. 93, Third Amended Complaint ("TAC"), ¶¶ 13-17. Plaintiffs further allege that Defendants' duty to disclose was trigged by the second (exclusive knowledge of material facts—the ECB defect) and third (active concealment of a material fact—the ECB defect) *LiMandri* factors. *Id.*, ¶ 17.

On the question of what constitutes materiality, the California Supreme Court and California Courts of Appeal have consistently adhered to a broad "reasonable person" standard—i.e., a misrepresentation or omission that causes a consumer to purchase a product that he or she would not have otherwise purchased. *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 329-33 (2011). "In the alternative, it may also be material if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.'" *Id.* at 333 (quoting Rest.2d Torts, § 538, subd. (2)(b)); *In Re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010) ("[T]he question that must be answered in this case is whether a reasonable

person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product.").

Importantly, binding California Supreme Court authority demonstrates that materiality *does not* require allegations of a safety defect. Instead, "[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question,' and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976-977 (1997)). Going as far back as 1971, in *Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971), the California Supreme Court has ***never*** required safety hazard allegations to meet the reasonable man standard of materiality. *Id.* at 815, n.9. Indeed, *Vasquez* makes clear that public policy rejects such a narrow rule. *Id.* at 808 ("Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society.").

In reality, no California Supreme Court decision has ever required safety allegations to find a failure to disclose material facts actionable.[1] Notably, in *Kwikset*—the California Supreme Court's most recent ruling discussing the legal concept of materiality—the unfair business practices complained of (that locksets fraudulently claimed to be "Made in U.S.A.") did not implicate ***any*** safety risks whatsoever. *See Kwikset*, 51 Cal.4th at 329-32. If the California Supreme Court intended to limit materiality to cases involving safety defects, surely it would

///

///

---

[1] As this Court's jurisdiction arises in diversity, the Court *is required to* follow California substantive law. *Erie v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) ("federal courts sitting in diversity [are] to apply state substantive law and federal procedural law"). Moreover, because the "highest state court is the final authority on state law," no federal court interpreting California law can change the California Supreme Court's determination that materiality does not require safety defect allegations. *See Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177-78 (1940).

have said so.[2]

### B. The Weight Of California Appellate Authority Is In Accord.

As recently as December 2011, the California Court of Appeals confirmed the validity of the four duty-to-disclose *LiMandri* circumstances in the product defect context, and also confirmed California's materiality standard under the CLRA and the UCL. *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011). In *Collins*, plaintiffs asserted CLRA and UCL claims, among others, on behalf of a putative class of computer purchasers for failure to disclose a defect which caused the floppy disk controller to improperly write data to, and improperly read data from, floppy disks, resulting in data corruption. *Id.* at 253.

In reversing the trial court's judgment on the pleadings, the appellate court in *Collins* stated: "[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue." *Id.* at 256 (citations omitted). Because the alleged defect impacted floppy disk data storage and because a floppy disks were "integral to the storage, access, and transport of accurate computer data, the floppy disk was central to the function of a computer as a computer. Against this backdrop, the public would expect or assume that a computer would contain all of the hardware required for a floppy disk to store, access and transport computer data accurately." *Id.* On this reasoning, the appellate court found that materiality was met, despite the fact that *Collins* did not involve a safety hazard. *Id.* at 256-58.

*Collins*, and the California substantive law it so clearly confirms, controls here. As in *Collins*, Plaintiffs here allege that Defendants had a duty to disclose based on the second and third *LiMandri* factors (exclusive knowledge and active concealment). *See Collins*, 202 Cal. App. 4th

---

[2] The legislative underpinnings of the UCL and the CLRA support Plaintiffs' position. The Legislature framed the UCL's substantive provisions in "broad, sweeping language." *Kwikset*, 51 Cal. 4th at 320 (citing *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("The Legislature intended this 'sweeping language' to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'")). Likewise, the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. Any attempt to limit a manufacturer's duty to disclose to only those products that pose safety hazards contravenes this statutory framework.

at 256. And, just as the defect in *Collins* was "central to the function of a computer as a computer," the ECB defect alleged here is the "central to the function of a [washing machine] as a [washing machine]." *Id.* The present case is identical to *Collins* in another important way: both involve failures *within* the warranty period: "This [is] not a situation where the microchip [washing machine] was complete and operational when sold but wore out or broke down over time because of use and wear and tear." *Id.* at 254.[3] To the contrary, the record demonstrates that the Machines share a common defect known to Defendants at the time of sale.

Other California appellate court decisions are on point. In *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 182, 188 (2010), the California Court of Appeal acknowledged that the omitted fact (that the color of Monier's roof tiles would fade) was material, despite the absence of any safety defect. *In Re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) is also in accord. *Id.* at 156-57 (holding that undisclosed fact that product contained unlawful steroid was material without considering or requiring safety defect allegations). Additionally, in *Lovejoy v. AT&T*, 92 Cal. App. 4th 85, 97-98 (2001), the California Court of Appeal found a cognizable claim for fraudulent concealment based on AT&T's concealment of its appropriation of the plaintiff's 1-800 number, which obviously did not implicate any safety concern.

### C. The Majority Of District Courts In The Ninth Circuit Have Correctly Found That A Safety Defect Is Not Required To Show Materiality.

Most federal courts in this Circuit, including this one, have accurately applied substantive California law in not requiring a plaintiff asserting a statutory consumer fraud claim to plead a safety hazard in order to establish a defendant's duty to disclose a defect. Rather, they have correctly only required that a plaintiff plead materiality—and they have found materiality where the defect at issue had nothing to do with a safety hazard. *See, e.g., Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1138 (N.D. Cal. 2010) ("To establish that Defendants owed a duty to Plaintiffs based upon exclusive knowledge of the defect, Plaintiffs also must demonstrate that the defect

---

[3] For this reason, as was the case in *Collins*, *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006) and *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) are both distinguishable. *Collins,* 202 Cal. App. 4th at 256-59 (holding, *inter alia*, "[t]he complaint before us is unlike *Daugherty* because it does not attempt an end-around the warranty laws;" "[i]n *Bardin* … the manifolds worked in their latent way during the warranty period.").

1  was material. Materiality exists if the omitted information would cause a reasonable consumer to
2  behave differently if he or she were aware of the information.") (citations omitted); *Tait v. BSH*
3  *Home Appliances Corp.*, No. SACV 10-00711 DOC (ANx), 2011 WL 3941387, at *1-3 (C.D.
4  Cal. Aug. 31, 2011) (failure to disclose that washing machines were prone to developing mold
5  was actionable absent any allegations of safety); *Baba v. Hewlett-Packard Co.*, No. 09-05946 RS,
6  2010 WL 2486353, at *4 (N.D. Cal. Jun. 16, 2010) (rejecting defendant's argument that "a
7  defendant is 'obliged to disclose' only when there are safety concerns posed by a defect.");
8  *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 WL 5788762, at *3 (C.D.
9  Cal. Jun. 12, 2009) ("Plaintiff alleges that if Defendant had disclosed the omitted information,
10 then Plaintiff would have been aware of the alleged defect and would have behaved differently.
11 Plaintiff successfully alleges materiality."); *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH,
12 2008 WL 344209, at *2 (N.D. Cal. Feb. 6, 2008) (plaintiffs successfully pled a CLRA claim
13 arising from defendant's failure to disclose material facts by alleging that "'had the omitted
14 information been disclosed, [they] would have been aware of it and behaved differently.'")
15 (citation omitted); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267-69 (C.D. Cal.
16 2007) (plaintiffs pled viable UCL claim arising from defendant's failure to disclose material
17 facts); *Bristow v. Lycoming Engines*, No. CIV. S-06-1947 LKK/GGH, 2007 WL 1106098, at *7
18 (E.D. Cal. Apr. 10, 2007) (materiality was adequately pled where "the complaint states that
19 defendants failed to disclose material information, and that this omission concerned 'facts that a
20 reasonable consumer would have considered important in deciding whether or not to purchase or
21 lease the aircraft.'"); *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 573, 578, 581-82
22 (2011) (certifying class of dentists who purchased defective dental implants based on material
23 omissions, without consideration of whether a safety risk was implicated); *Parkinson v. Hyundai*
24 *Motor Am.*, 258 F.R.D. 580, 586-87, 596, 600 (C.D. Cal. 2008) (certifying claims based on failure
25 to disclose material fact that automobile's "flywheel" was defective, without consideration of
26 whether a safety risk was implicated); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138,
27 1145, 1151 (N.D. Cal. 2005) (denying summary judgment and finding dispute of fact regarding
28 materiality with no requirement of safety hazard); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 477,

481, 489 (N.D. Cal. 2011) (certifying UCL, CLRA and MMWA claims based on material omissions regarding defective notebook computers, without consideration of whether a safety risk was implicated).[4,5]

### D. *Wilson* Is Distinguishable And Should Be Limited To Its Unique Facts.

This case is distinguishable from *Wilson* in several important respects. First, the plaintiffs in *Wilson* failed to sufficiently allege that Hewlett-Packard was aware of the defect prior to the sale of the computers. *See Wilson*, 668 F.3d at 1137 ("Plaintiffs' allegations that HP 'became familiar with' and was 'on notice' of the defect plaguing the Laptops at the time of manufacture and as early as 2002, seem merely conclusory."). Here, there is ample evidence that demonstrates Defendants' early awareness of the ECB defects, as this Court has already acknowledged. Indeed, the earliest evidence of Defendants' knowledge of the defective nature of the ECBs is embodied in Defendants' own customer service database, which shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6] *See* Declaration of Jessica Moy In Support Of Plaintiffs' Supplemental Briefing In

---

[4] In *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), Judge Alsup applied the *LiMandri* factors and determined that the defective nature of General Motors' speedometers was a material fact in that a "'reasonable customer' would not have paid the asking price had it been disclosed that the speedometer was defective." *Id.* at 1095, 1099. Although Judge Alsup indicated in a footnote that the faulty speedometers presented a safety hazard, the safety risk was only "further strengthen[ed]" plaintiffs' materiality allegations. *Id.* at 1096. Nothing in *Falk* *requires* a safety defect, however.

[5] Although a handful of federal courts in this Circuit have required a safety hazard for a duty to disclose to arise under certain circumstances, those cases are distinguishable from the present case in at least two respects. First, the products functioned as warranted during the warranty period. *See, e.g.*, *Morgan v. Harmonix Music Sys., Inc.*, No. 08-5211 BZ, 2009 WL 2031765, at *4 (N.D. Cal. Jul. 7, 2009); *In Re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1084 (S.D. Cal. 2010); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 966-67 (N.D. Cal. 2008). Second, the *LiMandri* factors were not considered, a misapplication of substantive California law. *See, e.g.*, *Morgan v. Harmonix Music Sys., Inc.*, 2009 WL 2031765, at *4-5. By contrast, here, the Court has properly recognized that the *LiMandri* factors apply to the case at hand, *see Tietsworth*, 720 F. Supp. 2d at 1133, and Plaintiffs have alleged with great specificity exclusive knowledge of the product defect from the beginning. *Id.* at 1136-39.

[6] Based on this evidence, the Class definition should be revised to reflect a start date of December 2005. The end date of the Class definition should remain "the present" as F-1, F-51 error codes and explosions can occur at anytime. To address Defendants' argument that the 46 model

*Footnote continued on next page*

1  Support Of Plaintiffs' Motion For Class Certification ("Moy Supplemental Declaration"),

2  submitted herewith, Exhibit A. This difference alone supports the conclusion that *Wilson* is not

3  applicable to the present case.

4    Another distinction between the present case and *Wilson* is the fact (explicitly

5  acknowledged in *Wilson*) that "plaintiffs in [*Tietsworth*] alleged that they began experiencing

6  problems within the first months of purchasing the Machine—i.e., within the express warranty

7  period." *Wilson*, 668 F.3d at 1142, n.1 (internal quotations omitted). The *Wilson* Court found the

8  fact that the plaintiffs had only experienced failure outside of their warranty periods to be

9  significant in its determination that when a product "'functions precisely as warranted throughout

10  the term of its express warranty,'" a duty to disclose should not be expanded "absent either an

11  affirmative misrepresentation or a safety issue." *Id.* at 1141 (citations omitted). Here, as in

12  *Collins*, Plaintiffs are not attempting "an end-around the warranty laws." *Collins*, 202 Cal. App.

13  4th at 257. Plaintiffs do not allege that the Machines wore out earlier than they would like, but

14  that they were sold with a known defect.

15    Finally, *Wilson* found that the plaintiffs had not alleged a sufficient nexus between the

16  alleged design defect and the alleged safety hazard. *See Wilson*, 668 F.3d at 1144. Here,

17  Plaintiffs have alleged that the defective ECB fails to detect and prevent Machine explosions

18  (which occur when a waterproof item traps water in the Machine's basket). TAC, ¶¶ 16-17, 30,

19  35, 49, 85, 117. Additionally, Plaintiffs have proffered evidence that **Defendants themselves**

---

20  *Footnote continued from previous page*
numbers in the Class definition (which Defendants *themselves* internally identified as the model
21  numbers requiring replacement ECBs) contain some unidentified (and likely small number of)
Machines within those model ranges that do not have a defective ECB, Plaintiffs offer two
22  responses. First, to meet Rule 23's "ascertainability" standard, the Class definition does not
require the exactitude Defendants claim is lacking. *See In re: TFT-LCD (Flat Panel) Antitrust*
23  *Litig.*, No. 3:07-md-01827-SI, 2012 WL 253298, **3-5 (N.D. Cal. Jan. 26, 2012) (explaining that
ascertainability is a "distinct concept" from "proof of class membership," and the former is all
24  that is required at the class certification stage); *see also Galvan v. KDI Distrib. Inc.,* No. SACV
08-0999-JVS, 2011 WL 5116585, at **3-5 (C.D. Cal. Oct. 25, 2011) (rejecting argument that
25  class definition including people who were not injured rendered class unascertainable). Second,
Plaintiffs have provided the Court with a detailed chart identifying *every* defective ECB by part
26  number, software version and pressure sensor manufacturer. *See* Declaration of Lori E. Andrus
In Support Of Plaintiffs' Reply In Support Of Plaintiffs' Motion For Class Certification ("Andrus
27  Reply Declaration") (Docket No. 144), Ex. C. This part number information (which the Class
member can find imprinted on the ECB) can be used at the appropriate time (in a future claims
28  process, for example) to verify that only Class members who have actually been injured recover.

1  wrote to the Consumer Product Safety Commission about this "potential hazard" and explained

2  that "███████████████████████████████████████████

3  ███████████████████████████████████████████████

4  █████████████████████████████████████" *See* Ex. U to the Declaration of Lori E.

5  Andrus In Support Of Plaintiffs' Motion For Class Certification (Docket No. 127), ¶ 10

6  (emphasis added). As such, even if required, and in contrast to the plaintiffs in *Wilson*, Plaintiffs

7  here have provided more than sufficient factual basis to support their allegations that the ECB

8  defect implicates a safety risk. *See Wilson*, 668 F.3d at 1144-45.

   E.  ***Wilson* Must Be Read In Conjunction With, And Reconciled With, Binding Ninth Circuit Authority.**

11 Defendants argue that *Wilson*'s holding represents a change in the law. *See* Defendants'

12 Statement of Recent Decision In Further Support Of Opposition To Plaintiffs' Motion For Class

13 Certification (Docket No. 140), pp. 1-2. Defendants' argument fails because *Wilson* must be read

14 in conjunction with, and reconciled with, binding Ninth Circuit authority, including *Stearns v.*

15 *Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) and *Wolin v. Land Rover North America, LLC*,

16 617 F.3d 1168 (2010). No three-judge panel of the Ninth Circuit can overrule prior Ninth Circuit

17 precedent and both cases are closely on point. *See Avagyan v. Holder*, 646 F.3d 672, 677-78 (9th

18 Cir. 2011) (citing *Norita v. N. Mariana Islands*, 331 F.3d 690, 696 (9th Cir. 2003)); *see also*

19 Goelz & Watts, Federal Ninth Circuit Civil Appellate Practice (The Rutter Group 2012), ¶8:157

20 ("In general, any three-judge panel of the court is bound by a prior published Ninth Circuit

21 decision and cannot reconsider a decided issue unless an *en banc* decision, a Supreme Court

22 decision, or subsequent legislation undermines its precedential value."). Given that *Wilson* was

23 decided by a three-judge panel, *Wilson* must be read in conjunction with prior Ninth Circuit

24 authority applicable to the present case.

25 *Stearns* confirmed the Ninth Circuit's adoption of California's definition of materiality:

26  Under California law, a misrepresentation or omission is material if a reasonable man
    would attached importance to its existence or nonexistence in determining his choice of
27  action in the transaction in question, and as such materiality is generally a question of fact
    unless the fact misrepresented is so obviously unimportant that the jury could not
28  reasonably find that a reasonable man would have been influenced by it.

1  *Stearns,* 655 F.3d at 1022-23 (quoting *Steroid*, 1818 Cal. App. 4th at 157 and *Engalla*, 15 Cal.
2  4th at 977).  Given the Ninth Circuit's clear enunciation of the definition of materiality (with no
3  mention of a safety defect requirement), *Wilson* must be read narrowly, and limited to its unique
4  facts.

5       In *Wolin*, plaintiffs alleged that Land Rover failed to disclose a material fact: that
6  defective geometry in the vehicles' alignment causes uneven and premature tire wear.  *See Wolin*,
7  617 F.3d at 1170-71.  The Ninth Circuit held that proof of the existence of the defect was
8  sufficient to support class certification, without regard to whether any individual class member's
9  defect had yet manifested.  *Id.* at 1173.  Significantly, *Wolin* did not require a safety-related
10  defect in relation to plaintiffs' allegations regarding materiality.  *Id.*  It is axiomatic that if
11  plaintiffs had failed to sufficiently allege an element of the underlying claims, the Ninth Circuit
12  would not permit certification of those claims.  As such, again, *Wilson* must be read narrowly,
13  and limited to its unique facts.

14       Both *Stearns* and *Wolin*, binding Ninth Circuit precedent, support Plaintiffs' Motion for
15  Class Certification, and neither can be dislodged or altered by *Wilson*.

### III. CONCLUSION

Based on the foregoing, Plaintiffs' Motion For Class Certification should be granted.

DATE: April 2, 2012

                       Respectfully submitted,

                       ANDRUS ANDERSON LLP

                       */s/ Lori E. Andrus*
                          Lori E. Andrus

                       Lori E. Andrus (SBN 205816)
                       Jennie Lee Anderson (SBN 203586)
                       Jessica Moy (SBN 272941)
                       ANDRUS ANDERSON LLP
                       155 Montgomery Street, Suite 900
                       San Francisco, CA 94104
                       Telephone: (415) 986-1400
                       Facsimile: (415) 986-1474
                       lori@andrusanderson.com
                       jennie@andrusanderson.com
                       jessica@andrusanderson.com

Natalie Finkelman
James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
nfinkelman@sfmslaw.com
jshah@sfmslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2012, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 2, 2012                     */s/ Lori E. Andrus*
                                                     Lori E. Andrus

ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
lori@andrusanderson.com