Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
Jessica Moy (SBN 272941)
**ANDRUS ANDERSON LLP**
155 Montgomery St, Suite 900
San Francisco, CA  94104
Telephone: (415) 986-1400
Facsimile:  (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
jessica@andrusanderson.com

[Additional counsel identified on signature page]

*Attorneys for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RENEE TIETSWORTH, SUZANNE REBRO, SONDRA SIMPSON, and JOHN CAREY, On Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>        vs.<br><br>SEARS, ROEBUCK AND CO., and WHIRLPOOL CORPORATION,<br><br>        Defendants. | CASE NO. C09-00288-JF<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:       Hon. Jeremy Fogel<br>Date:        March 19, 2012<br>Time:        9:00 a.m.<br>Courtroom: 3, 5th Floor |

**PUBLICLY-FILED REDACTED VERSION**


**PURSUANT TO ORDER GRANTING STIPULATED ADMINISTRATIVE MOTION TO SEAL, DKT. # 154**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

        A.      This Case Is Well-Suited For Certification........................................... 2

        B.      All Of Plaintiffs' Claims Are Properly At Issue.................................. 6

                1.      Evidence Relating To Machine Explosions Are Properly At Issue. .................. 6

        C.      Plaintiffs' MMWA Claims Are Properly At Issue And Should Be Certified................ 7

        D.      The Classes Are Properly Defined........................................................ 9

        E.      Common Issues Predominate.............................................................. 11

                1.      The Machines Are Not Impossibly Complicated.................................. 11

                2.      Defendants' Internal, Contemporaneous Documents Show A Common Defect. ..................... 13

                3.      Whether The Machines Are Substantially Certain To Fail Can Be Determined On A Class-Wide Basis........................................ 14

                4.      Lack Of Manifestation Of Defect Does Not Defeat Predominance. ................. 15

                5.      Defendants' Early Knowledge (And Corresponding Duty To Disclose) Can Be Determined On A Class-Wide Basis.......................... 16

                6.      Materiality Can Be Determined On A Class-Wide Basis................................. 17

        F.      The Class Members' Declarations Support A Finding Of Predominance.................... 18

        G.      Plaintiffs' Claims Are Typical Of The Classes' Claims........................... 19

III.    CONCLUSION................................................................................................. 20

i

1

2

### TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*
    151 F.3d 402 (5th Cir. 1998) ............................................................................. 20

*Am. Honda v. Superior Court*
    199 Cal. App. 4th 1367 (2011) ......................................................................... 16

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) ............................................................................. 16

*Briehl v. Gen. Motors Corp.*
    172 F.3d 623 (8th Cir. 1999) ............................................................................. 15

*Bruno v. Quten Research Inst., LLC*
    --- F.R.D. ---, 2011 WL 5592880 (C.D. Cal. Nov. 14, 2011) ............................. 2

*Butler, et. al. v. Sears, Roebuck & Co.*
    No. 06-cv-7023 (N.D. Ill. Sept. 30, 2011) .................................................. 10, 11

*Cartwright v. Viking Indus., Inc.*
    No. 2:07-cv-2159 FCD EFB, 2009 WL 3872047 (E.D. Cal. Nov. 17, 2009) ................................... 3

*Chamberlan v. Ford Motor Co.*
    223 F.R.D. 524 (N.D. Cal. 2004) .................................................................. 5, 11

*Chamberlan v. Ford Motor Co.*
    369 F. Supp. 2d 1138 (2005) .................................................... 5, 15, 17, 18

*Chamberlan v. Ford Motor Co.*
    402 F.3d 952 (9th Cir. 2005) ............................................................................... 6

*Chamberlan v. Ford Motor Co.*
    No. C 03–2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) .............................. 10

*Chlopek v. Fed. Ins. Co.*
    499 F.3d 692 (7th Cir. 2007) ............................................................................. 12

*Clemens v. Daimlerchrysler Corp.*
    534 F.3d 1017 (9th Cir. 2008) ............................................................................. 8

*Deadwyler v. Volkswagen of Am.*
    884 F.2d 779 (4th Cir. 1989) ............................................................................... 8

*Delarosa v. Boiron, Inc.*
    275 F.R.D. 582 (C.D. Cal. 2011) ....................................................................... 20

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) ............................................................................... 6

*Engalla v. Permanente Med. Grp., Inc.*
    15 Cal. 4th 951 (1997) ...................................................................................... 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Galvan v. KDI Distrib. Inc.*
  No. SACV 08-0999-JVS, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ............................ 9

*Gen. Tel. Co. of S.W. v. Falcon*
  457 U.S. 147 (1982) ................................................................................................................ 19

*Gonzales v. Comcast Corp.*
  No. 10-CV-01010-LJO-BAM, 2012 WL 10621(E.D. Cal. Jan. 3, 2012) ........................... 10

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*
  242 F.R.D. 568 (W.D. Wash. 2007) ....................................................................................... 4

*In re Bridgestone/Firestone, Inc.*
  288 F.3d 1012 (7th Cir. 2002) ......................................................................................... 9, 16

*In re Canon Cameras Litig.*
  237 F.R.D. 357 (S.D.N.Y. 2006) ........................................................................................... 16

*In re Diamond Multimedia Sys., Inc. Sec. Litig.*
  No. C 96-2644 SBA, 1997 WL 773733 (N.D. Cal. Oct 14, 1997) ...................................... 20

*In re Gen. Motors Type III Door Latch Litig.*
  Nos. 98C5836, MDL 1266, 2001 WL 103434 (N.D. Ill. Jan. 31, 2001) ......................... 7, 15

*In re Hitachi Television Optical Block Cases*
  Case No. 08CV1746 DMC NLS, 2011 WL 4499036 (S.D. Cal. Sept. 27, 2011) .............. 12

*In Re N.Dist. of Cal. Dalkon Shield IUD Prod. Liab. Litig.*
  693 F.2d 847 (9th Cir. 1982) .................................................................................................. 8

*In re Steroid Hormone Prod. Cases*
  181 Cal. App. 4th 145 (2010) ............................................................................................... 17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*
  No. 1:08-WP-65000, 2010 WL 2756947 (N.D. Ohio Jul. 12, 2010) ............................ 11, 12

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*
  267 F.R.D. 583 (N.D. Cal. 2010) ............................................................................................ 9

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*
  No. 3:07-md-01827-SI, 2012 WL 253298 (N.D. Cal. Jan. 26, 2012) .................................. 9

*Johns v. Bayer Corp.*
  Civil No. 09-cv-1935 AJB, 2012 WL 368032 (S.D. Cal. Feb. 3, 2012) ............................... 2

*Johnson v. Gen. Mills Inc.*
  276 F.R.D. 519 (C.D. Cal. 2011) ............................................................................................ 2

*Keilholtz v. Lennox Hearth Prods., Inc.*
  268 F.R.D. 330 (N.D. Cal. 2010) ............................................................................................ 5

*Keilholtz v. Superior Fireplace Co.*
  Case No. 08-00836 CW, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) .............................. 10

*Lewallen v. Medtronic USA, Inc.*
  C 01-20395 RMW, 2002 WL 31300899 (N.D. Cal. Aug. 28, 2002) ..................................... 8

iii

*Lloyd v. Gen. Motors Corp.*
  275 F.R.D. 224 (D. Md. 2011)........................................................................ 7

*Mazur v. Ebay Inc.*
  257 F.R.D. 563 (N.D. Cal. 2009)................................................................... 9

*McFadden v. Dryvit Sys.*
  No. 04-103, 2004 WL 2278542 (D. Or. Oct. 8, 2004) ................................ 9

*Milicevic v. Fletcher Jones Imports, Ltd.*
  402 F.3d 912 (9th Cir. 2005) ....................................................................... 8

*Mirkin v. Wasserman*
  5 Cal. 4th 1082 (1993) ............................................................................... 18

*O'Shea v. Epson Am., Inc.*
  Case No. CV 09-8063, 2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) ....... 6

*Parkinson v. Hyundai Motor Am.*
  258 F.R.D. 580 (C.D. Cal. 2008)..................................................... 4, 11, 13

*Pastor v. State Farm Mut. Auto. Ins. Co.*
  487 F.3d 1042 (7th Cir. 2007) ................................................................... 12

*Sanders v. Apple, Inc.*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................... 9, 10

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*
  330 F.3d 1110 (9th Cir. 2003) ..................................................................... 7

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*
  209 F.R.D. 159 (C.D. Cal. 2002)................................................................ 20

*Tietsworth v. Sears, et. al.*
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................ 6, 8, 12

*Tietsworth v. Sears, et. al.*
  No. 5:09-CV-00288 (JF), 2011 WL 3240563 (N.D. Cal. Jul. 29, 2011) ..... 8

*Wal-Mart Stores, Inc. v. Dukes*
  131 S.Ct. 2541 (2011)........................................................................... 2, 20

*Webb v. Carter's, Inc.*
  Case No. CV 08-7367 GAF (MANx), 2011 WL 343961 (C.D. Cal. Feb. 3, 2011) .......... 6

*Wolin v. Jaguar Land Rover N. Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ............................................................... 7, 16

*Wolph v. Acer Am. Corp.*
  272 F.R.D. 477 (N.D. Cal. 2011)......................................................... 4, 5, 8, 10

*Xavier v. Philip Morris USA, Inc.*
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) ..................................................... 10

*Yamada v. Nobel Biocare Holding AG*
  No. 2:10-cv-04849-JHN-PLAx, 2011 WL 3634197 (C.D. Cal. Aug. 12, 2011)............ 2, 3

iv

**Statutes**

15 U.S.C. § 2301 *et seq.* ........................................................................... 4, 7, 8, 9, 20

15 U.S.C. § 2302(a)(6) ............................................................................................ 8

15 U.S.C. § 2302(a)(9) ............................................................................................ 8

15 U.S.C. §§ 2302 (a)(6) ......................................................................................... 8

15 U.S.C. §§ 2302 (a)(9) ......................................................................................... 8

15 U.S.C. §2310(d)(1)(B) ........................................................................................ 8

28 U.S.C. 1711 § 2(b)(2) ......................................................................................... 9

Cal. Bus. & Prof. Code § 17200, *et seq.* ..................................................... 2, 5, 15, 20

Cal. Civ. Code § 1750, *et seq.* ........................................................... 2, 4, 5, 8, 10, 15, 20

**Rules**

Fed. R. Civ. P. 23(b)(2) ......................................................................................... 20

Fed. R. Evid. 407 .................................................................................................. 12

## I.    INTRODUCTION

Well before this lawsuit was filed, in their own words, using their own definition, and without the filter of litigation counsel, Defendants referred to the problems associated with the Kenmore Elite Oasis washing machines' ("Machines") Electronic Control Boards ("ECBs") as a ███████████████[1]  To address the "most common problem," *see* Ex. PP WT0155475 at p. WT0155477, with the Machines—the faulty ECB—Defendants eventually created an engineering solution for three symptoms of the defective ECB (F1, F51 and explosions)—an ECB with updated software and a Panasonic pressure sensor.

Now, through legal advocacy, and relying on self-serving, after-the-fact declarations, Defendants attempt to tell a different story, minimizing the ███████████ nature of the Machines' ████████ and pretending that their insufficient voluntary recall of the ECBs was simply good customer service designed to "achieve improved performance."  *See* Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Opposition" or "Opp."), p. 3-4 (Dkt. No. 138).  This interpretation of the merits of the case is both factually incorrect—and, for the Court's present purposes—not relevant to the question of class certification.

In reality, Defendants' own internal, contemporaneous documents unequivocally show that this case presents a common defect (a faulty ECB) and a common solution (an ECB equipped with updated software and a Panasonic pressure sensor).  *See* Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Class Certification ("Class Certification Motion" or "Cert. Motion"), Section II.A (Dkt No. 126), and Exhibits to the Andrus Declaration.  Indeed, Defendants cannot deny that, after the filing of this lawsuit, they adopted a program to replace ECBs in the Machines in the Class, in recognition of the fact that *all* of the ECBs were faulty.  Now, in an attempt to defeat class certification, Defendants ignore their own uniform treatment of the ECB defect and instead insist that each individual Machine must be examined to determine whether or not it has a faulty ECB.

---

[1] *See* Declaration of Lori E. Andrus in Support of Plaintiffs' Motion for Class Certification ("Andrus Declaration" or "Andrus Decl.") (Dkt. No. 127), Ex. UU, ST0001670, at p. ST0001701.  Unless otherwise noted, all references to "Exhibit" (or "Ex.") are exhibits to the Andrus Declaration.

Just as Defendants have internally admitted that the defective ECB can be addressed in one stroke, Plaintiffs seek to bring that common relief to all Class members. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Nothing in Defendants' Opposition persuades otherwise.

## II.   ARGUMENT

### A.   This Case Is Well-Suited For Certification.

Cases such as this one, where plaintiffs charge that a manufacturer fraudulently concealed known defects in a product, are routinely certified as class actions. In Plaintiffs' Class Certification Motion, p. 14, Plaintiffs cited seven examples of cases where courts in this Circuit have certified similar cases to this one.[2] In a tacit acknowledgement of the applicability of those cases, Defendants do not even attempt to distinguish *any* of these cases; instead choosing to ignore directly on-point authority. A closer look at these cases underscores the appropriateness of certification here.

*Yamada v. Nobel Biocare Holding AG*, No. 2:10-cv-04849-JHN-PLAx, 2011 WL 3634197 (C.D. Cal. Aug. 12, 2011) involved defective dental implants which could require surgical removal, reconstruction, replacement and monitoring. *Id*. at *1. Plaintiffs alleged that the manufacturer failed to disclose the defects and associated risks. *Id*. In certifying a class, the district court held that "plaintiff's claims and the absent class members' claims arise from the same alleged unfair business practices … involve the same device with the same alleged defect, marketed using the same alleged material omissions and misrepresentations, and covered by the same warranty." *Id*. at *3. As here, the defendants in *Yamada* argued that numerous factors contributed to the failure of the products and, as such, a single classwide determination was impossible. *Id.* at *5. The district court

---

[2]  Additionally, several district courts in this Circuit have certified claims involving misrepresentations about products subsequent to the Supreme Court's rearticulation of class certification standards in *Wal-Mart*, 131 S.Ct. 2541. *See e.g., Johnson v. Gen. Mills Inc.*, 276 F.R.D. 519 (C.D. Cal. 2011) (denying motion for decertification in case where yogurt manufacturers allegedly violated UCL and CLRA by representing that their product promoted digestive health; "Unlike in *Wal-Mart*, where the injury suffered, discrimination, happened at the hands of different supervisors in different regions without the link of a common practice or policy, any injury suffered by a class member in this case stems from a common core of salient facts."); *Johns v. Bayer Corp.*, Civil No. 09-cv-1935 AJB, 2012 WL 368032 (S.D. Cal. Feb. 3, 2012) (certifying a class under UCL and CLRA and finding that common issues predominated in case alleging that defendants falsely advertised a vitamin supplement as promoting prostate health); *Bruno v. Quten Research Inst., LLC*, --- F.R.D. ---, 2011 WL 5592880 (C.D. Cal. Nov. 14, 2011) (certifying a class under UCL, CLRA, FAL and breach of warranty where plaintiffs complained that a liquid dietary supplement claimed to have six times better absorption and effectiveness than competing brand).

1    disagreed: "whether or not other factors play into dental implant failures does not affect whether

2    Defendants marketed and sold defective implants." *Id.* This case is directly on point: whether or not

3    other mechanical factors (or other component part failures) play into F1 or F51 error codes does not

4    affect whether Sears and Whirlpool marketed and sold defective Machines.  Finding predominance,

5    *Yamada* held "[t]he relevant inquiry focuses on the existence of the defect as manufactured and not

6    on the factors leading to failure and injury.  Though individual factors might affect implant failure,

7    they do not affect whether the implants were sold with a defect and subsequently need to be

8    removed, repaired or replaced.  Plaintiff's allegations are therefore susceptible to proof by

9    generalized evidence." *Id.*  The same is true here.

10        *Cartwright v. Viking Indus., Inc.*, No. 2:07-cv-2159 FCD EFB, 2009 WL 3872047 (E.D. Cal.

11    Nov. 17, 2009) involved an inherent defect in defendant's window products.  Denying defendant's

12    motion for reconsideration of class certification, the district court "emphasized plaintiffs' allegations

13    and supporting evidence that defendant fraudulently concealed the defective nature of the window

14    products in order to induce plaintiffs and class members to purchase them. ***This allegation of non-***

15    ***disclosure applied to all owners, original and subsequent.***  The court concluded that plaintiffs'

16    allegations of fraudulent concealment satisfied the predominance requirement because ***the common***

17    ***question of materiality*** of the non-disclosed defects may ***establish common causation***." *Id.* at *2

18    (emphasis added).  Additionally, *Cartwright* recognized that the common question of whether

19    plaintiffs' evidence that the windows' defect would cause them to fail during their useful life was a

20    question for the trier of fact.  *Id.*  In response to defendant's argument—similar to Defendants'

21    arguments here—that each class member would have to give individualized proof that their windows

22    failed (actual damage), the court noted that, given the classwide allegations of fraudulent

23    concealment of a defect, " individualized determination [of proof of actual damage] can be made

24    after common questions of liability are decided."[3]  *Id.*  As here, the parties in *Cartwright* both

25    proffered evidence to support their competing theories regarding design defect, and the district court

26

27    _____

      [3]  In its earlier decision, the district court held that common issues predominated in spite of

28    defendant's arguments that alternate causation (e.g., installation errors, condensation, shipping
      damage, structural shifting) precluded class certification.  *See Cartwright*, 2009 WL 2982887 at *12.

1  rightly viewed that dispute as one to be resolved by the jury.

2       In *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568 (W.D. Wash.

3  2007), plaintiffs brought consumer fraud and warranty claims against a furnace manufacturer for

4  fraudulently concealing a known defect in the furnaces' polypropylene-laminated secondary heat

5  exchangers ("CHXs"), which had the propensity to cause premature failure of the furnace.[4]  *Id.* at

6  570.  Acknowledging the importance of the class action mechanism in such cases, the district court

7  certified a class of furnace owners "most of [whom] are not even aware that they have potentially

8  suffered from an injury by way of an alleged fraud." *Id.* at 573-74.

9       *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008), involved manual-

10  transmission vehicles ("Tiburons") which experienced problems shifting between gears, allegedly

11  due to a defective "flywheel system." *Id.* at 584, 587.  Hyundai released a Technical Service

12  Bulletin ("TSB") identifying problems with the vehicles' flywheel and clutch assembly. *Id*. at 586.

13  Plaintiffs brought claims for violations of the CLRA, unfair business practices, Magnuson-Moss

14  Warranty Act, and breach of express warranty. *Id.*  Plaintiffs alleged that "all claims [arose] from

15  defendant's common scheme to misrepresent its warranty and withhold internal knowledge of

16  common problems with the Tiburon's flywheel system." *Id.* at 588.  In a holding directly relevant to

17  this litigation, *Parkinson* found that the TSB—the equivalent of a Service Flash in this case—could

18  be determined by the jury "to demonstrate a defect known to defendant when it sold or serviced the

19  class vehicles." *Id.* at 594.  As such, "whether the TSBs and [Quality Information Reports] show

20  what plaintiffs claim they show is more properly an issue for the trier of fact." *Id.*

21       The plaintiffs in *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011), brought suit to

22  address the defective nature of their Acer notebook computers, which "freeze during use, crash,

23  require frequent restarts and experience slow loading times." *Id.* at 481.  In certifying the class of

24  purchasers, the district court acknowledged the parties' competing evidence on the question of

25

26  ---
[4] The district court found that common questions included: "(1) whether the CHXs were defective;
27  (2) whether Carrier knew or should have known about that defect; (3) whether Carrier had a duty to disclose that defect; (4) whether Carrier concealed that defect from the class; (5) whether the facts that were allegedly not disclosed were material; and (6) whether the alleged failure to disclose
28  violated the [Washington Consumer Protection Act]." *Id*. at 572.

whether or not the computers were defective: "Plaintiffs have presented evidence that … Acer's notebooks …are …defective…. Acer offers competing evidence and expert testimony as to the existence of a defect, but the Court need not decide the merits of the class claims at the class certification stage." *Id*. at 482.  This exact analysis applies to the present case: the parties dispute whether the ECBs are defective, but this is a jury question capable of classwide resolution.  Indeed, the "claims of the proposed class stem from the same core set of facts as to whether [the defendant] sold [the product] with the alleged defect during the class period." *Id*. at 484.

In *Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010), the plaintiffs brought claims against a furnace manufacturer for failure to disclose that its fireplaces could cause third degree burns.  *Id*. at 334.  In certifying a class based on UCL, CLRA and unjust enrichment causes of action, the district court held that "causation as to each class member is commonly proved more likely than not by materiality.  That showing will undoubtedly be conclusive as to most of the class."  *Id*. at 343.  "[T]he ultimate question of whether the undisclosed information [is] material [is] a common question of fact suitable for treatment in a class action."  *Id*.  The same is true here.

The district court in *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) certified plaintiffs' CLRA claims alleging a concealed defect in vehicles' manifolds.[5]  *Id*. at 524.  In so doing, the court found "the claims of all members of the class 'stem from the same source,' [citation omitted] namely, that Ford knew there was a risk that the plastic intake manifolds would crack prematurely, but concealed that information from ordinary consumers." *Id*. at 526.  Additionally, "[p]laintiffs share the same interest as absent class members in that they have all allegedly been harmed by Ford's concealment of the defective nature of the plastic intake manifolds."  *Id*.  In denying Ford's petition for interlocutory review of the certification decision, the Ninth Circuit stated: "The common issues here are plain enough that no further explanation is required to justify the district court's decision.  [citation omitted]  We are not departing from the

---

[5] The facts share several factual similarities to the present case.  *See Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (2005).  For example, in *Chamberlan*, the allegedly defective manifolds were used in multiple models over several years.  *Id*. at 1141, n.2.  And, like here, the manufacturer defendants tried to fix the problem by making several changes to the design of the manifolds over a period of years, eventually deciding to cease use of the design in future vehicles.  *Id*. at 1142.

1   principle that the trial court should rigorously analyze the facts of a class action to ensure that it

2   meets the requirements for certification.  [citation omitted]  We simply hold that in this case, the

3   issues were readily apparent."  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005).[6]

4         **B.      All Of Plaintiffs' Claims Are Properly At Issue.**

5             **1.      Evidence Relating To Machine Explosions Are Properly At Issue.**

6         Perhaps because the evidence of explosions in Machines that do not have the updated ECB is

7   overwhelming and common, *see e.g.*, Ex. U, WT0100034, Defendants challenge these claims by

8   overstating this Court's prior holdings and attempting to mislead the Court as to the procedural

9   posture of these claims.[7]  Neither challenge withstands scrutiny.

10        This Court previously held that in the circumstances existing at the time of its decision,

11  where there were no allegations that any named plaintiff or identifiable class member had

12  experienced the safety defect of a Machine spinning out of control and exploding, Plaintiffs lacked

13  standing to pursue claims involving the safety defect of exploding Machines.  *See Tietsworth v.*

14  *Sears, et. al.,* 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010).  Since then, discovery has revealed that

15  the propensity to explode existed in ***all*** Machines in the Class at the time of purchase.  Cert. Motion,

---

[6]  *O'Shea v. Epson Am., Inc.*, Case No. CV 09-8063, 2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) and *Webb v. Carter's, Inc.*, Case No. CV 08-7367 GAF (MANx), 2011 WL 343961 (C.D. Cal. Feb. 3, 2011) are inapplicable.  Opp., pp. 17-18.  In *O'Shea*, plaintiffs alleged that they were misled by defendant's representations about the functionality of their color inkjet printers.  2011 WL 4352458 at *1.  Specifically, plaintiffs claimed that they were led to believe that the printers could print black text using only the black cartridge when, in reality, the printer required the use of all four color cartridges to print black text.  *Id.*  The district court denied class certification, finding that plaintiffs had not even attempted to show that all class members had suffered injury, and, in fact, the evidence showed that some class members (who purchased through Amazon) had never even been exposed to the misleading representations.  *Id.* at *11.  Additionally, *O'Shea* is distinguishable in that the fact of injury in *O'Shea* involved a subjective determination of each class member's knowledge about how inkjet printers work, and involved affirmative misrepresentations only (whereas, here, Plaintiffs allege that Defendants uniformly fraudulently concealed material information).  *Webb* is also inapposite.  In *Webb*, plaintiffs alleged that chemicals in the defendant's tagless clothing could cause skin irritation in some children.  2011 WL 343961 at *1.  The district court took issue with the inability of plaintiffs to demonstrate injury to those class members who had not suffered harm.  *Id.* at *7.  The case is distinguishable as Plaintiffs here allege that the fact of injury ***is*** the defective ECB.

[7]  Defendants' attempt to equate a "rigorous analysis" with an ultimate determination of the underlying merits (whether the washing machines are defective) is improper.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (holding that the court should examine merits of underlying claim ***only to the extent*** that it must to determine the existence of common questions, not whether class members could ***actually prevail*** on the merits) (emphasis added).

at pp. 5-8.  Since it is undisputed that *all* of the Class Machines had a substantial risk of explosion when washing a waterproof item—a risk that Defendants fraudulently concealed at the time of purchase, proof of an actual explosion in one of the named Plaintiffs' Machines does not defeat certification.[8]  *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("proof of the manifestation of a defect is not a prerequisite to class certification.").  Thus, contrary to Defendants' assertions, all Class members have the right to assert claims based upon the common nondisclosure of this material fact.

Citing no authority that supports their position, Defendants appear to argue that since the Consumer Product Safety Commission ("CPSC") reviewed certain information provided by Defendants regarding the exploding Machines, Plaintiffs are precluded from pursuing their claims here.  Not so.  As Plaintiffs established, Defendants concealed this safety hazard from consumers, and may not have provided all pertinent information to the CPSC.  Contrary to Defendants' argument, it does not follow that certification and trial of these claims would require any "second guessing" of the CPSC.  *See Suzuki Motor Corp. v. Consumers Union of U.S., Inc*., 330 F.3d 1110, 1137-38 (9th Cir. 2003) (impliedly rejecting the proposition that determinative weight should be given to conclusions drawn by NHTSA regarding vehicle rollover incidents); *see also In re Gen. Motors Type III Door Latch Litig.,* Nos. 98C5836, MDL 1266, 2001 WL 103434, at *2 (N.D. Ill. Jan. 31, 2001) (holding NHTSA report did not dispose of plaintiff's claim).[9]

## C.   Plaintiffs' MMWA Claims Are Properly At Issue And Should Be Certified.

Defendants' argument that there are no Magnuson-Moss Warranty Act ("MMWA") class claims at issue, based on the Court's prior decisions in this matter, is similarly misleading and unavailing.  *See* Opp., p. 13.

---

[8]   Because proof of actual explosions is unnecessary, Plaintiffs withdraw their request for the addition of Carl Newton and Shelly Gorman as class representatives.

[9]   *Lloyd v. Gen. Motors Corp*., 275 F.R.D. 224 (D. Md. 2011), Opp., p. 12 n.8, is not on point.  In *Lloyd*, plaintiffs alleged that the seats in certain vehicles were defective because they were prone to collapse rearward in collisions.  The court held that plaintiffs failed to satisfy manageability and superiority requirements for certification, because the jury would be asked to duplicate the analysis undertaken by the government in a 15-year effort to establish federal seatback rigidity standards, and reach a different result, which would run afoul of the preemption provision of the National Traffic and Motor Vehicle Safety Act.  Plaintiffs here are not seeking any determination that would run afoul of federal standards.  Therefore, the exploding washing machine claims are properly at issue.

1    In its March 31, 2010 order, this Court explicitly held that "Plaintiffs have stated a viable

2    claim" based on Plaintiffs' allegations that Defendants violated 15 U.S.C. § 2302(a)(6) when they

3    disclosed exceptions or exclusions from the terms of the warranty but "did not include the ECBs

4    among those exceptions and later refused to repair or replace them." *Tietsworth*, 720 F. Supp. 2d at

5    1145. The Court also indicated that a viable claim could be stated under 15 U.S.C. § 2302(a)(9)

6    (MMWA requires warranties to include "a brief, general description of the legal remedies available

7    to the consumer") if Plaintiffs included specific allegations in their complaint, *id.*, which Plaintiffs

8    later did, *see* TAC, ¶ 151. Moreover, in its July 29, 2011 decision, the Court granted Plaintiffs'

9    motion to amend with respect to "Plaintiffs' claims for violations of the CLRA, fraudulent

10   concealment and nondisclosure, breach of express warranty, ***and*** violations of the MMWA."

11   *Tietsworth v. Sears, et. al.,* No. 5:09-CV-00288 (JF), 2011 WL 3240563, at *4 (N.D. Cal. Jul. 29,

12   2011) (emphasis added). Thus, on behalf of the Nationwide Class, Plaintiffs properly maintain

13   claims against Defendants for violations of 15 U.S.C. §§ 2302 (a)(6) and (a)(9).[10]

14       Additionally, Defendants incorrectly argue that even if an independent MMWA claim exists,

15   it is never appropriate to certify a multi-state or nationwide class under the MMWA. Indeed, a

16   number of courts have certified nationwide class actions involving MMWA claims. *See e.g., Wolph*,

17   272 F.R.D. at 482; *Deadwyler v. Volkswagen of Am.*, 884 F.2d 779, 781 (4th Cir. 1989).[11]

18   ---

[10] The MMWA expressly creates a federal private cause of action for failure to comply with the

19   terms of a written warranty: "A consumer who is damaged by the failure of a ... warrantor ... to
     comply with any obligation ... under a written warranty ... may bring suit for damages" 15 U.S.C.

20   §2310(d)(1)(B); *see also Milicevic v. Fletcher Jones Imports, Ltd.,* 402 F.3d 912, 917-18 (9th Cir.
     2005). Having created a federal cause of action, Congress also made clear that class actions are

21   favored. *See* 15 U.S.C. §2310(e) (Rule 23 should govern the issue of class certification). *Clemens v.
     Daimlerchrysler Corp.,* 534 F.3d 1017 (9th Cir. 2008), the only case Defendants rely on to support

22   the claim that no MMWA claim independent of state warranty claims exists, Opp., p. 13, is
     inapposite. *Clemens* merely held that since, unlike here, there were no allegations that the defendant

23   failed to comply with the MMWA ***other*** than the state law warranty claims, the MMWA claim was
     properly dismissed along with the state warranty claims. *Id.* at 1022 n.3.

24   [11] None of the cases Defendants cite stand for the proposition that individual warranty questions
     preclude certification. Opp., pp. 24-25. In *Lewallen v. Medtronic USA, Inc.,* C 01-20395 RMW,

25   2002 WL 31300899 (N.D. Cal. Aug. 28, 2002), where plaintiffs asserted a novel claim for relief
     involving medical monitoring, the court held that in such circumstances differences in state law

26   defeated superiority. *Id.* at *6. In *In re N.Dist. of Cal. Dalkon Shield IUD Prod. Liab. Litig*., 693
     F.2d 847 (9th Cir. 1982), after trial of one of the 166 cases remanded after pretrial MDL

27   proceedings, the district court sought briefing on the feasibility of a class action, which plaintiffs
     opposed, then certified a punitive damages class and a liability class. Plaintiffs appealed and the

28   Ninth Circuit found, *inter alia*, that common issues did not predominate because the warranties were

1        **D.**    **The Classes Are Properly Defined.**

2        Defendants' argument that the proposed class is overbroad and/or unascertainable because it

3    may include individuals who suffered no injury is both speculative and legally irrelevant.  Moreover,

4    this type of argument has routinely been rejected.  A recent example can be found in *In re: TFT-*

5    *LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, 2012 WL 253298 (N.D. Cal. Jan. 26,

6    2012) ("LCD").  There, denying defendants' motion for decertification, the district court explained

7    that ascertainability is a "distinct concept" from "proof of class membership," and the former is all

8    that is required at the class certification stage.  *Id.* at *3; *see also Galvan v. KDI Distrib. Inc.,* No.

9    SACV 08-0999-JVS, 2011 WL 5116585, at **3-5 (C.D. Cal. Oct. 25, 2011) (rejecting argument that

10   class definition included people who were not injured rendered class unascertainable).

11       Using arguments identical to those asserted here, the LCD defendants argued that in most

12   instances, the parties would not be able to determine whether a particular LCD product contained an

13   allegedly defective panel made by a defendant, as opposed to a third-party manufacturer.  *See In re:*

14   *TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010).  The district court

15   held that "the fact that class members will be required to submit some information in order to

16   determine whether they are members of the class does not render the class definition

17   unascertainable."  *Id.*  Moreover, as here, class membership could be determined by the product

18   model or serial number, and, as such, the class definition was sufficiently objective.[12]

---

19   
20   made only to prescribing physicians.  Here, all Class members received the same defective product,
     and the same warranty, from the same retailer.  The plaintiffs in *Sanders v. Apple, Inc.*, 672 F. Supp.
21   2d 978 (N.D. Cal. 2009) did not bring MMWA claims.  In *In re Bridgestone/Firestone, Inc.*, 288
     F.3d 1012 (7th Cir. 2002), the court ruled that a nationwide class brought under consumer fraud
22   theories was not manageable because the claims would have to be adjudicated under the laws of
     many jurisdictions.  However, since the *Bridgestone/Firestone* decision, Congress has expressly
23   rejected the position taken by the Seventh Circuit.  When Congress passed the Class Action Fairness
     Act ("CAFA"), it imposed new requirements on plaintiffs such that most class actions asserting
24   causes of action under state laws now must be filed in federal court.  Where *Bridgestone/Firestone*
     found the centralized litigation model inferior because it "keeps the litigation far away from state
25   courts," (*id.* at 1020), CAFA specifically and intentionally keeps litigation away from state courts.
     CAFA § 2(b)(2).  Defendants' argument that the question of pre-suit notice defeats certification of
26   the MMWA claim is also wrong.  The opportunity to cure requirement can be met where "the
     manufacturer knew of the defects at the time of sale."  *McFadden v. Dryvit Sys.*, No. 04-103, 2004
27   WL 2278542, at *17 (D. Or. Oct. 8, 2004).
     [12] Defendants' cases are inapposite.  Opp., pp. 14-15.  In *Mazur v. Ebay Inc.*, 257 F.R.D. 563 (N.D.
28   Cal. 2009), the proffered class definitions included winners of online auctions that were not subject
     to the fraudulent behavior alleged.  Unlike in *Mazur*, here, no individual is swept into the class

1    Here, Plaintiffs did not define the Classes as "all purchasers of defendants' washing

2    machines whose Machines exhibited 'false' error codes."  To the contrary, Plaintiffs defined the

3    Classes with reference to the relevant Service Flashes, which specifically identify 46 unique model

4    numbers that had a defective ECB.  Thus, the Classes are objectively defined by reference to the

5    model numbers, which are available in Defendants' records as well as on the Machines themselves.[13]

6    Significantly, two other district courts have rejected identical arguments made by Sears and

7    Whirlpool in cases involving defects in other washing machines.  In *Butler, et. al. v. Sears, Roebuck

8    & Co.*, No. 06-cv-7023, slip op. at 11-12 (N.D. Ill. Sept. 30, 2011), the district court certified a class

9    of allegedly defective front loading washing machines.  *See* Ex. A to the Reply Declaration of Lori

10   E. Andrus In Support of Plaintiffs' Motion for Class Certification ("Andrus Reply Declaration" or

11   "Andrus Reply Decl."), submitted herewith.  There, Sears argued, as it does here, that the proposed

12   class was fatally over-inclusive because "according to its records, the vast majority of its customers

13   suffered no control unit issues, and because the issues that did occur were not demonstrated to have

14   been caused by the same defect."  *Id.* at 11.  The district court found that Sears' arguments were

15   properly viewed only as evidence of the problems for which it actually received a consumer

16   definition who could not possibly (as a matter of law and/or fact) have been injured by Defendants.
*Gonzales v. Comcast Corp.*, No. 10-CV-01010-LJO-BAM, 2012 WL 10621(E.D. Cal. Jan. 3, 2012),

17   a case challenging Comcast's cancellation practices, is similarly distinguishable. The court held that
the plaintiffs had received an automatic refund for the alleged over-billing (and had not proffered

18   any evidence that the refund was inadequate), and therefore had not suffered any injury. *Id.* at **5-
7.  Further, the court determined that since Comcast showed that its refunds were automatic and

19   plaintiffs had proffered no non-speculative evidence that the refund calculations were incorrect,
plaintiffs had also failed to demonstrate that any class members suffered injury as a result of the

20   cancellation practices. *Id.* at *8.  In *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075 (N.D.
Cal. 2011), the court found that the class definition (individuals who had smoked cigarettes for at

21   least twenty "pack-years") depended on each smoker's subjective assessment of his smoking habits.
*Sanders*, 672 F. Supp. 2d 978 is also distinguishable. There, the Court struck the class allegations

22   due to the fact that the class included individuals who did not purchase the product, did not see or
were not deceived by the allegedly false advertisements, and, thus, were not injured.

23   [13]  Defendants' arguments about whether a consumer was the original purchaser or whether the
Machine was purchased used will not defeat class certification as individuals who purchased used

24   Machines have standing to bring CLRA claims.  *Chamberlan v. Ford Motor Co.*, No. C 03–2628
CW, 2003 WL 25751413, at *7 (N.D. Cal. Aug. 6, 2003) ("Nothing in the language of the CLRA

25   states that only a defendant who directly engaged in a completed transaction with a plaintiff may be
liable to that plaintiff."); *see also Keilholtz v. Superior Fireplace Co.*, Case No. 08-00836 CW, 2009

26   WL 839076, at *4 (N.D. Cal. Mar. 30, 2009) (same).  Moreover, if the proposed class definition is
overly inclusive or under inclusive, the Court is free to redefine the class as appropriate.  *See Wolph*,

27   272 F.R.D. at 483 (granting certification and recognizing court's inherent power and modifying class
definition to make it more definite).

28

complaints, rather than a demonstration of the over-inclusive definition of the class.  *Id.*; *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2010 WL 2756947, at *1 (N.D. Ohio Jul. 12, 2010) ("Whirlpool argues that the proposed class is too broad for certification because it includes many plaintiffs whose washers have not manifested any mold problems … [b]ut whether any particular plaintiff has suffered harm is a merits issue not relevant to class certification.").  The same result is warranted here.

### E.    Common Issues Predominate.

Defendants' commonality and predominance arguments boil down to two mistaken premises: (1) the Machines (and their malfunctions) are impossibly complicated and cannot be viewed as a group; and (2) there was never anything wrong with the Machines in the first place.  Both premises are fatally flawed and unsubstantiated by the evidence.  As discussed in their Class Certification Motion and herein, Plaintiffs' claims present predominantly common issues of fact and law.

#### 1.    The Machines Are Not Impossibly Complicated.

Defendants make much of the fact that the Oasis Machines changed over time.[14]  *See* Opp., pp. 3-6.  Regardless, Plaintiffs have proffered testimonial and expert evidence that: (1) in all relevant respects the Machines were the same, *see* Deposition Transcript of Eric Farrington ("Farrington Tr."), at pp. 30:18-31:2 (Machines all share the same elements of the Oasis "platform"), Ex. B to the Andrus Reply Declaration, and (2) that the ECBs were functionally and physically the same in across the 46 models encompassed by the proposed Class, *see* Ex. A., Pietila Sur-Rebuttal, p. 7; Ex. N., Pietila Tr., p. 254:13-15.  Additionally, the Owner's Manuals for the Machines are identical in all material respects (a fact that Defendants do not dispute), *see e.g.*, Ex. W, WT0343104, lending further support to Plaintiffs' argument that the ECB defects can be adjudicated on a classwide basis.

The Service Flashes overwhelming demonstrate commonality.  Exs. E, F, G, H, I, J, K, and L.  Through these eight Service Flashes, Defendants informed their technicians of the three problems

---

[14] The fact that there were multiple models in the Oasis platform does not defeat predominance as certification of product defect classes including multiple models and years is commonplace.  *See e.g., Chamberlan,* 223 F.R.D. at 525 (class of various models and model years that included the same defective intake manifold); *Parkinson*, 258 F.R.D. at 590 (class of 15 different component configurations of a flywheel/clutch assembly).

Plaintiffs complain of (F1, F51 and explosions) existing in the Machines, and instructed the technicians how to correct those problems, in each instance requiring an updated ECB.[15]  *Id.*; Ex. D, Whah Tr., at p. 62:13-19.  Significantly, the grouping of the 46 models covered by the Service Flashes is a grouping created internally (before any litigation) by two corporate actors addressing the problems now at issue.  It is simply not credible for Defendants to now disclaim their own actions (which were uniform with respect to the Class Machines) and proclaim that the 46 models are all unique.  This is the kind of classwide proof of defect and knowledge that a jury can weigh.[16]

Similarly, Defendants' arguments that the multiple design changes made to address the incidence of F1 and F51 error codes—and their criticism that Dr. Pietila failed to "evaluate whether any of the design changes, alone or in combination, reduced the rate of F51 or F1 codes," Opp., p. 10—go to the weight of the evidence and not to the question of certification.[17]  Indeed, Plaintiffs'

---

[15] Defendants mischaracterize the mandatory nature of the instructions included in the Service Flashes.  For example, referring to SF26-784, Defendants insinuate that the technicians were to make a determination whether to replace the ECB, Opp., pp. 6, 19, but in reality, SF26-784 states unequivocally "[t]he control software has been updated to increase the number of check to the Motor RPS Sensor to 96…Replace existing Electric Control with updated Electric Control Board."  Ex. F. Defendants may dispute whether SF26-784 means what it says, but such argument goes to the weight of the evidence and are merits issues that should be determined by a jury.

[16] Arguing that Plaintiffs cannot rely on the Service Flashes and voluntary recall to establish the existence of a common defect, Defendants invoke Federal Rule of Evidence 407.  Opp., pp. 19-20. Defendants' cases are distinguishable.  In the non-binding *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042 (7th Cir. 2007), the Seventh Circuit's reference to Rule 407 is *dicta*, as it was not relevant to the decision to affirm class certification denial.  *Id.* at 1046-47 ("The obstacle to class certification in this case lies elsewhere … The picture of a federal district judge presiding over thousands of evidentiary hearings each involving a trivial amount of money is not a pretty one.  In these circumstances the judge was right to deny class certification.").  Moreover, *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692 (7th Cir. 2007), also non-binding, is procedurally inapplicable as it involved the application of Rule 407 at trial, *not* at class certification.  Finally, this Court's holding in *Tietsworth*, 720 F. Supp. 2d 1123 concerned challenges at the pleading stage and is therefore also procedurally inapposite.  The Rule 407 reference in *Tietsworth* is also *dicta*, since it had no bearing on the Court's conclusion that "Plaintiffs successfully have alleged the existence of a duty and have stated a claim for fraudulent concealment."  *Id.* at  1135.

[17] *In re Hitachi Television Optical Block Cases*, Case No. 08CV1746 DMC NLS, 2011 WL 4499036 (S.D. Cal. Sept. 27, 2011), Opp., p. 19, is distinguishable.  In denying class certification, the district court expressed concern that plaintiffs had not identified a common defect in the televisions at issue. Instead, the court agreed with the defendant that the problems (video and color anomalies) could be caused by various component parts of the televisions' Optical Block.  *Id.* at *5.  Because the Optical Block was "not a single piece of equipment" and because its design, and the design and manufacture of its component parts, was substantially different over time, common issues did not predominate. *Id.*  Here, unlike in *In re Hitachi*, the defect involves a single piece of equipment, the ECB.  *See also In re Whirlpool*, 2010 WL 2756947, at *1 (rejecting Whirlpool's assertion that platform, model, or model year of the washing machines precluded certification as its pre-litigation mold remediation

---

12

theory is supported by the Declaration of Michael Jackmeyer (Dkt. No. 139-6), which explains that the incorporation of the Panasonic sensor was the final correction made to address F1, *see* p. 6-8, ¶ 10 and software version 19 finally corrected the F51 problem, *see* p. 11-13, ¶ 15.[18]  In fact, Defendants' Opposition and accompanying declarations neatly sum up their version of the relevant facts and evidence relating to the Machines and the problems associated with them.  Those facts and evidence raise common questions that must be determined by the jury.

### 2.    Defendants' Internal, Contemporaneous Documents Show A Common Defect.

The evidence, including Defendants' own internal and contemporaneous documents, overwhelmingly demonstrates the existence of a common defect affecting all of the Machines at issue.  Ignoring this evidence in favor of a handful of self-serving declarations created solely for the purpose of responding to the Class Certification Motion, Defendants would have this Court believe that Sears and Whirlpool were merely making "product improvements" and seeking "to increase customer satisfaction" with the Machines.  Opp., pp. 3-5, 7.  However, the software changes made over time were not intended to add new functionality to the Machines.  Rather, they were implemented across all models to make the Machines operate as ***originally*** intended and as represented to Plaintiffs and Class members.  *See* Deposition Transcript of Noshirwan K. Medora ("Medora Tr."), at p. 98:14-24[19], Exhibit D to the Andrus Reply Declaration.  As such, variation in the ECB design over time is further evidence that Defendants acknowledged that problems with the ECBs persisted.  Moreover, this type of "continuous improvement" defense is for the jury to determine, not the Court.  *See Parkinson*, 258 F.R.D. at 594.  Acknowledging the factual dispute, *Parkinson* made clear that "[w]hether the TSBs and QIRs show what plaintiffs claim they show is more properly an issue for the trier of fact."  *Id.*  The same is true here: whether Defendants were

---

analyses applied generally to all Whirlpool front-load washers).
[18] Exhibit C to the Andrus Reply Declaration is a chart created by Defendants that lists ECBs (by part number) and identifies the corresponding version of software and sensor manufacturer.
[19] "Q: So did the S17 software as compared to the S15 software seek to add a level of functionality that the S15 did not intend to provide?  A: There was no soft – I mean, the S17 software, or the S15 software did not, not intend to provide any functionality.  The S17 software was introduced to address the severe off-balance condition.  And that was a condition that could exist in machines when they were at high speed and the customer was using materials that were waterproof.  So the S17 software was used and upgraded the ECB to address that problem."

"improving functionality" or correcting defects (such as poorly designed software and malfunctioning pressure sensors) is a jury question that can be decided based on Defendants' internal documents and witness testimony.[20]

Defendants falsely claim that "unrefuted evidence shows, among other things, that less than 6% of the putative class members have experienced either error code, even after five years of use." Opp., p. 2. Plaintiffs have absolutely refuted Defendants' evidence. In addition to Dr. Pietila's extensive expert reports and testimony—demonstrating that the incidence of F1 and F51 error codes was greater than 22% of Machines in the incomplete data produced to date—Plaintiffs also cited to Whirlpool's internal documents (Ex. C, WT0127064 [showing historic claims rates, with warranty claims in 25.98% of Machines in the third quarter of 2006 alone]) and testimony (Ex. B, Farrington Tr., p. 124:4-18 [Machines had a "higher than expected" SIR at launch]), demonstrating Defendants' own internal acknowledgement of the unacceptably high failure rates associated with the Machines. Additionally, specific to the incidence of F51 error codes, Farrington testified that within months of product launch, the incidence of F51 error codes was "greater than 10 percent," when the Defendants were expecting F51 error codes to be "more like two to three" percent. *See* Farrington Tr., p. 160:15-24, Ex. B to the Andrus Reply Declaration. This evidence ***flatly contradicts*** David Chowanec's self-serving declaration and the heavily-manipulated data analysis employed by Mr. Medora. This vignette is a perfect example of Defendants' tactic to try the case at the class certification stage. Whether the failure rate was 6% or something much greater than that is an issue that can, and should, be tried on a classwide basis.

### 3.    Whether The Machines Are Substantially Certain To Fail Can Be Determined On A Class-Wide Basis.

Defendants take issue with Dr. Pietila's opinion that the Machines are substantially certain to fail within their useful lives. Opp., pp. 16-18. Once again, Defendants impermissibly attempt to argue the merits of the case at the class certification stage.

---

[20] The validity of Defendants' declarations supporting its revisionist history will be determined by the jury and goes purely to the weight of the evidence, not to the question of certification. *See* Eric K. Farrington Declaration (Dkt. No. 139-1); Michael Jackmeyer Declaration (Dkt. No. 139-6); Marvin Fox Declaration (Dkt. No. 139-7); David Chowanec Declaration (Dkt. No. 139-12).

As Dr. Pietila explained, Defendants' expert Mr. Medora conceded, and Defendants' internal documents corroborate, every Machine that does not have an updated ECB is substantially certain to fail, and has the propensity to explode.[21]  The fact that many of the Machines have not yet exploded is irrelevant, as every one of them has a propensity to explode when a consumer washes a waterproof item.  As time passes, undoubtedly more and more Machine owners will wash waterproof items.  As they do, more Machines will explode.[22]  Additionally, the "drift" associated with the F1 error has an "incubation period" (a fact Mr. Medora admits) and can occur at any point in time.  Ex. A, Pietila Sur-Rebuttal, at pp. 7-8.

For all of these reasons, Dr. Pietila opined that the Machines are substantially certain to fail in their useful life.  Ex. N, Pietila Tr., p. 154:16-22.  The fact that there are competing positions on this issue does not render certification inappropriate—on the contrary, it underscores the need for class certification,[23] as this question falls squarely in the realm of the jury and should be determined *once*, for all Class members.  *See Chamberlan*, 369 F. Supp. 2d at 1148 (holding that evidence that plastic manifolds were substantially likely to fail sufficient to establish triable classwide fact, despite the fact that plaintiff's expert could not quantify how long a particular manifold would last).[24]

### 4.    Lack Of Manifestation Of Defect Does Not Defeat Predominance.

As explained previously, Plaintiffs' UCL and CLRA theories are supported by credible

---

[21] *See* Andrus Reply Decl., Ex. E, Pietila Tr., p. 152:14-17 ("Q:  And in this context what does failure mean when you say 'high failure rate'?  A.  That the – the boards have a propensity to fail, generate an F-1 error code or F-51 error code."); *see also* Ex. N., Pietila Tr., 277:9-10 ("They're going to fail, and we just don't – they just haven't manifested themselves as an error yet."); *see also* Ex. O, Medora Tr., p. 116:19-21 ("If the machine has an S19 version it will not create an out of balance condition.  If the machine has an S15 version, it may create an out of balance condition.").

[22] *See* Andrus Reply Decl., Ex. E, Pietila Tr., p. 156: 1-7 (referring to explosions: "[T]here are errors that just haven't happened yet that are ready to happen.  If everybody … decided to wash raincoats and tablecloths next Monday morning, the SIR rate would probably be 90 percent.").

[23] Plaintiffs have proffered evidence that counters Mr. Medora's claim that there is a decreasing trend of F1 and F51 error codes.  Opp., p. 8; Ex. A, p. 23.  Moreover, this "trend" could be explained by the fact that consumers were eventually receiving updated ECBs (which corrected the problems in a growing number of Machines).  Regardless, Defendants' argument goes to the weight of the evidence, and not to class certification.

[24] *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999), Opp., p. 15, does not alter this outcome, as that case discussed Rule 12(b)(6) and did not address class certification at all.  *In re Gen. Motors Type III Door Latch Litig.*, Nos. 98 C 5836, MDL 1266, 2011 WL 103434 (N.D. Ill. Jan. 31, 2001) is also factually and procedurally distinguishable as the district court, in deciding a summary judgment motion, was applying Texas and Illinois law.

evidence (which the jury will weigh) that the Machines are substantially likely to fail within their

useful life.  Thus, contrary to Defendants' argument, individual class members will not need to prove

that they have experienced a "false" F1 or F51 error code.  Opp., p. 16.  Rather, Plaintiffs will only

have to show that the Machines' ECBs are defective—a determination that will apply to all Class

members.  Given this liability framework, the Ninth Circuit has held that an individualized showing

of manifestation of the defect is not required at the class certification stage (and lack of

manifestation of defect cannot defeat class certification).  *See Wolin* , 617 F.3d at 1173 (*citing*

*Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).[25, 26]

### 5.   Defendants' Early Knowledge (And Corresponding Duty To Disclose) Can Be Determined On A Class-Wide Basis.

Defendants argue that their knowledge of the defect evolved over time and that "Plaintiffs'

proofs of pre-sale duty to disclose will vary by sale date," thus defeating predominance.  Opp., p. 22.

The evidence shows otherwise and, here again, Defendants attempt to argue the merits of the case.

Plaintiffs have proffered evidence of early knowledge—which Defendants conveniently ignore—

including the fact that the first Machine explosion occurred on April 18, 2006, ***only one month after***

***product launch***.  Ex. T, ST00119003.  Then, on August 29, 2006, Whirlpool Director of Product

Safety Corporate Systems, Larry Latack, reported the explosions to the CPSC.  Ex. U, WT0100034.

Whether Defendants' knowledge of the ECB defect came about pre-launch, in April 2006 or in

August 2006,[27] the precise date by which Defendants knew or should have known about the defect is

[25]  In their citation to *American Honda v. Superior Court*, 199 Cal. App. 4th 1367 (2011), Opp., p. 16, n.13, Defendants take a single quote ("*Wolin* does not address California law") out of context to suggest that the Ninth Circuit did not mean it when it said that manifestation is not required for class certification.  Defendants' argument is unpersuasive.  In fact, the court in *American Honda* made clear that California courts and the Ninth Circuit "***are in agreement*** that proof of current manifestation of the defect is not necessary."  *Id.* at 1375 (emphasis added).  Significantly, the court then determined that the plaintiffs in *American Honda* presented ***no evidence*** to support their allegations that the transmissions at issue were substantially certain to fail within their useful lives. *Id.* at 1376.  In contrast, here, Plaintiffs have submitted ample evidence upon which the finder of fact could find the ECBs are substantially certain to fail.

[26]  Defendants' citation to *In re Bridgestone/Firestone*, 288 F.3d 1012, Opp., p. 16, n.12, is unavailing as that case held that a nationwide class would not be manageable solely on the grounds of Indiana's *lex loci delicti* choice of law principles.  *Id.* at 1018-19.  Nor does *In re Canon Cameras Litig.*, 237 F.R.D. 357 (S.D.N.Y. 2006) apply here.  There, plaintiffs had been "unable to adduce ***any*** evidence" regarding the failure rate of the cameras at issue.  *Id.* at 359 (emphasis supplied).

[27]  Defendants admit that they knew about problems with the ECB—at the latest—in "late-2006." *See* Declaration of Eric K. Farrington, ¶ 50 (Dkt. No. 139-1).

16

a classic question of fact for the jury that can absolutely be determined classwide by reference to Defendants' own internal documents.  *See Chamberlan*, 369 F. Supp. 2d at 1148-49 (holding "the question of what Defendant should have disclosed and when it should have done so is ultimately a decision for the jury to make as part of its materiality determination.").

### 6.    Materiality Can Be Determined On A Class-Wide Basis.

In yet another attempt to impermissibly try their case at the class certification stage, Defendants complain that Plaintiffs have not identified the precise level at which the failure rate of washing machines becomes "unacceptable."  Of course, this is a question for the jury to determine based upon the evidence.  To date, Plaintiffs have adduced evidence that the overall Service Incident Rate ("SIR") of the Oasis Machines in the second quarter of 2006 was an astonishing 35.51%.[28]  Ex. NN, WT0164171, at p. WT0164178.  This means that, as designed, 35 Machines out of 100 would fail (or otherwise require service).[29]  It simply cannot be said that *no* consumer could ever find such a high failure/service rate material (or even a lesser rate), as Defendants appear to argue.  Opp., p. 20, n.17.  *See, e.g., In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010) ("[M]ateriality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'") (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997)).  Indeed, Plaintiffs have submitted testimonial evidence from more than 100 Class members demonstrating that each of them *do* hold such information to be material.  *See* Class Member Declarations Appendix (Dkt. No. 128).

---

[28] More than 10% of the failures manifested in an F51 error code.  Farrington Tr., at p. 160:15-24, Ex. B to the Andrus Reply Declaration.  Additionally, it defines logic to argue that a consumer would not find the possibility of explosion under normal use material.

[29] Defendants' reliance on Consumer Reports articles that purport to show that up to 25 percent of washing machines need repairs within five years of purchase again merely goes to the weight of the evidence and has no bearing on class certification.  Declaration of Eric K. Farrington (Docket No. 139-1), ¶¶ 26-27.  Moreover, it has no bearing on the instant case, where an alleged uniform defect is alleged.  In any event, Defendants' argument rings hollow as Defendants' own internal documents show that the 35.51% SIR figure was reached *less than two months after product launch*.  Compared to the normal consumer experience that a washing machine may need a belt replaced, or a timer adjusted, within the first few years' of use, these machines were failing (or requiring service) at an unprecedented rate almost immediately after installation.  If this rate was truly "acceptable" to Defendants, they never would have referred to the product as a ███████████████ Defendants' revised version of history notwithstanding.

17

In *Chamberlan*, the district court correctly identified what constitutes materiality in a failure to disclose/product defect class action. *See* 369 F. Supp. 2d at 1144-45. "In order to prove that non-disclosed information is 'material,' Plaintiff must be able to show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). "Plaintiffs provide testimony from some class members that they would not have bought the cars had they known of the increased failure risk." *Id.* at 1145. That testimony, coupled with the plaintiffs' expert's testimony that "a typical owner would not expect this part to fail"[30]—evidence which was "corroborated" by the defendants' Owner Notification Program (akin to the voluntary recall program here)—was sufficient to show the significance of the manifold failure and, in turn, its materiality.[31] *Id.* It is not necessary that the consumers have specific knowledge of the specific part that is defective where its failure leads to overall product malfunction. "The fact that most consumers do not consider manifold reliability does not lead to the conclusion that the average consumer would not consider an increased rate of post-warranty failure to be material either to choice of car or price." *Id.*

### F.     The Class Members' Declarations Support A Finding Of Predominance.

Defendants' analysis of the Class member declarations, Opp., p. 21, is unsupported and should be disregarded. As an initial matter, Defendants fail to identify ***any*** evidence supporting their assertion that 52% of the declarants who received replacement ECBs "had recurring error codes." *Id.* Defendants' blanket reference to their 177-page appendix in support of this assertion fails to identify any particular instance of such an occurrence. *Id.*; Defs' Opp. Ex. 16.

Of course, Class members may have experienced problems after an ECB replacement because the Defendants continued to sell and install defective ECBs, knowing the defect was unresolved, until software version 19 (in combination with the Panasonic pressure sensor), was implemented.[32] If anything, this evidence merely strengthens Plaintiffs' case for fraudulent

---

[30] Dr. Pietila: "[I]f there is a propensity to explode or whatever, the customer should know about that." Ex. E_ to the Andrus Reply Declaration, p. 109:22-24. "What's expected by the customer is that their machine should last ten years without any design defect rearing its head." *Id.*, p. 111:6-8.
[31] *Chamberlan* found that arguments that plaintiffs' expert was a mechanic and not qualified to opine about consumer expectations went to the weight of the testimony, not admissibility. *Id.*, n.3.
[32] Defendants' own records confirm that it is entirely possible, and in fact, very likely that in some

---

concealment.  Defendants' argument that *other* parts of the Machine could *also* fail is equally

irrelevant.  Plaintiffs do not purport to include every conceivable service problem a Machine could

have in this lawsuit.  Instead, this lawsuit challenges the defective ECBs, which, according to

Defendants' own records, are common to every Machine in the Class.

Defendants' assertion that only 7% of the declarants have experienced both F1 and F51 error

codes, and none experienced one of the error codes and an explosion, Opp., p. 21, is a red herring.

Plaintiffs have never claimed that all three ECB defect symptoms (F1, F51, explosions) must be

present for a failure to occur.  Thus, the percentage of individuals who had *both* F1 and F51

symptoms (and/or in conjunction with an explosion), if substantiated, has no bearing on the class

certification issue at hand.  The relevant fact here is 100% of the declarants experienced failure due

to a defective ECB, a fact common to all Machines and Class members.[33]

## G.    Plaintiffs' Claims Are Typical Of The Classes' Claims.

Defendants' half-hearted typicality argument is based on the same merits-based assertions of

whether or not there is a defect.[34]  To show typicality, absolute unity of circumstance is not required

where, as here, the representatives possess the same interest and suffers the same generic type of

injury as the class.  *See Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 159 n. 15 (1982).  Here,

Plaintiffs possess the same interests and have suffered from the same injury as the unnamed Class

instances technicians replaced a Machine's defective ECB with another still-defective ECB (resulting in recurring errors), due to frequent confusion and miscommunication with service technicians.  Ex. F to the Andrus Reply Declaration, WT0274266 (email from James Miller "Oasis Controls P.N confusion with Sears Technicians").

[33] It also bears noting that Defendants have not even attempted to clarify or otherwise test the statements in the Class member declarations and have deposed none of the declarants, despite having ample opportunity to do so.  Plaintiffs provided Defendants with the Class member declarations on a rolling basis beginning June 10, 2011, more than nine months ago.  Accordingly, any attacks on the statements in the declarations are unwarranted and should be disregarded.

[34] Defendants attempt to defeat class certification by pointing out that there are *other* problems with the Machines in the Class, Opp., pp. 3-4, 17, n.14, 25 (for example, Plaintiff Simpson's RPS assembly).  This argument is a red herring.  Despite the fact that the Machines may have other defects, Plaintiffs brought this class action lawsuit regarding the defective ECB, and Plaintiffs are not required to sue for, or attempt to address, any other flaws in the Machines.  Moreover, Plaintiffs need not demonstrate that they experienced a "false" error code, and Defendants do not cite any legal authority for that proposition.  With respect to Plaintiff Simpson, regardless of whether she experienced a "false" error code, there is no question—and Defendants do not dispute—that her Machine required a replacement (updated) ECB.  Opp., p. 25.  Regardless of any other problems Plaintiff Simpson's Machine may have exhibited, it unquestionably possessed a defective ECB, just like every other Machine in the Class.

1  members.  Plaintiffs' and Class members' claims arise from the same practice (Defendants' delivery

2  of defective Machines and failure to disclose the known defect to consumers), the same defect (the

3  ECB),[35] and are based on the same legal theories (violation of UCL, CLRA and MMWA claims).

4  Defendants' own records indicate that they received at least 114,373 complaints from dissatisfied

5  customers regarding the F1 and F51 error codes resulting from the same defective ECB.  *See* Ex. G

6  to the Andrus Reply Declaration (Pietila Deposition Exhibit No. 295), p. 6.

7  **III.    CONCLUSION**

8           As described in Plaintiffs' original Class Certification Motion and above, the proposed

9  Classes meet all the requirements for class certification.[36]  As such, Plaintiffs respectfully submit

10  that the Court should grant the Motion in its entirety.

11  Dated:  February 29, 2012                              Respectfully submitted,

12                                                         By:  */s/ Lori E. Andrus*

13                                                              Lori E. Andrus

14

---

15  [35] Differences as to the various models purchased and the amount of damage sustained by individual
    class members do not negate a finding of typicality, provided the cause of action arises from a
16  common wrong.  *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209
    F.R.D. 159, 164-65 (C.D. Cal. 2002) (finding typicality's "low threshold" is met despite class
17  members' "differences in uses and purchasing practices").
    [36] Courts have broad discretion to define the issues appropriate for class treatment, including the
18  power to certify issues *sua sponte*.  *See In re Diamond Multimedia Sys., Inc. Sec. Litig.*, No. C 96-
    2644 SBA, 1997 WL 773733, *2 (N.D. Cal. Oct 14, 1997).  Even if this Court were to determine
19  that common issues do not predominate, it is thus within the Court's discretion to certify a class
    pursuant to F.R.C.P. 23(b)(2).  *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 592 (C.D. Cal. 2011)
20  (quoting *Wal-Mart*, 131 S.Ct. at 2557 and certifying a (b)(2) class for claims asserted under the
    UCL, CLRA and common law fraud relating to claimed benefits of the homeopathic cold remedy
21  Coldcalm).  If it is determined that Defendants concealed material facts regarding defects in the
    Machines, then declaratory and injunctive relief requiring full disclosure and correction of the defect
22  would "provide relief to each member of the class" such that a (b)(2) class is proper.  *Id.* at 591.
    Certification under Rule 23(b)(2) is available even where monetary relief is sought if it is
23  "incidental" to the injunctive or declaratory relief sought.  *Id.* at 592.  Monetary relief will be
    deemed "incidental" where, as here, damages "flow directly from liability to the class as a whole on
24  the claims forming the basis of the injunctive or declaratory relief."  *Id.* (quoting *Allison v. Citgo
    Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).  Damages may be "incidental," for example, if
25  they are "capable of computation by means of objective standards and not dependent in any
    significant way on the intangible, subjective differences of each class member's circumstances."
26  *Allison*, 151 F. 3d at 415.  Just as in *Delarosa*, here, Plaintiffs are "limited to the '[a]mounts actually
    and reasonably expended in reliance upon the fraud.'"  275 F.R.D. at 592.  In other words, Plaintiffs
27  are limited to the amounts spent purchasing their Machines or replacing the  ECBs, such that "no
    additional facts or individualized hearings would be necessary; proof of purchase, i.e. proof of harm,
28  would entitle each class member to the same restitution….".  *Id.*

---

**ANDRUS ANDERSON LLP**
Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
Jessica Moy (SBN 272941)
155 Montgomery St., Suite 900
San Francisco, CA  94104
Telephone.: (415) 986-1440
Facsimile:  (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
jessica@andrusanderson.com

Natalie Finkelman
James C. Shah
**SHEPHERD FINKELMAN MILLER & SHAH, LLP**
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile:  (610) 891-9883
nfinkelman@sfmslaw.com
jshah@sfmslaw.com

*Attorneys for Plaintiffs and Proposed Class
Counsel*

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION
CASE NO. C09-00288-JF

**CERTIFICATE OF SERVICE**

     I hereby certify that on May 10, 2012, I electronically filed the foregoing document and exhibits thereto with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: May 10, 2012                   _/s/ Lori E. Andrus_
                                        Lori E. Andrus

                                        Lori E. Andrus (SBN 205816)
                                        **ANDRUS ANDERSON LLP**
                                        155 Montgomery Street, Suite 900
                                        San Francisco, CA  94104
                                        Telephone:  (415) 986-1400
                                        Facsimile:  (415) 986-1474
                                        lori@andrusanderson.com