Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
Jessica Moy (SBN 272941)
**ANDRUS ANDERSON LLP**
155 Montgomery St, Suite 900
San Francisco, CA  94104
Telephone: (415) 986-1400
Facsimile:  (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
jessica@andrusanderson.com

[Additional counsel identified on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RENEE TIETSWORTH, SUZANNE REBRO, SONDRA SIMPSON, and JOHN CAREY, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SEARS, ROEBUCK AND CO., and WHIRLPOOL CORPORATION,<br><br>Defendants. | CASE NO. C09-00288-JF<br><br>**PLAINTIFFS' NOTICE OF RENEWED MOTION AND RENEWED MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Judge:      Hon. Jeremy Fogel<br>Date:        TBD<br>Time:        TBD<br>Courtroom:  3, 5th Floor |

**PUBLICLY-FILED REDACTED VERSION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

NOTICE OF RENEWED MOTION AND
     RENEWED MOTION FOR CLASS CERTIFICATION....................................... 1

STATEMENT OF RELIEF SOUGHT    ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.       INTRODUCTION ....................................................................... 1

II.     STATEMENT OF FACTS ......................................................... 4

       A.    The Machines Are Uniformly Defective ....................... 4

             1.    A False F51 Error Code During Normal Machine Use
                  Is A Symptom Of A Defective ECB........................ 4

             2.    A False F1 Error Code During Normal Machine Use Is
                  A Symptom Of A Defective ECB........................... 5

             3.    Defendants Knew That The ECBs Were Defective At
                  Product Launch, But Concealed That Knowledge For
                  Several Years, Even While Negotiating Reimbursement
                  To Sears From Whirlpool For The Defect. ............ 6

             4.    Plaintiffs' Analysis Of The Repair Service Data Shows
                  A 22.47% Failure Rate Among The Machines. ...... 8

       B.    The Written Warranty And Class Representatives' And Class
            Members' Experiences........................................... 8

III.    STANDARDS ON CLASS CERTIFICATION ......................... 9

IV.    ARGUMENT.............................................................................. 9

       A.    The Proposed Class Is Identifiable And Ascertainable.................. 9

       B.    The Rule 23(a) Requirements Are Satisfied ................. 11

             1.    Numerosity...................................................... 11

             2.    Commonality................................................... 11

             3.    Typicality ....................................................... 12

             4.    Adequacy ....................................................... 12

       C.    The Magnuson-Moss Warranty Act Created An Independent
            Federal Private Right Of Action For A Warrantor's Failure To
            Comply With The Terms Of A Written Warranty........................ 13

       D.    The Proposed Class Satisfies Rule 23(b)(3) ................. 14

i

1.      Common Questions Predominate .......................................................... 15

2.      The Class Action Mechanism Is Superior ........................................... 15

V.      CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997)....................................................................................... 9, 15

*Chavez v. Blue Sky Natural Beverage Co.*
  268 F.R.D. 365 (N.D. Cal. 2010)........................................................................ 17

*Clemens v. DaimlerChrysler Corp.*
  534 F.3d 1017 (9th Cir. 2008)............................................................................ 13

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*
  445 U.S. 326 (1980)........................................................................................... 15

*Earley v. Superior Court*
  79 Cal. App. 4th 1420 (2000)............................................................................. 16

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)................................................................ 12, 14, 16

*Ikonen v. Hartz Mountain Corp.*
  122 F.R.D. 258 (S.D. Cal. 1998)........................................................................ 11

*Mazur v. eBay*
  257 F.R.D. 563 (N.D. Cal. 2009).......................................................................... 9

*Milicevic v. Fletcher Jones Imp., Ltd.*
  402 F.3d 912 (9th Cir. 2005) ....................................................................... 13, 14

*Richardson v. Palm Harbor Homes*
  254 F.3d 1321 (11th Cir. 2011).......................................................................... 13

*Rivera v. Bio Engineered Suppl. & Nutr., Inc.*
  No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist. LEXIS 95083 (C.D. Cal. Nov.
  13, 2008) .......................................................................................................... 11

*Skelton v. General Motors Corp.*
  660 F.2d 311 (7th Cir. 1981) ............................................................................. 13

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ............................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011)............................................................................. 9, 11, 12

*Walsh v. Ford Motor Co.*
  807 F.2d 1000 (D.C. Cir. 1986) ........................................................................ 13

*Wicks v. Chrysler Group, LLC*
  No. Civ. S-10-3214 LKK/KJN, 2011 U.S. Dist. LEXIS 98439 (E.D. Cal. Sept. 1,
  2011) ................................................................................................................. 13

*Wilson v. Hewlett-Packard Co.*
    668 F.3d 1136 (9th Cir. 2012) ........................................................... 10

*Wolin v. Jaguar Land Rover North Am.*
    *LLC*, 617 F.3d 1168 (9th Cir. 2010) ........................................ 9, 15

*Wolph v. Acer Am. Corp.*
    272 F.R.D. 477 (N.D. Cal. 2011).................................................... 9

**Statutes**

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*                 3, 13, 14

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*    3

Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*              3

Fed. R. Civ. P. 23(a)                                                        3, 9

Fed. R. Civ. P. 23(a)(1)                                                       11

Fed. R. Civ. P. 23(a)(3)                                                       12

Fed. R. Civ. P. 23(b)(3)                                                   3, 9, 14

Fed. R. Civ. P. 23(b)(3)(A)                                                    15

Fed. R. Civ. P. 23(b)(3)(B)                                                    16

Fed. R. Civ. P. 23(b)(3)(C)                                                    16

Fed. R. Civ. P. 23(b)(3)(D)                                                    16

**NOTICE OF RENEWED MOTION AND
RENEWED MOTION FOR CLASS CERTIFICATION**

**PLEASE TAKE NOTICE** that on _____, 2012 at _____, or as soon thereafter as the matter may be heard in Courtroom 3, 5th Floor, of the above-entitled Court located at 280 South 1st Street, San Jose, California, Plaintiffs Suzanne Rebro, Sondra Simpson, and John Carey ("Plaintiffs" or "Class Representatives") will, and hereby do, renew their motion pursuant to Rule 23 of the Federal Rule of Civil Procedure to certify a redefined Nationwide Class identified in the Memorandum of Points and Authorities below.[1]

This renewed Motion is based upon this Notice of renewed Motion, the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' renewed Motion for Class Certification, as well as the Declaration of Lori Andrus, the Declarations of the Named Plaintiffs and absent Class members previously submitted with Plaintiffs' prior Motion for Class Certification, the pleadings on file in this action, and upon such other matters, evidence, and arguments as may be presented to the Court before or at the hearing on the Motion.

**STATEMENT OF RELIEF SOUGHT**

With this renewed Motion, pursuant to Rule 23(a) and (b), Plaintiffs seek an order 1) Certifying a nationwide Class defined in Section I, below; 2) Directing notice to be sent to all known Class members and that a publication notice plan be devised and implemented; 3) Appointing the Named Plaintiffs as Class Representatives; and 4) Appointing Lori Andrus and Jennie Lee Anderson of Andrus Anderson LLP and James C. Shah of Shepherd, Finkelman, Miller and Shah, LLP as Class Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This class action arises from a uniform defect in certain top loading Kenmore Elite Oasis washing machines ("Machine(s)"): a defectively designed Electronic Control Board ("ECB").  The

---

[1] Plaintiffs are no longer proffering Renee Tietsworth as a Class Representative as her situation does not fall within the class as Plaintiffs have defined it in their Renewed Motion For Class Certification.

ECB is an essential component to Machine function.  It is, essentially, the "brain" of the Machine.[2]
If the ECB does not work properly, the Machine does not work properly.

Even at product launch, the Machines manifested a higher-than-expected Service Incident
Rate ("SIR")[3] driven primarily by the defects in the ECB.  *See* [Dkt. No. 127, Ex. B at 124:4-18]; *see
also* [*Id.*, Ex. C, WT0127064.]  Over time, Defendants, Sears, Roebuck and Co. and Whirlpool
Corporation ("Defendants" or individually "Sears" and "Whirlpool"), sought to address the high SIR
in the Machines by issuing eight Service Flashes,[4] all of which attempted to cure issues with the
ECB, and all of which identify the defective Machines by Model Number.  In a further
acknowledgement of the defective nature of the ECBs, several months after the filing of this lawsuit,
Sears and Whirlpool instituted a voluntary recall (which they self-servingly refer to as an "upgrade"
program) to replace all defective ECBs with an updated ECB at no cost to the Machine Owner.  [*Id.*,
Ex. M, SREBRO000108.]

The defective Oasis ECBs fail in one or more of three manners: (1) defective software which
causes F51 errors that shut the Machine down, (2) a defective pressure sensor which "drifts" and
triggers F1 errors that repeatedly interrupt wash cycles, and (3) defective software which fails to
prevent the Machine from exploding under certain conditions.  All three of these failures are caused
by a defect in the Machines' ECB, which is the unifying defect among the Class members'
Machines, and the only part defect Plaintiffs allege.  The defect exists in every Machine that has not
had an updated ECB installed, whether or not a particular Machine has failed yet.  Moreover,
Plaintiffs' expert, Dr. Raymond Pietila ("Dr. Pietila"), has testified that due to the defective ECBs,
the Machines are substantially certain to fail within their useful lives.

Plaintiffs initially moved to certify a nationwide class, California class, and California sub-

---

[2] The ECB is the central control element of the Machine.  It "drives components in response to user inputs, sensor inputs, and a software program."  [Dkt. No. 127, Ex. A at 6-7]; *see also* [*id.*, Ex. B at 25:7-14.]

[3] SIR represents the percentage of Machines that required a service call.  [Dkt. No. 127, Ex. B at 71:5-7.]

[4] A "Service Flash" is a communication to service technicians to let them know what repairs to make on a particular model.  [Dkt. No. 127, Ex. D at 62:13-19.]  The eight Service Flashes at issue are Exhibits E, F, G, H, I, J, K, and L to Docket Number 127.

class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, for all residents and entities who purchased the Machines, for Defendants' fraudulent omission of material information and the corresponding violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, ("CLRA"); and Defendants' violations of the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(a)(6) ("MMWA"). [Dkt. No. 126, at 3-4.] The Court found that Plaintiffs satisfied the numerosity, commonality, typicality and adequacy requirements of Rule 23(a), but declined certifying Plaintiffs' claims over concerns of overbreadth and manageability from the class definition. [Dkt. No. 167, at 19-21, 24-25.] Nevertheless, the Court instructed that certification of "a properly-defined class with respect to the MMWA claim" was "reasonabl[y] possib[le]," and expressly invited Plaintiffs to file this renewed Motion for Class Certification for that reason. [*Id.*, at 25.]

Accordingly, Plaintiffs' renewed Motion seeks only to certify under Rule 23(a) and (b) a Nationwide Class narrowed to individuals who experienced a manifestation of the defect but did not receive appropriate repairs under the warranty after contacting Defendants for the MMWA claim (the "Class"), which is defined as follows:

> The Nationwide Class: All United States residents and entities who (1) purchased or owned a top-loading Kenmore Elite Oasis automatic washing machine after January 1, 2005 included within the models below; (2) experienced an F-1/F-51 error code and contacted Whirlpool or Sears within the warranty period; and (3) either (a) paid for a replacement electronic control board, and/or (b) are still experiencing F-1 or F-51 error codes.
>
> 110.27032600, 110.27032601, 110.27032602, 110.27032603, 110.27042600, 110.27042601, 110.27042602, 110.27042603, 110.27052600, 110.27052601, 110.27052602, 110.27062600, 110.27062601, 110.27062602, 110.27062603, 110.27072600, 110.27072601, 110.27072602, 110.27072603, 110.27082601, 110.27082602, 110.27082603, 110.27082604, 110.27082605, 110.27086601, 110.27086602, 110.27086603, 110.27086604, 110.27086605, 110.27087601, 110.27087602, 110.27087603, 110.27087604, 110.27087605, 110.27092600, 110.27092601, 110.27092602, 110.27092603, 110.27092604, 110.27152600, 110.27152601, 110.27152602, 110.28032700, 110.28032701, 110.28042700, or 110.28042701.

Excluded from the Class are Defendants' employees, officers, directors, agents and representatives, as well as the Court and its officers, employees, and relatives.

1   **II.   STATEMENT OF FACTS**

2       **A.   The Machines Are Uniformly Defective.**

3       As Defendants have acknowledged through the issuance of their Service Flashes and the

4   voluntary recall program, the Machines in the Class are uniformly defective: every one was designed

5   and manufactured with an ECB with defective software and/or a defective pressure sensor.  As such,

6   the unifying attribute among the Machines is the presence of a defective ECB.

7       Aware of the defective nature of the ECBs from the beginning, Defendants modified the

8   ECB's design and manufacture over time[5] in an attempt to correct its defective nature.  As

9   Defendants' own expert admits, eventually Defendants were successful: the introduction of Software

10  Version 19 and the switch to Panasonic pressure sensors virtually eliminated false F1 and F51 error

11  codes.[6]

12      As discussed in more detail below, the uniformly defective nature of the ECBs is common to

13  all Machines and, as such, to all Class members.

14          **1.   A False F51 Error Code During Normal Machine Use Is A Symptom Of
                     A Defective ECB.**

15

16      A symptom of a defective ECB is the repeated occurrence of F51 error codes, which shut

17  down the Machine mid-cycle.  These error codes occur when a defective ECB loses control of the

18  Machine's motor speed and direction.  As explained in Dr. Pietila's Expert Report ("Pietila Expert

19  Report"), when the ECB is unable to reliably determine motor rotational status, the Machine shuts

20  down.  [Dkt. No. 127, Ex. GG at 6-8.]  Whirlpool redesigned the ECB software more than once to

21  try to remedy this aspect of the defective ECB and eventually, with the advent of software Version

22  19, brought the incidence of F51 error codes within acceptable limits.  [*Id.*]; *see also* [*id.*, Ex. A at

23  11-12.]

24      ██████████████████████████████████████████████████████

25

26  ---
    [5] Dr. Pietila explains that in spite of the modifications, the ECB is, functionally and physically, the
27  same for all systems built on the Oasis platform (and, thereby, for all Machines in the Class).  [Dkt.
    No. 127, Ex. A at 7]; [*id.*, Ex. N at 254:13-15.]
28  [6] [Dkt. No. 127, Ex. O at 116:14-21.]

██████████████████████████████████████████████████████

███████████████,[7] even though Whirlpool knew "this was one of the larger issues" relating to Machine quality.  [*Id.*, Ex. B at 67:19-68:3, 179:16-25.]

In August 2007, Sears issued a Service Flash to address "F-51 Error Code Complaints," instructing Sears' service technicians to fix the Machines by replacing the ECB.  [*Id.*, Ex. F, ST0006526, at ST0006527 (SF26-784).][8]

## 2.   A False F1 Error Code During Normal Machine Use Is A Symptom Of A Defective ECB.

Another symptom of a defective ECB is repetitive F1 error codes, which occur when the ECB cannot correctly detect the water level in the tub due to the defective ECB's pressure sensor (also called a "pressure transducer") in combination with defective software.  [*Id.*, Ex. GG at 11; Ex. A at 7-8.]  The pressure sensor is an integral physical component of the ECB that converts the water level to digital data for use by the ECB.  Defective pressure sensors experience "drift" over time, causing the ECB to improperly interpret calibration outputs (which, in turn, results in an inability to accurately detect the water level in the tub.)  [*Id.*, Ex. A at 7-8.]

Defendants knew that a more robust pressure sensor incorporated into the ECB would fix the F1 drift issue, but instead were so concerned with keeping production costs low that Whirlpool stalled switching to the different brand of the ECB pressure transducer until mid-June 2008.[9]  [*Id.*, Ex. KK, WT0279585] (Email chain from 4/23/08-5/7/08 regarding the switch from Freescale to

---

[7] ████████████████████████████████████████

████████████████████████████████ted in SF26-789 [*id.*, Ex. G]).  However, this effort did not prevent customers from buying Machines with a defective ECB, because sales associates were told to continue to sell Machines without the upgraded ECB.   [*Id.*, Ex. II, WT0123257] (Email from Lori Wood Director of Sears Product Brand Management and Laundry Products Buyer.)

[8] This Service Flash was a "Regular" flash, which meant customers paid out of pocket for the repair if they were no longer under warranty.  [*Id.*]  Sears updated SF26-784 on July 16, 2008 to reflect newly updated ECB part numbers.  [*Id.*, Ex. I, WT0281846 (SF26-784R1).]

[9] In addition to the introduction of better pressure transducers, false F1 error codes were addressed with corrective software.  [*Id.*, Ex. JJ, WT0236182] (Whirlpool 2008 email from Whirlpool Engineer Joseph Coletti, "Version 19 software . . . went into production around Q32007 and that dropped the lower limit output voltage from 0.15V to 0.06Vdc which helped reduce F1 issues in the field").

5

Panasonic pressure transducers and stating that "we would like to perform cost study first"); [*id.*, Ex. LL, WT0100226) (Whirlpool document from 2008, "a new transducer from Panasonic went into production in mid June"); [*id.*, Ex. B at 64:12-24, 208:7-9, 21-23.]  The switch to a Panasonic pressure transducer largely corrected the F1 problem, but consumers who already owned a defective Machine had to pay for their replacement ECB for this repair.  [*Id.*, Ex. J, WT0281840) (SF26-794 from October 26, 2008 for F1 error code complaints is a "Regular Service Flash); [*id.*, Ex. L, WT0281800) (SF26-794R1 from April 13, 2009 also a "Regular" Service Flash).

According to Whirlpool Engineer Joseph Coletti, this F1 sensor problem "was never a small field issue" and affects most Machines once they are outside of their one-year standard warranty. [*Id.*, Ex. JJ, WT0236182]; ███████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████  [*id.*, Ex. A at 21.]

### 3. Defendants Knew That The ECBs Were Defective At Product Launch, But Concealed That Knowledge For Several Years, Even While Negotiating Reimbursement To Sears From Whirlpool For The Defect.

Whirlpool's Principal Engineer, Eric Farrington, testified that, at product launch, the chances of the Machine failing prematurely within the designed 10 year lifespan of the Machine was estimated to be an alarmingly-high 35% based on Defendants' own internal calculations.  [*Id.*, Ex. B at 73:9-10, 140:1-9.]  Mr. Farrington's estimates were correct, if not understated: the Oasis Machines' Service Incident Rate reached a high of 35.51% in the second quarter of 2006.  [*Id.*, Ex. NN, WT0164171, at WT0164178.]  Defendants quickly realized that there were additional problems with the Machines, but the part that has overwhelmingly caused the most consumer complaints is the ECB.  *See* [Dkt. No. 128) (Class Member Declarations Appendix); *see also* [*id.*, Ex. PP, WT0155475, at WT0155477 (Sears email chain, "Have you heard anything about a possible recall on the Kenmore Oasis . . . I have been having major issues with all versions (agitator and no agitator) of these washers.  Most common problem is the control panel").

As of early January 2007, if not before, it was obvious to Defendants that the Machines had major quality issues.  [*Id.*, Ex. QQ, WT0108691] ("Universally the quality team leadership were

quite anxious to see some improvements starting right now . . . Oasis is about 10% of Clyde's production and about 50% of their quality issues"); [*id.*, Ex. PP, WT0155475] ("I know the SIR numbers are terrible for 2006"); [*id.*, Ex. PP, WT0155475, at WT0155477] ("My associates are steering customers away from [Kenmore Oasis] because they are tired of the returns").  Despite the fact that Defendants knew of the defective nature of the ECB, Defendants continued to sell the Machines, leaving many consumers "without coverage on several **known** issues." [*Id.*, Ex. RR, WT0298349] (Email from Sears' Director of Service Quality David Chowanec ("Chowanec") on 12/10/07 "RE: Oasis Quality Meeting") (emphasis added).

████████████████████████████████████████████████████████[10]
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████ Discussions between the parties became so heated due to the scope of the defect that Sears threatened to cancel the launch of the next Whirlpool machine line, Oasis HT/ST, if the parties did not reach a payment resolution.  [*Id.*, Ex. OO, ST00118592, at ST00118593.]  Sears wanted Whirlpool to accept responsibility for "Whirlpool's design problems," and as of November 15, 2007, Chowanec was still pursuing options for recourse under the sales contract (also known as the "SSI agreement") between Defendants.[11] *Id.*

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████ [*id.*, Ex. YY, ST004437] (Letter of agreement between Sears and Whirlpool for Whirlpool payment for

---

[10] ████████████████████████████████████████████████
████████████████████████████████████████████████████████
█
[11] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████

Machine repairs for ECBs ("customer upgrade letter") dated 11/6/08 and signed by Todd C. Starr on January 13, 2009).  Unfortunately for consumers, Defendants focused their concern on apportioning blame and costs among themselves rather than addressing their legal obligations to the purchasers of the Machines.

### 4. Plaintiffs' Analysis Of The Repair Service Data Shows A 22.47% Failure Rate Among The Machines.

Plaintiffs' analysis of data extracted from Defendants' sales and repair databases demonstrates that at least 22.47% of Machines have either failed or have had a defective ECB replaced as a prophylactic measure.[12] [*Id.*, Ex. A at 12-20; *see also* Ex. 295 to Ex. N.]

### B. The Written Warranty And Class Representatives' And Class Members' Experiences

Defendants issue a uniform written warranty providing free repairs for any "defect in material or workmanship" for one year after the date of purchase to all Kenmore Elite Oasis Machine purchasers.  [*Id.*, Ex. W, WT0343104, at WT0343106.]

Like all Class members, Class Representatives Sondra Simpson, Suzanne Rebro, and John Carey each purchased and/or own a Kenmore Elite Oasis Machine with a defective ECB.  [*Id.*, Exs. AAA, BBB, and CCC.]  Like all Class members, the Class Representatives received the same aforementioned one year written warranty.  [*Id.*, Ex. W, WT0343104, at WT0343106.]  The Class Representatives have all experienced multiple F1 or F51 error codes requiring service.  [*Id.*]  They have all contacted Defendants within one year after their date of purchase, thus within the warranty period, but Defendants failed to provide the appropriate repairs to fix the defect.  [*Id.*, Exs. AAA, BBB, and CCC.]

The Class Representatives have each sworn to represent the Class and have agreed to, and have, stayed informed about the progress of the case, cooperated with discovery, and monitored the work of counsel.  [*Id.*]  Additionally, they have each sworn that they do not have any conflicts of

---

[12] The internal SIR high of 35% includes failures due to Machine components other than the ECB. Plaintiffs' data analysis confirms what Defendants internally acknowledged: that the largest driver of the SIR was the defective ECB.  [*Id.*, Ex. C, WT0127064.]

interest with the proposed Class.  [*Id.*]  In support of class certification, Plaintiffs have also

submitted the declarations of 105 absent Class members, all of whom have also suffered Machine

malfunction in the form of F1 or F51 error codes as a result of the defect that is at issue in this

litigation.  *See* [Dkt. No. 128] (Class Member Declarations Appendix).

## III.    STANDARDS ON CLASS CERTIFICATION

A plaintiff seeking to represent a class must demonstrate that: "1) the class is so numerous

that joinder of all members is impracticable; 2) there are questions of law or fact common to the

class; 3) the claims and defenses of the representative parties are typical of the claims or defenses of

the class; and 4) the respective parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Additionally, the

moving party must satisfy at least one of the requirements of Rule 23(b).  Here, Plaintiffs seek to

certify the proposed Class under Rule 23(b)(3) because: (i) common questions of law or fact

predominate over individual questions; and (ii) "a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The decision to grant class certification lies within the district court's sound discretion, which

applies a "rigorous analysis" to the facts alleged and the supporting evidence.  *Wolin v. Jaguar Land

Rover North Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010).  Here, a rigorous analysis of the facts

alleged and the supporting evidence Plaintiffs previously presented to the Court amply demonstrates

that Plaintiffs are "prepared to prove" each and every element of Rule 23 necessary for the Class.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

## IV.    ARGUMENT

### A.       The Proposed Class Is Identifiable And Ascertainable

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

seeking class certification must demonstrate that an identifiable and ascertainable class exists." [Dkt.

No. 167, at 18] (quoting *Mazur v. eBay*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  The refined class

definition is "precise, objective and presently ascertainable." *Wolph v. Acer Am. Corp.*, 272 F.R.D.

477, 482 (N.D. Cal. 2011).  As previously stated, Plaintiffs have identified the eight relevant Service

Flashes which specifically identify 46 unique Model Numbers with defective ECBs that require

replacement.  Consumers of the affected Machines can be identified from Defendants' records and databases and/or by reference to the Model Number of their Machine, which is imprinted on the Machine.  The requirement placed by the new class definition is that the consumer must also have experienced a manifestation of the defect and contacted Defendants about the defect, but either paid for the repair himself/herself or is still experiencing the manifestation.  These consumers can also be readily and objectively ascertained and identified through Defendants' customer complaints/warranty records and databases [Dkt. No. 138, Farrington Decl. ¶ 47], or through the consumers' own documentary evidence/records/testimony.

The refined Class definition also remedies the Court's previous concerns.  The Court's denial of Plaintiffs' initial Motion for Class Certification stemmed from its determination that Plaintiffs' previously proposed class was overbroad and unmanageable because the class definition included members who lacked Article III standing and that the UCL, CLRA, and common law fraud claims were no longer viable.  [Dkt. No. 167, at 19-21.]  Specifically, on the Article III standing issue, the Court explained that the earlier proposed class definition would include owners with Machines that did not contain the allegedly defective ECB and individuals who did not suffer a compensable injury because they "returned, sold, or otherwise disposed of the Machine without experiencing any error codes." [Dkt. No. 167, at 19-21.]  Regarding the viability of the UCL, CLRA, and common law fraud claims, the Court referred to the Ninth Circuit's recent decision to impute "an unreasonable safety hazard" requirement for the UCL, CLRA, and common law fraud claims in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012).  [*Id.*]

Mindful of the Court's previous decision, the renewed Motion for Class Certification is predicated solely on the MMWA claims, so *Wilson* is not implicated.  Second, as the proposed Class definition makes clear, the proposed Class only includes those "who experienced an F-1/51 error code" caused by the defective ECB and contacted Defendants regarding the defect.  Accordingly, all members of the proposed Class necessarily suffered injury-in-fact from owning a Machine in which the defective ECB manifested, which satisfies the Article III standing requirement as articulated by this Court in the prior decision.

//

## B.   The Rule 23(a) Requirements Are Satisfied.

### 1.   Numerosity

The Court previously found that Plaintiffs' evidence of the more than 200,000 consumers who purchased or own a defective Machine satisfied the numerosity requirement under Rule 23(a)(1), which Defendants did not contest. [Dkt. No. 167, at 21.]  Refining the previously-defined classes does nothing to alter that conclusion, since "common sense" indicates that the number of consumers who purchased or own a defective Machine and subsequently contacted Defendants about the defect, but either paid for the repairs themselves and/or are still experiencing the defect, are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Rivera v. Bio Engineered Suppl. & Nutr., Inc.*, No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist. LEXIS 95083, at *15 (C.D. Cal. Nov. 13, 2008) ("Where the exact size of the class is unknown, but general knowledge and common sense indicate that is large, the numerosity requirement is satisfied") (citations omitted).  This is particularly true given the high failure rate as set forth in the record. Indeed, even if the evidence of a high failure rate was disregarded, and only a small fraction of those 200,000 consumers manifested the problem and did not receive an adequate repair, the numerosity requirement would still be satisfied.  *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) ("[C]lasses of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough").

### 2.   Commonality

The Court also previously found that Plaintiffs' allegations that the Machines contained a common ECB defect, that the defect rendered the Machines substantially certain to fail, and that Defendants were aware of the defect and concealed it, were claims "susceptible to common resolution." [Dkt. No. 167, at 22.]  Despite Defendants' contention that there was no common defect, the Court determined that Plaintiffs' evidence was sufficient such that resolution of that merits issue was inappropriate for class certification. [*Id.*]  As such, the Court concluded that Plaintiffs have satisfied Rule 23(a)'s commonality requirement because class treatment will resolve issues that are "central to the validity of each of the claims in one stroke."  [*Id.*]; *Dukes*, 131 S. Ct. at 2551. Moreover, it is also undisputed that the limited written warranty provided to all owners of the

Machines was identical.  [Dkt. No. 127, Ex. W, WT0343104, at WT0343106.]  Accordingly, in that the refined Class definition does not affect the need to resolve those central issues or raise any other central issues, the Court's conclusion that Rule 23(a)'s commonality requirement is satisfied stands undisturbed.

### 3.   **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[T]he commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Dukes*, 131 S. Ct. at 2251 n.5.  The Court previously determined that Plaintiffs' claims were typical of the claims of the previously proposed class, finding Defendants' argument that there is insufficient evidence that the error codes were "false" to be irrelevant. [Dkt. No. 167, at 23.]  Plaintiffs' claims are again congruent to the refined Class definition.  As with every member of the Class, Plaintiffs Rebro, Simpson, and Carey experienced F1 or F51 error codes that required service. [Dkt. No. 127, Exs. AAA, BBB, and CCC.]  And as with every member of the Class, each of those Plaintiffs contacted Whirlpool or Sears within the warranty period but either paid for repairs himself/herself or is still experiencing the F1 or F51 error codes. [*Id.*] Accordingly, Plaintiffs' claims are certainly typical of the Class.

### 4.   **Adequacy**

As the Court previously noted, Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3).  Generally, two questions are considered: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 357 (9th

Cir. 2003). The Court previously found that there is no evidence of any conflict of interest and that Plaintiffs have been zealous in prosecuting this action. [Dkt. No. 167, at 24.] Nothing has changed to alter that conclusion.

### C. The Magnuson-Moss Warranty Act Created An Independent Federal Private Right Of Action For A Warrantor's Failure To Comply With The Terms Of A Written Warranty.

The Ninth Circuit confirmed in *Milicevic v. Fletcher Jones Imp., Ltd.*, 402 F.3d 912 (9th Cir. 2005), that 15 U.S.C. § 2310(d)(1)(B) of the MMWA "creates a federal private right of action for a warrantor's failure to comply with the terms of a written warranty." *Id.* at 917;[13] *accord Wicks v. Chrysler Group, LLC*, No. Civ. S-10-3214 LKK/KJN, 2011 U.S. Dist. LEXIS 98439, at *6 (E.D. Cal. Sept. 1, 2011). Under that provision, "a consumer who is damaged by the failure of a . . . supplier [or] warrantor . . . to comply with any obligation . . . under a written warranty, implied warranty, or service contract . . . may bring suit for damages and other legal and equitable relief . . . in an appropriate district court of the United States." 15 U.S.C. § 2310(d)(1)(B). Moreover, the private right of action "does not limit its application to either full or limited warranties." *Milicevic*, 402 F.3d at 918-19.

State law is only implicated if the existence of a written warranty is contested or when a plaintiff relies solely on state law to bring forth the MMWA claim. *See Walsh*, 807 F.2d at 1017 ("state law would guide the determination whether a written warranty had been created"); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) (plaintiff "alleges a violation of the [MMWA] only insofar as [defendant] may have breached its warranties under state law [for a post-warranty period defect]; there is no allegation that [defendant] otherwise failed to comply with the [MMWA]"). Otherwise, whether a warrantor failed to "comply with any obligation" is construed only against the express and plain terms of the written warranty. The Ninth Circuit

---

[13] The Ninth Circuit went on to distinguish the limited holdings of the other Circuits that the *Milicevic* defendant cited when arguing that there was no federal cause of action for written warranties under MMWA. *See Milicevic*, 402 F.3d at 917-918 (citing *Skelton v. General Motors Corp.*, 660 F.2d 311 (7th Cir. 1981) (promises not written warranty)); *Richardson v. Palm Harbor Homes*, 254 F.3d 1321 (11th Cir. 2011) (oral warranty); *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986) ("no suggestion that there was no federal cause of action").

demonstrated this in *Milicevic*, affirming in a factual and legal analysis separate from any state claim that the defendant manufacturer breached its obligations under the written warranty guaranteeing the car against defects and thus 15 U.S.C. § 2310(d)(1)(B) of the MMWA, simply because the defendant manufacturer failed to repair the defective parts during the warranty period after receiving notice. *Milicevic*, 402 F.3d at 918-19.  Thus, under the plain terms of MMWA, which is further confirmed in *Milicevic*, the only elements Plaintiffs need to establish in a MMWA breach of written warranty claim for damages and other legal and equitable relief under 15 U.S.C. § 2310(d)(1)(B) is that: 1) there is a written warranty; 2) Defendants failed to comply with an obligation under the written warranty; and 3) Defendants were "afforded a reasonable opportunity to cure such failure to comply" but failed to do so.  15 U.S.C. § 2310(d)-(e).

Here, Defendants do not, because they cannot, contest the existence of a uniform written warranty that protects against defects, and the Class includes only those who provided Defendants a "reasonable opportunity to cure" by contacting Defendants when the problems caused by the defect arose within the Class Period.  Accordingly, the only issues remaining for all Class members are whether the Machines were defective and whether Defendants failed to repair the defect, which, as explained below, is particularly suitable for class-wide resolution under Rule 23(b)(3).

### D.    The Proposed Class Satisfies Rule 23(b)(3).

Plaintiffs' claims are based on Defendants' common course of conduct, so Plaintiffs seek certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  As the Court noted previously, "[t]his analysis focuses on 'the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." [Dkt. No. 167, at 24] (quoting *Hanlon*, 150 F.3d at 1022).  "The Rule 23(b)(3) inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" [*Id.*]

//

---

14

### 1.    **Common Questions Predominate.**

The MMWA claims of the Class are particularly suitable for class treatment, especially since the existence of a uniform written warranty for defects is undisputed.  Resolution of the MMWA claims depends upon the resolution of the following common issues: (a) whether the Machines' ECBs are defective; (b) whether Defendants failed to provide the appropriate repairs when Plaintiffs and Class members alerted Defendants of the defect; (c) whether Defendants failed to comply with the terms of the written warranty and thus violated the MMWA when Defendants failed to provide the appropriate repairs; and (d) whether Plaintiffs and Class members have been damaged.  These common questions predominate over any individual issues, as illustrated succinctly in *Wolin*:

> [A]ll of the proposed class members are covered by a Limited Warranty that provides for the repair or replacement of defects, and all of the proposed class members allege their vehicles suffer from the same defect.  These claims require common proof of the existence of the defect and a determination whether Land Rover violated the terms of its Limited Warranty.  Accordingly, we conclude that the common issues predominate.

*Wolin*, 617 F.3d at 1174.  Therefore, these common questions constitute the core issues in this litigation, are susceptible to common proof, and, thus, satisfy Rule 23(b)(3)'s predominance requirement.

### 2.    **The Class Action Mechanism Is Superior.**

Class certification remains the only economically feasible method for the fair and efficient adjudication of this controversy.  *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).  Any individual Class member's damages are still too modest to warrant individual actions economically, and Class members do not possess the resources to litigate the costly and complex case against Defendants, who are well-financed.

In any event, the four factors expressly listed in Rule 23(b)(3) weigh strongly in favor of the conclusion that a class action is superior to individual actions to resolve Plaintiffs' and the proposed Class' claims.  First, Class members have little interest in individually controlling separate actions because the recoverable damages of each individual Class member will be relatively small.  As such, the factor weighing "the class members' interests in individually controlling the prosecution or defense of separate actions" favors a class action.  Fed. R. Civ. P. 23(b)(3)(A); *see Amchem Prods.*,

521 U.S. at 617 (Rule 23(b)(3) aims primarily at vindicating "the rights of groups of people who individually would be without effective strength to bring their opponent into court at all"); *Hanlon*, 150 F.3d at 1023 ("[E]ven if efficacious, these claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs [since] [i]n most cases, litigation would dwarf potential recovery [and] [i]n this sense, the proposed class action is paradigmatic").

Second, to Plaintiffs' knowledge, there are still no other class actions currently pending involving the same or similar claims against Defendants. Accordingly, the second factor asking "the extent and nature of any litigation concerning the controversy already begun by or against class members" also favors a class action. Fed. R. Civ. P. 23(b)(3)(B). As for the third factor, the Court's experience with this action in the Northern District of California for more than three years and the absence of any competitive forum continue to render this forum the most appropriate for "concentrating the litigation." Fed. R. Civ. P. 23(b)(3)(C).

Finally, "the likely difficulties in managing a class action" measured by the fourth factor is minimal. Fed. R. Civ. P. 23(b)(3)(D). The manageability concerns from the prior class definition have been addressed by the refined class definition of the proposed Class, which necessarily excludes individuals whom the Court previously characterized as lacking standing. Thus, the MMWD claim for the proposed Class can be readily tried and adjudicated under the previously presented liability-damages framework. *See Earley v. Superior Court*, 79 Cal. App. 4th 1420, 1434 (2000) (noting that a class action can be tried as to liability and damages with the plaintiff acting as the fiduciary on behalf of the class).

The central liability issues to be determined are: (1) whether the ECBs are defective; and (2) whether Defendants provided appropriate repairs when notified of the alleged defect. Plaintiffs will prove Defendants' liability through a number of methods, including, *inter alia*, the presentation of Defendants' own documents and records, deposition and witness testimony (including Defendants' representatives and Plaintiffs') and expert testimony.

After presentation of evidence of liability, Plaintiffs will present evidence of damages and restitution based upon Defendants' own repair records, and augmented by the records of certain Class members who suffered out-of-pocket damages paid to third parties. Because damages in this

16

1   case will be based upon objective, documentary evidence, primarily consisting of Defendants' own

2   ownership and repair records, calculation of damages is susceptible to a formulaic analysis and is

3   particularly manageable in the context of the common remedies sought (i.e., damages in the amount

4   of payments by the Class and/or restitution).  *See Chavez v. Blue Sky Natural Beverage Co.*, 268

5   F.R.D. 365, 379 (N.D. Cal. 2010) (finding that class certification is proper where damages are

6   determinable by objective criteria).

7   **V.      CONCLUSION**

8          For the foregoing reasons, Plaintiffs' renewed Motion for Class Certification should be

9   granted.

10

11  Dated:  June 18, 2012                    By:   _/s/ James C. Shah_____

12                                                   James C. Shah

13                                          SHEPHERD FINKELMAN MILLER & SHAH, LLP

14                                          James C. Shah
                                            Natalie Finkelman Bennett
15                                          35 East State Street
                                            Media, PA 19063
16                                          Telephone: (610) 891-9880
                                            Facsimile: (610) 891-9883
17                                          nfinkelman@sfmslaw.com
                                            jshah@sfmslaw.com
18

19                                          ANDRUS ANDERSON LLP

20                                          Jennie Lee Anderson (SBN 203586)
                                            Lori E. Andrus (SBN 205816)
21                                          Jessica Moy (SBN 272941)
                                            155 Montgomery St., Suite 900
22                                          San Francisco, CA  94104
                                            Telephone: (415) 986-1440
23                                          Facsimile: (415) 986-1474
                                            jennie@andrusanderson.com
24                                          lori@andrusanderson.com
25                                          jessica@andrusanderson.com

26                                          *Attorneys for Plaintiffs and Proposed Class
                                            Counsel*
27

28

                                            17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ECF CERTIFICATION

The filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatory to the document.


Dated: June 18, 2012                        _/s/ Jessica Moy_____
                                            Jessica Moy

                                            Jessica Moy (SBN 272941)
                                            **ANDRUS ANDERSON LLP**
                                            155 Montgomery Street, Suite 900
                                            San Francisco, CA  94104
                                            Telephone:  (415) 986-1400
                                            Facsimile:  (415) 986-1474
                                            jessica@andrusanderson.com

## CERTIFICATE OF SERVICE

I hereby certify that on, I electronically filed the foregoing document and exhibits thereto with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 18, 2012                    Respectfully submitted,


                                         _/s/ Jessica Moy_____
                                         Jessica Moy

                                         Jessica Moy (SBN 272941)
                                         **ANDRUS ANDERSON LLP**
                                         155 Montgomery Street, Suite 900
                                         San Francisco, CA  94104
                                         Telephone:  (415) 986-1400
                                         Facsimile:  (415) 986-1474
                                         jessica@andrusanderson.com