1

2                                                                **E-Filed 3/28/2013**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   RENEE TIETSWORTH, SUZANNE REBRO,        Case No. 5:09-cv-00288-JF (HRL)
     SONDRA SIMPSON, and JOHN CAREY, on
13   behalf of themselves and all others similarly   ORDER[1] DENYING PLAINTIFFS'
     situated,                                RENEWED MOTION FOR CLASS
14                                            CERTIFICATION
                     Plaintiffs,
15                                            [re: dkt. entry 179]
               v.
16
     SEARS, ROEBUCK AND CO., and
17   WHIRLPOOL CORPORATION,

18                   Defendants.

19

20

21        Plaintiffs Suzanne Rebro, Sondra Simpson, and John Carey ("Plaintiffs")[2] have filed a

22   renewed motion for class certification pursuant to Fed. R. Civ. P. 23.  Defendants Sears, Roebuck

23   and Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (collectively, "Defendants") oppose the

24   motion.  The Court concludes that the motion is appropriate for disposition without oral argument

25   pursuant to Civil Local Rule 7-1(b).  For the reasons discussed below, the motion will be denied.

26   _____

27   [1] This disposition is not designated for publication in the official reports.

28   [2] Renee Tietsworth no longer is offered as a class representative because she does not come within
     the class as defined in Plaintiffs' renewed motion for class certification.

     Case No. 5:09-cv-00288-JF
     ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

**I. BACKGROUND**

The facts giving rise to this action are well-known to the parties and to the Court and need not be set forth in full here.  In brief, Plaintiffs allege that certain top-loading Kenmore Elite Oasis automatic washing machines ("Machines") were manufactured with a defective electronic control board ("ECB").  According to Plaintiffs, the defective ECB results in three different types of malfunction:  (1) a "F1" error; (2) a "F51" error; and (3) a "sudden instability event" that can result in an explosion when certain types of fabric are in the wash load.  The operative third amended complaint ("TAC") asserts claims against Whirlpool and Sears under California unfair competition and consumer protection laws, California common law, and the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.

On May 4, 2012, the Court denied Plaintiffs' motion for class certification with respect to all of these claims.  *Tietsworth v. Sears, Roebuck and Co.*, No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112 (N.D. Cal. May 4, 2012) ("Prior Order").  Although it determined that the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a) were satisfied, *id*. at *15-17, the Court concluded that the proposed classes were overbroad and unmanageable as defined, *id*. at *14; Plaintiffs' state law claims based upon concealment of the ECB defect were not appropriate for certification absent evidence that the ECB defect caused an unreasonable safety hazard, *id*. at *15; and individual questions predominated with respect to Plaintiffs' state law warranty claims, *id*. at *17.  As to the MMWA claim, the Court observed that:

> . . .  Plaintiffs' counsel clarified at the hearing that the claim is based solely upon the federal statute and does not depend upon the laws of individual states.  In light of that clarification, the Court conceivably could certify a properly defined class with respect to the MMWA claim.  However, because the proposed classes are overbroad and unmanageable as currently defined, the present motion for class certification will be denied in its entirety.

*Id*. at *17.  The Court ordered that, "Because there appears to be a reasonable possibility that Plaintiffs could define an appropriate class with respect to their MMWA claim, this determination is without prejudice, but only to that extent."  *Id*. at *18.  Plaintiffs now renew their motion for class

2

1  certification with respect to their MMWA claim, which is asserted only against Sears.[3]

2       The MMWA claim is based upon a one-year limited warranty issued by Sears, which reads

3  as follows:

4       **ONE YEAR LIMITED WARRANTY**
   When installed, operated and maintained according to all instructions supplied with
5  the product, if this appliance fails due to a defect in material or workmanship within
   one year from the date of purchase, call 1-800-4-MY-HOME to arrange for free
6  repair.

7  TAC ¶ 42, ECF No. 93; User's Guide at p. 3, ECF No. 127-23. Plaintiffs allege that this warranty is

8  a written warranty covered by the MMWA; Sears's systematic refusal to repair and/or replace the

9  ECB violates 15 U.S.C. § 2302(a)(6), requiring a written warranty to include "[e]xceptions and

10 exclusions from the terms of the warranty"; Sears's failure to include in the warranty a brief, general

11 description of the legal remedies available to consumers violates 15 U.S.C. § 2302(a)(9); and

12 Sears's failure to repair or replace the ECBs that failed within the first year of purchase constitutes a

13 breach of warranty that subjects Sears to liability for damages, equitable relief, attorneys' fees, and

14 costs pursuant to 15 U.S.C. § 2310(d). TAC ¶¶ 148, 150, 151, 165, 169, ECF No. 93.

15      Although these allegations assert both form-and-content claims (based upon alleged

16 violations of MMWA provisions prescribing the form and content of written warranties) and breach-

17 of-warranty claims (based upon alleged failure to comply with written warranties), Plaintiffs'

18 proposed class definition is directed only to the breach-of-warranty claims, that is, claims that

19 Plaintiffs reported F1 and/or F51 error codes to Sears within the one-year warranty period but were

20 denied repair of the problem and had to pay out-of-pocket or suffer continued F1 and F51 error

21

22 [3] Defendants point out it their opposition brief that the TAC alleges the MMWA claim only against
   Sears and not against Whirlpool. Def.'s Opp. at p. 1, ECF No. 182. This appears to be consistent
23 with the record evidence that "Whirlpool sells Kenmore Oasis washers without warranty to Sears.
   Sears, in turn, issues its own written warranty when Sears resells Kenmore Oasis washers to
24 consumers." Farrington Decl., ¶ 44, ECF No. 139-1. Plaintiffs contend in their reply that the
   MMWA claim "is properly at issue" against Whirlpool as well as Sears, because the TAC alleges
25 that Sears and Whirlpool acted in concert and the Court's prior rulings did not exclude Whirlpool
   from the MMWA claim. Pls.'s Reply at p. 4 n.2, ECF No. 190. The Court has reviewed the TAC
26 and concludes that a fair reading would not put Whirlpool on notice that it is an intended defendant
   to the MMWA claim. Accordingly, the Court addresses Plaintiffs' motion for class certification
27 only with respect to the MMWA claim actually alleged and asserted against Sears. If Plaintiffs wish
   to amend their MMWA claim to add Whirlpool as a defendant to that claim, they may seek leave to
28 do so.

3

1  codes.  Plaintiffs seek certification of a nationwide class, defined as follows:

2      The Nationwide Class:  All United States residents and entities who (1) purchased or
       owned a top-loading Kenmore Elite Oasis automatic washing machine after
3      December 1, 2005[4] included within the models below; (2) experienced an F1and/or
       F51 error code and contacted Sears[5] within the warranty period; and (3) either (a)
4      paid for a replacement electronic control board, and/or (b) are still experiencing F1 or
       F51 error codes.

5
       110.27032600, 110.27032601, 110.27032602, 110.27032603, 110.27042600,
6      110.27042601, 110.27042602, 110.27042603, 110.27052600, 110.27052601,
       110.27052602, 110.27062600, 110.27062601, 110.27062602, 110.27062603,
7      110.27072600, 110.27072601, 110.27072602, 110.27072603, 110.27082601,
       110.27082602, 110.27082603, 110.27082604, 110.27082605, 110.27086601,
8      110.27086602, 110.27086603, 110.27086604, 110.27086605, 110.27087601,
       110.27087602, 110.27087603, 110.27087604, 110.27087605, 110.27092600,
9      110.27092601, 110.27092602, 110.27092603, 110.27092604, 110.27152600,
       110.27152601, 110.27152602, 110.28032700, 110.28032701, 110.28042700, or
10     110.28042701.

11                              **II. LEGAL STANDARDS**

12         "The class action is an exception to the usual rule that litigation is conducted by and on

13  behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550

14  (2011) (internal quotation marks and citation omitted).  "In order to justify a departure from that

15  rule, a class representative must be part of the class and possess the same interest and suffer the

16  same injury as the class members."  *Id.* (internal quotation marks and citation omitted).  "Before

17  certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party

18  seeking certification has met the prerequisites of Rule 23."  *Mazza v. American Honda Motor Co.,*

19  *Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

20  1180, 1186, as amended by 273 F.3d 1266 (9th Cir. 2001)).

21         Under Rule 23(a), four prerequisites must be satisfied for class certification:

22         (1) the class is so numerous that joinder of all members is impracticable;

23  _____

24  [4] Although the proposed order submitted with Plaintiffs' renewed motion for class certification
    specifies that the class period starts on January 1, 2005, Pls.' Prop. Ord. at p. 6, ECF No. 179-1,
25  Plaintiffs concede in their reply that the appropriate start date is December 1, 2005, Pls.'s Reply at
    p. 5, ECF No. 190.  The Court previously has concluded that December 1, 2005 is the appropriate
26  start date for the asserted class period.  Prior Order, 2012 WL 1595112, at *13.

27  [5] Plaintiffs' proposed class definition requires that the class member have contacted "Whirlpool or
    Sears" within the warranty period.  As discussed above, the MMWA claim as presently drafted is
28  based upon a limited one-year warranty issued by Sears.  Accordingly, the Court has omitted the
    reference to Whirlpool, which presently is not a defendant to the MMWA claim.

4

**United States District Court**
For the Northern District of California

1       (2) there are questions of law or fact common to the class;

2       (3) the claims or defenses of the representative parties are typical of the claims or

3       defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the

4       class.

5   Fed. R. Civ. P. 23(a).

6       A plaintiff also must satisfy one or more of the separate prerequisites set forth in Rule 23(b):

7   (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief

8   benefiting the class as a whole would be appropriate; or (3) common questions of law or fact

9   predominate and the class action is superior to other available methods of adjudication. *See* Fed. R.

10  Civ. P. 23(b).

11      "Rule 23 does not set forth a mere pleading standard. A party seeking class certification

12  must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove

13  that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*,

14  131 S.Ct. at 2551. Analysis of these factors "generally involves considerations that are enmeshed in

15  the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 2552 (internal

16  quotation marks and citation omitted). "Nor is there anything unusual about that consequence: The

17  necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction

18  and venue, is a familiar feature of litigation." *Id.*

19                                     **III. DISCUSSION**

20  **A.    Identifiable and Ascertainable Class**

21      "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

22  seeking class certification must demonstrate that an identifiable and ascertainable class exists."

23  *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). "However, the class need not be 'so

24  ascertainable that every potential member can be identified at the commencement of the action.'"

25  *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (quoting Wright,

26  Miller & Kane, § 1760 at 117). "As long as 'the general outlines of the membership of the class are

27  determinable at the outset of the litigation, a class will be deemed to exist.'" *Id.* (quoting Wright,

28  Miller & Kane, § 1760 at 118). "Thus, a class will be found to exist if the description of the class is

definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id.*

On its face, the proposed class definition appears to be fairly precise – it includes parties who (1) purchased or owned one of the subject Machines (defined by model number) after December 1, 2005; (2) experienced an F1 and/or an F51 error code and contacted Sears within the one-year warranty period; and (3) paid for a replacement ECB and/or still experience F1 and/or F51 error codes. However, Defendants point to evidence that the Machines are designed to, and do, display diagnostic "F" error codes for any number of reasons unrelated to a defective ECB. *See, e.g.,* Farrington Decl. ¶¶ 17, 32, ECF No. 139-1. It is not clear that anyone can ascertain which individuals experienced "false" or "nuisance" error codes caused by a defective ECB and which individuals experienced "real" error codes that were displayed in the manner intended. For example, Plaintiffs' expert, Dr. Raymond Pietila ("Pietila"), admitted during his deposition that although he attended the inspection and testing of Plaintiff Rebro's washer, he could not determine what had caused Rebro's F1 error codes. Pietila Dep. at 161:4-9, 163:2-5, ECF No. 139-17.

Moreover, as the Court noted it its Prior Order, the model numbers recited in the class definition were used both for Machines containing the allegedly defective ECB and for Machines containing new ECBs that corrected the earlier software defect. Prior Order, 2012 WL 1595112, at *13. The Court rejected Plaintiffs' argument that identifying information such as part number, software version, and pressure sensor manufacturer could be used to check each Machine during a claim procedure, noting that such an approach would be "unwieldy" given the number of Machines at issue. *Id.* The Court concluded that "[i]f the allegedly defective ECB was not included in some Machines that carry the model numbers identified in the class definition, then the classes necessarily contain members who lack Article III standing." *Id.* at *14. "[N]o class may be certified that contains members lacking Article III standing." *Mazza*, 666 F.3d at 594 (internal quotation marks and citation omitted).

Although Plaintiffs have attempted to limit their proposed class definition to address the concerns raised by the Court it its Prior Order, it still appears that "ascertaining class membership would require unmanageable individualized inquiry." *Xavier v. Philip Morris USA Inc.*, 787 F.

6

Supp. 2d 1075, 1089 (N.D. Cal. 2011).

**B.      Rule 23(a)**

In its Prior Order, the Court concluded that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) were satisfied.  However, after revisiting these requirements against the backdrop of Plaintiffs' new and more limited class definition, the Court has reconsidered this conclusion.

**1.      Numerosity**

In connection with their initial motion for class certification, Plaintiffs presented evidence that the nationwide class consisted of more than 200,000 consumers who purchased or own a defective Machine.  Plaintiffs' renewed motion articulates a much more limited class definition that is restricted to persons who purchased or own a defective machine *and* experienced an F1and/or F51 error code *and* contacted Sears within the warranty period *and* paid for a replacement electronic control board and/or are still experiencing F1 or F51 error codes.  Plaintiffs do not present any evidence as to how many members meet this revised class definition, but rather argue that it is "common sense" that the number must be so great that joinder of all members is impracticable.  *See Rivera v. Bio Engineered Suppl. & Nutr., Inc.*, No. SACV 07-1306 JVS (RNBx), 2008 WL 4906433, at *6 (C.D. Cal. Nov. 13, 2008) ("Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.") (internal quotation marks and citation omitted).  The Court concludes that it lacks sufficient data to make a common sense assumption that the numerosity requirement is met.

**2.      Commonality**

Class members' claims must depend upon a common contention that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551.  "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (internal quotation marks and citation

7

United States District Court
For the Northern District of California

1   omitted).

2          In its Prior Order, Court concluded that Plaintiffs' claims turn upon the theory that all of the

3   Machines in question were manufactured with a defective ECB and that such claims "are susceptible

4   to common resolution – either the Machines in question contained a common defect in the ECB or

5   they did not, and either the defect rendered the machines substantially certain to fail or it did not."

6   Prior Order, 2012 WL 1595112, at *16.  However, as framed by the renewed motion for class

7   certification, the inquiry has shifted beyond whether the Machines were manufactured with a

8   defective ECB.  In order to prevail on their MMWA claim, Plaintiffs additionally must show that

9   each class member received "false" F1 and/or F51 error codes caused by the defective ECB,

10  reported that error code to Sears, and suffered damages when Sears failed to replace the defective

11  ECB or otherwise cure the problem.  The Court concludes that these individualized inquiries will

12  vary from class member to class member and thus are not "common" for purposes of Rule 23(a)(2).

13         **3.     Typicality**

14         The Court must determine whether "the claims or defenses of the representative parties are

15  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[R]epresentative claims

16  are 'typical' if they are reasonably co-extensive with those of absent class members; they need not

17  be substantially identical."  *Hanlon Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[T]he

18  commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for

19  determining whether under the particular circumstances maintenance of a class action is economical

20  and whether the named plaintiff's claim and the class claims are so interrelated that the interests of

21  the class members will be fairly and adequately protected in their absence."  *Dukes*, 131 S.Ct. at

22  2551 n.5.  A proposed class representative is not typical if his or her claims are subject to time-

23  consuming specific defenses that would not apply to absent class members.  *See State of Alaska v.*

24  *Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("A named plaintiff's motion

25  for certification should not be granted if there is a danger that absent class members will suffer if

26  their representative is preoccupied with defenses unique to it.") (quoting *Hanon v. Dataproducts*

27  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

28         Again, to prevail on their MMWA claim, Plaintiffs must show that they experienced "false"

United States District Court
For the Northern District of California

8

error codes, that they reported such error codes to Sears, and that Sears failed to repair the defective ECBs that caused the false error codes.  Each class representative appears to be making just such a claim.  Accordingly, the Court concludes that in this particular case the typicality requirement is satisfied notwithstanding the fact that the commonality requirement is not.

### 4.    Adequacy

Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  When considering the adequacy of a class representative, courts generally consider only two questions:  "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  There is no evidence of any conflict of interest, and Plaintiffs have been zealous in prosecuting the action.

### C.    Rule 23(b)

In addition to demonstrating that this case meets the four requirements of Rule 23(a), Plaintiffs must demonstrate that it meets one of the requirements of Rule 23(b).  They assert that the requirements of Rule 23(b)(3) are met because common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  When considering application of Rule 23(b)(3), the Court must go beyond asking whether any common questions exist and ask whether these common questions "predominate over any questions affecting only individual members" of the putative class.  *See* Fed. R. Civ. P. 23(b)(3).  This analysis focuses on "the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citation omitted).  The Rule 23(b)(3) inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* (citation omitted).  If common questions do predominate, the plaintiff must demonstrate that the class action is superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b).

United States District Court
For the Northern District of California

1    As is discussed above, it appears that individualized questions predominate with respect to

2    whether each putative class member experienced a "false" error code caused by a defective ECB,

3    whether that class member notified Sears of the error code, and whether Sears breached the limited

4    one-year warranty by failing to address the problem.  These individualized questions are not subject

5    to common proof.  *See Dukes*, 131 S.Ct. at 2551 ("What matters to class certification . . . is not the

6    raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding

7    to generate common *answers* apt to drive the resolution of the litigation.").[6]

8                                              **IV. ORDER**

9    Good cause therefor appearing:

10   Plaintiffs' renewed motion for class certification is DENIED.

11

12   DATED:  March 28, 2013                    _____

13                                             JEREMY FOGEL
                                               United States District Judge

14

15

16

17

18

19

20

21

22

23

24   _____

[6] Defendants make the additional argument that Plaintiffs' MMWA claim would require the
25   application of numerous states' laws on warranty.  Plaintiffs rely upon *Milicevic v. Fletcher Jones
     Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005) for the proposition that the MMWA creates a private
26   federal right of action for breach of written warranty that does not implicate state warranty laws.
     Defendants argue that Plaintiffs read *Milicevic* too broadly, and that although the MMWA does
27   create a private federal right of action for breach of written warranty, such a claim is dependent
     upon state warranty law.  The Court need not resolve this question, because even assuming that
28   Plaintiffs are correct in their characterization of the law, class certification would be inappropriate
     for the reasons discussed above.

                                                 10

Case No. 5:09-cv-00288-JF
ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION